Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
Perkins Coie LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

Todd M. Hinnen (*pro hac vice* application pending)
THinnen@perkinscoie.com
Ryan Spear (*pro hac vice* application pending)
RSpear@perkinscoie.com
Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff Niantic, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NIANTIC, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>GLOBAL++, an unincorporated association; RYAN HUNT, a.k.a. "ELLIOTROBOT," an individual; ALEN HUNDUR, a.k.a. "IOS N00B," an individual; and DOES 1-20,<br><br>                    Defendants. | Case No. 19-cv-3425<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1) Copyright Infringement, 17 U.S.C. § 101, *et seq.***<br><br>**(2) Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030**<br><br>**(3) Violation of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502**<br><br>**(4) Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***<br><br>**(5) Breach of Contract**<br><br>**(6) Intentional Interference with Contractual Relations**<br><br>**DEMAND FOR JURY TRIAL** |

For its complaint, plaintiff Niantic, Inc. ("Niantic") hereby alleges as follows:

## I.      NATURE OF THE ACTION

1.      Niantic brings this action to stop defendants' willful and serial infringement of Niantic's valuable intellectual property, and to recover damages and other relief for defendants' infringement and other violations of Niantic's rights.

2.      Niantic publishes location-based augmented reality games that are played on users' mobile devices, including the games titled *Harry Potter: Wizards Unite* ("*Harry Potter*"), *Pokémon GO*, and *Ingress*. To play Niantic's games, players download and install Niantic's mobile applications ("apps") on their mobile devices. Those apps connect to the Internet and, through the Internet, obtain game-related information from Niantic's servers (e.g., names and locations of nearby characters or features), which is then rendered on the screens of players' mobile devices.

3.      Defendant Global++ is an association of hackers that creates and distributes unauthorized derivative versions of Niantic's mobile apps (the "Cheating Programs"). To trade on the popularity of Niantic's games, defendants use the same names for their unauthorized derivative versions, just adding the suffix "++" to the titles of their Cheating Programs.

4.      Specifically, Global++ creates and distributes a program titled *Potter++* (or, in some cases, *Unite++*), which is an unauthorized derivative version of Niantic's app for *Harry Potter*; a program titled *PokeGo++*, which is an unauthorized derivative version of Niantic's app for *Pokémon GO*; and a program titled *Ingress++*, which is an unauthorized derivative version of Niantic's app for *Ingress*.

5.      When used by defendants' customers, the Cheating Programs allow defendants' customers to perform unauthorized actions while playing Niantic's games. In other words, the Cheating Programs enable cheating.

6.      Niantic's games are multiplayer games, meaning that users play in a shared online environment. Thus, the Cheating Programs give defendants' customers an unfair advantage over other players and undermine the integrity of the gaming experience for other players.

1

7.      Defendant Ryan Hunt is the leader of Global++ and the primary developer of the Cheating Programs. He is assisted and supported by defendant Alen Hundur, who helps develop, market, and distribute Global++'s products and maintains a popular YouTube channel devoted to advertising and providing customer support for Global++'s products. The defendants sued as Doe Defendants assist, support, and contribute to the illegal acts of Global++, Hunt, and Hundur.

8.      To create their Cheating Programs, defendants obtain legitimate versions of Niantic's mobile apps from Apple's online App Store and then circumvent the technical security measures put in place by Niantic and by Apple to protect the binary computer code in Niantic's mobile apps, which Niantic refers to as its "Client Code."[1]

9.      After circumventing those technical security measures, defendants access, copy, and modify Niantic's Client Code without permission, allowing them to create unauthorized derivative versions of Niantic's mobile apps—the Cheating Programs. Defendants then advertise and broadly distribute their Cheating Programs.

10.      Defendants profit from their illegal activity by selling "subscriptions" for the Cheating Programs. Defendants' customers purchase those subscriptions in order to access the unauthorized features within the Cheating Programs, which in turn enable defendants' customers to cheat within Niantic's games. On information and belief, defendants have sold "subscriptions" to their Cheating Programs to hundreds of thousands of users, reaping massive profits.

11.      Defendants' schemes have harmed and will continue to harm Niantic in many ways. Among other things, defendants' schemes undermine the integrity of the gaming experience for legitimate players, diminishing enthusiasm for Niantic's games and, in some cases, driving players away from Niantic's games altogether. Defendants' schemes therefore damage Niantic's reputation and goodwill and interfere with Niantic's business.

12.      In addition, defendants' schemes threaten to inflict substantial harm by interfering with the impending United States launch of *Harry Potter*, Niantic's highly anticipated new game.

---

[1] For purposes of this complaint, the term *client code* refers to code that users install on their mobile devices when they install apps. Client code is distinguished from "server code," which exists on a remote computer server. Niantic's games utilize client code and server code. When players use Niantic's mobile apps on their mobile devices, the client code in Niantic's mobile apps interacts with the server code on Niantic's servers to create the game-playing experience.

13.     Equally important, Niantic's investigation indicates that the Cheating Programs access and collect valuable and proprietary game-related data about Niantic's games, including data about geographical points of interest within Niantic's games, while they are running on the mobile devices of defendants' customers. On information and belief, the Cheating Programs then transfer that data to defendants, allowing defendants to exploit the data for their own commercial purposes. Defendants are not authorized to obtain and exploit that game-related information. To the contrary, Niantic has expended substantial resources to curate and protect that unique data, which is an extremely important component of Niantic's business model.

14.     Defendants are not unwitting violators. They have defeated, removed, or bypassed technical measures implemented by Niantic to thwart their schemes. They have also openly and repeatedly declared their intent to misappropriate Niantic's intellectual property.

15.     Niantic frequently releases updated versions of its mobile apps, in some cases every few weeks. Each time Niantic releases new versions of its mobile apps, defendants create and distribute unauthorized derivative versions of Niantic's updated mobile apps.

16.     Niantic contacted defendants before filing this lawsuit, explained that their schemes violate Niantic's rights and harm Niantic's customers, demanded that they cease their infringing conduct, and attempted to resolve the parties' dispute without judicial intervention. Defendants ignored Niantic. Accordingly, Niantic had no choice but to file this action to protect its rights and the rights of the millions of consumers who enjoy Niantic's mobile games.

## II.     PARTIES

17.     Plaintiff Niantic is a Delaware corporation with its principal place of business in San Francisco, California.

18.     Defendant Global++ is an unincorporated association that creates, distributes, and profits from unauthorized derivative versions of the mobile apps for Niantic's mobile games *Harry Potter*, *Pokémon GO*, and *Ingress*.

19.     Defendant Ryan Hunt is the principal and leader of Global++, in which capacity he is responsible for and authorizes all relevant actions of Global++. Hunt frequently uses the

3

moniker "EliotRobot" in social media and other online forums. On information and belief, Hunt resides in Ontario, Canada.

20.     Defendant Alen Hundur is a member of Global++. Hundur frequently uses the moniker "iOS n00b" (or, in some cases, "i0S n00b") in social media and other online forums. Hundur helps market and distribute Global++'s products and, on information and belief, also contributes to the creation and development of Global++'s products. On information and belief, Hundur resides in Brentwood, Tennessee.

21.     On information and belief, the defendants named as Does 1-20 are, like the other defendants, engaged in, contributors to, and legally responsible for the violations alleged in this complaint. The true names and capacities of the defendants sued as Does 1-20 are unknown to Niantic at this time. Niantic therefore sues those defendants under fictitious names. Niantic will amend this complaint to add the true names and capacities of Does 1-20 when their identities become known.

### III.     JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 because Niantic alleges violations of the federal Copyright Act, 17 U.S.C. § 101, *et seq*., and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

23.     This Court has supplemental jurisdiction over Niantic's state law claims under 28 U.S.C. § 1367 because Niantic's state law claims are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy.

24.     This Court has personal jurisdiction over each of the defendants because defendants' unlawful activities are targeted at Niantic, which defendants know is headquartered in California; because defendants conduct substantial, continuous, and systematic business within this district, including by utilizing California-based social media platforms and other California-based services to perpetrate unlawful activities targeting Niantic; because defendants engaged in acts or omissions causing injury within this district (including, on information and belief, distributing Cheating Programs in this district); because defendants engaged in acts or omissions

4

outside this district causing injury within this district; and because the claims alleged in this complaint arise out of or relate to defendants' forum-related activities.

25.     In addition or alternatively, this Court has personal jurisdiction over each of the defendants because each defendant, or agents for each defendant, agreed to the personal jurisdiction of the state and federal courts located in the Northern District of California by agreeing to the forum-selection clause in the current version of Niantic's Terms of Service or a substantially similar forum-selection clause in an earlier version of Niantic's Terms of Service.

26.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Niantic's claims occurred in this district.

27.     In addition or alternatively, venue is proper in this district because each defendant, or agents for each defendant, consented to venue in this district by agreeing to the forum-selection clause in the current version of Niantic's Terms of Service or a substantially similar forum-selection clause in an earlier version of Niantic's Terms of Service.

### IV.     INTRADISTRICT ASSIGNMENT

28.     This is an intellectual property action to be assigned on a district-wide basis under Civil Local Rule 3-2(c).

### V.     ALLEGATIONS COMMON TO ALL CLAIMS

**A.     Niantic's Mobile Games and Applications**

29.     Niantic currently publishes three popular location-based augmented reality games: *Harry Potter*, *Pokémon GO*, and *Ingress*.

30.     *Harry Potter* is Niantic's newest game. *Harry Potter* combines content and characters from the original Harry Potter series and the Fantastic Beasts films to create a unique experience in which players use wands, spells, and magical items to protect the Wizarding World. Players recharge Spell Energy by obtaining food from Inns, which are located at places like public art spaces, unique pieces of architecture, or public gathering places. The beta version of *Harry Potter* launched in New Zealand on April 16, 2019. Niantic anticipates that *Harry Potter* will become available to users in the United States in the near future.

31.     *Pokémon GO* was launched in 2016. *Pokémon GO* allows players to collect imaginary creatures called Pokémon by finding them in real-world locations (presented in a map view or via augmented reality in the game's mobile app) and "capturing" them using Pokéballs. Players can obtain Pokéballs by visiting "Pokéstops," among other game actions, which are located at real-world locations that help players discover and enjoy their communities. *Pokémon GO* has been downloaded more than 850 million times and has received many accolades, including "Best Mobile Game" from The Game Developers Choice Awards and "Best App of the Year" from TechCrunch. To this day, *Pokémon GO* frequently has more than 16 million daily active users and over 33 million monthly active users.

32.     *Ingress* was launched in 2012. *Ingress* transforms the real world into the landscape for a covert global struggle between two teams: The Enlightened and The Resistance. Players join a team, strategize and communicate with their fellow "Agents," and interact with locations of cultural significance (e.g., public art installations, landmarks, and monuments) known as "Portals" to collect valuable resources, battle for control over territory, and solve mysteries. Ingress has been downloaded over 25 million times.

33.     Niantic's mobile games are based on three core principles: exploration and discovery of new places, exercise, and real-world social interaction with other people. Through these principles, and by leveraging sophisticated mapping and augmented reality technologies, Niantic encourages players to head outside, visit new places, and play together with friends and family in games that span and unite the entire planet.

34.     Niantic's apps are free to download and use, and it is possible to play Niantic's games for free indefinitely. However, to obtain in-game items that can be beneficial during game play, players can make in-game purchases. For example, in *Pokémon GO*, players can purchase in-game currency ("Pokécoins") to redeem for additional Pokéballs, which are used to capture Pokémon. Players may do this, for example, if they run out of Pokéballs when they are not near a Pokéstop at which they could otherwise obtain Pokéballs for free by interacting with the location.

35.     In-game purchases are a fundamental aspect of Niantic's business model and represent one of Niantic's primary sources of revenue.

6

36.     Niantic's games are the product of Niantic's skills, resources, and creative energies and have great value to Niantic. Niantic has invested significant resources, including time, effort, talent, creativity, and money, to develop and produce its games.

**B.      Niantic's Terms of Service**

37.     To obtain a limited license to access and use Niantic's services and games, users must agree to Niantic's Terms of Service. Attached as Exhibit A, and incorporated by reference, is a true and correct copy of the current version of Niantic's Terms of Service.

38.     The limited license that Niantic grants to users to access and use Niantic's services and games is conditioned on compliance with Niantic's Terms of Service.

39.     Under Niantic's Terms of Service, users may not, among other things, copy, modify, or create derivative works based on Niantic's games or use Niantic's games for any commercial purpose.

**C.      Defendants and the Cheating Programs**

40.     Defendants create, market, distribute, and profit from the Cheating Programs in violation of Niantic's rights.

41.     To create the Cheating Programs, defendants first obtain legitimate copies of Niantic's mobile apps, which are available for download from Apple's App Store.

42.     After they obtain legitimate copies of Niantic's mobile apps, defendants circumvent technical security measures intended to protect the binary computer code in Niantic's mobile apps, that is, Niantic's Client Code. Defendants then access and copy Niantic's Client Code and modify it to create their Cheating Programs.

43.     Based on Niantic's analysis, defendants copy large amounts of Niantic's Client Code and incorporate that Client Code directly into the Cheating Programs.

44.     A side-by-side comparison of the user interfaces for Niantic's legitimate apps and defendants' Cheating Programs helps illustrate the extent of defendants' copying of Niantic's Client Code.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Harry Potter* **Interface**                    *Potter++* **Interface**




8

1

*__Pokémon GO__ Interface*          *__PokeGo++__ Interface*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

   

22

23

24

25

26

27

28

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

*Ingress* **Interface**                    *Ingress++* **Interface**



22
23
24

45.     When defendants' customers download and install the Cheating Programs on their

mobile devices, the Cheating Programs allow those customers to access Niantic's computer

servers, play Niantic's games, and perform unauthorized actions while playing Niantic's games.

25
26
27

46.     For example, the Cheating Programs allow defendants' customers to "spoof" their

locations (i.e., visit geographical locations in the games without visiting those locations in the real

world by communicating to Niantic's servers GPS coordinates that do not match the GPS

28

coordinates generated by the customers' mobile devices); obtain items and achievements that they have not legitimately earned; automate certain in-game tasks so that they are always successful; and obtain valuable information that is not available to other users.

47.     The Cheating Programs also allow defendants' customers to use their mobile devices as bots, that is, automated computer programs that interact with Niantic's servers to make it appear as if defendants' customers are playing Niantic's games 24 hours a day, 7 days a week. This gives defendants' customers an unfair advantage over honest players because Niantic's legitimate apps do not allow players to automate game play in the same way.

48.     In addition, while they are running on the mobile devices of defendants' customers, the Cheating Programs access and obtain valuable and proprietary game-related data, including data about points of interest within Niantic's games (e.g., PokéStops in *Pokémon GO*, Portals in *Ingress*, and Inns in *Harry Potter*), such as names, descriptions, photographs, game states, and precise coordinates for those points of interest. Niantic refers to this data as point-of-interest data ("POI Data").

49.     The Cheating Programs also access and obtain valuable ephemeral game information, such as the type and value of particular Pokémon appearing in precise locations. Niantic refers to this data as "Spawn Data."

50.     On information and belief, after accessing and obtaining POI Data and Spawn Data, the Cheating Programs then upload the POI Data and the Spawn Data from defendants' customers' devices to servers controlled by defendants.

51.     Niantic's servers are not configured to support the Cheating Programs. As a result, the Cheating Programs impose additional burdens on Niantic's servers.

52.     Defendants advertise and distribute their Cheating Programs through numerous online channels, including the official Global++ website (www.globalplusplus.com) and a YouTube channel maintained by Hundur. Attached as Exhibits B and C, and incorporated by reference, are true and correct copies of excerpts of the Global++ website and the YouTube channel maintained by Hundur.

53.    Defendants generate profits from their illegal activities by selling subscriptions that allow users to access the unauthorized features built into the Cheating Programs.

54.    Defendants are serial infringers. When Niantic releases new versions of its mobile apps, defendants circumvent the security measures protecting Niantic's Client Code and release new versions of their Cheating Programs.

55.    Defendants have realized significant profits from the Cheating Programs. On information and belief, defendants have sold hundreds of thousands of subscriptions for their Cheating Programs and, as a result, obtained millions of dollars in illicit profits.

56.    Defendants know that their conduct is unlawful. Defendants have thwarted technical measures that Niantic has implemented to prevent defendants from accessing, copying, and creating unauthorized derivative versions of Niantic's apps.

57.    Moreover, before filing this lawsuit, Niantic contacted defendants in writing and explained that their schemes violate Niantic's rights and harm Niantic's customers. Niantic also demanded that defendants cease creating, selling, and distributing the Cheating Programs, and expressly revoked defendants' limited license to access Niantic's computers and servers and to access Niantic's games and services. Defendants did not respond.

## VI.    CLAIMS

### COUNT ONE

### Copyright Infringement (17 U.S.C. § 101, *et seq.*)

### (Against All Defendants)

58.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

59.    Niantic has obtained from the U.S. Copyright Office a Certificate of Registration for a computer program titled "*Pokémon GO*, Version 0.133.0." Attached as Exhibit D, and incorporated by reference, is a true and correct copy of the Certificate of Registration issued by the Copyright Office for *Pokémon GO*, Version 0.133.0.

60.    *Pokémon GO*, Version 0.133.0 is the client code for Version 0.133.0 of Niantic's app for the *Pokémon GO* game, which was released worldwide on January 28, 2019.

61.     *Pokémon GO*, Version 0.133.0 is an original, creative work and is copyrightable subject matter under the laws of the United States.

62.     The copyright in *Pokémon GO*, Version 0.133.0 is presently valid and subsisting.

63.     By their actions, alleged above, defendants have infringed and will continue to infringe Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0.

64.     In particular, defendants have infringed Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 by copying all or substantially all of *Pokémon GO*, Version 0.133.0 and incorporating it into defendants' Cheating Programs, including but not limited to *PokeGo++*, Version R104; by creating unauthorized derivative versions of *Pokémon GO*, Version 0.133.0, including but not limited to *PokeGo++*, Version R104; and by distributing copies and unauthorized derivative versions of *Pokémon GO*, Version 0.133.0, including but not limited to *PokeGo++*, Version R104.

65.     In addition, defendants have infringed Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 by copying all or a substantial part of *Harry Potter*, Version 0.7.0, which includes substantial portions of *Pokémon GO*, Version 0.133.0.

66.     Niantic has obtained from the U.S. Copyright Office a Certificate of Registration for a computer program titled "*Ingress*, Version 2.11.2." Attached as Exhibit E, and incorporated by reference, is a true and correct copy of the Certificate of Registration issued by the Copyright Office for *Ingress*, Version 2.11.2.

67.     *Ingress*, Version 2.11.2 is the client code comprising Version 2.11.2 of Niantic's app for the *Ingress* game, which was released worldwide on November 5, 2018.

68.     *Ingress*, Version 2.11.2 is an original, creative work and is copyrightable subject matter under the laws of the United States.

69.     The copyright in *Ingress*, Version 2.11.2 is presently valid and subsisting.

70.     By their actions, alleged above, defendants have infringed and will continue to infringe Niantic's copyrights in and relating to *Ingress*, Version 2.11.2.

71.     In particular, defendants have infringed Niantic's copyrights in and relating to *Ingress*, Version 2.11.2 by copying all or substantially all of *Ingress*, Version 2.11.2 and

13

incorporating it into defendants' Cheating Programs, including but not limited to *Ingress++*,

Version r1a; by creating unauthorized derivative versions of *Ingress*, Version 2.11.2, including

but not limited to *Ingress++*, Version r1a; and by distributing copies and unauthorized derivative

versions of *Ingress*, Version 2.11.2, including but not limited to *Ingress++*, Version r1a.

72.     Defendants' infringement of Niantic's copyrights has been deliberate, willful, and

in utter disregard of Niantic's rights.

73.     Niantic is entitled to recover from defendants the damages it has sustained and will

sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of

infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for

defendants' willful infringement of its copyrights.

74.     In addition, Niantic is entitled to its attorney's fees and costs.

75.     Furthermore, as a direct and proximate result of defendants' wrongful conduct,

Niantic has been substantially harmed in an amount not readily capable of determination, i.e.,

irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury

to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons

acting in concert or participation with them, from engaging in any further infringement of

Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of

all copies of the Cheating Programs and all articles by means of which the Cheating Programs

may be reproduced, including defendants' computers and computer programs.

## COUNT TWO

### Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)

### (Against All Defendants)

76.     Niantic realleges and incorporates by reference all the preceding paragraphs.

77.     Niantic's network, computers, and servers, including the computers and servers

that enable users to play Niantic's games via Niantic's mobile apps ("Niantic's Computers"), are

involved in interstate and foreign commerce and communication, and are protected computers

under 18 U.S.C. § 1030(e)(2).

14

78.     By letter dated June 7, 2019, Niantic expressly revoked defendants' limited license to access Niantic's Computers.

79.     When defendants and defendants' customers download, install, and use the Cheating Programs to play Niantic's mobile games and interact with Niantic's services, the Cheating Programs access Niantic's Computers.

80.     When the Cheating Programs access Niantic's Computers, they obtain information from Niantic's Computers, including Niantic's POI Data and Spawn Data. On information and belief, the Cheating Programs also transfer copies of Niantic's POI Data and Spawn Data to defendants' computers.

81.     Defendants knowingly and intentionally designed the Cheating Programs to access Niantic's Computers, obtain Niantic's POI Data and Spawn Data, and transfer copies of that data to defendants' computers. Defendants therefore knowingly and intentionally accessed Niantic's Computers through the Cheating Programs and thereby obtained information from Niantic's Computers, without Niantic's authorization.

82.     Defendants knowingly and intentionally accessed Niantic's Computers through the Cheating Programs and thereby obtained information from Niantic's Computers even after Niantic expressly revoked defendants' limited license to access Niantic's Computers.

83.     Defendants' unauthorized access to Niantic's Computers has caused Niantic to suffer in excess of $5,000 in damage or loss, including, without limitation, expenses associated with investigating and remedying defendants' unauthorized access to Niantic's Computers.

84.     In addition, Niantic has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, Niantic is entitled to injunctive relief.

## COUNT THREE

**Violation of the California Comprehensive Computer Data Access and Fraud Act**

**(Cal. Penal Code § 502)**

**(Against All Defendants)**

85.     Niantic realleges and incorporates by reference all of the preceding paragraphs.

86. Defendants have violated California Penal Code § 502(c)(1) by knowingly accessing and without permission, altering, damaging, deleting, destroying, or otherwise using Niantic's Computers to wrongfully control or obtain money, property, or data from Niantic, including Niantic's POI Data and Spawn Data.

87. Defendants have violated California Penal Code § 502(c)(2) by knowingly and fraudulently, and without permission, accessing, taking, copying, and making use of programs, data, and files from Niantic's Computers, including Niantic's POI Data and Spawn Data.

88. Defendants have violated California Penal Code § 502(c)(3) by knowingly, fraudulently, and without permission accessing and using Niantic's Computers, in particular Niantic's computer services.

89. Defendants have violated California Penal Code § 502(c)(7) by knowingly and without permission accessing or causing to be accessed Niantic's Computers.

90. As a direct and proximate result of defendants' unlawful conduct, defendants have caused and continue to cause damage to Niantic in an amount to be proven at trial. Niantic is also entitled to recover its reasonable attorneys' fees pursuant to California Penal Code § 502(e).

91. On information and belief, defendants' misconduct was willful and malicious in that it was done with the intent to injure Niantic's business and improve defendants' business, and in disregard and derogation of Niantic's rights and the rights of legitimate players of Niantic's games. Niantic is therefore entitled to punitive damages pursuant to California Penal Code § 502(e)(4).

92. In addition, Niantic has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, Niantic is entitled to injunctive relief.

## COUNT FOUR

**Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)**

**(Against All Defendants)**

93. Niantic realleges and incorporates by reference all of the preceding paragraphs.

16

94.     As detailed above, defendants have engaged in unlawful, unfair, and fraudulent conduct by, among other things, accessing Niantic's Computers without authorization and obtaining information from Niantic's Computers even after Niantic expressly revoked defendants' limited license to access Niantic's Computers.

95.     As a direct and proximate result of defendants' conduct, defendants have caused damage to Niantic in an amount to be proven at trial. Niantic is entitled to recover from defendants such damages and any gains, profits, and advantages obtained as a result of the violations alleged above.

96.     In addition, Niantic has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, Niantic is entitled to injunctive relief.

## COUNT FIVE

### Breach of Contract

### (Against All Defendants)

97.     Niantic realleges and incorporates by reference all of the preceding paragraphs.

98.     Each of the defendants, or agents for each of the defendants, knowingly and willingly agreed to the current version of Niantic's Terms of Service or a similar version of Niantic's Terms of Service, and is therefore bound by Niantic's Terms of Service.

99.     Niantic's Terms of Service create a valid and enforceable contract.

100.     Niantic has fully performed or tendered all performance required under the Terms of Service.

101.     As alleged above, defendants have breached their duties under Niantic's Terms of Service, including but not limited to their duties to refrain from some or all of the following conduct:

a.     Cheating, which includes "[a]ccessing Services in an unauthorized manner (including using modified or unofficial third party software)" and "[u]sing any techniques to alter or falsify a device's location (for example through GPS spoofing)";

b.     "[C]opy[ing], modify[ing], or creat[ing] derivative works based on" Niantic's mobile apps;

c.     "Extract[ing], scrap[ing], or index[ing] [Niantic's] Services or Content (including information about users or gameplay)";

d.     "[U]s[ing] [Niantic's] Services or Content, or any portion thereof, for any commercial purpose or in a manner not permitted by these Terms"; and

e.     "[B]ypass[ing], remov[ing], deactivat[ing], descrambl[ing], or otherwise circumvent[ing] any technological measure implemented by Niantic or any of Niantic's providers or any other third party (including another user) to protect [Niantic's] Services or Content"; and

f.     "[S]ubmit[ting] fake, falsified, misleading, or inappropriate data submissions."

102.    Niantic is entitled to recover compensatory and consequential damages resulting from defendants' breaches of their contractual duties.

**COUNT SIX**

**Intentional Interference with Contractual Relations**

**(Against All Defendants)**

103.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

104.    Through Niantic's Terms of Service, Niantic enters into valid contractual agreements with its users.

105.    The contractual agreements between Niantic and its users prohibit those users from, among other things, cheating while playing Niantic's games.

106.    Defendants knew or should have known of the valid contractual agreements between Niantic and Niantic's users.

107.    Defendants engaged in intentional acts designed to induce and encourage Niantic's users to breach and act contrary to their valid contractual agreements with Niantic, including by

providing the Cheating Programs and enticing and enabling users to employ the Cheating

Programs to cheat within Niantic's games.

108.    Defendants' intentional acts, as described above, have caused actual breaches and

disruption of the contractual relations between Niantic and its users.

109.    As a direct and proximate result of defendants' misconduct, Niantic has suffered

and is entitled to monetary relief in an amount to be proven at trial.

110.    In addition, Niantic has suffered and will continue to suffer irreparable harm, and

its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants.

Accordingly, Niantic is entitled to injunctive relief.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Niantic prays for the following relief:

A.     For injunctive relief, as follows: A preliminary and permanent injunction enjoining

and restraining defendants and all persons, firms and corporations acting in concert with them,

during the pendency of this action and thereafter perpetually from:

1.    Acquiring or copying without authorization any portion of the mobile apps

developed and published by Niantic and used to play Niantic's location-based augmented

reality games, including Niantic's Client Code;

2.    Reverse engineering, decompiling, or disassembling Niantic's mobile apps;

3.    Creating derivative works based on any portion of Niantic's games, mobile

apps, and Client Code, including without limitation the Cheating Programs;

4.    Distributing, selling, renting, leasing, or otherwise trafficking in copies of

Niantic's Client Code or any apps or computer programs that include any portion of

Niantic's Client Code, including without limitation the Cheating Programs;

5.    Retaining any portion of Niantic's mobile apps, including Niantic's Client

Code;

6.    Cheating or enabling cheating within Niantic's mobile games, including

through the Cheating Programs;

19

7.      Accessing Niantic's network, computers, and servers, including the computers and servers that enable users to play Niantic's games via Niantic's mobile apps, by any direct or indirect means or method;

8.      Extracting, scraping, or indexing Niantic's POI Data, Niantic's Spawn Data, or any other game-related data;

9.      Retaining Niantic's POI Data, Niantic's Spawn Data, or any other game-related data;

10.     Using Niantic's Client Code, or any other aspect of Niantic's mobile apps, mobile games, or other services or content, for any commercial purpose;

11.     Violating Niantic's Terms of Service;

12.     Inducing or attempting to induce Niantic's users to breach or act contrary to their valid contractual agreements with Niantic, including by providing the Cheating Programs and enticing and enabling users to employ the Cheating Programs to cheat within Niantic's games;

13.     Inducing, causing, or otherwise materially contributing to defendants' customers' creation of unauthorized copies of Niantic's Client Code, including through downloads of the Cheating Programs, and defendants' customers' use of Niantic's Client Code in a manner that exceeds the scope of their license to use Niantic's Client Code;

14.     Inducing, causing, or otherwise materially contributing to any party's acquiring, copying, or retaining of Niantic's POI Data; and

15.     Participating or assisting in any such activity;

B.      For an order requiring the seizure and impoundment of all copies of the Cheating Programs, as well as all articles by means of which the Cheating Programs may be reproduced, and all devices or products in defendants' custody or control that are involved in the circumvention, bypass, or defeat of the technical security measures that prevent unauthorized parties from accessing, copying, and modifying Niantic's Client Code;

C.      For an order requiring defendants to provide to Niantic a complete copy of any of Niantic's POI Data, Niantic's Spawn Data, or any other game-related data in defendants'

possession, custody, or control, and requiring defendants thereafter to permanently destroy all such data and provide to Niantic and to this Court a certificate of destruction;

     D.     For an award to Niantic for all damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants attributable to their wrongful conduct as alleged above;

     E.     For an award to Niantic for statutory damages based upon defendants' willful acts of infringement pursuant to the Copyright Act;

     F.     For an award to Niantic for punitive or exemplary damages based upon defendants' willful and malicious violations of the California Comprehensive Computer Data Access and Fraud Act;

     G.     For an award to Niantic of reasonable costs, including reasonable attorney's fees;

     H.     For pre- and post-judgment interest on the foregoing, as allowed by law; and

     I.     For such other, further and different relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Niantic demands a trial by jury on all issues so triable in this action.


DATED:  June 14, 2019               **PERKINS COIE LLP**

                               By:    */s/ Julie E. Schwartz*
                                     Julie E. Schwartz, Bar No. 260624
                                     JSchwartz@perkinscoie.com

                               Attorneys for Plaintiff Niantic, Inc.