UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NIANTIC, INC., a Delaware corporation, | Case No. 19-cv-3425 |
| Plaintiff, | **[PROPOSED] ORDER GRANTING NIANTIC, INC.'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF** |
| v. | |
| GLOBAL++, an unincorporated association; RYAN HUNT, a.k.a. "ELLIOTROBOT," an individual; ALEN HUNDUR, a.k.a. "IOS N00B," an individual; and DOES 1-20, | |
| Defendants. | |

Plaintiff Niantic, Inc. ("Niantic") has filed a motion for preliminary injunctive relief asking this Court to issue an order preliminarily enjoining and restraining certain alleged conduct by defendants pending trial in this matter.

Niantic alleges that defendants have violated the Copyright Act, 17 U.S.C. § 101, *et seq.*, by copying Niantic's copyrighted computer code, using those copies to make unauthorized derivative versions of Niantic's mobile applications ("apps"), and distributing those unauthorized derivative versions of Niantic's apps, which this Court will refer to as the "Accused Programs," to defendants' customers. Niantic also alleges that defendants have violated the Computer Fraud and

Abuse Act, 18 U.S.C. § 1030, by using the Accused Programs to access Niantic's computers without authorization and obtain information from Niantic's computers. Finally, Niantic alleges that defendants' conduct violates Niantic's Terms of Service, to which defendants agreed as a condition of creating Niantic accounts.

Niantic argues that it is entitled to preliminary injunctive relief because it is likely to prevail on the merits of its claims under the Copyright Act, the Computer Fraud and Abuse Act, and Niantic's Terms of Service (or, alternatively, that there are serious questions going to the merits of those claims); because Niantic has been irreparably harmed by defendants' alleged conduct and will continue to be irreparably harmed absent an injunction; because the balance of hardships favors Niantic; and because it is in the public interest to enjoin defendants' conduct.

Having considered the parties' submissions in support of and in opposition to the motion, and having heard the argument of counsel, and considering the entire record in this case, the Court hereby makes the following Findings of Fact and Conclusions of Law.

## **FINDINGS OF FACT**

1. On June 14, 2019, Niantic filed this action against defendants, as well as the pending motion for preliminary injunctive relief.

2. Niantic is a Delaware corporation based in San Francisco, California, that publishes popular location-based augmented reality games played on users' mobile devices ("mobile games"). Niantic's games are titled *Harry Potter: Wizards Unite* ("*Harry Potter*"); *Pokémon GO*; and *Ingress*.

3. To play Niantic's games, players download and install Niantic's mobile apps on their mobile devices. Niantic's apps connect to the Internet and, through the Internet, obtain game-related information from Niantic's servers. The game-related information is then rendered on the players' devices' screens.

4. Niantic's apps are the only authorized means for players to access Niantic's servers in order to play Niantic's games. All other means are prohibited.

5. Niantic's apps incorporate and rely on binary computer code (Niantic's "Client Code") that enables users to access Niantic's servers and play Niantic's games through Niantic's apps.

6. Several versions of Niantic's Client Code have been registered with the U.S. Copyright Office, including the version that appears in Version 0.133.0 of Niantic's app for the *Pokémon GO* game ("*Pokémon GO*, Version 0.133.0," released January 28, 2019) and the version that appears in Version 2.11.2 of Niantic's app for the *Ingress* game ("*Ingress*, Version 2.11.2," released November 5, 2018).

7. Niantic's apps are free to download and use, and it is possible to play Niantic's games for free indefinitely, but players can make in-game purchases to obtain items that can be beneficial during game play. In-game purchases are a fundamental aspect of Niantic's business model and represent one of Niantic's primary sources of revenue.

8. Niantic's games are the product of Niantic's skills, resources, and creative energies, and they have great value to Niantic. Niantic has invested significant resources, including time, effort, talent, creativity, and money, to develop and produce its games, including the mobile apps through which they are played.

9. Niantic also has invested substantial resources in protecting the integrity of its games, including their reputation for fair play and adherence to Niantic's core principles, which are: exploration and discovery of new places, exercise, and real-world social interaction with other people.

10. Niantic requires all users to agree to Niantic's Terms of Service, which prohibit, among other things:

    a. "[C]opy[ing], modify[ing], or creat[ing] derivative works based on" Niantic's services;

    b. "[U]s[ing] [Niantic's] Services or Content, or any portion thereof, for any commercial purpose or in a manner not permitted by these Terms"; and

      c.      Cheating, such as by "[a]ccessing [Niantic's] Services in an unauthorized manner (including using modified or unofficial third party software)" and "[u]sing any techniques to alter or falsify a device's location (for example through GPS spoofing)"; or, alternatively, "submit[ting] fake, falsified, misleading, or inappropriate data submissions, edits, or removals."

11.     Defendant Global++ is an unincorporated association that creates and distributes what it calls "Spoofing Tweaks & Apps." Defendant Ryan Hunt is the leader of Global++ and its primary developer and spokesperson. Hunt is assisted and supported by defendant Alen Hundur, who helps develop, market, and distribute Global++'s products.

12.     Both Hunt and Hundur accepted Niantic's Terms of Service.

13.     Among the programs created and distributed by defendants are a program titled *Potter++* (or, in some cases, *Unite ++*), which is an unauthorized derivative version of Niantic's app for *Harry Potter*; a program titled *PokeGo++*, which is an unauthorized derivative version of Niantic's app for *Pokémon GO*; and a program titled *Ingress++*, which is an unauthorized derivative version of Niantic's app for *Ingress* (collectively, the "Accused Programs").

14.     To create the Accused Programs, defendants:

      a.      Download legitimate copies of Niantic's mobile apps, which include Niantic's Client Code;

      b.      Circumvent technical security measures designed to protect Niantic's Client Code, thereby allowing defendants to access and copy Niantic's Client Code in its entirety without Niantic's permission;

      c.      Modify and adulterate Niantic's Client Code by, among other things, disabling security measures and adding Global++ code that enables cheating features; and

      d.      Publish, market, and distribute the modified Client Code as part of *Potter++*, *PokeGo++*, and *Ingress++*.

15.     Certain versions of the Accused Programs contain up to 99% of Niantic's copyrighted Client Code.

16. Each time Niantic releases new versions of its mobile apps, defendants repeat the process described above (or a substantially similar process) and publish new, corresponding versions of their Accused Programs, often within days or even hours of Niantic releasing its new apps.

17. When defendants' customers download the Accused Programs from defendants' website and install the programs on their mobile devices, the Accused Programs enable defendants' customers to access Niantic's computer servers, play Niantic's mobile games, and perform unauthorized actions while doing so.

18. Among other things, the Accused Programs allow defendants' customers to "spoof" their locations (i.e., visit geographical locations in the games without visiting those locations in the real world by communicating to Niantic's servers GPS coordinates that do not match the GPS coordinates generated by the customers' mobile devices); obtain items and achievements that they have not legitimately earned; automate certain in-game tasks so that they are always successful; and obtain valuable information that is not available to other users. The Accused Programs also allow defendants' customers to use their mobile devices as bots, that is, automated computer programs that interact with Niantic's servers to make it appear as if defendants' customers are playing Niantic's games 24 hours a day, 7 days a week. This gives defendants' customers an unfair advantage over honest players because Niantic's legitimate apps do not allow players to automate game play in the same way.

19. Defendants profit from their illegal activity by selling "subscriptions" for the Accused Programs. Purchasing subscriptions allows defendants' customers to access the unauthorized features within the Accused Programs, which in turn enable defendants' customers to cheat within Niantic's games.

20. The Accused Programs also appear to access and obtain game-related data from Niantic's servers, including proprietary data about points of interest within Niantic's games ("POI Data"), as well as ephemeral game information such as the type and value of certain creatures in Niantic's games ("Spawn Data"), then automatically upload that data to servers controlled by

defendants. POI Data is an important component of Niantic's location-based games and Niantic has invested substantial amounts of time, effort, and money to develop, curate, and protect it.

21. The Accused Programs degrade the gaming experience for honest players and drive users away from Niantic's games. By depressing Niantic's user base and user engagement, the Accused Programs undermine Niantic's reputation and goodwill and interfere with Niantic's ability to make money from in-game purchases. In addition, defendants' conduct threatens to interfere with the impending domestic launch of Niantic's highly-anticipated new game, *Harry Potter*, which could have severe effects on Niantic's business. And, as explained above, it appears that defendants use the Accused Programs to scrape valuable and proprietary game-related information from Niantic's servers—information that required great cost and effort to develop—and convert it to their own use.

22. Niantic sent a letter to defendants on June 7, 2019. In the letter, Niantic explained its position that defendants' conduct violates Niantic's rights and harms Niantic's customers, demanded that defendants cease that conduct, and attempted to resolve the parties' dispute without judicial intervention. Defendants did not respond, but did continue to create and distribute the Accused Programs.

23. In the last twelve months, Niantic estimates that it has incurred at least $1 million in costs investigating, responding to, and defending against the Accused Programs, including at least $10,000 in costs since June 7, 2019.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over defendants and the subject matter of this action.

2. Niantic provided defendants with appropriate notice of this motion.

3. A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

1       4.      Although not dispositive by itself, the first of these factors—likelihood of success on the merits—is the "most important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

        5.      Both the law and the evidence presented to the Court support Niantic's request for a preliminary injunction.

        6.      **First**, Niantic has shown that it is likely to prevail on the merits of its claims under the Copyright Act, the Computer Fraud and Abuse Act, and Niantic's Terms of Service.

        7.      Niantic is likely to prevail on the merits of its claim under the Copyright Act because (a) Niantic has obtained and presented to the Court certificates of registration for versions of its Client Code deposited with the U.S. Copyright Office; and (b) the evidence shows that defendants violated Niantic's exclusive rights under the Copyright Act by reproducing Niantic's copyrighted Client Code; preparing derivative works based on the copyrighted Client Code; and distributing copies of the copyrighted Client Code to the public. *See, e.g.*, *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998); *Take-Two Interactive Software, Inc. v. Zipperer*, No. 18 CIV. 2608 (LLS), 2018 WL 4347796 (S.D.N.Y. Aug. 16, 2018).

        8.      Niantic is likely to prevail on the merits of its claim under the Computer Fraud and Abuse Act ("CFAA") because the evidence presented to the Court shows that defendants "intentionally access[ed] a computer without authorization . . . and thereby obtain[ed] . . . information from any protected computer." 18 U.S.C. §§ 1030(a)(2), 1030(g). Specifically, (a) defendants use the Accused Programs to access intentionally the Niantic computers, servers, and networks that enable users to play Niantic's games ("Niantic's Computers"); (b) such access is without authorization because Niantic's legitimate mobile apps are the only authorized means for players to access Niantic's Computers, and because Niantic expressly revoked defendants' limited license to access Niantic's Computers for any reason and by any method; (c) the Accused Programs obtain information from Niantic's Computers, including valuable and proprietary POI Data and Spawn Data; (4) Niantic's Computers are connected to the Internet and enable Niantic's users to play Niantic's games throughout the United States and all over the world, making them

protected computers within the meaning of the CFAA; and (5) Niantic has suffered losses far exceeding the $5,000 threshold as a direct and proximate result of defendants' CFAA violations. *See, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016).

9. Niantic is likely to prevail on the merits of its claim for breach of contract because the evidence presented to the Court shows that (a) Niantic's Terms of Service are a binding and enforceable contract between Niantic and the defendants because Hunt and Hundur both accepted the Terms of Service and Hunt's acceptance is enforceable against Global++; (b) Niantic fully performed under its Terms of Service; (c) defendants repeatedly breached their obligations under Niantic's Terms of Service; and (d) Niantic has suffered damages as a result of defendants' breaches. *See Twitter, Inc. v. Skootle Corp.*, No. C 12-1721 SI, 2012 WL 2375486, at *7 (N.D. Cal. June 22, 2012).

10. **Second**, Niantic has shown that it has suffered and is likely to suffer irreparable harm in the absence of preliminary injunctive relief because (s) the Accused Programs give defendants' customers unfair advantages, thereby frustrating some honest players and leading others to quit playing Niantic's games, which in turn injures Niantic's reputation and goodwill in the marketplace and undermines Niantic's business model; (b) defendants' conduct threatens to interfere with the upcoming launch of Niantic's new game, *Harry Potter*, by depriving Niantic of its ability to control how new users in the United States will encounter and experience its new game, by undermining new users' gaming experience, and by making it more difficult for Niantic to attract new users for a game that it has invested many years and millions of dollars to develop; and (c) defendants convert Niantic's proprietary and valuable POI Data and Spawn Data for their own commercial purposes. *See adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018). All of these harms are difficult to quantify in monetary terms and are therefore irreparable.

11. **Third**, the balance of hardships tips sharply in Niantic's favor because Niantic will continue to be irreparably harmed absent injunctive relief but defendants would suffer no cognizable harm if a preliminary injunction were entered; defendants would only be enjoined

1 from engaging in infringing and unlawful conduct. *See, e.g., Disney Enters., Inc. v. VidAngel,
2 Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

3     12.    **Fourth**, and finally, the public interest favors a preliminary injunction because
4 such relief vindicates intellectual property rights and protects consumers against the cheating
5 enabled by the Accused Programs. *See Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA,
6 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017).

7     13.    The Court has discretion to dispense with the security requirement, or to request
8 the party obtaining preliminary injunctive relief post mere nominal security, where (as here) the
9 likelihood of success on the merits tips in favor of a minimal bond or no bond at all. *See Cal. ex
10 rel. Van de Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325-26 (9th Cir.), *amended
11 on other grounds*, 775 F.3d 998 (9th Cir. 1985).

**ORDER OF PRELIMINARY INJUNCTION**

Now, therefore, it is hereby ORDERED as follows:

1. Niantic's motion for preliminary injunctive relief is GRANTED.

2. Defendants Global++, Ryan Hunt, and Alen Hundur, and all of their officers, agents, servants, and employees, and persons in active concert or participation with them who receive actual notice of this Order, are hereby enjoined until resolution of this action, or until further order of this Court, from:

    a.    Acquiring or copying without authorization any portion of the mobile apps developed and published by Niantic and used to play Niantic's location-based augmented reality games, including Niantic's Client Code;

    b.    Reverse engineering, decompiling, or disassembling Niantic's mobile apps;

    c.    Creating derivative works based on any portion of Niantic's games, mobile apps, and Client Code, including without limitation the Accused Programs titled *Potter++* (or *Unite++*), *PokeGo++*, and *Ingress++*;

      d.     Distributing, selling, renting, leasing, or otherwise trafficking in copies of Niantic's Client Code or any apps or computer programs that include any portion of Niantic's Client Code, including without limitation the Accused Programs;

      e.     Cheating or enabling cheating within Niantic's mobile games, including through the Accused Programs;

      f.     Accessing Niantic's network, computers, and servers, including the computers and servers that enable users to play Niantic's games via Niantic's mobile apps, by any direct or indirect means or method;

      g.     Extracting, scraping, or indexing data about points of interest or spawning locations within Niantic's games, including names, descriptions, photographs, game states, and precise coordinates for those points of interest;

      h.     Using Niantic's Client Code or any other aspect of Niantic's mobile apps, mobile games, or other services or content, for any commercial purpose;

      i.     Violating Niantic's Terms of Service; and

      j.     Participating or assisting in any such activity.

3.     Defendants Global++, Ryan Hunt, and Alen Hundur are hereby ordered to provide notice of this Order to their officers, agents, servants, and employees, and to all persons in active concert or participation with them.

4.     No bond shall be required.

Dated: _____, 2019        _____
                                                                          United States District Judge