Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
Perkins Coie LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

Todd M. Hinnen (admitted *pro hac vice*)
THinnen@perkinscoie.com
Ryan Spear (admitted *pro hac vice*)
RSpear@perkinscoie.com
Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff Niantic, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NIANTIC, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL++, an unincorporated association; RYAN HUNT, a.k.a. "ELLIOTROBOT," an individual; ALEN HUNDUR, a.k.a. "IOS N00B," an individual; and DOES 1-20,<br><br>Defendants. | Case No. 19-cv-03425-JST<br><br>**NIANTIC, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**Date:** September 4, 2019<br>**Hearing Time:** 2:00 p.m.<br>**Courtroom:** 6, 2nd Floor (Oakland)<br>**Judge:** Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 1 |
| III. | LEGAL STANDARD | 3 |
| IV. | ARGUMENT | 4 |
| | A. Global++ Can Be Sued | 4 |
| |     1. Niantic has adequately alleged that Global++ is an unincorporated association subject to suit under California law | 4 |
| |     2. Even if Global++ is not an unincorporated association subject to suit under California law, it is still subject to suit in this case under Federal Rule of Civil Procedure 17(b)(3)(A) | 8 |
| |     3. Hunt's declaration cannot be considered in ruling on the motion to dismiss and, in any case, does not establish that Global++ lacks the capacity to be sued | 9 |
| | B. Niantic Has Adequately Alleged Claims Against Hunt and Hundur | 10 |
| | C. At the Very Least, Niantic Should Be Allowed To Amend Its Complaint and Motion for Preliminary Injunctive Relief | 11 |
| V. | CONCLUSION | 11 |

**TABLE OF AUTHORITIES**

Page

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 3

*Associated Students of the Univ. of Cal. at Riverside v. Kleindienst*,
  60 F.R.D. 65 (C.D. Cal. 1973) ................................................................................................. 8

*Banks.com, Inc. v. Keery*,
  No. C 09-06039 WHA, 2010 WL 1688612 (N.D. Cal. Apr. 26, 2010) .................................... 8

*Banks.com, Inc. v. Keery*,
  No. C 09-06039 WHA, 2010 WL 727973 (N.D. Cal. Mar. 1, 2010) ....................................... 7

*Barr v. United Methodist Church*,
  90 Cal. App. 3d 259 (1979) ................................................................................................. 5, 6

*Comm. for Idaho's High Desert, Inc. v. Yost*,
  92 F.3d 814 (9th Cir. 1996) ..................................................................................................... 9

*Farina Focaccia & Cucina Italiana, LLC v. 700 Valencia St. LLC*,
  No. 15-CV-02286-JCS, 2015 WL 4932640 (N.D. Cal. Aug. 18, 2015) .................................. 4

*Howard v. First Horizon Home Loan Corp.*,
  No. 12-CV-05735-JST, 2013 WL 6174920 (N.D. Cal. Nov. 25, 2013) ................................ 11

*Hunt v. Olivares*,
  No. 19-CV-01604-JST, 2019 WL 2106592 (N.D. Cal. May 14, 2019) ................................ 11

*Hyatt v. Yee*,
  871 F.3d 1067 (9th Cir. 2017) ................................................................................................. 3

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ................................................................................................... 9

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ................................................................................................. 3

*Laub v. U.S. Dep't of Interior*,
  342 F.3d 1080 (9th Cir. 2003) ................................................................................................. 4

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ................................................................................................... 9

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ............................................................................................... 11

**TABLE OF AUTHORITIES**
(continued)

Page

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008)...................................................................................4

*People ex rel. Totten v. Colonia Chiques*,
    156 Cal. App. 4th 31 (2007) .................................................................................5, 6

*S. California Darts Ass'n v. Zaffina*,
    762 F.3d 921 (9th Cir. 2014)...................................................................................9

*Sierra Ass'n for Env't v. F.E.R.C.*,
    744 F.2d 661 (9th Cir. 1984)...................................................................................8

*United Farmworkers of Fla. Hous. Project, Inc. v. City of Delray Beach, Fla.*,
    493 F.2d 799 (5th Cir. 1974)...................................................................................8

**STATUTES**

Cal. Civ. Proc. Code § 369.5.........................................................................................5, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9 ................................................................................................................4

Fed. R. Civ. P. 12 ....................................................................................................1, 3, 4, 9

Fed. R. Civ. P. 17 .......................................................................................................4, 8, 9

# I. INTRODUCTION

This is a case about outright theft. Plaintiff Niantic, Inc. ("Niantic") alleges that defendants Global++, Ryan Hunt, and Alen Hundur, along with several yet-to-be-identified Doe Defendants, are engaged in a sophisticated and long-running scheme to steal Niantic's valuable and proprietary software code and use that code to create, distribute, and profit from "hacked" versions of Niantic's popular mobile applications ("apps").

Defendants Hunt and Hundur have filed a motion to dismiss all of Niantic's claims, with prejudice, under Federal Rule of Civil Procedure 12(b)(6). Notably, defendants do not deny any of Niantic's substantive allegations. Nor do they deny that Hunt and Hundur are members of Global++ and are responsible for its activities. To the contrary, Hunt's improper declaration in support of defendants' motion strongly suggests that Hunt controls Global++ and acts as its primary developer, just as Niantic has alleged. *See* Decl. of Ryan Hunt in Supp. of Defs.' Mot. to Dismiss ("Hunt Decl.") ¶¶ 3, 4, 7 (Dkt. 26-1); *see also* Complaint ("Compl.") ¶ 19 (Dkt. 1).

Nevertheless, defendants ask this Court to dismiss Niantic's claims on the grounds that Global++ is not subject to suit and Niantic's allegations against Hunt and Hundur are too vague. Both arguments are wrong. This Court should therefore deny defendants' motion in its entirety. Alternatively, if this Court agrees with defendants, Niantic respectfully requests leave to amend its Complaint and its pending motion for preliminary injunctive relief to remedy any deficiencies.

# II. BACKGROUND

Niantic publishes location-based augmented reality games that are played on users' mobile devices, including *Harry Potter: Wizards Unite* ("*Harry Potter*"), *Pokémon GO*, and *Ingress*. In Niantic's games, the world is the game board. Players interact with augmented reality characters and features that appear on the screens of their mobile devices when they visit real-world locations. *See* Compl. ¶¶ 2, 29-32. For example, in Niantic's Pokémon GO game, players collect imaginary creatures called "Pokémon" by searching for and finding them in real-world locations (e.g., parks) and then capturing them using "Pokéballs." Players can obtain Pokéballs by visiting "Pokéstops," which are also found at real-world locations (e.g., fountains and murals). *See id.* ¶ 31.

Niantic's games are based on three core principles: exploration and discovery of new places, exercise, and real-world social interaction with other people. Through these principles, and by leveraging sophisticated mapping and augmented reality technologies, Niantic encourages players to head outside, visit new places, and play together with friends and family in games that span and unite the entire planet. *See id.* ¶ 33.

To play Niantic's games, players download and install Niantic's mobile apps on their mobile devices. *See id.* ¶ 2. Niantic's apps are made up, in part, of innovative software code, including the code that users download onto their mobile devices to play Niantic's games, which is called Client Code. *See id.* ¶ 8.[1] Niantic protects its Client Code via technical measures designed to prevent users from viewing, obtaining, or copying the code while still enabling users to access and play Niantic's games via their mobile devices. *See id.* ¶¶ 8, 42.

Niantic also invests substantial resources to monitor for and eliminate cheating and other unauthorized activity in connection with its games. Maintaining the integrity of Niantic's games is essential to Niantic's business model because Niantic's games are multiplayer games—that is, all players share the same online environment. *See id.* ¶ 6. Thus, when one player gains an unfair advantage by cheating, it affects all other players and threatens the integrity of Niantic's games. *See id.*

In its Complaint, Niantic alleges that defendants Global++, Hunt, Hundur, and the Doe Defendants:

- Circumvent technical security measures to obtain unauthorized access to Niantic's Client Code;

- Copy and modify Niantic's Client Code to create unauthorized derivative versions of Niantic's apps (the "Cheating Programs"), which allow defendants' customers to cheat in Niantic's games;

- Advertise, promote, and distribute the Cheating Programs to consumers interested in Niantic's games;

---

[1] For purposes of this brief, the term "client code" refers to code that users install on their mobile devices when they install apps. Client code is distinguished from "server code," which exists on a remote computer server. Niantic's games utilize client code and server code. When players use Niantic's mobile apps on their mobile devices, the client code in Niantic's mobile apps interacts with the server code on Niantic's servers to create the game-playing experience.

- 2 -

- Use the Cheating Programs to steal Niantic's proprietary game-related data; and

- Profit from their unlawful activity by selling subscriptions to the Cheating Programs to thousands of customers.

*See, e.g., id.* ¶¶ 40-53. As explained in the Complaint, the Cheating Programs give defendants' customers unfair advantages, frustrating some honest players and leading others to quit Niantic's games altogether. The Cheating Programs also deprive Niantic of profits it would otherwise have obtained from in-game purchases, thereby undermining a core part of Niantic's business. *See id.* ¶¶ 6, 11. Based on those allegations and others, Niantic asserts a variety of federal law and state law claims against defendants, including claims under the federal Copyright Act and the federal Computer Fraud and Abuse Act.

Defendants have filed a motion to dismiss all of Niantic's claims under Federal Rule of Civil Procedure 12(b)(6). *See* Mot. to Dismiss ("Mot.") ("Statement of Relief Sought") (Dkt. 26). Defendants' motion asks this Court to dismiss Niantic's claims for two reasons. First, defendants argue that Niantic has not properly alleged that Global++ is "a corporation, a limited liability company, a partnership, or any other kind of legally-cognizable entity" that can be sued in this case. Mot. at 1. Second, defendants argue that Niantic "fails to allege any particular facts attaching liability to Mr. Hunt or Mr. Hundur individually." *Id*. Both arguments fail. This Court should therefore deny defendants' motion.

### III.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A court evaluating a Rule 12(b)(6) motion must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005), and draw all reasonable inferences in favor of the nonmoving party, *see Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017). Dismissal "is appropriate only where the

complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).[2]

## IV. ARGUMENT

### A. Global++ Can Be Sued

Defendants' main argument is that Global++ is not a cognizable legal entity under California law and, therefore, cannot be sued in this case. Mot. at 1. That argument fails because (1) Niantic has adequately alleged that Global++ is an unincorporated association subject to suit under California law; (2) even if Global++ is not an unincorporated association under California law, it may nevertheless be sued under Federal Rule of Civil Procedure 17(b)(3)(A) because Niantic has raised federal claims in this case and Global++ is an unincorporated association for purposes of federal law; and (3) defendants' claim that Global++ is a nonentity that lacks capacity to be sued depends wholly on Hunt's self-serving declaration, which is improper and should be disregarded in the context of a Rule 12(b)(6) motion.

#### 1. Niantic has adequately alleged that Global++ is an unincorporated association subject to suit under California law

In its Complaint, Niantic expressly alleges that Global++ is "an *unincorporated association* that creates, distributes, and profits from unauthorized derivative versions of the mobile apps for Niantic's games." Compl. ¶ 18 (emphasis added); *see also id.* at 1 (caption referring to Global++ as "an unincorporated association").

Defendants concede, as they must, that Global++ is subject to suit in this case if it is an "unincorporated association" under California law. *See* Mot. at 4-5; *see also* Fed. R. Civ. P. 17(b)

---

[2] Defendants argue that Global++'s legal capacity is a "jurisdictional issue." Mot. at 4. But defendants seek dismissal under Rule 12(b)(6), not Rule 12(b)(1). Moreover, "Rule 9(a) provides that a party wishing to raise the issue of capacity to sue 'must do so by a specific denial,' which implies that the 'lack of capacity to sue' defense is waivable and therefore not one of subject-matter jurisdiction under Rule 12(b)(1)." *Farina Focaccia & Cucina Italiana, LLC v. 700 Valencia St. LLC*, No. 15-cv-02286-JCS, 2015 WL 4932640, at *5 (N.D. Cal. Aug. 18, 2015). If, however, this Court concludes that Global++'s legal capacity *is* a jurisdictional issue, then Niantic respectfully requests leave to take discovery on that issue (including, for example, a deposition of Hunt) in order to oppose defendants' motion. *See, e.g.*, *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (explaining that "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary") (internal quotation marks and citation omitted).

(capacity to be sued is determined by state law, subject to an exception discussed below); Cal. Civ. Proc. Code § 369.5 ("A partnership or other unincorporated association, whether organized for profit or not, may sue and be sued in the name it has assumed or by which it is known."). But, defendants argue, Niantic has not properly alleged that Global++ is an unincorporated association for purposes of California law. *See* Mot. at 5. Defendants are incorrect.

California law recognizes "group structures of all types" as unincorporated associations that may sue and be sued, *Barr v. United Methodist Church*, 90 Cal. App. 3d 259, 265-66 (1979), including groups whose activities include unlawful conduct, *see People ex rel. Totten v. Colonia Chiques*, 156 Cal. App. 4th 31, 38 (2007) (criminal street gang was unincorporated association subject to suit). As the California Court of Appeal has explained:

> The criteria applied to determine whether an entity is an unincorporated association is no more complicated than (1) a group whose members share a common purpose, and (2) who function under a common name under circumstances where fairness requires the group be recognized as a legal entity. Fairness includes those situations where persons dealing with the association contend their legal rights have been violated.

*Barr*, 90 Cal. App. 3d at 266-67.

Niantic's allegations—which must be credited at this stage—easily meet those criteria. First, Niantic clearly alleges that members of Global++ share "common purpose[s]," including "creat[ing], distribut[ing], and profit[ing] from" the Cheating Programs. Compl. ¶ 18; *see also, e.g.*, *id*. ¶ 3 ("Defendant Global++ is an association of hackers that creates and distributes unauthorized derivative versions of Niantic's mobile apps."); *id*. ¶¶ 40-57 (describing at length how defendants create, distribute, and profit from the Cheating Programs and providing screenshots of the interfaces for the Cheating Programs). There is no ambiguity in Niantic's allegations about defendants' common purposes, as defendants implicitly admit. *See* Mot. at 1 ("Plaintiff Niantic, Inc. filed six claims against Defendants related to mobile software applications that allegedly mimic and manipulate video games Niantic created and designed.").

Second, Niantic has alleged that the members of Global++, including Hunt and Hundur, "function under a common name under circumstances where fairness requires the group be recognized as a legal entity." *Barr*, 90 Cal. App. 3d at 266-67. For example, Niantic alleges that

Hunt and Hundur acted together to further the goals of Global++, with Hunt acting as the group's "principal and leader" and the "primary developer of the Cheating Programs," and Hundur acting as a "member of Global++" who "helps market and distribute Global++'s products and . . . also contributes to the creation and development of Global++'s products." Compl. ¶¶ 7, 19, 20. Niantic also alleges that Global++ held itself out to the public under the "Global++" name. *See* Cal. Civ. Proc. Code § 369.5 (unincorporated association may be sued "in the name it has assumed or by which it is known"). For example, Niantic alleges that Global++ maintained an elaborate website through which it did business. *See* Compl. ¶ 52. Notably, that website employed unique branding, including a stylized Global++ logo; declared that "We make iOS Tweaks!"; enabled customers to download Global++ products; invited customers to interact with Global++ through social media platforms, including Discord and Facebook; and solicited payment for Global++'s products through multiple payment providers, including Stripe and Patreon. *See id.*, Ex. B. Similarly, defendants maintained a YouTube channel devoted to marketing the Cheating Programs, and that channel used the same branding as Global++'s website. *See id.*, Ex. C.

In short, Niantic alleges that defendants worked together under the umbrella of the "Global++" name; that Global++ held itself out to the public as a discrete association; and that members of Global++ shared common purposes, including unlawful conduct targeting Niantic. Fairness therefore requires treating Global++ as an unincorporated association subject to suit. *See, e.g.*, *Barr*, 90 Cal. App. 3d at 266-67 ("Fairness includes those situations where persons dealing with the association contend their legal rights have been violated.").

Hoping to avoid that conclusion, defendants argue that fairness does not require treating Global++ as an unincorporated association in this case because Niantic has named Hunt and Hundur as defendants. *See* Mot. at 5. But defendants cite no authority for the proposition that an entity is immune to suit merely because a plaintiff may sue one or more of the entity's members. Nor would such a rule be sensible because it would require a plaintiff to name every member of an association in order to obtain full relief against the association, which in most cases would not be feasible. *Cf. Totten*, 156 Cal. App. 4th at 41 (holding that gang was unincorporated association subject to suit and explaining that "it is simply not practical to require respondent to name . . .

- 6 -

1   gang members individually as defendants" because membership was constantly shifting and, "[i]f
2   the gang could not be sued, respondent would have to bring a new action . . . against each new
3   member"). Moreover, in this case, if Niantic is not allowed to sue Global++ as an association, and
4   if Hunt and Hundur cannot or will not identify the other members of Global++, then Niantic
5   could effectively be barred from obtaining any relief against the Doe Defendants.

6   Defendants also lean heavily on a single case holding that a domain name did not qualify
7   as an unincorporated association under California law. *See Banks.com, Inc. v. Keery*, No. C 09-
8   06039 WHA, 2010 WL 727973, at *7-8 (N.D. Cal. Mar. 1, 2010). But that decision does not help
9   defendants because it is easily distinguishable. Global++ is not a domain name—i.e., mere
10  property. Nor does Niantic allege that Global++ is anything like a domain name. Rather, Niantic
11  alleges that Global++ is an "association of hackers," operating under a common name in multiple
12  channels of commerce, engaged in specific bad acts, and pursuing common goals (including
13  unlawful goals). Compl. ¶ 3; *compare Keery*, 2010 WL 727973, at *7 (domain name was not an
14  unincorporated association, in part, because it had not "engaged in any specific conduct" or
15  "incurred any legal obligations with respect to plaintiff"). Thus, unlike the domain name in *Keery*,
16  Global++ is a quintessential example of an unincorporated association subject to suit.

17  Further, later developments in *Keery* directly undermine defendants' argument. In a
18  decision issued shortly after the decision cited by defendants, the court granted plaintiffs' motion
19  for leave to amend their complaint to add further allegations about the domain name at issue. As
20  the court explained, plaintiffs' further allegations were sufficient to establish, at the pleading
21  stage, that the domain name *was* an unincorporated association subject to suit under California
22  law. And, crucially, those further allegations were very similar to the allegations that Niantic has
23  already leveled against Global++:

24  > The proposed amended complaint alleges that ProStreamMedia.com was "a
25  > partnership, and/or an unincorporated business website and/or association"
    > established by Keery, defendant Hoult, and defendant Giessman (Compl.¶ 5).
26  > Plaintiff alleges that ProStreamMedia.com "[conducted] business in internet
    > marketing and advertising" that directly competed with plaintiff . . . ."
27  > Furthermore, plaintiff alleges that Keery, defendant Hoult, and defendant
28  > Giessman "collectively established ProStreamMedia.com as a vehicle for their

- 7 -

> improper activities," including misappropriating plaintiff's trade secrets through ProStreamMedia.com by using information improperly taken by Keery and defendant Hoult during and after the time they were employed by plaintiff.
>
> . . . . Given the new allegations, it follows that ProStreamMedia.com has the capacity to be sued and is a proper defendant in this action at this time. At the pleading stage, plaintiff does not need to prove the veracity of every allegation in its complaint. Accordingly, without prejudice to a motion for summary judgment on this point, plaintiff's motion for leave to amend as against defendant ProStreamMedia.com is **GRANTED.**

*Banks.com, Inc. v. Keery*, No. C 09-06039 WHA, 2010 WL 1688612, at *5 (N.D. Cal. Apr. 26, 2010). Thus, even defendants' best case contradicts their argument.

### 2. Even if Global++ is not an unincorporated association subject to suit under California law, it is still subject to suit in this case under Federal Rule of Civil Procedure 17(b)(3)(A)

Defendants cite Rule 17(b) for the general rule that "state law"—in this case, California law—"determines whether a defendant has the capacity to be sued or be sued." Mot. at 4. But defendants ignore a crucial exception to that rule, which provides that an "unincorporated association *with no such capacity under that state's law* may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A) (emphasis added).

Here, Niantic sues to enforce its substantive rights under federal law, including its exclusive rights under the federal Copyright Act. Rule 17(b)(3)(A) therefore applies. And because Rule 17(b)(3)(A) applies, Global++'s status under California law simply does not matter. *See, e.g., Sierra Ass'n for Env't v. F.E.R.C.*, 744 F.2d 661, 662 (9th Cir. 1984) ("[B]ecause this action arises under federal law, SAFE had capacity to sue as an unincorporated association, and any incapacity under California law is accordingly irrelevant."); *United Farmworkers of Fla. Hous. Project, Inc. v. City of Delray Beach, Fla.*, 493 F.2d 799, 802 n.4 (5th Cir. 1974) (Rule 17(b)(3)(A) "provides that an 'unincorporated association' is a properly named defendant, notwithstanding contrary state law, whenever a federal substantive right is in issue"); *Associated Students of the Univ. of Cal. at Riverside v. Kleindienst*, 60 F.R.D. 65, 67 (C.D. Cal.1973) (same, and citing cases).

Instead, what matters is whether Niantic has alleged that Global++ is an unincorporated association for purposes of federal law. *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996) (for purposes of Rule 17(b)(3)(A), "the determination of what constitutes an 'unincorporated association' is a question of federal law"). The answer is "yes." As explained above, Niantic has clearly and thoroughly alleged that Global++ is "a voluntary group of persons, . . . formed by mutual consent for the purpose of promoting a common objective"—which is all that federal law requires. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 927 (9th Cir. 2014) (internal quotation marks and citation omitted). Global++ is therefore a proper defendant in this suit.

### 3. Hunt's declaration cannot be considered in ruling on the motion to dismiss and, in any case, does not establish that Global++ lacks the capacity to be sued

Even if this Court disagrees with Niantic's arguments above, it should nevertheless deny defendants' motion because it is based entirely on an improper and irrelevant declaration from defendant Hunt.

To rebut Niantic's extensive allegations about Global++, defendants rely exclusively on a one-page declaration from Hunt. *See, e.g.*, Mot. at 5. Hunt's declaration asserts, in pertinent part, that "Global++ is not, and never has been a corporation, a limited liability company, a partnership, or any other kind of legal entity." Hunt Decl. ¶ 3.

Hunt's declaration is immaterial for two reasons. First, this Court may not consider the (disputed) factual assertions in Hunt's declaration for purposes of resolving defendants' motion. It is black-letter law that courts may not consider materials outside the pleadings—like Hunt's declaration—when ruling on Rule 12(b)(6) motions. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (subject to exceptions not relevant here, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)"); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (same). And without Hunt's declaration, there is no reason to conclude or even suspect that Global++ is a "nonentity" that, in defendants' words, "does not exist." Mot. at 5, 6.

1    Second, even assuming Global++ is not a formal legal entity, Global++ may still be sued
2  as an unincorporated association—as defendants acknowledge. *See* Mot. at 4-5. And as explained
3  above, Niantic has adequately alleged that Global++ is an unincorporated association subject to
4  suit in this case. *See supra* at IV.A.1. Hunt's declaration does not call that conclusion into
5  question. To the contrary, the fact that Hunt purports to have such detailed personal knowledge of
6  Global++'s legal status and Global++'s "products and services" suggests strongly that he is the
7  leader of Global++ and that Global++ is a cohesive and concrete association of individuals, just
8  as Niantic has alleged. Hunt Decl. ¶ 7.
9    In sum, Niantic has sufficiently shown, at this stage of the litigation, that Global++ is an
10  unincorporated association subject to suit. Disputes about Global++'s corporate or legal status, if
11  any, will be resolved through discovery. In the meantime, mere *assertions* about Global++'s
12  status in an improper declaration cannot shield Global++ against Niantic's claims.

13    **B.    Niantic Has Adequately Alleged Claims Against Hunt and Hundur**

14    In one half-hearted paragraph at the end of their motion, defendants claim that "Niantic
15  also fails to state a plausible claim against Mr. Hunt and Mr. Hundur individually because it does
16  not assert any material facts as to their conduct." Mot. at 6. That is simply untrue, as even a
17  cursory review of the Complaint reveals. In fact, Niantic details Hunt's and Hundur's unique
18  roles within Global++, *see* Compl. ¶¶ 7, 18, 19, 20; explains how their Cheating Programs work
19  and how the Cheating Programs harm Niantic and its users, *see, e.g.*, *id*. ¶¶ 6, 10-13; and recites
20  at length how Hunt and Hundur create, distribute, promote, and profit from the Cheating
21  Programs, *see, e.g.*, *id*. ¶¶ 40-51. Niantic also alleges that Hunt and Hundur engaged in specific
22  acts giving rise to each claim against them. *See, e.g.*, *id*. ¶¶ 63-65, 70-72, 81-83, 86-91, 94-95, 98,
23  101, and 106-08. In other words, Niantic's Complaint leaves no doubt as to the nature of
24  Niantic's claims against Hunt and Hundur and the facts underlying those claims. *See also* July 19,
25  2019 Order Continuing Hearings at 1 (Dkt. 30) (explaining, correctly, that Niantic seeks relief
26  against all defendants, including Hunt and Hundur, for "copying its mobile applications, creating
27  derivative works based on those applications, enabling cheating on Niantic's mobile games, and
28  accessing Niantic's network"). Any claim to the contrary is disingenuous.

### C. At the Very Least, Niantic Should Be Allowed To Amend Its Complaint and Motion for Preliminary Injunctive Relief

For the foregoing reasons, this Court should deny defendants' motion to dismiss in its entirety. If, however, this Court agrees with any of defendants' arguments, then Niantic respectfully requests leave to amend its Complaint and its pending motion for preliminary injunctive relief to address any perceived deficiencies in Niantic's pleadings. *See, e.g.*, *Howard v. First Horizon Home Loan Corp.*, No. 12-cv-05735-JST, 2013 WL 6174920, at *2 (N.D. Cal. Nov. 25, 2013) (granting leave to amend based on request included in opposition to motion to dismiss). Indeed, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Hunt v. Olivares*, No. 19-cv-01604-JST, 2019 WL 2106592, at *2 (N.D. Cal. May 14, 2019) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)).

## V. CONCLUSION

For the foregoing reasons, Niantic respectfully requests that this Court deny defendants' motion to dismiss. Alternatively, if this Court grants defendants' motion in whole or in part, Niantic requests leave to amend its Complaint and motion for preliminary injunctive relief.

DATED: July 31, 2019

**PERKINS COIE LLP**

By: */s/ Julie E. Schwartz*
Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com

Attorneys for plaintiff Niantic, Inc.