1
2
3
4              UNITED STATES DISTRICT COURT
5             NORTHERN DISTRICT OF CALIFORNIA
6

7   NIANTIC, INC.,                          Case No. 19-cv-03425-JST

8                   Plaintiff,

9          v.                               **ORDER DENYING DEFENDANTS'
                                            MOTION TO DISMISS AND
10   GLOBAL++, et al.,                       GRANTING PLAINTIFF'S MOTION
                                            FOR PRELIMINARY INJUNCTION**
11                  Defendants.
                                            Re: ECF Nos. 7, 26
12

13          Before the Court are Defendants' motion to dismiss, ECF No. 26, and Plaintiff's motion

14   for preliminary injunction, ECF No. 7.  The Court will deny the motion to dismiss and grant the

15   motion for preliminary injunction.

16   **I.      BACKGROUND**

17          **A.      Factual Background**

18          Niantic, Inc. publishes location-based augmented reality games such as *Harry Potter:*

19   *Wizards Unite* ("*Harry Potter*"), *Pokémon GO*, and *Ingress*.  ECF No. 1 ¶ 2.  To play Niantic's

20   games, users install Niantic's mobile applications ("apps") on their mobile devices.  *Id.*  Those

21   apps connect to the Internet, through which users obtain game-related information from Niantic's

22   servers.  *Id.*  The information is then rendered on players' mobile devices and enables them to

23   perform game functions, such as collecting Pokémon in real-world locations.  *Id.* ¶ 2, 31.

24          To obtain a limited license to access its games, users must agree to Niantic's terms of

25   service.  *Id.* ¶ 37.  Under the terms of service, users may not copy, modify, or create derivative

26   works based on Niantic's games or use Niantic's games for any commercial purpose.  *Id.* ¶ 39.

27          Defendant Global++ is an association of hackers that allegedly creates and distributes

28   unauthorized derivative versions of Niantic's mobile apps.  *Id.* at 3.  Defendant Ryan Hunt is the

United States District Court
Northern District of California

alleged leader of Global++ and the primary developer of the derivative programs. *Id.* ¶ 7. Defendant Alen Hundur helps develop, market, and distribute Global++ products. *Id.* Defendants create the derivative programs by obtaining legitimate versions of Niantic's apps and circumventing the technical security measures put in place to protect the binary computer code ("Client Code") in the apps. *Id.* ¶ 8. Defendants then access, copy, and modify Niantic's Client Code in order to create derivative versions of Niantic's apps. *Id.* ¶ 9. These derivative versions ("Cheating Programs") allow players to access unauthorized game features and cheat within Niantic's games. *Id.* ¶ 10. Defendants allegedly sell "subscriptions" for their Cheating Programs to hundreds of thousands of users. *Id.*

**B.    Procedural History**

On June 14, 2019, Niantic filed a complaint seeking injunctive and monetary relief against Global++, Ryan Hunt, and Alen Hundur ("Defendants"). ECF No. 1 at 20-22. Niantic's complaint ("Complaint") alleges that Defendants actions: (1) constitute copyright infringement, 17 U.S.C. § 101, *et seq.*; (2) violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (3) violate the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal. Code § 502; (4) breach Niantic's terms of service; and (5) constitute intentional interference with contractual relations. ECF No. 1 ¶ 58-110. Niantic filed a motion for preliminary injunctive relief concurrently with the Complaint. ECF No. 7. On July 17, 2019, Defendants filed a motion to dismiss Niantic's Complaint. ECF No. 26.

## II.    MOTION TO DISMISS

### A.    Legal Standard

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

1  misconduct alleged." *Id.*  In determining whether a plaintiff has met this plausibility standard, the

2  Court accepts all factual allegations as true and construes the pleadings in the light most favorable

3  to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

   **B.**    **Discussion**

4

5         **1.**    **Consideration of Hunt's Declaration**

6         As a preliminary matter, the Court addresses whether it may consider the declaration of

7  Ryan Hunt in deciding Defendants' motion to dismiss.  Courts generally "may not consider

8  material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)

9  of the Federal Rules of Civil Procedure."  *See, e.g., Khoja v. Orexigen Therapeutics Inc.*, 899 F.3d

10  988, 998 (9th Cir. 2018).  A court may consider "declarations and other evidence outside the

11  pleadings," however, when determining whether it has personal or subject matter jurisdiction.

12  *Kellman v. Whole Foods Market, Inc.*, 313 F. Supp. 3d 1031, 1042 (N.D. Cal. 2018).  The

13  question is which category Defendants' motion falls into.

14         Defendants seek dismissal under Rule 12(b)(6).  However, they urge that the Court to

15  consider Hunt's declaration because their motion presents the "jurisdictional question" of whether

16  Global++ has the capacity to be sued.  ECF No. 38 at 4.  Rule 12 "does not indicate which—if

17  any—listed 12(b) defense should cover a motion to dismiss for lack of capacity to sue."  *Farina*

18  *Focaccia & Cucina Italiana, LLC v. 700 Valencia Street LLC*, No. 15-cv-02286-JCS, 2015 WL

19  4932640, at *5 (N.D. Cal. Aug. 18, 2015).  In this district, courts generally view "lack of capacity

20  to sue" as a defense of legal insufficiency under Rule 12(b)(6).  *See, e.g., Farina*, 2015 WL

21  4932640, at *5 ("[T]he 'lack of capacity to sue' defense is one of legal insufficiency, and a claim

22  made by or against a party that lacks the capacity to sue or be sued should be dismissed under

23  Rule 12(b)(6).'"); *Banks.com, Inc. v. Keery*, No. C 09-06039, 2010 WL 727973, at *2, *7 (N.D.

24  Cal. March 1, 2010) (dismissing the plaintiff's claims against a defendant under Rule 12(b)(6) for

25  the defendant's lack of capacity to be sued).  On the other hand, one recent decision dismissed

26  plaintiffs' claims against a party for lack of jurisdiction under Rule 12(b)(1), finding that the party

27  was not a legal entity and thus lacked the capacity to be sued.  *Mocha Mill, Inc. v. Port of Mokha*,

28  No. 18-cv-02539, 2019 WL 1048252, at *3-4 (N.D. Cal. March 5, 2019).

United States District Court
Northern District of California

Rule 9(a) provides that a party wishing to raise the issue of capacity to be sued "must do so by a specific denial," which implies that this defense is waivable and therefore not one of subject-matter jurisdiction under Rule 12(b)(1).  F. R. Civ. P. 9(a); *see Farina*, 2015 WL 4932640, at *5. Therefore, the Court finds that lack of capacity to be sued is an issue of legal sufficiency under Rule 12(b)(6) rather than a jurisdictional issue.  Accordingly, the Court will decide Defendants' motion to dismiss Global++ for lack of capacity to be sued under Rule 12(b)(6) and will not consider declarations or other evidence outside the pleadings.

### 2.   Defendant Global++

#### a.   Unincorporated Association under California Law

Defendants argue that Niantic's claims against Global++ should be dismissed because it is a nonentity which is incapable of being sued.  ECF No. 26 at 7.  Niantic responds that Global++ constitutes an unincorporated association.  ECF No. 33 at 9; ECF No. 1 ¶ 18.

If a party is neither an individual nor a corporation, its capacity to be sued is determined "by the law of the state where the court is located."  Fed. R. Civ. P. 17(b); *Mocha Mill*, 2019 WL 1048252, at *4.  Under California law, there must be some existing entity aimed at in a civil action, and against whom the court's judgment will operate.  *Meleski v. Estate of Albert Hotlen*, 29 Cal. App. 5th 616, 625 (2018). "[A] nonentity is incapable of suing or being sued." *Banks.com*, 2010 WL 727973, at *7 (quoting *Oliver v. The Swiss Club Tell*, 222 Cal. App. 2d 528, 537 (Ct. App. 1963).  However, an unincorporated association, "may sue and be sued in the name it has assumed or by which it is known."  Cal. Civ. Proc. Code § 369.5.  An unincorporated association is defined as "(1) a group whose members share a common purpose, and (2) who function under a common name under circumstances where fairness requires the group be recognized as a legal entity."  *Mocha Mill*, 2019 WL 1048252, at *4 (quoting *People ex rel. Totten v. Colonia Chiques*, 67 Cal. Rptr. 3d 70, 75 (Ct. App. 2007)).

The Complaint alleges sufficient facts to show that members of Global++ share "common purpose[s]," including "creat[ing], distribut[ing], and profit[ing] from the derivative versions of Niantic's apps.  ECF No. 1 ¶ 18; *see also, id* ¶ 3 ("Defendant Global++ is an association of hackers that creates and distributes unauthorized derivative versions of Niantic's mobile apps.");

United States District Court
Northern District of California

*id.* ¶¶ 40-57 (describing how defendants create, distribute, and profit from the Cheating Programs and providing screenshots of the interfaces for the Cheating Programs).

Niantic also alleges sufficient facts to establish that Global++ members "function under a common name under circumstances where fairness requires the group be recognized as a legal entity." *See Mocha Mill*, 2019 WL 1048252, at *4. Niantic alleges that Global++ members Hunt and Hundur act together to further the goals of Global++. Hunt acts as the group's "principal and leader" and the primary developer of the Cheating Programs." ECF No. 1 ¶ 7, 19. Hundur acts as a "member of Global++" who "helps develop, market, and distribute Global++'s products and maintains a popular YouTube channel devoted to advertising and providing customer support for Global++'s products." *Id.* ¶ 7, 20. Niantic also alleges that Global++ held itself out to the public under the Global++ name. It maintained an official website which presented a Global++ logo, enabled customers to download Global++ products, invited customers to interact with Global++ through social media platforms, and solicited payment for Global++ products. *Id.* ¶ 52, Ex. B; *see* Cal. Civ. Proc. Code § 369.5 (An unincorporated association may "be sued in the name it has assumed or by which it is known.").

Furthermore, fairness requires that Global++ be recognized as a legal entity. Fairness includes situations, such as this, "where persons dealing with the association contend that their legal rights have been violated." *Barr v. United Methodist Church*, 90 Cal. App. 3d 259, 266-67 (Ct. App. 1979). Defendants argue that fairness does not require treating Global++ as a legal entity because Niantic has been able to bring suit against two of Global++'s members, leaning heavily on the court's comment in *Banks* that "plaintiff fails to explain why fairness requires defendant ProStreammedia.com, Inc., to be recognized as a legal entity, especially, in light of the fact that plaintiff may sue and already has sued individuals who are allegedly responsible for ProStreammedia.com." *Banks*, 2010 WL 727973, at *7; see also ECF No. 26 at 7. To the extent *Banks* can be read as imposing a requirement that an entity can only be sued as an unincorporated association when none of its members can be sued, this Court respectfully disagrees. An entity is not immune to suit merely because a plaintiff has also been able to sue one or more of its members. Were it otherwise, the courts would not have made such a broad range of entities

United States District Court
Northern District of California

1  subject to suit, including "labor unions," "political parties," "social clubs, religious organizations,

2  environmental societies, athletic organizations, condominium owners, lodges, stock exchanges and

3  veterans." *Barr*, 90 Cal. App. 3d at 266.

4      In sum, the Court finds that Niantic has alleged sufficient facts to show that Global++ is an

5  unincorporated association subject to suit under California law.

6                          **b.        Unincorporated Association under Federal Law**

7      As Niantic notes in its opposition brief, Global++ is also subject to suit under Rule

8  17(b)(3)(A).  Although capacity to be sued is generally determined by state law, Rule 17(b)(3)(A)

9  provides that an unincorporated association with no capacity to be sued under state law may

10 nevertheless be sued in its common name "to enforce a substantive right existing under the United

11 States Constitution or laws."  Fed. R. Civ. P. 17(b)(3)(A); *see Sierra Ass'n for Env't v. F.E.R.C.*,

12 744 F.2d 661, 662 (9th Cir. 1984) ("[B]ecause this action arises under federal law, SAFE had

13 capacity to sue as an unincorporated association, and any incapacity under California law is

14 accordingly irrelevant.").  The Ninth Circuit defines an unincorporated association as "a voluntary

15 group of persons . . . formed by mutual consent for the purpose of promoting a common

16 objective."  *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 927 (9th Cir. 2014) (internal quotations

17 marks and citations omitted).

18     Here, the Complaint seeks to enforce Niantic's substantive rights under federal law,

19 including its rights under the federal Copyright Act.  ECF No. 1 ¶¶ 58-75.  Rule 17(b)(3)(A)

20 therefore applies.  As described above, the Complaint alleges that members of Global++ share

21 "common purpose[s]," including "creat[ing], distribut[ing], and profit[ing] from the derivative

22 versions of Niantic's apps.  ECF No. 1 ¶ 18; *see also, id* ¶¶ 3, 40-57.  These allegations, accepted

23 as true, clearly show that Global++ is a voluntary group of persons formed by mutual consent for

24 the purpose of promoting a common objective.  Niantic, therefore, has alleged sufficient facts to

25 show that Global++ is an unincorporated association subject to suit under federal law.

26                          **3.        Defendants Hunt and Hundur**

27     "[W]hen a pleading fails to allege what role each Defendant played in the alleged harm,

28 this makes it exceedingly difficult, if not impossible for individual Defendants to respond to [a

*United States District Court*
*Northern District of California*

6

1    plaintiff's] allegations." *Adobe Sys.*, *Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 964

2    (N.D. Cal. 2015) (internal quotation marks omitted).  Therefore, in order to satisfy the notice

3    requirement of Rule 8(a)(2), a plaintiff "must identify what action each Defendant took that

4    caused Plaintiff's harm, without resort to generalized allegations against Defendants as a whole."

5    *In re iPhone Application Litig.*, No. 11–MD–02250–LHK, 2011 WL 4403963, at *3 (N.D.Cal.

6    Sept. 20, 2011) (finding that, "by lumping all eight [defendants] together, Plaintiffs have not stated

7    sufficient facts to state a claim for relief that is plausible against *one* Defendant").  "Put another

8    way, a plaintiff's allegations must 'provide sufficient notice to all the Defendants as to the nature

9    of the claims being asserted against them,' including 'what conduct is at issue.'"  *Adobe*, 125 F.

10   Supp. 3d at 964 (quoting *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137 JCS, 2014 WL

11   1338297, at *5 (N.D. Cal. March 28, 2014)).

12        Defendants claim that Niantic "fails to state a plausible claim against Mr. Hunt and Mr.

13   Hundur individually because it does not assert any material facts as to their conduct" and "does

14   not 'specifically identify what each named defendant did or did not do.'"  ECF No. 26 at 8.  The

15   argument ignores the plain language of the complaint.  Niantic's allegations detail Hunt's and

16   Hundur's roles within Global++.  Hunt allegedly acts as "the leader of Global++ and the primary

17   developer of the Cheating Programs," whereas Hundur "helps develop, market, and distribute

18   Global++ products and maintains a popular YouTube channel devoted to advertising and

19   providing customer support for Global++'s products."  ECF No. 1 ¶¶ 7, 19, 20; *see Adobe*, 125 F.

20   Supp. 3d at 965 (finding that a complaint did not impermissibly lump together multiple defendants

21   because it "alleges the wrongful conduct in which [defendant] engaged, specifically that the . . .

22   infringing 'products are, in part, supplied by Defendants United Prospects, Inc; JHS Enterprises,

23   Inc.; and Blue Source Group, Inc.").  The Complaint also provides detailed explanations regarding

24   how Defendants' Cheating programs work, how the Cheating Programs harm Niantic, and how

25   Defendants create, distribute, promote, and profit form these programs.  ECF No. 1 ¶¶ 6, 10-13,

26   40-51.  While Niantic makes claims against "Defendants" generally in certain paragraphs of the

27   Complaint, the term "Defendants" is clearly inclusive of Global++, Hunt, and Hundur.  *See Adobe*,

28   125 F. Supp. 3d at 965.  Similar to *Adobe*, in which allegations against "Defendants" generally did

United States District Court
Northern District of California

7

not constitute impermissible lumping, the clear gravamen of Niantic's allegations in the instant lawsuit are that all Defendants infringed Niantic's copyrights and that Hunt and Hundur developed and distributed infringing products without authorization. *See id.* The Court finds that Niantic's allegations provide sufficient notice to Hunt and Hundur as to the nature of the claims being asserted against them. *See Adobe*, 125 F. Supp. 3d 945 at 964.

## III.   MOTION FOR PRELIMINARY INJUNCTION

### A.   Legal Standard

A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

To grant preliminary injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). Assuming that this threshold has been met, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

### B.   Discussion

#### 1.   Likelihood of Success on the Merits

A party seeking a preliminary injunction is "not required to prove their claim, but only must show that they [are] likely to succeed on the merits." *Glossip v. Gross*, 135 S.Ct. 2726, 2792 (2015). Courts use different formulations to describe this factor, including "reasonable probability," "fair prospect," "substantial case on the merits," and "serious legal questions . . . raised." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012); *Halcyon Horizons, Inc. v. Delphi*

United States District Court
Northern District of California

8

*Behavioral Health Group, LLC*, No. 17-cv-00756-JST, 2017 WL 1956997, at *3 (N.D. Cal. May 11, 2017). "These formulations are largely interchangeable and indicate that, at a minimum, a petitioner must show that there is a substantial case for relief on the merits." *Halcyon Horizons*, 2017 WL 1956997, at *3 (internal quotation marks omitted); *Lair v. Bullock*, 697 F.3d at 1204.

**a.    Copyright Act**

To establish a violation of the Copyright Act, a plaintiff "must (1) show ownership of the allegedly infringed material and (2) demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal quotation marks and citation omitted). Too show ownership of allegedly infringed material, a plaintiff may provide the certificate of registration, which shall "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate" if "made before or within five years after first publication of the work." 17 U.S.C. § 410(c). The owner of a copyright has "the exclusive rights to do and to authorize any of the following:" (1) "to reproduce the copyrighted work in copies or phonorecords;" (2) "to prepare derivative works based upon the copyrighted work;" and (3) "to distributed copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106. The Copyright Act authorizes courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

Niantic has presented certificates of registration for several versions of its Client Code. *See* ECF No. 1 ¶¶ 59-62, 66-69, Exs. D-E. These certificates constitute prima facie evidence of the validity of Niantic's copyright and ownership of the allegedly infringed material. *See* 17 U.S.C. § 410(c). Niantic has also alleged and submitted supporting declarations which show that Defendants have infringed its copyright in three ways. First, Defendants have copied Niantic's Client Code without permission, in violation of 17 U.S.C. § 106(1). *See* ECF No. 1 ¶ 9, 42-43, 64-65, 70; ECF No. 7-2 ¶¶ 9-16, 25, 37-48. Second, Defendants have created unauthorized derivative versions of Niantic's Client Code, in violation of 17 U.S.C. § 106(2). *See* ECF No. 1 ¶ 9, 42-43, 64-65, 71; ECF No. 7-2 ¶¶ 9-16, 25, 37-48. Third, Defendants distributed unauthorized copies and

1  derivative versions of the Client Code by distributing the Cheating Programs to their customers, in

2  violation of 17 U.S.C. § 106(3).  *See* ECF No. 1 ¶¶ 7, 9, 15, 18, 20, 40, 52, 57, 64, 71, Exs. B-C;

3  ECF No. 7-2 ¶ 19, 26, 31.

4      Defendants argue that Niantic "is not likely to prevail on the merits of its claims because

5  Global++ has not created any derivative work" under 17 U.S.C. § 106(2).  ECF No. 32 at 8.

6  However, Defendants neither acknowledge nor address the allegations and supporting declarations

7  that they reproduced unauthorized copies under § 106(1) and distributed unauthorized copies

8  under § 106(3).  *See* ECF No. 32 at 8-10.  Their failure to respond amounts to a concession that

9  the alleged violations of §§ 106(1) and 106(3) justify a preliminary injunction.  *See Angeles v.*

10  *U.S. Airways, Inc.*, No. C 12-05860 CRB, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013)

11  ("The failure to respond amounts to a concession.").[1]

12               **b.      Computer Fraud and Abuse Act**

13      Niantic alleges that Defendants violated the unauthorized access provision of the Computer

14  Fraud and Abuse Act ("CFAA").  18 U.S.C. § 1030(a)(2); ECF Nos. 1 ¶¶ 76-84, 7 at 20.  To

15  prevail on an unauthorized access claim, Niantic must establish that Defendants: "(1) intentionally

16  accessed a computer, (2) without authorization or exceeding authorized access, and that [they] (3)

17  thereby obtained information (4) from any protected computer . . . , and that (5) there was loss to

18  one or more persons during any one-year period aggregating at least $5,000 in value."  *LVRC*

19  *Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009).

20      Niantic alleges and provide supporting declarations to show that Defendants actions satisfy

21  each element of the CFAA unauthorized access provision.  First, Defendants and their customers

22  access Niantic's computers, servers, and networks when using the Cheating Programs to play

23  Niantic's games.  *See* ECF No. 1 ¶ 13, 45, 77; ECF No. 7-2 ¶ 49.  Second, Defendants have

24  exceeded their authorized access to Niantic's computers, which prompted Niantic to revoke

25  Defendants' access altogether in a cease-and-desist letter.  *See* No. 1 ¶ 57; 7-9 ¶ 4, Ex. C;

26  *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1059, 1067 (9th Cir. 2016) (cease-and-desist

27  ──────────────────

28  [1] In light of this conclusion, the Court need not address whether Global++ is potentially liable
    under § 106(2).

United States District Court
Northern District of California

Case 4:19-cv-03425-JST   Document 55   Filed 09/26/19   Page 11 of 17

letter from Facebook put defendants on notice that their access was unauthorized).  Third, Defendants' Cheating Programs obtain proprietary data from Niantic's computers involving points of interest within Niantic's games ("POI data") and ephemeral game information.  *See* ECF No. 1 ¶ 50; ECF No. 7-2 ¶ 51, ECF No. 7-4 ¶¶ 14-16.  Fourth, Niantic's computers are "protected" in that they are "affected by or involved in interstate commerce.  *United States v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012) ("[E]ffectively all computers with Internet access" meet this requirement.)  Fifth, Niantic has suffered losses aggregating at least $5,000 in value through its efforts to "investigate and respond to defendants' misconduct."  ECF No. 7 at 22; *see* ECF No. 1 ¶ 83; ECF No. 7-4 ¶ 20; ECF No. 7-6 ¶¶ 7-9; ECF No. 7-2 ¶¶ 57-58.  Under 18 U.S.C. § 1030(e)(11), "loss" means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense."

Although Defendants respond, in part, they do not acknowledge Niantic's core allegations that Defendants scrape POI data and ephemeral game information for Niantic's computers.  *See generally* ECF No. 32.  The Court takes their silence as a concession, and finds that the alleged CFAA violations justify a preliminary injunction.  *See Angeles*, 2013 WL 622032, at *4 ("The failure to respond amounts to a concession.").

### c.    Terms of Service

Niantic alleges that Defendants breached their contractual duties under Niantic terms of service.  "To state a claim for breach of contract under California law, plaintiff must plead facts establishing the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; defendant's breach; and (4) damages to plaintiff as a result of the breach."  *Twitter, Inc. v. Skootle Corp.*, No. C 12-1721 SI, 2012 WL 2375486, at *7 (N.D. Cal. June 22, 2012) (internal quotation marks omitted).

Niantic alleges and offers declarations to show that it can satisfy each element of its breach of contract claim.  First, Defendants agreed to Niantic's terms of service in order to access and play Niantic's games.  *See* ECF No. 1 ¶ 37; ECF No. 7-4 ¶ 13; ECF No. 7-7 ¶ 5.  These terms of service establish a contract.  *See Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir.

United States District Court
Northern District of California

11

2017) (Facebook terms of service created a binding agreement between Facebook and Facebook user), *cert. denied*, 128 S. Ct. 1027 (2018).  Second, Niantic alleges that it has fully performed under its terms of service.  ECF No. 1 ¶ 100.  Third, Defendants have breached Niantic's terms of service by "copying, modifying, and creating derivative works" based on Niantic's code.  *See* ECF No. 1 ¶ 7, 9, 15, 18, 20, 40, 42-43, 52, 57, 64-65, 70-71, Exs. B-C; ECF No. 7-2 ¶¶ 9-16, 19, 25-26, 31, 37-48.  Fourth, Defendants have allegedly harmed Niantic's "reputation and goodwill," "interfered with [its] ability to make money through in-game purchases," and forced it to incur "significant costs for investigating and responding to defendants' misconduct."  ECF No. 1 ¶¶ 11, 35, 83; ECF No. 7-4 ¶ 11, 20-21; ECF No. 7-6 ¶¶ 7-9; ECF No. 7-2 ¶¶ 57-58.

In response, Defendants argue that they do not create any derivative works based on Niantic's code.  ECF No. 32 at 8-9; ECF No. 32-1 ¶ 6.  However, Defendants do not respond to the allegation that they copied Niantic's source code, thereby breaching its terms of service.[2]  *See generally* ECF No. 32.  The Court finds that the breach of contract claim also justifies a preliminary injunction.  *See Angeles*, 2013 WL 622032, at *4 ("The failure to respond amounts to a concession.").

## 2.   Irreparable Harm

A party seeking a preliminary injunction must demonstrate that it "is likely to suffer irreparable harm in the absence of preliminary relief."  *Jackson v. City of San Francisco*, 746 F.3d 953, 958 (9th Cir. 2014).  Because such harms are hard to quantify in monetary terms, "loss of control over business reputation and damage to goodwill [can] constitute irreparable harm."  *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) (quoting *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013); *see also SunEarth,*

---

[2] To the extent that the evidence creates a credibility dispute between Niantic and Defendants, the Court finds Niantic's evidence more persuasive.  Defendants' supporting declaration of Ryan Hunt does not deny the allegation that Defendants copied Niantic's code.  It merely states that "Global++ software does not alter the source code that Niantic's games created."  ECF No. 32-1 ¶ 6.  Niantic's declaration of Eric Lanz states that "the Cheating Programs copy large amounts of Niantic's client code."  ECF No. 7-2 ¶ 37.  In order to reach this conclusion, Lanz "analyzed and compared the complete set of client code comprising" Global++'s games and Niantic's games. For *Pokémon GO*, *Ingress*, and *Harry Potter* the Global++ game "contains more than 99% of the client code" in the Niantic game.

United States District Court
Northern District of California

1    *Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012 (potential loss of

2    goodwill or loss of ability to control reputation are irreparable harms that may justify preliminary

3    injunctive relief).

4             Niantic identifies several forms of irreparable harm.  First, the Cheating Programs erode

5    Niantic's "hard-won reputation and goodwill in the marketplace, including its reputation for

6    providing fair games."  ECF no. 7 at 24.  In particular, the alleged Cheating Programs give

7    Defendants' "customers unfair advantages," "frustrate some honest players," "lead others to

8    simply quit," and deprive Niantic of "profits it would otherwise obtain from in-game purchases."

9    ECF No. 7 at 24; *see* ECF No. 1 ¶ 11; ECF No. 7-4 ¶ 13, 19, 20, Exs. A-H.  Next, "defendants'

10   misconduct threatens to interfere with the upcoming domestic launch of Niantic's highly

11   anticipated new game, *Harry Potter*."  *See* ECF No. 1 ¶ 12, 30; ECF No. 7-4 ¶ 23.  Defendants

12   anticipated infringement of the new version of *Harry Potter* "would deprive Niantic of its ability

13   to control how United States consumers first encounter and experience the game."  ECF No. 7 at

14   25; *see* ECF No. 7-4 ¶ 24; *Fox Broad. Co. v. Dish Network, L.C.C.*, No. CV 12-04529 DMG

15   (SHx), 2013 WL 11238486, at *4 (C.D. Cal. Sept. 23, 2013) ("[L]oss of control over the

16   dissemination of copyrighted works can, under certain circumstances, constitute irreparable

17   harm.").  Finally, "the Cheating programs scrape valuable and proprietary game-related

18   information from Niantic's servers."  ECF No. 7 at 25; *see* ECF No. 1 ¶ 48-50; ECF No. 7-4 ¶¶

19   14-16.

20            Defendants argue that Niantic fails to show irreparable harm because: (1) "Global++

21   developers have shut down all of its programs as soon as Defendants received a cease-and-desist

22   letter," and (2) Niantic could immediately stop recurring infringement by suspending Global++'s

23   creators' user accounts if its programs are restarted.  ECF No. 32 at 11-12; ECF No. 32-1 ¶¶ 12-

24   13.  Defendants also note that other "spoofers" violate Niantic's copyrights.  *Id.* at 12-13.  In

25   response, Niantic asserts that Defendants are still distributing at least one of their Cheating

26   Programs and that Niantic cannot unilaterally block the Cheating Programs due to Defendants'

27   efforts to obscure their true identities.  ECF No. 39-1 ¶ 7, 14-20; ECF No. 39-3 ¶ 14.

28            The Court finds that Niantic has made an adequate showing that it is likely to suffer

United States District Court
Northern District of California

13

1   irreparable harm. *Herb Reed*, 736 F.3d at 1250 ("Evidence of loss of control over business

2   reputation and damage to goodwill could constitute irreparable harm."). "An inference arises from

3   illegal past conduct that future violations may occur," and "the fact that illegal conduct has ceased

4   does not foreclose injunctive relief." *S.E.C. v. Koracorp Indus.*, 575 F.2d 692, 698 (9th Cir. 1978)

5   (internal citations omitted). "If there is a possibility of recurrence," injunctive relief may be

6   appropriate. *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999). In order for

7   cessation of unlawful conduct to moot a dispute, "the reform of the defendant must be irrefutably

8   demonstrated and total." *Polo Fashions*, 793 F.2d at 1135-36. Defendants fall well below this

9   threshold. Moreover, "courts must be particularly skeptical about attaching any significance to

10  contrition under protest." *Id*; *see Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36

11  (9th Cir. 1986) (district court abused its discretion by denying request for preliminary injunction

12  where defendants refused to stop violating plaintiff's right until plaintiff sued).

13      The potential existence of other spoofers also does not negate Niantic's showing of

14  irreparable harm. While "there must be a sufficient causal connection between the alleged harm

15  and the activity to be enjoined," "a plaintiff need not . . . show that the action sought to be

16  enjoined is the exclusive cause of the injury." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv*,

17  886 F.3d 803, 819 (9th Cir. 2018) (finding that it "is not an abuse of discretion for a court to issue

18  an injunction that does not completely prevent the irreparable harm that it identifies").

19      In sum, the Court finds that Niantic has made an adequate showing that it is likely to suffer

20  irreparable harm in the absence of a preliminary injunction.

21          **3.      Balance of Equities**

22      A party seeking a preliminary injunction must show that the injunction "would do more

23  good than harm." *All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127 at 1133. As discussed

24  above, Niantic has identified several forms of irreparable harm that it will suffer absent an

25  injunction. Defendants respond that that they will suffer "severe reputational harm" if the Court

26  orders an injunction. ECF No. 32 at 14.

27      An injunction would prohibit Defendants from infringing Niantic's copyrights, accessing

28  Niantic's computers without authorization, and breaching Niantic's terms of service. The

United States District Court
Northern District of California

1   proposed injunction merely prohibits Defendants from engaging in activities it was never entitled

2   to carry out in the first place.  Exacerbated reputational harm from activities which have been

3   shown likely to be infringing merits little equitable consideration.  *See Triad Sys. Corp. v. Se.*

4   *Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) ("[L]ost profits from an activity which has been

5   shown likely to be infringing . . . merit[] little equitable consideration."); *Blackberry Ltd. V. Typo*

6   *Prods. LLC*, No. 14-cv-00023-WHO, 2014 WL 1318689, at *12 (N.D. Cal. Mar. 28, 2014) ("One

7   who elects to build a business on a product found to infringe cannot be heard to complain if an

8   injunction against continuing infringement destroys the business so elected.").  Therefore, the

9   balance of equities favors Niantic.

### 4.       Public Interest

11      The Court must ensure "that the public interest would not be disserved" by granting

12   Niantic's motion for preliminary injunctive relief.  *eBay v. MercExchange, LLC*, 547 U.S. 388,

13   391 (2006); *Am. Trucking*, 559 F.3d at 1052.  The "public has an interest in vindicating

14   intellectual property rights, and in prohibiting unfair competition."  *Waymo LLC v. Uber Techs.,*

15   *Inc.*, No. C 17-00939 WHA, 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017).  The public

16   interest plainly favors granting a preliminary injunction.

### 5.       Bond Requirement

18      Under Rule 65(c), a court has discretion to "dispense with the filing of a bond when it

19   concludes there is no realistic likelihood of harm to the defendant from enjoining his or her

20   conduct."  Fed. R. Civ. P. 65(c); *Johnson v. Coouturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).  The

21   preliminary injunction sought by Niantic would "simply enjoin Defendant[s] from doing

22   something Defendant[s] never had a right to do in the first place."  *Comet Techs. U.S. of Am. Inc.*

23   *v. Beuerman*, No. 18-CV-01441-LHK, 2018 WL 1990226, at *6 (N.D. Cal. Mar. 15, 2018).  Also,

24   given that Global++ is at pains to deny that it currently engages in the enjoined activity, and states

25   no present desire or intention to resume that activity, there is no harm for a bond to protect against.

26   *See* ECF No. 32 at 11 ("Global++ games are no longer operating"), 13 (referring to "Global++'s

27   now-ceased operation of its software"), 14 ("Global++ software was shut down immediately after

28   Defendants received Niantic's cease-and-desist letter and has not been restarted").  Because a

United States District Court
Northern District of California

preliminary injunction presents no realistic likelihood of harm to Defendants, Niantic shall not be required to post a bond.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied and Plaintiff's motion for preliminary injunction is granted.

## PRELIMINARY INJUNCTION

Defendants Global++, Ryan Hunt, and Alen Hundur, and all of their officers, agents, servants, and employees, and persons in active concert or participation with them who receive actual notice of this order, are hereby enjoined until resolution of this action, or until further order of this Court from:

(1) Acquiring or copying without authorization any portion of the mobile apps developed and published by Niantic and used to play Niantic's location-based augmented reality games, including Niantic's Client Code;

(2) Reverse engineering, decompiling, or disassembling Niantic's mobile apps;

(3) Creating derivative works based on any portion of Niantic's games, mobile apps, and Client Code, including without limitation the Accused Programs titled *Potter++* (or *Unite++*), *PokeGo++*, and *Ingress++*;

(4) Distributing, selling, renting, leasing, or otherwise trafficking in copies of Niantic's Client Code or any apps or computer programs that include any portion of Niantic's Client Code, including without limitation the Accused Programs;

(5) Cheating or enabling cheating within Niantic's mobile games, including through the Accused Programs;

(6) Accessing Niantic's network, computers, and servers, including the computers and servers that enable users to play Niantic's games via Niantic's mobile apps, by any direct or indirect means or method;

(7) Extracting, scraping, or indexing data about points of interest or spawning locations within Niantic's games, including names, descriptions, photographs, game states, and precise coordinates for those points of interest;

16

1        (8) Using Niantic's Client Code or any other aspect of Niantic's mobile apps, mobile

2             games, or other services or content, for any commercial purpose;

3        (9) Violating Niantic's Terms of Service; and

4        (10)    Participating or assisting in any such activity.

5  Defendants Global++, Ryan Hunt, and Alen Hundur are hereby ordered to provide notice of this

6  Order to their officers, agents, servants, and employees, and to all persons in active concert or

7  participation with them.  No bond shall be required.

8        **IT IS SO ORDERED.**

9  Dated:  September 26, 2019



JON S. TIGAR
United States District Judge

United States District Court
Northern District of California