PAGES 1 - 58

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE JON S. TIGAR, JUDGE**

| | | |
|---|---|---|
| NIANTIC, INC., | ) | |
| | ) | |
| PLAINTIFF, | ) | NO. C-19-3425 JST |
| | ) | |
| VS. | ) | WEDNESDAY, SEPTEMBER 11, 2019 |
| | ) | |
| GLOBAL ++, ET AL., | ) | OAKLAND, CALIFORNIA |
| | ) | |
| | ) | MOTION TO DISMISS |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES:**</u>

**FOR PLAINTIFF:**                PERKINS COIE LLP
                                  700 THIRTEENTH ST. N.W., SUITE 600
                                  WASHINGTON, DC 20005
                          BY:  TODD M. HINNEN, ESQUIRE

                                  PERKINS COIE
                                  1201 THIRD AVENUE, SUITE 4900
                                  SEATTLE, WASHINGTON 98101
                          BY:  RYAN SPEAR, ESQUIRE

**ALSO PRESENT:**                 DEVON HANLEY COOK,
                                  DIRECTOR OF LITIGATION, NIANTIC

**FOR DEFENDANT:**                POLSINELLI
                                  1661 PAGE MILL ROAD, SUITE A
                                  PALO ALTO, CALIFORNIA 94304
                          BY:  FABIO E. MARINO, ESQUIRE

**ALSO PRESENT:**                 RYAN HUNT

**REPORTED BY:**            DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                           OFFICIAL COURT REPORTER

          TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

| | |
|---|---|
| 1 | WEDNESDAY, SEPTEMBER 11, 2019                    2:02 P.M. |
| 2 |                    P R O C E E D I N G S |
| 3 |          THE CLERK:  YOUR HONOR, NOW CALLING CIVIL MATTER |
| 4 | 19-3425, NIANTIC, INCORPORATED, V GLOBAL++, ET AL.  IF COUNSEL |
| 5 | COULD PLEASE COME FORWARD AND STATE THEIR APPEARANCES FOR THE |
| 6 | RECORD. |
| 7 |          MR. HINNEN:  GOOD AFTERNOON, YOUR HONOR.  MY NAME IS |
| 8 | TODD HINNEN FROM THE LAW FIRM PERKINS COIE. |
| 9 |     WITH ME AT COUNSELS' TABLE ARE MY COLLEAGUE, RYAN SPEAR, |
| 10 | AND MY CLIENT, DEVON HANLEY COOK, WHO IS THE DEPUTY GENERAL |
| 11 | COUNSEL FOR LITIGATION AND EMPLOYMENT AT NIANTIC. |
| 12 |          THE COURT:  WELCOME. |
| 13 |          MR. MARINO:  GOOD AFTERNOON, YOUR HONOR. |
| 14 | FABIO MARINO WITH POLSINELLI FOR MR. RYAN HUNT AND MR. ALEN |
| 15 | HUNDUR.  AND MR. HUNT IS PRESENT IN THE COURTROOM WITH ME. |
| 16 |          THE COURT:  WELCOME. |
| 17 |          MR. MARINO:  THANK YOU, YOUR HONOR. |
| 18 |          THE COURT:  I GATHERED THAT ALTHOUGH YOU CONTEST THAT |
| 19 | EXISTENCE OF GLOBAL++ AS AN UNINCORPORATED ASSOCIATION, THAT |
| 20 | YOU NONETHELESS ARE APPEARING ON ITS BEHALF ALSO. |
| 21 |          MR. MARINO:  I DON'T THINK I CAN BECAUSE, IF THEY |
| 22 | DON'T EXIST, SO I'M NOT SURE I CAN MAKE A REPRESENTATION ONE |
| 23 | WAY OR THE OTHER.  I THINK THAT IS ONE OF THE ISSUES, |
| 24 | OBVIOUSLY, THAT WE NEED TO DEAL WITH. |
| 25 |     SO MR. HUNT IS EMPLOYED BY A COMPANY CALLED -- |

```
1              THE COURT:  NO, NO.  THAT'S OKAY.  I WAS JUST TRYING

2    TO GET ALL THE APPEARANCES DOWN.

3              MR. MARINO:  YES.  UNFORTUNATELY --

4              THE COURT:  I PROMISE YOU -- I PROMISE YOU, YOU WILL

5    HAVE AN OPPORTUNITY TO ADDRESS THAT TOPIC FURTHER.

6         WE HAVE CROSS-MOTIONS THIS AFTERNOON, WHICH MEANS THAT

7    EACH SIDE IS -- COULD FAIRLY BE DENOMINATED AS A MOVING PARTY.

8    I DON'T THINK THAT THE ISSUES ARE SO NUMEROUS OR COMPLICATED,

9    THOUGH, THAT WE NEED TO HAVE TOTALLY SEPARATE ARGUMENTS ON ONE

10   MOTION AND THEN TOTALLY SEPARATE ARGUMENTS ON THE OTHER.  I

11   JUST DON'T THINK THAT WE NEED TO DO THAT.

12        SO WHAT I WILL DO IS, I WILL HEAR FIRST FROM MR. MARINO,

13   THEN I'LL HEAR FROM MR. HINNEN, AND THEN I'LL HEAR FROM

14   MR. MARINO, AND THEN I'LL HEAR FROM MR. HINNEN.  IN YOUR

15   REMARKS TO THE COURT, YOU SHOULD FOCUS ON WHATEVER ASPECTS OF

16   EITHER MOTION YOU THINK ARE IMPORTANT.  EACH OF YOU WILL HAVE

17   AN OPPORTUNITY TO RESPOND TO THE OTHER.

18        MR. MARINO, GO AHEAD.

19             MR. MARINO:  THANK YOU, YOUR HONOR.  AND I HAVE

20   PREPARED A POWERPOINT PRESENTATION, WHICH IS BASICALLY

21   DEMONSTRATIVE.  I WILL GIVE....

22             (DOCUMENT HANDED TO COURT AND COUNSEL.)

23             MR. MARINO:  I HAVE A COUPLE EXTRA FOR THE CLERK, IF

24   YOU WOULD LIKE.

25             THE COURT:  THERE IS SORT OF AN INVISIBLE WALL
```

```
1    BETWEEN YOU AND THE CLERKS.  YOU CAN'T SEE IT BECAUSE IT'S
2    INVISIBLE.  THAT'S WHAT INVISIBLE MEANS.
3        YOU CAN HAND IT TO COURT STAFF AND WE WILL SEE WHAT
4    HAPPENS.
5            MR. MARINO:  WHATEVER USE THE COURT MIGHT HAVE FOR
6    THEM.
7            THE COURT:  OKAY.  GO AHEAD.
8            MR. MARINO:  I WILL START WITH THE MOTION TO DISMISS.
9    AND ON SLIDE 3, THE PROBLEM WE HAVE -- THERE'S A COUPLE OF
10   PROBLEMS.
11       ONE THE COURT ALREADY TOUCHED UPON, WHICH IS THE PLAINTIFF
12   HAS DECIDED TO SUE GLOBAL++.  GLOBAL++, AS FAR AS I CAN TELL,
13   IS A LABEL.  IT'S LIKE SUING A COMPUTER PROGRAM OR WEBSITE.
14   THERE ARE, OBVIOUSLY, PEOPLE THAT ARE CREATING THE SOFTWARE.
15   FOR EXAMPLE, MR. HUNT IS THE SOFTWARE DEVELOPER.  CERTAINLY,
16   THEY ARE FREE TO ALLEGE ALLEGATIONS AGAINST MR. HUNT.
17       THE PROBLEM WITH NAMING GLOBAL++ IS THAT THERE ARE NO
18   FACTS PLED IN THE COMPLAINT THAT WOULD SAY, OKAY, THIS IS WHAT
19   CONSTITUTES AN UNINCORPORATED ASSOCIATION.  WHAT DOES IT MEAN?
20   FOR EXAMPLE --
21           THE COURT:  YOU WANT THE OTHER SIDE TO POST A BOND IN
22   CONNECTION WITH THEIR MOTION FOR PRELIMINARY INJUNCTION,
23   CORRECT?
24           MR. MARINO:  THAT IS CORRECT.
25           THE COURT:  THE REASON FOR POSTING A BOND IN A
```

```
 1    PRELIMINARY INJUNCTION PROCEEDING IS THAT IT'S NECESSARY TO

 2    ENSURE THAT THE ENJOINED PARTY BE ABLE TO BE MADE WHOLE IF A

 3    MISTAKE WAS MADE, CORRECT?

 4              MR. MARINO:  THAT'S CORRECT.

 5              THE COURT:  THAT'S WHY WE HAVE BONDS.

 6              MR. MARINO:  ABSOLUTELY.

 7              THE COURT:  AND THE ONLY CONCEIVABLE CIRCUMSTANCE IN

 8    THIS CASE, WHY THERE MIGHT BE AN INJURY FOR WHICH A BOND WOULD

 9    BE REQUIRED IS THAT, ALTHOUGH YOUR CLIENT -- CLIENTS HAVE

10    DISCLAIMED ANY DESIRE TO PUT THIS SOFTWARE BACK INTO THE

11    MARKET IF THEY DECIDED THEY WANTED TO DO THAT AND THEY

12    COULDN'T, THEY WOULD BE DEPRIVED OF SALES, RIGHT?

13              MR. MARINO:  THAT IS CORRECT.

14              THE COURT:  AND IN THE PAST THERE WERE SUCH SALES,

15    CORRECT?

16              MR. MARINO:  THAT IS CORRECT.

17              THE COURT:  THAT'S NOT DISPUTED.

18              MR. MARINO:  THAT IS NOT DISPUTED.

19              THE COURT:  WHO DID THE SELLING?

20              MR. MARINO:  SO I THINK UNDER THE NAMED PARTIES RIGHT

21    NOW IS AN UNNAMED ENTITY.

22              THE COURT:  RIGHT.  MY QUESTION IS, DID THE UNNAMED

23    ENTITY THAT DOESN'T EXIST GET PAID FOR ITS SOFTWARE IN THE

24    PAST?

25              MR. MARINO:  THAT ENTITY DID GET PAID BUT IT IS NOT
```

1    GLOBAL++.

2         **THE COURT:**  I SEE.

3         **MR. MARINO:**  SO THERE ARE TWO CORPORATIONS.  AND BOTH

4    CORPORATIONS HAVE INDIVIDUALS.  ONE OF THEM THAT HANDLES THE

5    FINANCIAL SIDE AND ONE THAT HANDLES THE SOFTWARE SIDE.  THE

6    SOFTWARE SIDE IS MR. HUNT AND HIS CORPORATION, HAVEN IT.

7         THERE'S ANOTHER UNNAMED ENTITY, WHICH I BELIEVE NIANTIC

8    HAS KNOWLEDGE OF, THAT FOR REASONS UNKNOWN TO ME DECIDED NOT

9    TO NAME, INSTEAD DECIDED TO NAME THIS GLOBAL++, WHICH, AGAIN,

10   IS JUST THE NAME OF A WEBSITE.

11        **THE COURT:**  SO THIS IS SORT OF A "SUIT IN ERROR AS"

12   SITUATION.

13        **MR. MARINO:**  I THINK THAT'S THE REALITY, YEAH.

14        WE HAVE BEEN DISCUSSING INFORMALLY THE CONTEXT OF DISPUTE

15   RESOLUTION AND SETTLEMENT.  WE ARE WILLING TO DISCLOSE THE

16   OTHER PARTY, BUT THEY -- WE WOULDN'T FIND AN AGREEMENT.

17        **THE COURT:**  THAT'S OKAY.  I DON'T WANT TO HEAR ABOUT

18   YOUR SETTLEMENT DISCUSSIONS.  OKAY.  ALL RIGHT.

19        **MR. MARINO:**  SO THAT'S ONE PROBLEM, RIGHT?  SO WE

20   HAVE THIS GLOBAL++ LITERALLY DOESN'T HAVE ANY LEGAL STATUS.

21   AND IT'S COMPOUNDED BY THE FACT THAT IN THE COMPLAINT, MOST OF

22   THE ACTUAL, FACTUAL ALLEGATIONS, ACTUAL, FACTUAL ALLEGATIONS

23   ARE DIRECTED AT DEFENDANTS.  IT DOESN'T SAY EACH OF THE

24   DEFENDANTS, ALL OF THE DEFENDANTS, JUST DEFENDANTS.

25        SO, SAY -- SO WHAT I PICKED OUT, NO. 43 FROM THE COMPLAINT

1   AT PAGE 7 IN SLIDE 3, AND THEY SAY, "DEFENDANTS COPY LARGE

2   AMOUNTS OF NIANTIC'S CODE".  I CAN SEE THEY MIGHT ALLEGE THAT

3   AGAINST MR. HUNT.  IF THEY MEAN TO INCLUDE MR. HUNDUR IN THAT,

4   WE HAVE A PROBLEM.  MR. HUNDUR IS SIMPLY A PLAYER OF THE GAME.

5   HE DOESN'T COPY ANYTHING.

6       I NEED TO KNOW IN ORDER TO RESPOND TO THEIR COMPLAINT IF

7   THEY'RE ACCUSING BOTH MR. HUNT AND MR. HUNDUR OF COPYING LARGE

8   AMOUNTS OF CODE OR THEY ARE JUST ACCUSING MR. HUNT AND

9   UNDISCLOSED INDIVIDUALS.  THAT'S THE PROBLEM I AM FACING.

10      IT'S A VERY PRACTICAL PROBLEM.  I NEED THEM TO TELL ME

11  BECAUSE I HAVE MULTIPLE CLIENTS WHICH CLIENTS ARE THEY

12  ACCUSING OF WHAT CONDUCT SO THAT WE CAN RESPOND.

13      AND THERE IS A FURTHER PROBLEM, WHICH IS -- ACTUALLY CAME

14  UP IN THE CONTEXT OF THE PI MOTION.  SO NIANTIC HAS THIS

15  FAIRLY EXTENSIVE TERMS OF USE FOR USERS OF ITS GAME.  AND

16  UNDER THE TERMS OF USE, CLASSIC CONTRACT OF ADHESION, NIANTIC

17  INCLUDED A MANDATORY BINDING ARBITRATION CLAUSE THAT HAD -- I

18  PUT THAT ON SLIDE 4.  IT COMES FROM EXHIBIT H TO THE

19  VANDERBOGART DECLARATION AT PAGE 59.  ECF NO. 7-8.

20      AND IN THESE ARE MANDATORY ARBITRATION PROVISION.  THEY DO

21  MAKE AN EXCEPTION FOR INJUNCTIONS, FOR COPYRIGHTS, SO THAT

22  PART IS FINE, BUT PRETTY MUCH EVERY KNOWN IP DISPUTE HAS TO BE

23  MEDIATED.

24      SO WHEN --

25          **THE COURT:**  DID YOU MAKE THIS ARGUMENT IN YOUR BRIEF?

1          **MR. MARINO:**  THIS ONE IS NOT.  THIS CAME OUT IN THE

2     CONTEXT -- CAME OUT FROM THE PI, YOUR HONOR.  THIS IS NOT

3     PART -- I'M JUST GIVING YOU AN EXAMPLE WHY IT'S A PROBLEM NOT

4     TO KNOW WHICH CLIENTS THEY ARE ACCUSING OF WHICH COUNTS.

5          **THE COURT:**  OKAY.

6          **MR. MARINO:**  SO WE HAD -- WHEN WE HAD THE RULE 26

7     CONFERENCE, I BROUGHT THAT UP.  BECAUSE I SAID, WELL, THEY

8     ASKED ME IF I'M GOING TO MOVE TO COMPEL ARBITRATION.  I SAID,

9     WELL, I DON'T KNOW BECAUSE I DON'T KNOW WHICH CLIENTS YOU ARE

10    ACCUSING OF WHAT.

11         SO MR. HUNDUR QUITE CLEARLY, I THINK, BASED ON THE FEW

12    SPECIFIC ALLEGATIONS THAT ACTUALLY MENTION HIS NAME, THEY

13    MIGHT BE ACCUSING OF BREACHING HIS TERMS OF USE AGREEMENT WITH

14    NIANTIC, BUT I DON'T THINK THEY CAN REASONABLY ACCUSE HIM OF

15    BREACHING THE COPYRIGHT CLAIMS.

16         SO FOR THAT CLIENT, I MIGHT HAVE A SITUATION WHERE ALL OF

17    THE CLAIMS AGAINST HIM ARE PURELY IN ARBITRATION, NOT IN

18    COURT.

19         AND TO MAKE THINGS EVEN MORE COMPLEX, YOU KNOW, IN THE

20    NINTH CIRCUIT, EVEN THE QUESTION OF ARBITRABILITY OF A CLAIM,

21    WHEN YOU HAVE AN ARBITRATION CLAUSE LIKE THE ONE IN THIS CASE,

22    IS DELEGATED TO THE ARBITER.

23         **THE COURT:**  YES.

24         **MR. MARINO:**  SO YOU UNDERSTAND MY PROBLEM.

25         SO WHEN THEY DON'T TELL ME WHICH DEFENDANTS THEY ARE

1    ACCUSING OF WHAT, I DON'T EVEN KNOW WHAT TO MOVE TO COMPEL

2    ARBITRATION ON.

3         I DON'T BRING MOTIONS TO DISMISS AS A MATTER OF COURSE.  I

4    ONLY BRING THEM WHEN THEY ARE ACTUALLY NECESSARY FOR THE

5    APPROPRIATE CONDUCT OF THE CASE.

6         AND HERE WE HAVE A REAL PROBLEM.  EVEN WITH THE TWO

7    PERSONALLY NAMED CLIENTS, THAT -- BECAUSE THE ALLEGATIONS ARE

8    ALL COBBLED TOGETHER AS DEFENDANTS, I CAN'T TELL THEM APART.

9         AND, OF COURSE, IF I'M INCORRECT THAT THE ALLEGATIONS

10   AGAINST MR. HUNDUR ALL ARISE FROM AN ALLEGED BREACH OF THE

11   TERMS OF USE AGREEMENT, THAT'S NOT TO GO TO ARBITRATION, IT

12   SHOULDN'T BE IN THIS CASE AT ALL.  THAT'S, I THINK, THE BASIS

13   FOR OUR MOTION.

14        **THE COURT:**  MY QUESTION TO YOU AT THE BEGINNING OF

15   THE HEARING WAS IN ERROR.  I SEE FROM YOUR PAPERS THAT THESE

16   PAPERS WERE FILED ONLY ON BEHALF OF THE INDIVIDUAL DEFENDANTS.

17        **MR. MARINO:**  CORRECT.

18        SO I THINK THAT COVERS THE POINTS THAT I REALLY WANTED TO

19   RAISE WITH RESPECT TO THE MOTION TO DISMISS.  SO IT IS A VERY

20   PRACTICAL PROBLEM.  WE NEED THE PLAINTIFF HERE TO CLARIFY

21   WHICH CLAIMS ARE LEVIED AGAINST WHICH ENTITIES.  AND I THINK

22   THAT WILL MAKE THE LIFE -- YOUR LIFE EASIER AND MY LIFE EASIER

23   AND THEIR LIFE EASIER, TO BE HONEST.

24        **THE COURT:**  VERY GOOD.

25        **MR. MARINO:**  THAT IS WHAT I HAVE ON THAT.

1         NOW MOTION TO -- PRELIMINARY INJUNCTION MOTION, I THINK...

2    IT'S THEIR MOTION.  I'M HAPPY TO ADDRESS IT FIRST, BUT IT

3    MIGHT BE MORE ORDERLY FOR THEM TO SPEAK FIRST TO THAT ISSUE.

4    THAT IS UP TO YOUR HONOR.

5         **THE COURT:**  THAT'S FINE.  YOU WILL HAVE ANOTHER

6    CHANCE AT THE MICROPHONE.  SO IF YOU WANT TO WAIT TO DO THAT,

7    THAT'S FINE.

8         **MR. MARINO:**  I THINK I WILL DO THAT.

9         **THE COURT:**  OKAY.  VERY GOOD.

10   MR. HINNEN.

11        **MR. HINNEN:**  THANK YOU, YOUR HONOR.

12   AND I'LL BEGIN BY ADDRESSING THE ISSUES REGARDING THE

13   MOTION TO DISMISS THAT MR. MARINO RAISED.

14   AND I'M INCLINED, UNLESS THE COURT WAVES ME OFF, TO WALK

15   AT SOME LENGTH THROUGH SOME OF THE EVIDENCE IN THE RECORD OF

16   THE EXISTENCE AND ACTIVITIES OF GLOBAL++ AS AN INDEPENDENT

17   ENTITY TO RESPOND TO THE ALLEGATION THAT GLOBAL++ IS A

18   NONENTITY THAT DOESN'T EXIST.

19        **THE COURT:**  THAT'S FINE.  WITH REGARD TO THE QUESTION

20   ABOUT WHETHER I WOULD WAVE SOMEBODY OFF, I'LL JUST SAY A FEW

21   GENERIC THINGS ABOUT ARGUMENT.

22   I LOVE ARGUMENT.  AND I WOULD HAVE IT IN EVERY CASE IF I

23   HAD THE BANDWIDTH, BUT I DON'T.  THE LAWYERS ARE ENTITLED TO

24   ASSUME THAT I READ EVERYTHING BEFORE I TOOK THE BENCH BECAUSE

25   99.95 PERCENT OF THE TIME I HAVE.

1          BUT I DON'T TELL PEOPLE USUALLY TO STOP MAKING A

2     PARTICULAR POINT FOR A COUPLE OF REASONS.  THE FIRST IS THAT

3     SOME PEOPLE ARE MORE EFFECTIVE AT TEACHING ON THEIR FEET THAN

4     THEY ARE IN PAPER AND, SIMILARLY, SOMETIMES I LEARN THINGS BY

5     LISTENING THAT I JUST DIDN'T LEARN BY READING.  SO I NEED TO

6     BE OPEN-MINDED.  AND THE OTHER IS THAT I MIGHT THINK I KNOW

7     WHERE SOMEBODY IS GOING, AND I DON'T.

8          SO YOU'RE THE ONLY THING ON CALENDAR.  IT DOESN'T MEAN

9     THAT I HAVE AN UNLIMITED APPETITE FOR ARGUMENT.  NOT ALL

10    ARGUMENTS ARE INTERESTING FOREVER, BUT YOU SHOULD MAKE THE

11    ARGUMENT YOU CAME TO MAKE.

12              **MR. HINNEN:**  ALL RIGHT.  I UNDERSTAND, YOUR HONOR.

13    THANK YOU.  I LOVE ORAL ARGUMENT, TOO, SO I WILL.

14         SO TO BEGIN WITH, I WOULD LIKE TO DIRECT THE COURT TO WHAT

15    IS DOCUMENT 7-3 ON THE DOCKET.  AND YOUR HONOR WILL SEE THAT

16    THAT IS -- PARDON ME WHILE I GET THERE.

17         THAT IS THE PATREON PAGE.  I'M AT PAGE 5 OF 7-3.

18              **THE COURT:**  HOLD ON.

19         IN TERMS OF HARD COPY, WHAT I HAVE AT THE BENCH DOES NOT

20    INCLUDE THAT DOCUMENT.  I CAN BRING IT UP ON MY COMPUTER.

21         I JUST MOVED TO OAKLAND.  THIS IS MY FIRST TIME ATTEMPTING

22    TO USE THIS COMPUTER TO BRING UP ANYTHING, AND THIS MOUSE IS

23    NOT COOPERATING.  GIVE ME A MOMENT.

24              (PAUSE IN THE PROCEEDINGS.)

25              **THE COURT:**  I DON'T WANT TO MAKE EVERYBODY WAIT WHILE

```
 1   I FIGURE THIS OUT.  DOES SOMEONE ON YOUR TEAM HAVE AN EXTRA

 2   COPY?

 3            MR. HINNEN:  YES, WE DO, YOUR HONOR.  WE'D BE HAPPY

 4   TO HAND THAT --

 5            THE COURT:  JUST HAND THAT TO THE CLERK.

 6            MR. HINNEN:  -- WHAT IS, YOUR HONOR, EXHIBIT B TO

 7   NIANTIC'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF.

 8            THE COURT:  RIGHT.  I JUST HAVE THE MEMORANDUM WITH

 9   ME.  I SHOULD HAVE BROUGHT EVERYTHING.

10            MR. SPEAR:  AND, YOUR HONOR, JUST FOR CLARITY, I AM

11   HANDING YOU THE ENTIRE DECLARATION THAT HAS ALL THE EXHIBITS

12   THERE ATTACHED TO IT FOR CONVENIENCE.

13            THE COURT:  OKAY.  VERY GOOD.  THANKS.  I HAVE IT.

14            MR. HINNEN:  GREAT, YOUR HONOR.

15            THE COURT:  7-3 -- OOPS, EXCEPT THESE ARE NOT

16   NUMBERED.

17         WHOSE DECLARATION OR WHAT EXHIBIT?

18            MR. HINNEN:  IT WILL BE APPROXIMATELY THE FOURTH PAGE

19   FROM THE END, YOUR HONOR.  AND IT'S A PAGE THAT IS LABELED AT

20   THE UPPER LEFT-HAND CORNER, "PATREON."

21            THE COURT:  YOU SAID EXHIBIT B?

22            MR. HINNEN:  I DID, YOUR HONOR.

23            THE COURT:  I HAVE IT.

24            MR. HINNEN:  OKAY.  FANTASTIC.

25         SO WHAT YOU ARE LOOKING AT HERE, YOUR HONOR, IS
```

```
1    DEFENDANT'S PATREON PAGE.  AND, SPECIFICALLY, GLOBAL++, THE

2    NONEXISTENT DEFENDANT'S PATREON PAGE.

3        YOU WILL SEE THERE IN THE BLUE GRAPHIC AT THE TOP THAT

4    GLOBAL++, WHICH DOESN'T EXIST, IS CREATING A COMMUNITY, WHICH

5    PRESUMABLY ALSO WON'T EXIST.  AND SO FAR THERE ARE 62,322

6    MEMBERS OF THAT COMMUNITY THAT ARE FOLLOWING, AT LEAST,

7    GLOBAL++.

8        YOU WILL ALSO SEE ON THIS EXHIBIT THAT WHAT GLOBAL++ IS

9    DOING HERE IS SELLING THE CHEATING PROGRAMS TO ITS USERS,

10   ALTHOUGH AS IS OFTEN THE CASE WITH THE DEFENDANTS, THEY DON'T

11   USE THE TERM "SELLING."  THEY USE THE TERM "PROVIDING A GOOD

12   IN EXCHANGE FOR A DONATION."

13       IF YOUR HONOR LOOKS ABOUT SIX LINES DOWN --

14           THE COURT:  I SEE IT.

15           MR. HINNEN:  AND SO YOU WILL NOTICE THERE THAT WHAT

16   THEY ARE OFFERING TO SELL IS THE CHEATING PROGRAM FOR

17   POKÉMON GO THERE.  AND, IN ADDITION, AT THE BOTTOM OF THE

18   STARS THERE, THEY ARE ALSO OFFERING FOR AN ADDITIONAL $5 TO

19   SELL THE CO-ORDS, OR THE COORDINATES, NIANTIC'S CONFIDENTIAL

20   AND PROPRIETARY POINT-OF-INTEREST INFORMATION THAT IT'S

21   DEVELOPED AT GREAT EXPENSE TO ITSELF.

22       AND THEN IF YOU LOOK THROUGH THE REST OF THE PAGE, YOU'LL

23   SEE ON THE RIGHT-HAND PAGE THERE, THE NEXT PAGE, SOME OF THE

24   CAPABILITIES, THE CHEATING CAPABILITIES OF THE PROGRAM THAT

25   YOU CAN SAVE A FAKE LOCATION, YOU CAN ENHANCE A THROW, AND ALL
```

```
1    OF THAT KIND OF THING.

2        I WOULD SUBMIT THAT THIS IS STRONG EVIDENCE THAT GLOBAL++

3    IS A COMMUNITY OF INDIVIDUALS INVOLVED IN A COMMON PURPOSE

4    THAT EXISTS AND IS INFRINGING MY CLIENT'S RIGHTS.  UNDER THE

5    FEDERAL RULES AND THE CASE LAW CITED IN OUR RESPONSE TO THE

6    MOTION TO DISMISS, THAT MAKES THAT -- THAT MAKES THEM A

7    SUEABLE ENTITY.

8        TO RESPOND TO A COUPLE OF THE OTHER QUESTIONS.  YOUR HONOR

9    CORRECTLY POINTED OUT THAT THE ARBITRATION ARGUMENT IS NOT

10   RAISED IN ANY OF THE PAPERS.  IT WOULD HAVE BEEN HELPFUL TO

11   HAVE BEEN ABLE TO ADDRESS THAT AS PART OF THE BRIEFING.

12       BUT I THINK IF WE LOOK AT THE TERMS OF SERVICE, AT LEAST

13   AS REGARDS THE PRELIMINARY INJUNCTION MOTION TODAY AND ALSO AS

14   REGARDS THE MATTER BEFORE THE COURT, WHICH IS, AT BASE, A

15   MATTER FOR VIOLATION OF INTELLECTUAL PROPERTY RIGHTS, THE

16   TERMS OF SERVICE EXEMPT BOTH A MOTION FOR INJUNCTIVE RELIEF

17   AND A MOTION THAT SOUNDS IN INTELLECTUAL PROPERTY --
```

18           **THE COURT:**  IT HAS TO BE RAISED.

19           **MR. HINNEN:**  -- IN ANY EVENT.

20           **THE COURT:**  IT'S WAIVABLE.

21           **MR. HINNEN:**  THAT'S CORRECT.

22           **THE COURT:**  JUST FOR THE RECORD, LET ME SAY, THIS IS

```
23   NOT A JURISDICTIONAL ISSUE.  ARBITRATION -- A REQUIREMENT THAT

24   A DISPUTE BE ARBITRATED, OR FOR THAT MATTER MEDIATED, IS IN

25   THE NATURE OF A DEFENSE THAT HAS TO BE RAISED, AND IT'S
```

1    WAIVABLE.

2         AT SOME POINT IF THE INDIVIDUAL DEFENDANTS, OR GLOBAL++

3    FOR THAT MATTER, DECIDE THAT THE ARBITRATION CLAUSE PROTECTS

4    THEM, THEY CAN ASSERT IT IN THE PROCEEDING.  IF THEY WAIT TOO

5    LONG, THEY WILL HAVE WAIVED IT.  BUT IT'S NOT RELEVANT TODAY.

6              **MR. HINNEN:**  GREAT.  THANK YOU, YOUR HONOR.

7         FOR A POINT OF CLARIFICATION, AS I THINK IS CLEAR FROM THE

8    COMPLAINT, NIANTIC ALLEGES THAT MR. HUNDUR WAS INVOLVED IN ALL

9    OF THE INFRINGING CONDUCT.  THERE ARE SOME CASES CITED IN OUR

10   PAPERS THAT ARE IMPORTANT IN THAT RESPECT.  THEY ARE BOTH OUT

11   OF THE NORTHERN DISTRICT OF CALIFORNIA -- I'M SORRY.  THEY ARE

12   ACTUALLY CITED, SOMEWHAT IRONICALLY, IN DEFENDANTS' PAPERS.

13        ONE OF THEM IS *ADOBE SYSTEMS VERSUS BLUE SOURCE GROUP*.

14   IT'S 125 F.SUPP F. (SIC) 3D 945.  AND THERE THE COURT HELD

15   THAT GRANTING -- THAT IT WAS ENTIRELY APPROPRIATE TO PLEAD AS

16   TO DEFENDANTS AS A GROUP WHERE, QUOTE, "THE GRAVAMEN OF THE

17   ALLEGATIONS IN THE INSTANT LAWSUIT ARE THAT ALL THE DEFENDANTS

18   INFRINGED ON TRADEMARKS AND COPYRIGHTS AND COMMITTED THE OTHER

19   UNLAWFUL ACTS THAT WERE ALLEGED THERE".  THAT CASE IS FROM

20   2015.

21        IN 2019, JUST OVER A MONTH AGO, YOUR HONOR, IN A CASE

22   CALLED *PACIFIC FERTILITY CENTER LITIGATION*, THE COURT FOUND

23   THAT IT WAS APPROPRIATE TO PLEAD THIS -- AND I'M SORRY --

24   THAT'S THE NORTHERN DISTRICT OF CALIFORNIA AGAIN.  IT IS

25   APPROPRIATE TO PLEAD THE SAME ALLEGATIONS AS TO MULTIPLE

1    DEFENDANTS; WHEREAS HERE, QUOTE, "PLAINTIFFS DO NOT YET KNOW

2    WHICH DEFENDANT DID EXACTLY WHAT, BUT DISCOVERY WILL ALLOW

3    THEM TO DIFFERENTIATE MEANINGFULLY BETWEEN THE LIABILITY OF

4    THE DEFENDANTS".

5        MR. MARINO PURPORTS TO HAVE A PRACTICAL PROBLEM, YOUR

6    HONOR.  WE HAVE A PRACTICAL PROBLEM AS WELL.  THE NATURE OF

7    DEFENDANTS' CONDUCT IS THAT THEY TRIED TO OBSCURE WHO THEY ARE

8    AND WHAT THEIR ROLE IS IN WHAT IS, OBVIOUSLY, UNLAWFUL

9    CONDUCT.  SO MY CLIENT HAS INVESTED SIGNIFICANTLY IN A LENGTHY

10   INVESTIGATION THAT'S ALLOWED IT TO MAKE THE ALLEGATIONS BEFORE

11   THE COURT TODAY WHICH ARE COMPLETELY SUFFICIENT TO PROVIDE

12   NOTICE TO THE DEFENDANTS AND MEET THE RULE 8 STANDARD, BUT MY

13   CLIENT EXPECTS TO LEARN A GREAT DEAL MORE DURING DISCOVERY

14   ABOUT THE SPECIFIC ROLE OF EACH CLIENT.

15       IF I MAY HAVE JUST A MOMENT TO CONFER WITH MY COLLEAGUE,

16   YOUR HONOR, AND MAKE SURE THERE IS NOTHING ELSE I SHOULD

17   ADDRESS REGARDING THE MOTION TO DISMISS, I WILL THEN TURN TO

18   THE PRELIMINARY INJUNCTION.

19               **THE COURT:**  SURE.

20           **MR. HINNEN:**  THANK YOU, YOUR HONOR.

21                   (PAUSE IN THE PROCEEDINGS.)

22           **MR. HINNEN:**  THANK YOU, YOUR HONOR.

23       MR. SPEAR HAS DIRECTED ME TO ONE MORE EXHIBIT THAT MAY BE

24   HELPFUL TO THE COURT IN UNDERSTANDING THE NATURE OF GLOBAL++,

25   AND THAT'S EXHIBIT B TO THE COMPLAINT.  IT'S DOCUMENT 1-1 AND

```
 1    IT BEGINS AT PAGE 20.  THAT'S EXHIBIT B.  I KNOW YOU DON'T

 2    HAVE PAGE NUMBERS, YOUR HONOR.  I AM SORRY ABOUT THAT.

 3         THE COURT:  THAT'S OKAY.  I DON'T KNOW THAT I HAVE

 4    1-1, 20.  AS I SAID EARLIER, ALL I HAVE IS THE MEMORANDA.  I

 5    ALSO HAVE THE COMPLAINT BUT THAT'S NOT --

 6         MR. HINNEN:  WE WOULD BE HAPPY TO HAND IT UP, YOUR

 7    HONOR.

 8              (PAUSE IN THE PROCEEDINGS.)

 9         MR. HINNEN:  UNFORTUNATELY, THE ONLY COPY WE HAVE

10    DOES HAVE A COUPLE OF CIRCLES ON IT.  THERE ARE THINGS THAT

11    I'LL DIRECT THE COURT'S ATTENTION TO ANYWAYS.

12         THE COURT:  THAT'S FINE.  I'M NOT WORRIED ABOUT IT.

13    WHY DON'T YOU JUST SHOW YOUR OPPONENT SO HE KNOWS WHAT IT IS

14    THE JUDGE IS SEEING.

15         MR. HINNEN:  SURE.

16              (COUNSEL CONFER.)

17         MR. HINNEN:  THANK YOU, YOUR HONOR.  I'M HANDING IT

18    UP.

19              (DOCUMENT HANDED TO COURT.)

20      SO THE EXHIBIT WE DISCUSSED BEFORE, YOUR HONOR, WAS

21    GLOBAL++'S PATREON PAGE WHERE PEOPLE CAN FOLLOW GLOBAL++ AND

22    DONATE IN EXCHANGE FOR RECEIVING THEIR PRODUCTS AND SERVICES.

23    THIS IS GLOBAL++'S ACTUAL WEB PAGE.

24      AND YOU WILL SEE, AGAIN, THAT IT'S PROMINENTLY LABELED

25    GLOBAL++ AND THAT IT OFFERS A VARIETY, NOT JUST NOTABLY
```

1   NIANTIC'S COPYRIGHTED WORKS AND GAMES, BUT THOSE OF MANY,

2   MANY, MANY GAME PRODUCERS.  AND AMONG THEM, JUST TO POINT OUT

3   TO YOUR HONOR, ON PAGE 2, THERE'S THE POKÉMON GO HACK THAT'S

4   OFFERED OR A CHEATING PROGRAM.  ON PAGE 4 OF THAT EXHIBIT AT

5   THE TOP IS INGRESS PRIME FOR ONE OF THE NIANTIC'S OTHER THREE

6   PROGRAMS.

7        AT THE BOTTOM OF THAT, YOUR HONOR, IS A PROGRAM CALLED

8   APP HAVEN WHICH WE WILL TOUCH ON EVENTUALLY AS WELL.  THIS IS

9   A PLACE ACTUALLY WHERE SOME -- WHERE DEFENDANTS ARE -- HAVE

10  BEEN SINCE THE FILING OF THE COMPLAINT OFFERING SOME OF THE

11  CHEATING PROGRAMS.

12          **THE COURT:**  I DON'T DO MY OWN INDEPENDENT RESEARCH,

13  BUT BECAUSE THE GLOBAL++ WEBSITE WAS IN YOUR PAPERS, I WENT

14  THERE AND, AS I'M SURE YOU KNOW, THAT WEBSITE IS NOT ACTIVE

15  RIGHT NOW.

16          **MR. HINNEN:**  IT'S SHUT DOWN, YOUR HONOR.  YES, THAT'S

17  CORRECT.  THE DEFENDANTS HAVE MOVED THEIR CONDUCT TO ANOTHER

18  LOCATION FOLLOWING THE FILING OF THE COMPLAINT, AND APP HAVEN

19  IS THAT OTHER LOCATION.

20       SO YOU CAN SEE THERE ARE A NUMBER OF PRODUCTS OFFERED

21  THERE AND LINKS TO THE PLATFORMS THROUGH WHICH GLOBAL++

22  COMMUNICATES WITH ITS FOLLOWERS ACROSS THE TOP, AND THAT KIND

23  OF THING.

24       SINCE IT CAME UP, YOUR HONOR, AND AT RISK OF HAVING TO

25  HAND YOU YET ANOTHER EXHIBIT --

1      **THE COURT:**  NO.  I HAVE SUCCEEDED IN GETTING MY MOUSE

2   TO WORK.

3      **MR. HINNEN:**  OH, YOU DID.  FANTASTIC.

4      **THE COURT:**  I SHOULD BE ABLE TO PLUCK ANYTHING FROM

5   THE DOCKET THAT YOU WANT TO REFER TO.

6      **MR. HINNEN:**  FANTASTIC, YOUR HONOR.

7      LET'S GIVE IT A TRY WITH 39-2.  IF YOU ARE ABLE TO PULL

8   THAT UP, I'M GOING TO DIRECT THE COURT TO PAGE 13.

9      **THE COURT:**  IT WILL TAKE ME A SECOND TO LOG IN.

10               (PAUSE IN THE PROCEEDINGS.)

11      **THE COURT:**  I AM ON YOUR DOCKET.  THE DOCUMENT NUMBER

12   AGAIN, PLEASE?

13      **MR. HINNEN:**  GREAT.  AND I AM ON PAGE 14 OF THAT

14   DOCUMENT.

15      **THE COURT:**  NO.  I NEED THE DOCUMENT NUMBER.

16      **MR. HINNEN:**  I AM SORRY, YOUR HONOR.  IT IS 39-2.

17      **THE COURT:**  I HAVE IT.  THE PAGE NUMBER, PLEASE?

18      **MR. HINNEN:**  GREAT.  PAGE 13, YOUR HONOR, WHICH YOU

19   WILL SEE IS EXHIBIT E.

20      **THE COURT:**  YES.

21      **MR. HINNEN:**  GREAT, YOUR HONOR.

22      AS EXPLAINED IN THE DECLARATION OF MR. LANZ TO WHICH IT'S

23   ATTACHED -- THE SECOND DECLARATION OF MR. LANZ, WHAT YOU ARE

24   LOOKING AT THERE IS THE WHO IS SEARCH RESULT THAT PROVIDES

25   INFORMATION REGARDING THE INDIVIDUAL WHO REGISTERED A DOMAIN

1    NAME.

2        AND ON PAGE 14, OR THE PAGE FOLLOWING THE TITLE PAGE FOR

3    EXHIBIT E, YOU WILL SEE THAT THAT'S THE WHO IS RESULT FOR

4    GLOBAL++.COM, GLOBAL++'S WEB PAGE.  AND ABOUT FIVE LINES UP

5    FROM THE BOTTOM, YOU WILL SEE REGISTRANT NAME, MATTHEW

6    JOHNSON; ORGANIZATION, MASONIC; THE STREET ADDRESS, POSTAL

7    CODE, A PHONE NUMBER, AND THEN SEVERAL LINES DOWN FROM THAT ON

8    ANOTHER PAGE, MATTJ8290@GMAIL.COM.

9              **THE COURT:**  YES, I SEE THAT.

10             **MR. HINNEN:**  OKAY.  THANK YOU, YOUR HONOR.

11       NOW I WOULD LIKE TO DIRECT THE COURT TO EXHIBIT F, WHICH

12   IS PAGE 20 OF THE SAME DOCUMENT.

13             **THE COURT:**  YES, I AM THERE.

14             **MR. HINNEN:**  OKAY.  AND IF YOUR HONOR TURNS TO

15   PAGE 21, WHICH IS THE FIRST ACTUAL SUBSTANTIVE PAGE OF THE

16   DOCUMENT, YOU'LL SEE THAT THAT'S A RESPONSE TO AN EMAIL FROM

17   DOMAINS BY PROXY.  AND MR. LANZ EXPLAINS THAT THAT IS THE

18   DOMAIN NAME -- I ALWAYS GET THIS CONFUSED -- REGISTRAR FOR

19   APP HAVEN.  AS YOU'LL SEE THERE, APPHAVEN.ORG IN THE TOP.  AND

20   YOU'LL SEE IT'S THE EXACT SAME INDIVIDUAL.  MATTHEW JOHNSON,

21   MASONIC, SAME ADDRESS, SAME PHONE NUMBER, SAME EMAIL ADDRESS.

22       OKAY.

23             **THE COURT:**  WE DON'T KNOW ANYTHING MORE FROM THESE

24   PAPERS ABOUT THE ROLE THAT MR. JOHNSON -- IF THAT'S EVEN A

25   REAL PERSON, THAT MR. JOHNSON PLAYS IN THESE UNDERLYING

1   INFRINGING ACTIVITIES, DO WE?

2          **MR. HINNEN:**  WE DON'T FROM THESE PAPERS, YOUR HONOR.

3   WHAT I WILL DEMONSTRATE FROM THESE PAPERS AS WE TURN TO THE

4   PRELIMINARY INJUNCTION -- WHAT WE HAVE JUST ESTABLISHED,

5   OBVIOUSLY, IS A CONNECTION BETWEEN GLOBAL++ AND APP HAVEN.

6   AND WHAT I WILL --

7          **THE COURT:**  YES.  BUT REGARDLESS OF WHAT ASSUMPTIONS

8   I MIGHT MAKE ABOUT THE ABILITY OF THE INDIVIDUAL DEFENDANTS IN

9   THIS CASE TO DO THEIR OWN DOMAIN NAME REGISTRATION, WHICH IS

10  NOT A COMPLICATED PROCESS, PARTICULARLY IF YOU USE AN ENTITY

11  LIKE GODADDY, WHICH SOMEBODY APPARENTLY DID, NONETHELESS, IT'S

12  ALSO TRUE THAT SOMETIMES PEOPLE ALLOW THIRD PARTIES TO TAKE

13  CARE OF THESE DETAILS FOR THEM.  AND THERE'S NOTHING TO SAY

14  THAT IT'S NOT A COINCIDENCE THAT SOMEONE NAMED MATTHEW JOHNSON

15  DID THIS FOR TWO SEPARATE ENTITIES.

16      I'M JUST SAYING IT'S SORT OF A THIN READ.  THAT'S ALL.

17         **MR. HINNEN:**  SURE, YOUR HONOR.  AND I WILL ADD MORE

18  WEIGHT AND MASS TO THE READ AS I DISCUSS THE PRELIMINARY

19  INJUNCTION MOTION.  THANK YOU, YOUR HONOR.

20      YOUR HONOR, WITH RESPECT TO THE PRELIMINARY INJUNCTION

21  MOTION --

22         **THE COURT:**  ALTHOUGH, IT WOULD BE A HECK OF A

23  COINCIDENCE IF A SUBSEQUENT WEBSITE WERE TO BE DISTRIBUTING

24  POKEGO++.

25         **MR. HINNEN:**  THAT WOULD BE A REMARKABLE --

1          **THE COURT:**  THAT MIGHT BE YOUR FIRST POINT.

2          **MR. HINNEN:**  THAT WOULD BE A REMARKABLE COINCIDENCE,

3   WOULDN'T IT, YOUR HONOR.

4          **THE COURT:**  YES.  RIGHT.

5          **MR. HINNEN:**  SO BEFORE THE COURT TODAY, YOUR HONOR,

6   IS NIANTIC'S MOTION FOR PRELIMINARY INJUNCTION.  THAT

7   PRELIMINARY INJUNCTION IS BASED ON THREE OF THE SIX CLAIMS

8   THAT THE PLAINTIFFS MAKE AGAINST DEFENDANTS IN THEIR

9   COMPLAINT.  AND IT MAKES THOSE CLAIMS AND THOSE ALLEGATIONS

10  AGAINST DEFENDANTS ALEN HUNDUR, RYAN HUNT, AND THE ASSOCIATION

11  THROUGH WHICH THEY ENGAGE IN THEIR INFRINGING AND OTHER

12  MISCONDUCT GLOBAL++.

13     NIANTIC HAS DEMONSTRATED IN ITS PAPERS THAT IT'S LIKELY TO

14  PREVAIL ON EACH CLAIM; THAT IT WILL SUFFER IRREPARABLE HARM;

15  THAT THE BALANCE OF HARDSHIP IS -- TIPS STEEPLY IN ITS FAVOR;

16  AND THAT THE ISSUANCE OF AN INJUNCTION IS IN THE PUBLIC

17  INTEREST.  AND, ACCORDINGLY, IT ASKS THIS COURT TO GRANT A

18  PRELIMINARY INJUNCTION.

19     I'LL BRIEFLY EXPLAIN HERE TODAY WHY NIANTIC IS ENTITLED TO

20  A PRELIMINARY INJUNCTION AND WHY DEFENDANTS' ARGUMENTS TO THE

21  CONTRARY ARE INCORRECT AND UNAVAILING, IDENTIFYING SOME OF THE

22  MOST SIGNIFICANT EVIDENCE IN THE RECORD AS I GO.

23     YOUR HONOR, DEFENDANTS' PAPERS DO NOT CONTEST THE FACTS

24  AND ARGUMENTS NIANTIC HAS PRESENTED IN SUPPORT OF ITS CFAA

25  CLAIM AND ITS CONTRACT CLAIMS.  DEFENDANTS HAVE WAIVED ANY

1    ARGUMENTS REGARDING THESE BASES FOR RELIEF UNDER THE LOCAL

2    RULES.  THEY HAVE LEFT THE FACTS NIANTIC HAS PRESENTED

3    REGARDING THESE CLAIMS UNCONTROVERTED AND ITS ARGUMENTS

4    UNCONTESTED.  THE COURT CAN GRANT NIANTIC'S MOTION ON THESE

5    BASES, THE CFAA BASIS AND THE CONTRACT BASIS ALONE.

6        WITH RESPECT TO NIANTIC'S COPYRIGHT CLAIMS, NIANTIC SEEKS

7    INJUNCTIVE RELIEF TO PREVENT THREE SEPARATE AND DISTINCT

8    COPYRIGHT VIOLATIONS; COPYING ITS CLIENT CODE, MODIFYING THAT

9    CODE TO CREATE DERIVATIVE WORKS AND DISTRIBUTING COPIES OF

10   NIANTIC'S CLIENT CODE.

11       DEFENDANTS DO NOT CONTEST TWO OF NIANTIC'S THREE BASES FOR

12   RELIEF FOR COPYRIGHT VIOLATIONS.  THEY CONCEDE NIANTIC'S

13   COPYING AND DISTRIBUTION CLAIMS.  THE COURT CAN GRANT

14   NIANTIC'S MOTION ON THESE BASES ALONE.

15       DEFENDANTS CONTEST ONLY NIANTIC'S DERIVATIVE WORKS CLAIM.

16   DEFENDANTS' ARGUMENT REGARDING THIS CLAIM IS INCORRECT,

17   RESTING EXCLUSIVELY ON ITS MISINTERPRETATION AND

18   MISAPPLICATION OF A SINGLE CASE, THE NINTH CIRCUIT'S 1992

19   DECISION IN *GALOOB VERSUS NINTENDO*.  THE CODE DEFENDANTS HAVE

20   COPIED, MODIFIED AND DISTRIBUTED IS DISTINCT IN EVERY

21   SIGNIFICANT RESPECT FROM THE MODIFIED SCREEN DISPLAYS IN

22   *GALOOB*.

23       IN *GALOOB*, NOTHING WAS COPIED, NO MODIFIED VERSION WAS

24   CREATED OR DISTRIBUTED.  HERE, NIANTIC'S CLIENT CODE WAS

25   COPIED, MODIFIED TO CREATE THE CHEATING PROGRAMS, AND THEN

1   THOSE MODIFIED INFRINGING VERSIONS OF NIANTIC'S CODE WERE

2   SOLD, AS WE HAVE ALREADY SEEN FROM DEFENDANTS' PATREON PAGE.

3        THE MODIFIED CLIENT CODE IN THE CHEATING PROGRAM IS THE

4   TYPE OF CONCRETE AND PERMANENT DERIVATIVE WORK THE NINTH

5   CIRCUIT IN *GALOOB* ACKNOWLEDGED IT INFRINGES A VALID COPYRIGHT.

6   IN *GALOOB*, NOTHING WAS COPIED OR REPRODUCED.  HERE, NIANTIC'S

7   COPYRIGHTED SOFTWARE WAS COPYRIGHTED, REPRODUCED, AND

8   DISTRIBUTED.

9        IN *GALOOB*, THERE WAS NO CONCRETE AND PERMANENT WORK, ONLY

10  A MODIFICATION OF THE WAY THE GAME APPEARED ON A SCREEN.

11  HERE, THE CHEATING PROGRAMS ARE CONCRETE AND PERMANENT WORKS.

12  THEY CAN'T BE INSTALLED UNLESS NIANTIC'S LEGITIMATE

13  APPLICATIONS ARE UNINSTALLED TO MAKE ROOM FOR THEM.  THEY

14  PERSIST.  EVERY TIME YOU TURN ON YOUR PHONE, THERE THEY ARE.

15  THEY OCCUPY SPACE IN THE MEMORY OF THAT USER'S DEVICE AND,

16  CONTRARY TO DEFENDANTS' SWORN TESTIMONY, THEY CAN BE AND ARE

17  SOLD.

18       IN *GALOOB*, THERE WAS NO ONGOING INTERACTION WITH A SERVER

19  THAT IMPOSED AN ADDITIONAL COST ON NINTENDO.  IT WAS AN INERT

20  AND LOCALIZED GAME CARTRIDGE.  HERE, THE CHEATING PROGRAMS

21  CONTINUE TO INTERACT WITH NINTENDO SERVERS.

22       IN *GALOOB*, THERE WAS NO EFFECT ON OTHER PLAYERS OF THE

23  GAME.  THE EFFECT OF THE GAME GENIE DIDN'T EXIST OUTSIDE THAT

24  TELEVISION AND THAT LIVING ROOM.  HERE, NIANTIC'S GAMES ARE

25  GLOBAL INTERACTIVE GAMES WHERE DEFENDANTS' CHEATING PROGRAMS

1    DEGRADE OTHER USERS' EXPERIENCE AND AFFECT OTHER USERS' VIEWS

2    OF NIANTIC.

3        IN *GALOOB*, THERE WAS NO EFFECT ON THE CONSUMERS' PURCHASES

4    FROM NINTENDO.  HERE, TO INSTALL THE CHEATING PROGRAMS, A USER

5    HAS TO UNINSTALL THE LEGITIMATE GAME, LITERALLY TO SUPPLANT

6    IT, AND THE CHEATING PROGRAMS DECREASED IN-GAME PURCHASERS.

7    THE USERS CAN OBTAIN BY CHEATING WHAT THEY WOULD OTHERWISE

8    OBTAIN BY PURCHASE.

9        YOUR HONOR, JUST TO REFER THE COURT TO SOME OF THE

10   EVIDENCE OF THE ARGUMENTS I'VE JUST MADE, I WOULD LIKE TO

11   RETURN TO DOCKET 39-2 AND EXHIBIT A OF THAT DOCUMENT, PLEASE.

12           **THE COURT:**  I HAVE IT.

13           **MR. HINNEN:**  GREAT, YOUR HONOR.

14       WHAT YOU WILL SEE THERE ARE DEFENDANTS' INSTRUCTIONS

15   REGARDING THE INSTALLATION OF THE CHEATING PROGRAMS.  YOU WILL

16   NOTE, AGAIN, JUST SORT OF THE HARKENING BACK TO OUR DISCUSSION

17   REGARDING THE MOTION TO DISMISS, THAT ALTHOUGH GLOBAL++

18   DOESN'T EXIST, THIS IS ITS KNOWLEDGE BASE.  AND ALTHOUGH IT

19   DOESN'T EXIST IN THE BOTTOM RIGHT-HAND CORNER, THIS PAGE IS

20   POWERED BY GLOBAL++.

21       IF YOUR HONOR LOOKS AT NO. 2 ON THAT PAGE, YOU WILL SEE

22   THE DIRECTION:  IF YOU HAVE THE ORIGINAL APP ON YOUR IOS

23   DEVICE, REMOVE IT FROM YOUR DEVICE.  LITERALLY, SUPPLANT IT,

24   REMOVE IT SO THAT THE INFRINGING VERSION CAN BE ADDED.

25       IF YOUR HONOR THEN TURNS THE PAGE TO EXHIBIT B, YOU WILL

1    SEE ONE EXAMPLE OF A NOTICE THAT SERVED TO A USER:  IF A USER

2    TRIES TO INSTALL THE CHEATING PROGRAM WHILE THE LEGITIMATE

3    APPLICATION IS STILL ON THE PHONE, AND IT NOTIFIES THE

4    INDIVIDUAL THAT IT CAN'T DO THAT, THAT IT HAS TO FIRST REMOVE

5    THE LEGITIMATE APPLICATION.

6        YOUR HONOR, NOW I WOULD LIKE TO TURN TO DOCKET 7-5.

7            **THE COURT:**  YEAH.

8            **MR. HINNEN:**  THAT IS THE FRANK DECLARATION.

9            **THE COURT:**  I SHOULD HAVE PROBABLY TOLD YOU BEFORE

10   YOU STARTED THAT YOU HAVE A TENTATIVE IN YOUR FAVOR ON BOTH

11   MOTIONS.

12           **MR. HINNEN:**  OKAY.  THANK YOU, YOUR HONOR.  THAT IS

13   VERY HELPFUL.

14           **THE COURT:**  SO THIS IS IN THE NATURE OF A FOOTBALL

15   GAME, WHERE THERE IS LESS THAN TWO MINUTES ON THE CLOCK --

16           **MR. HINNEN:**  I UNDERSTAND, YOUR HONOR.

17           **THE COURT:**  -- AND YOU HAVE TAKEN THE SNAP.

18           **MR. HINNEN:**  I WILL FOCUS ON WHAT'S VERY SIGNIFICANT.

19       YOU KNOW, JUST TO WRAP UP THAT POINT, YOUR HONOR, THE

20   COURT IN *ZIPPERER*, *NEXON* AND *APPLE* CAME TO THE CONCLUSION THAT

21   WE ARE URGING THE COURT TO COME TO.  AND IF THE NINTH CIRCUIT

22   WERE TO APPLY ITS TEST IN *GALOOB* TO THE CHEATING PROGRAMS IN

23   THIS CASE, IT WOULD COME TO THAT CONCLUSION AS WELL.

24       VERY BRIEFLY, YOUR HONOR, THEN I WILL COVER IRREPARABLE

25   HARM.  TAKE UP NO MORE THAN MY -- TAKE UP NO MORE THAN MY

1    TWO MINUTES.

2        YOUR HONOR, NIANTIC HAS AMPLY DEMONSTRATED IRREPARABLE

3    HARM.  IT'S DEMONSTRATED FIRST THAT THE CHEATING PROGRAMS ARE

4    DRIVING PEOPLE AWAY FROM THE PROGRAM.  SECOND, THAT THEY'RE

5    REDUCING PEOPLE'S ENTHUSIASM FOR THEM.  THIRD, THAT THEY ARE

6    DECREASING IN-GAME PURCHASES.  FOURTH, THAT THEY ARE ERODING

7    NIANTIC'S REPUTATION AND GOODWILL.  AND, FIFTH, THAT THEY ARE

8    FRUSTRATING NIANTIC'S CORE MISSION OF ENCOURAGING PEOPLE TO

9    EXPLORE THEIR WORLD TOGETHER.

10       THOSE ARE THE TYPES OF HARMS THE NINTH CIRCUIT HAS FOUND

11   ARE IRREPARABLE HARMS THAT WILL SUPPORT THE ISSUANCE OF A

12   PRELIMINARY INJUNCTION IN CASES LIKE *DISNEY VERSUS VIDANGEL*

13   AND *ADIDAS VERSUS SKETCHERS*.

14       YOUR HONOR, IN LIGHT OF YOUR HONOR'S FOOTBALL ANALOGY, I

15   THINK I'LL BE HAPPY TO LEAVE IT THERE AND RESPOND TO ANYTHING

16   THAT MR. MARINO HAS TO SAY REGARDING THE PRELIMINARY

17   INJUNCTION MOTION.

18           **THE COURT:**  VERY GOOD.

19       MR. MARINO.

20           **MR. MARINO:**  THANK YOU, YOUR HONOR.  MAY I BRIEFLY

21   RESPOND ON THE MOTION TO DISMISS AND THEN --

22           **THE COURT:**  SURE.

23           **MR. MARINO:**  -- RESPOND TO THE PI?  I APPRECIATE --

24           **THE COURT:**  IT IS A FAIRLY CONVINCING SET OF EVIDENCE

25   THAT GLOBAL++, WHATEVER IT IS, HAS GONE TO SOME SIGNIFICANT

```
 1    LENGTHS TO CONVINCE THE REST OF THE WORLD THAT IT'S A THING,

 2    AS THE YOUNG PEOPLE SAY.

 3         MR. MARINO:  IT IS DEFINITELY A WEBSITE, YOUR HONOR.

 4    I WOULD NOT DISAGREE WITH THAT.  I WOULD NOT DISAGREE IT IS A

 5    LABEL.

 6         THE COURT:  IT'S A BRAND.

 7         MR. MARINO:  MAY EVEN --

 8         THE COURT:  IT'S A BRAND.  IT'S A BRAND THAT CONDUCTS

 9    COMMERCIAL ACTIVITY ACROSS THE WEB RELYING ON CONSUMER

10    PERCEPTION OF IT AS A SEPARATE ENTITY.

11       DON'T YOU THINK THAT THE RECORD THAT WE JUST LOOKED AT

12    DEMONSTRATES THAT FAIRLY CONVINCINGLY?

13         MR. MARINO:  I THINK IT DEMONSTRATES THERE IS A

14    BRAND -- THERE IS A NAME, A BRAND, A LABEL, WHATEVER YOU WANT

15    TO CALL IT THAT HAS BEEN USED TO DESCRIBE CERTAINLY FREE

16    SOFTWARE PROGRAMS THAT ARE AT ISSUE IN THIS CASE.  I WOULD

17    AGREE WITH THAT.

18       BUT THE PRIMARY POINT THAT WE MADE IN THE MOTION TO

19    DISMISS --

20         THE COURT:  NOTWITHSTANDING MY COMMENTS TO MR. HINNEN

21    ABOUT THE THINNESS OF THE READ, OR WHATEVER, DON'T YOU THINK

22    THAT THE FACT THAT THIS OTHER WEBSITE, APP HAVEN, WHO HAS THE

23    SAME REGISTRANT AS THE GLOBAL++ WEBSITE THAT OFFERS THE SAME

24    INFRINGING GAMES WOULD GIVE ANY REASONABLE FEDERAL JUDGE

25    SUSPICION THAT NOTWITHSTANDING THE PROTESTATIONS THAT PEOPLE
```

```
1    HAVE GOTTEN OUT OF THE BUSINESS OF PUTTING THESE CHEATER GAMES
2    ON THE INTERNET, IN FACT, THEY ARE PUTTING THEM ON THE
3    INTERNET.
4        WHY SHOULDN'T I BE WORRIED BY THAT EVIDENCE?
5            MR. MARINO:  BECAUSE THAT EVIDENCE IS FALSE.  THE
6    APP HAVEN WEBSITE, IF PLAINTIFF HAD ACTUALLY CARED TO COMPARE
7    IT, DOES NOT, IN FACT, DISTRIBUTE THE GLOBAL++ SOFTWARE.
8            THE COURT:  I SEE.
9            MR. MARINO:  IT IS A DIFFERENT VERSION.  SO THIS IS
10   NOT IN THE RECORD, SO IT WAS BROUGHT UP FOR THE FIRST TIME IN
11   THEIR REPLY.
12           THE COURT:  YES.
13           MR. MARINO:  IF THE COURT IS INTERESTED, MR. HUNT IS
14   READY TO TESTIFY ABOUT IT.
15           THE COURT:  WELL, I MEAN --
16           MR. MARINO:  I AM RESPONDING TO YOUR QUESTION.
17           THE COURT:  I APPRECIATE THAT.  AND I WILL GIVE YOU
18   THE RIGHT TO RESPOND IN A SECOND.  I DON'T MEAN TO CUT YOU
19   OFF.
20       I THINK -- I DON'T KNOW THAT IT'S A CORE QUESTION,
21   ACTUALLY.  I DON'T -- BECAUSE THIS IS NOT, YOU KNOW, THE
22   POSITION THAT THE INDIVIDUAL DEFENDANTS TAKE IN THE BRIEFING
23   IS, AN INJUNCTION ISN'T NECESSARY HERE BECAUSE THE CONDUCT IS
24   NOT STILL OCCURRING.
25       BUT THE TEST FOR VOLUNTARY CESSATION IS ACTUALLY MUCH MORE
```

RIGOROUS THAN THAT.  I THINK I AM NOT GOING TO BE ABLE TO FIND

THAT YOU'VE MET THAT TEST.  SO IF YOU HAVEN'T MET THE TEST FOR

VOLUNTARY CESSATION, THEY ARE GOING TO BE ENTITLED TO

INJUNCTIVE RELIEF ANYWAY.

SO I DON'T WANT YOU TO THINK THAT THIS QUESTION IS GOING

TO TURN ON WHETHER APP HAVEN IS DISTRIBUTING POKEGO++ OR NOT.

I JUST DON'T THINK I'M GOING TO REACH THAT QUESTION.

**MR. MARINO:**  RIGHT.  AND TO BE CLEAR, THAT'S

PLAINTIFF'S INTERPRETATION OF OUR RESPONSE.

OUR RESPONSE IS THEY ARE NOT LIKELY TO SUCCEED ON THE

MERITS.  THEY WAITED TOO LONG TO MOVE FOR PRELIMINARY

INJUNCTION AND THEY HAVEN'T SHOWN IRREPARABLE HARM --

**THE COURT:**  RIGHT.

**MR. MARINO:**  -- IS OUR CORE RESPONSE, NOT

VOLUNTARY -- WE ARE NOT ARGUING VOLUNTARY CESSATION.

WHAT WE DID POINT OUT FROM A FACTUAL STANDPOINT IS THAT

WHILE PLAINTIFF PAINTS THIS IMAGE OF A GROUP OF HACKERS HIDING

IN THE SHADOWS OF THE INTERNET, MR. HUNT IS RIGHT HERE.  AND

HE WANTS HIS DAY IN COURT AND HE'S RESPONDING AND HE'S ACTING

REASONABLY.

ONCE HE WAS SERVED WITH THE COMPLAINT -- HE DIDN'T RECEIVE

THIS CEASE AND DESIST LETTER ON JUNE 7TH.  HE WAS SERVED WITH

THE COMPLAINT AFTER IT WAS FILED ON JUNE 14TH.  AS SOON AS HE

RECEIVED IT, HE VOLUNTARILY STOPPED THE OPERATION OF THE

WEBSITE UNTIL THIS ISSUE COULD BE RESOLVED.  THAT'S THE SPIRIT

```
1    IN WHICH WE BROUGHT OUT THAT FACT, NOT TO ARGUE VOLUNTARY

2    CESSATION.

3        BUT JUST TO ANSWER YOUR QUESTION, APP HAVEN IS AN

4    INDEPENDENT COMPANY.  AS THE COURT NOTED, THERE ARE PEOPLE OUT

5    THERE THAT ARE IN THE BUSINESS OF REGISTERING DOMAIN NAMES AND

6    THEN RESELLING THEM TO OTHERS.  RIGHT?

7        AS FAR AS I UNDERSTAND, THAT IS EXACTLY WHAT HAPPENED WITH

8    THE APP HAVEN DOMAIN NAME.  IT WAS REGISTERED BY THIS

9    INDIVIDUAL AND THEN IT WAS SOLD TO SOMEBODY ELSE.  AND I THINK

10   THERE IS AVAILABLE INFORMATION ON THE INTERNET THAT PLAINTIFF

11   HAD DECIDED NOT TO SHARE WITH THE COURT AS TO WHO THE CURRENT

12   OWNER OF THAT WEBSITE IS, AND IT IS NOT THE SAME INDIVIDUAL.

13           THE COURT:  INTERESTING.

14           MR. MARINO:  I WILL LEAVE IT AT THAT.

15           THE COURT:  WELL, THEN -- OKAY.  YOU DON'T STATE --

16   YOUR CLIENTS DON'T STATE IN THEIR PAPERS A PRESENT INTENTION

17   TO RESUME DISTRIBUTION OF THESE GAMES, DO THEY?

18           MR. MARINO:  WE DO NOT, YOUR HONOR.  WE WANT TO

19   RESOLVE THE MATTERS.

20           THE COURT:  RIGHT.  ANYWAY, THAT QUESTION -- THAT

21   TOPIC IS RELEVANT TO THE SUBJECT OF INJUNCTIVE RELIEF.

22           MR. MARINO:  YES, YOUR HONOR.  WE WILL GET TO THAT.

23        SO LET ME JUST CLARIFY A COUPLE OF POINTS ON THE MOTION TO

24   DISMISS.

25        I THINK MY MOST SUBSTANTIVE POINT, THERE IS THE DIFFERENCE
```

1    BETWEEN EACH DEFENDANT OR ALL OF THE DEFENDANTS, WHICH IS THE

2    LANGUAGE IN THE CASE MR. HINNEN CITED TO.  THERE'S NO PROBLEM

3    WITH THAT.  I AM NOT ASKING THEM TO AMEND THE COMPLAINT TO SAY

4    MR. HUNDUR AND MR. HUNT AND DOES ONE THROUGH TWENTY AND

5    GLOBAL++.

6       IF THEY HAD SIMPLY SAID EACH OF THE DEFENDANTS OR ALL OF

7    THE DEFENDANTS, THAT WOULD HAVE GIVEN ME THE INFORMATION THAT

8    I NEED.  THEY DID NOT DO THAT.  THEY SIMPLY SAID DEFENDANTS.

9    IN THE ENGLISH LANGUAGE, "DEFENDANTS" READS NOT ONLY ON ALL OF

10   THEM BUT ALSO SOME OF THEM.  THAT'S THE PROBLEM.  I THINK THEY

11   SHOULD CORRECT THAT.  THAT IS, I THINK, THE GIST OF MY

12   ARGUMENT ON THE MOTION TO DISMISS.

13      TURNING TO THE MOTION FOR PRELIMINARY INJUNCTION.  I'M ON

14   SLIDE 9 OF THE PRESENTATION.  THE BIGGEST REASON WHY THE COURT

15   SHOULD NOT GRANT THE MOTION AT THIS STAGE IS THAT NIANTIC IS

16   WRONG ABOUT FUNDAMENTAL FACTS.

17      FIRST OF ALL, THE GLOBAL++ CODE IS ENTIRELY SEPARATE AND

18   DOES NOT MODIFY THE NIANTIC CODE IN ANY WAY.  THEY HAVE

19   SUBMITTED A DECLARATION BY THEIR ENGINEER WHO HAS NEVER READ

20   THE SOURCE CODE, I PRESUME, BECAUSE THE SOURCE CODE IS NOT

21   AVAILABLE TO THEM.  WE SUBMITTED A DECLARATION OF MR. HUNT.

22   HE'S READ ALL THE SOURCE CODE FOR HIS CODE, NOT FOR NIANTIC

23   BECAUSE HE DOESN'T HAVE ACCESS TO THAT.  AND HE SAID, NO, WE

24   DIDN'T MODIFY THEIR CODE.

25      IT IS VERY SIMPLE.  WHY?  WE DON'T HAVE THE SOURCE CODE.

1    HOW CAN YOU MODIFY THE OBJECT CODE OF SOMEBODY ELSE'S CODE?

2    YOU CAN'T.

3        WHAT YOU CAN DO IS WHAT, IN THE NINTH CIRCUIT SINCE THE

4    DAYS OF *GALOOB*, IS RIGHT.  *GALOOB* IS A 1992 CASE.  IT'S A

5    SEMINAL CASE IN THIS INDUSTRY.  I'M, BY TRAINING, A COMPUTER

6    SCIENTIST AND NOW I'VE BEEN A TRIAL LAWYER FOR SOME 23 YEARS.

7    AND ALL OF MY WORK HAS BEEN DEALING WITH SOFTWARE ISSUES.  AND

8    *GALOOB* IS A SEMINAL CASE.

9            **THE COURT:**  BUT YOU DON'T EVEN CONTEST TWO OF THEIR

10   CLAIMS.  I MEAN, WE CAN HAVE THIS DISCUSSION ABOUT THE

11   VALIDITY OF ONE OF THEIR CLAIMS, BUT IS MR. HINNEN CORRECT,

12   THAT AS TO TWO OF THEIR CLAIMS, THEY ARE SIMPLY NOT CONTESTED?

13           **MR. MARINO:**  I THINK IT IS TOTALLY INCORRECT.

14           **THE COURT:**  TELL ME WHY.

15           **MR. MARINO:**  THOSE TWO CLAIMS BOTH ARE BORNE OUT OF

16   THE MISTAKEN ASSUMPTION THAT THE CODE IN GLOBAL++ IS A

17   MODIFIED VERSION OF THE CODE IN NIANTIC'S APPLICATION.  THAT'S

18   THE ROOT OF BOTH OF THOSE CLAIMS.

19       SO ONCE THE FACT IS IN DISPUTE THAT THE GLOBAL++ SOFTWARE

20   MODIFIES THE NIANTIC SOFTWARE, WHICH IS A COPYRIGHT VIOLATION,

21   THEN THE UNAUTHORIZED ACCESS TO THEIR SERVERS GOES AWAY, THE

22   BREACH OF CONTRACT GOES AWAY.  BECAUSE THE THINGS THAT THEY

23   SPECIFICALLY ALLEGE IN THEIR COMPLAINT AND IN THEIR

24   PRELIMINARY INJUNCTION MOTION ARE ALL DERIVATIVE, TO USE THE

25   WORD, OF THAT ACT OF MODIFYING THE SOFTWARE.

1       TO BE VERY, VERY PRECISE BECAUSE, OBVIOUSLY, IT IS A

2   QUESTION THE COURT IS INTERESTED IN, WHY DO THEY SAY IT'S AN

3   UNAUTHORIZED ACCESS TO THEIR SERVERS?  BECAUSE THEY ARE

4   EMPHASIZING A DIFFERENT PIECE OF CODE, NOT THEIRS, THAT

5   COMMUNICATES WITH THEIR SERVERS, RIGHT?

6           **THE COURT:**  YES.

7           **MR. MARINO:**  THAT IS WHAT THE TERMS OF USE SAY.

8       WE DON'T HAVE A SEPARATE PIECE OF CODE -- WE DON'T -- I AM

9   SORRY.  WE DO HAVE A SEPARATE PIECE OF CODE THAT ALSO INCLUDES

10  ALL OF THEIR CODE EXACTLY THE WAY THEY WROTE IT.  SO THE ONLY

11  CODE THAT ACCESSES THEIR SERVERS IS THEIR OWN CODE.

12      AND THAT'S VERY SIGNIFICANT BECAUSE THAT CODE THAT NIANTIC

13  WRITES, NOT ONLY CONTROLS THEIRS, BUT IT CONTROLS THE SALES OF

14  THEIR IN-APP FEATURES.  THAT'S HOW THEY ARE SAYING IN THEIR

15  DECLARATION THEY MAKE ALL THEIR MONEY.

16          **THE COURT:**  RIGHT.

17          **MR. MARINO:**  THEY SELL IN-APP PURCHASES.  ANYBODY

18  USED IN THE PAST THE GLOBAL++ SOFTWARE, BECAUSE IT

19  INCORPORATED ALL OF THAT CODE FROM NIANTIC IN ITS ORIGINAL

20  FORM, MAKES PURCHASES FROM NIANTIC EXACTLY THE SAME WAY.

21      IN FACT, AS MR. HUNT ATTESTED IN HIS DECLARATION, THE

22  INFORMATION THAT GLOBAL++ USERS HAVE SHARED ON PUBLIC FORUMS

23  INDICATES THEY SPEND A LOT MORE MONEY MAKING IN-APP PURCHASES

24  BECAUSE THEY PLAY 24 HOURS A DAY, THEY PLAY IN MANNERS THAT

25  WOULDN'T BE POSSIBLE WITH THE PROGRAM.  SO THERE IS NO

1    UNAUTHORIZED ACCESS.  EVERY ACCESS TO THE SERVERS IS CARRIED

2    OUT THROUGH THE NIANTIC CODE EXCLUSIVELY.

3        THERE IS NO INSTANCE -- I'M GOING TO BE VERY CLEAR ABOUT

4    THIS -- WHERE THE GLOBAL++ CODE, WHICH IS NOT NIANTIC CODE,

5    EVER ACCESSES THE SERVERS.  AND THAT'S IN MR. HUNT'S

6    DECLARATION, WHICH WAS SUBMITTED IN SUPPORT OF OUR POSITION.

7        SO THAT'S WHY THERE IS NO UNAUTHORIZED ACCESS.  THERE IS

8    NO VIOLATIONS OF THE TERMS OF USE BECAUSE, AGAIN, THE PORTIONS

9    OF THE TERMS OF USE THAT THEY ACTUALLY TALK ABOUT IN THEIR

10   MOTION IS YOU'RE PLAYING THE GAME AND YOU ARE ACCESSING OUR

11   SERVERS WITH THIRD-PARTY SOFTWARE.  NO.  THE ONLY -- THIS IS

12   GOING TO BE CRITICAL TO UNDERSTAND.

13       THE WAY THE GLOBAL++ SOFTWARE WORKS, IT INTERACTS WITH THE

14   PHONE, THE USERS' PHONE.  THEY'VE ALSO -- IT'S ALSO EXECUTING

15   THE NIANTIC CODE.

16       SO LET'S TALK ABOUT THE SPOOFING, THIS CRITICAL FEATURE --

17           **THE COURT:**  THAT'S SOMETHING THAT I WOULD HAVE THE

18   BEST CHANCE OF UNDERSTANDING --

19           **MR. MARINO:**  SURE.

20           **THE COURT:**  -- AND THAT IS THE AVAILABILITY TO A

21   POKEGO USER OF DESIRABLE LOCATIONS, RIGHT?  SOME LOCATIONS --

22   I HAVEN'T PLAYED ANY OF THESE GAMES.  I KNOW A LITTLE BIT

23   ABOUT POKÉMON GO BECAUSE IT WAS THE SUBJECT OF ANOTHER CASE

24   THAT ONE OF MY COLLEAGUES WORKED ON.

25       AS I UNDERSTAND THAT GAME ONLY FROM READING ABOUT IT, A

1    USER CAN GET POINTS OR EQUIVALENT BENEFITS FROM GOING TO

2    CERTAIN GEOGRAPHIC LOCATIONS WHERE THERE ARE REWARDS WAITING

3    FOR THAT USER.

4        IS MY UNDERSTANDING CORRECT SO FAR?

5            MR. MARINO:   THAT IS GENERALLY CORRECT, YOUR HONOR,

6    YES.

7            THE COURT:   OKAY.   AND MY UNDERSTANDING OF POKEGO+ IS

8    THAT IT MAKES IT EASIER FOR THAT USER TO GET TO THOSE

9    LOCATIONS AND EARN THOSE REWARDS; IS THAT CORRECT?

10           MR. MARINO:   I GUESS IT DEPENDS ON WHAT YOU MEAN BY

11   "EASIER."   SO LET ME TELL YOU WHAT I THINK IT DOES.

12           THE COURT:   SURE.

13           MR. MARINO:   WHAT IT DOES, IT ALLOWS -- WHAT THE CODE

14   ACTUALLY DOES, IT CHANGES THE LOCATION THAT THE PHONE THINKS

15   IT IS.   OKAY?   SO THE PHONE HAS A GPS CHIP THAT TELLS IT YOU

16   ARE IN THIS COURTROOM.

17           THE COURT:   RIGHT.

18           MR. MARINO:   NIANTIC, ON THEIR SERVERS, MIGHT HAVE A

19   POINT OF INTEREST, I THINK IS THE TERMINOLOGY THEY USE, OF A

20   POKÉMON IN THIS COURTROOM.   IF THE PHONE IS IN THE SAME

21   LOCATION, ACCORDING TO THE PHONE, THEY SAY, OH, OKAY.   YOU CAN

22   CAPTURE THAT POKÉMON.

23           THE COURT:   THERE YOU GO.   SO LET'S SAY THAT I'M NOT

24   A USER OF THE POKEGO++ PROGRAM.   I'M JUST AN ORDINARY GUY, AND

25   I'M USING THE POKÉMON GO PROGRAM AS NIANTIC INTENDED IT TO BE

```
1    PLAYED.
2        I DON'T KNOW WHERE THOSE LOCATIONS ARE, DO I?
3            MR. MARINO:  THAT'S CORRECT.
4            THE COURT:  I HAVE TO STUMBLE UPON THEM OR MAKE
5    DEDUCTIONS BASED ON THE EVIDENCE AVAILABLE TO ME, CORRECT?
6            MR. MARINO:  THAT IS CORRECT.
7            THE COURT:  YOUR CLIENT KNOWS WHERE THOSE LOCATIONS
8    ARE, CORRECT?  THEY HAVE TO.  THAT'S WHAT THEY ARE OFFERING
9    WITH POKEGO++, RIGHT?
10           MR. MARINO:  THAT IS NOT THE PRIMARY OFFERING.  I
11   THINK THAT'S --
12           THE COURT:  I AM NOT ASKING YOU WHAT THE PRIMARY
13   OFFERING WAS.
14       YOU TOLD ME A SECOND AGO THAT YOUR CLIENTS' PROGRAM IS
15   ABLE TO CHANGE THE VIRTUAL LOCATION OF A USER'S PHONE --
16           MR. MARINO:  THAT'S CORRECT.
17           THE COURT:  -- AND I'M ASSUMING THAT THE LOCATION IT
18   CHANGES IT TO IS A LOCATION THAT'S DESIRABLE FOR THE REASONS
19   WE HAVE BEEN DISCUSSING.
20       IS THAT TRUE?
21           MR. MARINO:  THAT IS ONE OF THE THINGS.  IT CAN
22   CHANGE THE PLAYER LOCATION INCLUDING --
23           THE COURT:  THEN COMING BACK TO MY ORIGINAL QUESTION,
24   IT CAN ONLY DO THAT IF IT KNOWS WHAT THOSE LOCATIONS ARE,
25   CORRECT?
```

1        **MR. MARINO:**  THAT IS CORRECT.

2        **THE COURT:**  AND HOW IS IT THAT YOUR CLIENT KNOWS THAT

3    INFORMATION IF I, AS AN ORDINARY USER, DO NOT HAVE THAT

4    INFORMATION AVAILABLE TO ME?

5        **MR. MARINO:**  SO SEVERAL -- LET ME ANSWER YOUR

6    QUESTION DIRECTLY AND THEN I'LL EXPLAIN WHY.

7        THEY HAVE A DATABASE OF LOCATIONS WHERE POKÉMONS ARE THAT

8    HAVE BEEN OBTAINED BY USERS BECAUSE NIANTIC ACTUALLY MAKES THE

9    DATA AVAILABLE TO ITS USER WHEN YOU DISCOVER A POKÉMON.

10       **THE COURT:**  GOT IT.

11       **MR. MARINO:**  JUST LIKE IN THE COMMUNITY OF USERS --

12       **THE COURT:**  I DIDN'T MEAN TO BE ABRUPT WITH YOU

13   BEFORE.  IT'S JUST THAT WHEN I ASK A QUESTION AND --

14                    (SIMULTANEOUS COLLOQUY.)

15       **THE COURT:**  -- SOMEONE STARTS TELLING ME SOMETHING

16   ELSE, I GET CONFUSED.

17       **MR. MARINO:**  I WANT TO ANSWER YOUR QUESTIONS TO THE

18   BEST OF MY ABILITIES, BUT I'M TRYING TO ANSWER THEM AS

19   ACCURATELY AS POSSIBLE.  SOMETIMES I NEED TO GET THERE.

20       AN EQUIVALENT -- FOR EXAMPLE, ANOTHER WAY TO ACHIEVE THE

21   SAME OBJECTIVE IS TO READ A BLOG WHERE PEOPLE ACTUALLY

22   ADVERTISE, HEY, THERE'S A POKÉMON IN THIS LOCATION.  SOMETHING

23   THAT, BY THE WAY, NIANTIC IS PERFECTLY HAPPY WITH BECAUSE IT

24   INCREASES FOOT TRAFFIC, IT INCREASES PLAY OF THE GAME, SO ON

25   AND SO FORTH.

1      AND, IN FACT, ON THEIR WEBSITE AND IN THE TERMS OF USE,

2   THEY ASSIGN THE OWNERSHIP OF THAT DATA TO THE USERS

3   THEMSELVES.  AND IN THE TERMS OF USE THEY GRANT THEMSELVES A

4   LICENSE TO USE THAT DATA FOR THEIR PURPOSES.  BECAUSE THE

5   DATA, OBVIOUSLY, ORIGINATES THROUGH THE FACT THAT THE USER HAS

6   DISCOVERED A POKÉMON IN A CERTAIN LOCATION, THAT ORIGINATES IN

7   THE PHONE.

8      SO THE WAY THE GLOBAL++ COULD INTERACT, IF AT ALL, IS

9   THROUGH THE PHONE.  SO IT CHANGES THE LOCATION THAT THE PHONE

10  THINKS IT IS.  NIANTIC'S CODE SEES THE LOCATION REPORTED BY

11  THE PHONE AND SAYS, OH, GREAT.  I'M IN THIS COURTROOM.  THERE

12  IS A POKÉMON.  NOW I'LL GO GET IT.  THAT IS THE WAY IT

13  ACTUALLY WORKS.

14     IT IS NOT WE INJECT CODE INTO THEIR APPLICATION TO MAKE

15  THEM THINK THAT.  WE CHANGE THE LOCATION OF THE PHONE -- THE

16  LOCATION OF THE PHONE REPORTS TO ALL PROGRAMS RUNNING ON IT.

17          **THE COURT:**  SO THIS DISCUSSION IS HELPFUL TO ME.  I

18  WANT TO CHANGE FOCUS SLIGHTLY TO A DIFFERENT PART OF

19  MR. LANZ'S DECLARATIONS WHERE HE DISCUSSES WHAT NIANTIC

20  DESCRIBES AS THE DEFENDANTS' UNAUTHORIZED ACCESS TO NIANTIC'S

21  SERVERS.

22     AND THE ALLEGATION -- I'M NOT GOING TO GET THIS EXACTLY

23  RIGHT.  IN ROUGH FORM THE ALLEGATION MADE BY NIANTIC IS THAT

24  THE DEFENDANTS -- AND I'M GOING TO USE THAT WORD -- THAT THE

25  DEFENDANTS HAVE BEEN ABLE TO GAIN ACCESS TO NIANTIC'S SERVERS

```
1    IN WAYS THAT ORDINARY USERS WOULD NOT BE ABLE TO.  AND THE

2    EXPLANATION THAT MR. LANZ GIVES FOR WHY THIS HAS BEEN ABLE TO

3    OCCUR IS THAT THE DEFENDANTS ARE INJECTING CODE IN NIANTIC'S

4    CODE -- I THINK THAT'S THE VERB USED IS INJECTING -- AND

5    OTHERWISE MODIFYING THAT CODE SO THAT DEFENDANTS CAN GAIN

6    ACCESS.

7            MR. MARINO:  YOUR HONOR, THAT IS THE HEART OF THE

8    DISPUTE.  IF WHAT MR. LANZ IS SAYING WERE TRUE, THAT WOULD BE

9    A DIFFERENT CASE.

10       BUT MR. HUNT HAS SUBMITTED A DECLARATION WITH THE SAME

11   LEVEL OF SPECIFICITY, WHICH IS NEITHER ONE OF THEM SHOWED US

12   THE CODE, EVEN THOUGH MR. HUNT HAS IT, AND MR. LANZ IS

13   GUESSING WHAT'S IN IT, TO SHOW WHICH ONE OF THEM IS RIGHT.

14           THE COURT:  WHAT IS THE ALTERNATIVE WAY OF THE

15   DEFENDANTS GAINING ACCESS TO NIANTIC'S SERVER?

16       I TAKE YOUR POINT THAT NIANTIC HASN'T SEEN YOUR CLIENT'S

17   SOURCE CODE.  WE ARE IN THE NORTHERN DISTRICT OF CALIFORNIA,

18   SO WE ARE CONSTANTLY REFEREEING PEOPLE'S ACCESS TO EACH

19   OTHER'S SOURCE CODE.  I GET THAT ARGUMENT.

20       BUT -- AND SO IF THAT'S RIGHT, THEN -- IF THAT'S RIGHT,

21   THEN MR. LANZ HASN'T SEEN GLOBAL++'S SOURCE CODE.

22           MR. MARINO:  I THINK THAT IS A FAIR ASSUMPTION.

23           THE COURT:  BUT HE DOES HAVE A FOUNDATION OF PERSONAL

24   KNOWLEDGE TO KNOW WHEN THERE HAS BEEN UNAUTHORIZED ACCESS TO

25   NIANTIC SERVERS.
```

1    SO MY QUESTION IS, WHAT IS A PLAUSIBLE ALTERNATIVE

2    EXPLANATION FOR THAT EVENT?

3         **MR. MARINO:**  IT'S VERY SIMPLE.  I THINK WHAT MR. LANZ

4    IS SAYING, IF YOU READ CAREFULLY, BECAUSE THOSE ARE VERY --

5    AGAIN, THERE'S NO EVIDENCE CITED, PURELY A DECLARATION WRITTEN

6    PRESUMABLY BY HIS LAWYERS.

7    WHAT I READ THAT TO MEAN --

8         **THE COURT:**  EVERYONE'S DECLARATIONS ARE WRITTEN BY

9    THEIR LAWYERS, INCLUDING MR. HUNT'S.  BUT, ANYWAY, GO AHEAD.

10        **MR. MARINO:**  WHAT I THINK THEY ARE TRYING TO SAY

11   THERE IS, BECAUSE YOU ARE USING GLOBAL++ CODE, WHICH WE DON'T

12   THINK IS NIANTIC CODE, WHEN YOU ACCESS THE SERVER, THAT'S

13   UNAUTHORIZED.

14   WHAT I AM TELLING YOU AND WHAT OUR ARGUMENT IS, IS THAT IT

15   IS EXACTLY THE NIANTIC CODE ON THE USER'S PHONE AND ONLY THE

16   NIANTIC CODE THAT IS ACCESSING THE NIANTIC SERVER.  THAT'S

17   WHAT MR. HUNT SAID IN HIS DECLARATION.  AND I BELIEVE IT TO BE

18   CORRECT.

19   AND I BELIEVE THAT AS WE GO FORWARD IN DISCOVERY AND WE

20   MAKE THE SOURCE CODE AVAILABLE TO THEM, THEY WILL BE ABLE TO

21   CONFIRM THAT AND UNDERSTAND THAT IT IS JUST THE LEGAL ARGUMENT

22   THAT IS -- I DON'T THINK WE ARE CONTESTING THE FACT.  I THINK

23   WE ALL KNOW THAT THE ONLY CODE ON THE PHONE THAT CAN ACCESS A

24   NIANTIC SERVER IS A NIANTIC CODE.  THERE IS A LOT OF TECHNICAL

25   REASONS FOR IT WITHOUT JUMPING TOO MUCH INTO THE WEEDS.

1      WHAT THEY ARE SAYING IS, BECAUSE THEY CLAIM THAT WE

2   MODIFIED THE NIANTIC CODE, THAT'S WHAT MAKES IT AN

3   UNAUTHORIZED ACCESS.  THAT'S WHY WHEN I PUT IN EVIDENCE AND

4   CONTEST DISPUTE THAT BASIC PREMISE, I'M ALSO DISPUTING THE

5   CONCLUSION THEY DRAW THAT THE NIANTIC CODE ACCESSING THE

6   NIANTIC SERVER IS AN UNAUTHORIZED ACCESS WHERE, IN FACT, IT IS

7   EXACT CODE THEY HAVE WRITTEN TO ACCESS THE SERVERS IN THE WAYS

8   THAT THEY INTENDED IT TO.

9      **THE COURT:**  ALL RIGHT.  MR. MARINO, I KNOW I'VE MADE

10   A LOT OF GENEROUS COMMENTS ABOUT HOW MUCH I LOVE ORAL

11   ARGUMENT, BUT IT'S 3:00 AND, UNFORTUNATELY, I HAVE 299 OTHER

12   CASES.  SO I'M GOING TO ASK YOU TO WRAP IT UP.

13      **MR. MARINO:**  OKAY.  THE OTHER IMPORTANT POINTS THAT I

14   WOULD LIKE TO ADDRESS ARE ON THE IRREPARABLE HARM POINT, AND

15   THAT'S THE *PERFECT10* CASE.  AGAIN, JUST LIKE THE *GALOOB* CASE

16   WAS REALLY IMPORTANT, THE *PERFECT10* CASE IS A SEMINAL CASE IN

17   THE NINTH CIRCUIT.

18      **THE REPORTER:**  I'M SORRY?

19      **MR. MARINO:**  IT'S A SEMINAL CASE IN THE NINTH

20   CIRCUIT --

21      **THE COURT:**  MADAM REPORTER, *PERFECT10*, NO SPACE.

22      **THE REPORTER:**  THANK YOU.

23      **MR. MARINO:**  AND THE REASON WHY THAT IT CHANGED THE

24   CENTER FOR IRREPARABLE HARM, BEFORE *PERFECT10*, IT WAS YOU JUST

25   NEED A SHOWING OF LIKELY SUCCESS ON THE MERITS, IRREPARABLE

```
1   HARM WAS ASSUMED, AND AFTER *PERFECT10*, YOU HAVE TO PROVE IT.

2   HERE WE HAVE TWO FACTS THAT THE *PERFECT10* COURT ITSELF

3   SPECIFICALLY NOTED IN DENYING THE PRELIMINARY INJUNCTION IN

4   THAT CASE.

5        NUMBER ONE, THAT THERE IS NO EVIDENCE IN THE RECORD OF

6   EVEN A SINGLE USER OF NIANTIC'S GAMES WAS STOPPED PLAYING THE

7   GAME AS A RESULT OF SPOOFING.  THAT IS THEIR ALLEGATION.  THEY

8   SAID, LOOK -- IT IS IN THE DECLARATION OF MR. FRANK.  HE SAID

9   THERE ARE THESE GENERAL COMPLAINTS WE GOT.  I'VE READ EACH ONE

10  OF THEM.  AND THEY ALL SAY, YES, THERE ARE SPOOFERS.  NOT ONE

11  PERSON SAYS, AND I AM, THEREFORE, GOING TO STOP PLAYING THE

12  GAME.

13       THAT'S EXACTLY WHAT THE SUPREME COURT SAID.

14            **THE COURT:**  IF I HAVE AN ECONOMICS DEGREE AND SOME

15  COMMON SENSE, AM I REQUIRED TO HAVE ANYTHING MORE?

16       IF SOMEONE SAYS TO ME, YOU HAVE TWO CHOICES.  YOU CAN

17  EITHER CONTINUE TO PLAY THIS GAME AND YOU CAN USE EXTRA

18  PROGRAMMING TO GIVE YOURSELF AN ADVANTAGE AGAINST OTHER

19  PLAYERS OR YOU CAN LOSE.  THOSE ARE YOUR CHOICES.

20       WHY WOULDN'T I STOP PLAYING IF I DIDN'T FEEL LIKE

21  CHEATING?

22            **MR. MARINO:**  I DON'T THINK PLAYERS ARE PLAYING

23  AGAINST EACH OTHER.  I THINK THEY ARE ALL PLAYING IN THE SAME

24  ENVIRONMENT, BUT THEY ARE ALL SCORING ACHIEVEMENTS ON THEIR

25  OWN.
```

1        **THE COURT:**  YOU DON'T THINK THERE'S A HUGE COMMUNITY

2    OF USERS COMPARING NOTES ABOUT SCORES AND DOING THINGS LIKE

3    SHARING GEOGRAPHIC DATA?

4        **MR. MARINO:**  I AM SURE THERE IS.

5        **THE COURT:**  SO AM I.

6     SO I MEAN, WHETHER OR NOT THEY ARE PLAYING AGAINST EACH

7    OTHER, I JUST THINK PART OF BEING A GAMER IS TO HAVE A CERTAIN

8    SENSE OF SATISFACTION ABOUT WHERE YOU STAND IN THE COMMUNITY

9    OF GAMERS.  I AM SURE THAT'S NOT TRUE FOR EVERY USER, BUT I

10   JUST THINK IT STANDS TO REASON THAT IT MUST BE TRUE FOR AT

11   LEAST SOME SUBSTANTIAL PORTION OF USERS, DON'T YOU THINK?

12       **MR. MARINO:**  I THINK NIANTIC HAS ACCESS TO MILLIONS

13   OF USERS.  IN FACT, THEY KNOW WHO THOSE USERS ARE.

14       **THE COURT:**  RIGHT.

15       **MR. MARINO:**  THEY CAN TRACK WHETHER THEY STOPPED

16   PLAYING THE GAME OR NOT.

17       **THE COURT:**  YOUR POINT IS, IF THAT'S TRUE, EVEN IF IT

18   IS TRUE AS A MATTER OF COMMON SENSE, IT WAS THEIR BURDEN TO

19   PUT IN SOME EVIDENCE.

20       **MR. MARINO:**  EXACTLY.

21    THE SAME WAS TRUE IN *PERFECT10*.  *PERFECT10* IT WAS

22   UNDISPUTED THAT THE COMPANY WAS GOING BANKRUPT.  AND IT WAS

23   ASSUMED -- IF THE COURT FOUND THAT THERE WAS A LIKELIHOOD OF

24   SUCCESS ON THE MERITS, THAT IT WAS BECAUSE THE IMAGES WERE

25   AVAILABLE THROUGH GOOGLE.  AND YET THEY SAID, BUT, YOU, THE

1     PLAINTIFF, DIDN'T GIVE ME ANY EVIDENCE THAT YOU LOST A SINGLE

2     CUSTOMER.  IT STANDS TO REASON THAT YOU'VE LOST CUSTOMERS BUT

3     YOU HAVEN'T LINKED IT, YOU HAVEN'T ESTABLISHED THE CAUSAL

4     NEXUS BETWEEN GOOGLE MAKING YOUR IMAGES AVAILABLE AND YOU

5     LOSING THAT CUSTOMER, WHICH YOU COULD.  I MEAN, IT'S YOUR

6     CUSTOMER.

7           **THE COURT:**  DOES MR. HUNT'S DECLARATION SAY THAT A

8     GLOBAL++ GETS ITS GEOGRAPHIC INFORMATION FROM OTHER USERS?

9           **MR. MARINO:**  I THINK --

10          **THE COURT:**  NOBODY SAYS QUITE CLEARLY THAT THEY

11    DIDN'T DO ANYTHING TO NIANTIC'S CODE.

12          **MR. MARINO:**  I THINK YOU ARE ABSOLUTELY RIGHT.  IT

13    DOES SAY THE SECOND THING.  I DON'T THINK WE GOT INTO THE

14    DETAILS OF THE FIRST BECAUSE I THINK THAT IT SHOULDN'T BE

15    REALLY RAISED.  IN THE OPENING BRIEFING IT WAS RAISED MORE

16    SQUARELY IN THE REPLY BRIEF, BUT I INVESTIGATED THAT AS A

17    RESULT IN PREPARATION.  I BELIEVE THAT'S WHAT THE EVIDENCE

18    WILL SHOW IN THIS CASE.

19       THE SECOND POINT FROM *PERFECT10* -- AGAIN, THERE ARE TWO

20    FUNDAMENTAL FACTS THAT THAT COURT FOCUSED ON WAS, OKAY, YOU

21    ARE COMPLAINING ABOUT GOOGLE BUT THERE ARE OTHER SEARCH

22    ENGINES THAT DO THE SAME THING.

23       AND, HERE, THERE ARE OTHER COMPANIES THAT DO THE SAME

24    THING.  THEY OFFER SPOOFING.  WE POINTED OUT ONE IN

25    PARTICULAR.  I'M GOING TO JUST FOCUS ON ONE, ISPOOFER.

1    **THE COURT:**  YOU ARE VERY GOOD ON YOUR FEET AT THIS

2    POINT.  YOU HAVE GOTTEN ME TO REALLY THINK ABOUT SOME THINGS I

3    HADN'T THOUGHT ABOUT.  BUT ON THIS POINT, YOU HAVE A VERY

4    TOUGH ROW TO HOE.

5    **MR. MARINO:**  LET ME JUST --

6    **THE COURT:**  WE HAVE A TREMENDOUS AMOUNT OF

7    INTELLECTUAL PROPERTY INFRINGEMENT OF EVERY VARIETY HERE IN

8    THE NINTH CIRCUIT, INCLUDING A MASSIVE NUMBER OF TRADEMARK AND

9    COPYRIGHT CLAIMS.  AND THE IDEA THAT WHEN SOMEONE COMES TO THE

10   FEDERAL COURT TO GO AFTER ONE INFRINGER, IT'S SIMPLY

11   SUFFICIENT TO STOP THE TRAIN IN ITS TRACKS FOR THE DEFENDANT

12   TO SAY, THERE ARE OTHER INFRINGERS ALSO, THAT'S A TOUGH ONE.

13   **MR. MARINO:**  GIVE ME JUST 20 SECONDS.  I'LL JUST

14   FOCUS ON THIS ONE, OKAY?

15   THE REASON I'M FOCUSING ON ISPOOFER IS TWOFOLD.  NUMBER

16   ONE, IN THE SAME EMAILS THAT I DESCRIBED FOR YOU WHERE THEY

17   SAID THEY FOUND OUT FROM THEIR USERS THAT IT WAS GLOBAL++, IT

18   ALSO SAYS AN ISPOOFER.  SO THERE WERE JUST --

19   **THE COURT:**  WHAT IF THEY WENT AFTER ISPOOFER FIRST

20   AND ISPOOFER SAID, WHY DIDN'T YOU GO AFTER THE GLOBAL++?

21   **MR. MARINO:**  I AGREE THAT IS A PRACTICAL --

22   **THE COURT:**  I DON'T MEAN THAT QUESTION RHETORICALLY.

23   WHAT THEN?  LET'S SAY I WAS PRESIDING OVER THAT CASE.  WHAT

24   SHOULD I DO?

25   **MR. MARINO:**  I THINK ON THE *PERFECT10*, YOU HAVE TO

1    DENY THE PRELIMINARY INJUNCTION BOTH.  AND I THINK THAT HAS

2    HAPPENED TO ME.  BUT I HAD A CASE --

3         **THE COURT:**  I AM SORRY THAT HAPPENED.

4       ARE YOU SAYING THAT IT IS INCUMBENT UPON AN ENTITY THAT

5    BELIEVES IT'S THE VICTIM OF INFRINGEMENT SIMULTANEOUSLY TO SUE

6    EVERY ALLEGED INFRINGER OR THEY CAN'T GET INJUNCTIVE RELIEF?

7    IS THAT THE RULE?

8         **MR. MARINO:**  I THINK *PERFECT10* COMES VERY CLOSE TO

9    STATING THAT, OR AT LEAST ALL THE ONES THAT YOU KNOW ABOUT.

10      LET ME PROPOSE THIS TO YOU:  THE ONES WHO ACTUALLY HAVE

11   KNOWLEDGE ABOUT.  THEY KNEW ABOUT ISPOOFER AND GLOBAL++ AT THE

12   SAME TIME.  THE PROBLEM IS VERY SIMPLE.  IT'S CAUSATION.  YOU

13   KNOW WHAT HAS HAPPENED TO THE GLOBAL++ USER?  THE GLOBAL++ HAS

14   BEEN SHUT DOWN FOR MONTHS.  NOT THE SAME WITH ISPOOFER.

15        **THE COURT:**  SOMETIMES -- WELL, I'LL TAKE A LOOK.  I'M

16   NOT SURE THE LAW SAYS WHAT YOU THINK IT SAYS ON THIS POINT,

17   BUT I WILL TAKE ANOTHER LOOK.

18      BUT I WOULD SAY, I THINK IT IS A PERFECTLY LEGITIMATE

19   LITIGATION STRATEGY, AS A MATTER OF COST SAVINGS IF NOTHING

20   ELSE, TO FIND ONE INFRINGER AND MAKE AN EXAMPLE OUT OF THAT

21   PERSON AND THEN GO TO EVERYBODY ELSE IN THE MARKET AND SAY,

22   YOU KNOW, YOU COULD SPEND A LOT OF MONEY ONLY TO HAVE THE SAME

23   THING HAPPEN TO YOU OR YOU COULD JUST QUIT NOW.

24      WHEN KING HENRY VIII BROKE AWAY FROM THE CATHOLIC CHURCH

25   AND ESTABLISHED THE CHURCH OF ENGLAND, HE WANTED TO BRING

1    EVERYBODY ELSE AROUND.  AND THE WAY HE DID IT AT FIRST -- HE

2    REALLY WANTED THOMAS MOORE TO COME OVER.  THAT WAS SORT OF THE

3    BRASS RING.  BUT AT FIRST WHAT HE DID WAS, HE STARTED KILLING

4    BISHOPS ONE AT A TIME PUBLICLY JUST TO MAKE AN EXAMPLE TO

5    EVERYBODY ELSE.

6        SO MY POINT IS, IT IS A TRIED AND TRUE STRATEGY.  AND I

7    THINK THAT A COMMERCIAL ENTITY IS PROBABLY ENTITLED TO PURSUE

8    IT.

9            **MR. MARINO:**  I THINK AS A STRATEGY, I COULDN'T AGREE

10   WITH YOU MORE, YOUR HONOR.  I DON'T KNOW IF THE NINTH CIRCUIT

11   AGREES WITH THAT.

12       THANK YOU.

13           **THE COURT:**  THANK YOU.

14       MR. HINNEN, I REALLY WANT YOU TO FOCUS ON THE MERITS OF

15   THIS -- WHETHER OR NOT THERE REALLY HAS BEEN A BREACH OF

16   NIANTIC'S CODE.

17       MR. MARINO IS CORRECT.  MR. HUNT'S DECLARATION SAYS WHAT

18   MR. MARINO SAYS IT SAYS ON THIS POINT.  YOU ARE WELCOME TO

19   ADDRESS ANY OTHER POINTS YOU WANT, BUT THAT'S THE ONE I HAVE

20   ON THE TOP OF MY MIND RIGHT NOW.

21           **MR. HINNEN:**  GREAT.  THANK YOU, YOUR HONOR.  I WILL

22   DO THAT.

23       SO FIRST, YOUR HONOR, IT JUST BEARS NOTING THAT 90 PERCENT

24   OF WHAT WE JUST HEARD WAS NOT IN DEFENDANTS' PAPERS, DESPITE

25   THE FACT THAT THEY HAD OUR PAPERS TO RESPOND TO, THE LOCAL

1     RULES REQUIRE --

2              **THE COURT:**  NO, I GET THAT.  THAT'S WHY I FOCUSED ON

3     WHAT WAS ACTUALLY MR. HUNT'S DECLARATION.

4              **MR. HINNEN:**  GREAT.

5        SO, SECOND, I THINK YOUR HONOR JUMPED TO THE RIGHT LOGICAL

6     CONCLUSION, THAT THEY MUST HAVE OBTAINED THIS MASSIVE DATABASE

7     OF NIANTIC'S SECRET SAUCE, ITS PROPRIETARY AND CONFIDENTIAL

8     POINT OF INTEREST DATA SOMEWHERE.  THEY EITHER OBTAINED IT BY

9     ACCESSING WITHOUT AUTHORIZATION NIANTIC SERVERS, AS MR. LANZ'S

10    INVESTIGATION LED HIM TO BELIEVE AND HE HAS SAID IN HIS

11    DECLARATION, OR AS MR. MARINO POSITED IN HIS REMARKS JUST NOW,

12    THEY'VE ENGAGED IN UNAUTHORIZED ACCESS OF INDIVIDUAL USERS'

13    APPS ON THEIR PHONES TO EXTRACT THE POINT-OF-INTEREST DATA

14    FROM THOSE INDIVIDUAL USERS' APPS.  THAT'S PERHAPS A MORE

15    CONCERNING SET OF FACTS THAN ACCESSING NIANTIC'S SERVER.

16             **THE COURT:**  I THINK IN THE RECORD, THAT POINT STANDS

17    UNREBUTTED.  IF I GO BACK AND REALLY FLYSPECK THE

18    DECLARATIONS, I THINK WHAT I'M GOING TO FIND IS THAT YOU'VE --

19    YOUR CLIENTS HAVE SUBMITTED EVIDENCE THAT THIS

20    POINT-OF-INTEREST DATA IS CONFIDENTIAL AND PROPRIETARY AND

21    THAT WHILE THERE HAS BEEN A REBUTTAL AS TO SOME POINTS, FOR

22    EXAMPLE, AS TO THE POINT IN MR. HUNT'S DECLARATION THAT I JUST

23    REFERRED TO, THAT AS TO THAT POINT THERE HASN'T BEEN.  AND SO

24    THERE IS GOING TO BE IN THE RECORD SOME UNREBUTTED FACTUAL

25    EVIDENCE REGARDING MISUSE OR MISAPPROPRIATION OF NIANTIC'S

1    CONFIDENTIAL DATA.

2         **MR. HINNEN:**  I THINK THAT'S RIGHT, YOUR HONOR.  WHAT

3    ELSE IS IN THE RECORD REGARDING THIS IS THAT THERE HAS BEEN A

4    SORT OF ONGOING ARMS RACE BETWEEN NIANTIC AND THE DEFENDANTS

5    IN WHICH THE DEFENDANTS HAVE TRIED DIFFERENT TECHNICAL

6    MEASURES TO CIRCUMVENT NIANTIC'S SECURITY CODE AND THAT KIND

7    OF THING.  SO IT IS POSSIBLE THAT AT ONE POINT IT WAS BEING

8    OBTAINED DIRECTLY FROM THE SERVERS AND WITH RESPECT TO

9    SUBSEQUENT VERSIONS OF THE CHEATING PROGRAMS THAT'S ACTUALLY

10   ACCESSING INDIVIDUAL USERS' APPS WITHOUT AUTHORIZATION.

11        I WANT TO JUST -- MINDFUL AGAIN OF TIME, I WANT TO ADDRESS

12   A COUPLE OF OTHER THINGS REAL QUICKLY.

13        IF THE COURT LOOKS AT WHAT IS DOCKET 26-1, WHICH IS ONE OF

14   THE HUNT DECLARATIONS, I THINK THERE ARE A COUPLE OF THINGS

15   WORTH POINTING OUT IN THAT.

16                    (PAUSE IN THE PROCEEDINGS.)

17        **MR. HINNEN:**  THAT DECLARATION IS VERY BRIEF.

18        **THE COURT:**  I HAVE IT.

19        **MR. HINNEN:**  GREAT, YOUR HONOR.

20        SO THE POINTS I WANT TO MAKE REGARDING IT ARE IN

21   PARAGRAPH 1 THAT MR. HUNT IS THE CEO OF IT HAVEN, INC.  AGAIN,

22   IT COULD JUST BE A COINCIDENCE THAT APP HAVEN IS A WEBSITE

23   THAT NOW HOSTS -- AND THEN IN PARAGRAPH 7, THE PRODUCTS AND

24   SERVICES THAT PLAINTIFFS IN THIS ACTION ALLEGES GLOBAL++

25   CREATED AND OPERATED HAVE BEEN DISABLED AND ARE NO LONGER

1    ACTIVE.

2        I THOUGHT I HEARD MR. MARINO SAY THAT THERE WAS NOTHING IN

3    THE RECORD THAT INDICATED THAT THAT WAS THE CASE, AND YET

4    MR. HUNT'S SWEARING UNDER OATH THAT IT IS THE CASE HERE.

5        **THE COURT:**  AND ALSO THAT HE HAS THE POWER TO MAKE

6    THAT HAPPEN AND THAT IS -- IT IS DIFFICULT FOR HIM NOT TO HAVE

7    A CONNECTION TO GLOBAL++ IF HE WAS ABLE TO CAUSE GLOBAL++ TO

8    DISABLE ITS SOFTWARE.

9        **MR. HINNEN:**  ABSOLUTELY CORRECT, YOUR HONOR.

10       ONE OTHER THING THAT I THINK IS WORTH TAKING JUST A MINUTE

11   TO LOOK AT IS 39-2.

12                   (PAUSE IN THE PROCEEDINGS.)

13       **THE COURT:**  I HAVE IT.

14       **MR. HINNEN:**  IT'S EXHIBIT G-1, WHICH BEGINS AT

15   PAGE 23.

16       **THE COURT:**  YES.

17       **MR. HINNEN:**  THIS IS THE APP HAVEN WEBSITE AS OF

18   AUGUST 14TH, 2019.  YOU WILL SEE ON THE SECOND PAGE THERE THAT

19   THE FIRST PROGRAM BEING OFFERED IS POKEGO++ 2.0 OFFERED BY

20   GLOBAL++.  THE SECOND -- THE THIRD ONE, EXCUSE ME, IS

21   INGRESS PRIME++ OFFERED BY --

22       **THE COURT:**  I AM SORRY.  HOLD ON A MOMENT.

23       YES.  OKAY.  YEAH.

24       **MR. HINNEN:**  INGRESS IS ANOTHER OF NIANTIC'S

25   PROGRAMS.  THIS IS, YOUR HONOR, EXACTLY A MONTH TO THE DAY

1    AFTER MR. HUNT SWORE TO THIS COURT UNDER OATH THAT THE

2    PLAINTIFF -- THE PRODUCTS AND SERVICES THAT GLOBAL++ CREATED

3    AND OPERATED HAVE BEEN DISABLED AND ARE NO LONGER ACTIVE.

4    THAT SEEMS NOT TO BE THE CASE.

5        MR. MARINO ARGUED THAT EVERYTHING IN OUR PRELIMINARY

6    INJUNCTION MOTION IS BORNE OUT OF OUR DERIVATIVE WORKS CLAIM.

7    FIRST OF ALL, THAT'S SELF-EVIDENTLY NOT TRUE AS A MATTER OF

8    LOGIC WITH RESPECT TO THE COPYING CLAIM.  THEY CAN'T HAVE

9    CREATED A DERIVATIVE WORK BEFORE THEY COPIED THE WORK IN THE

10   FIRST PLACE.

11       SECOND OF ALL, IT'S NOT TRUE OF THE CFAA CLAIM.

12   UNAUTHORIZED ACCESS TO A SERVER IS INDEPENDENT OF WHETHER THAT

13   OCCURS BY A DERIVATIVE WORK OR NOT.

14       THIRD OF ALL, IT'S NOT TRUE OF THE CONTRACT CLAIM.  THE

15   CONTRACT PROHIBITS USERS FROM ENGAGING IN ALL KINDS OF CONDUCT

16   AMONGST WHICH ARE CHEATING AND OTHER THINGS AS WELL.

17       AND IT -- YOU KNOW, ANOTHER THING THAT THE CONTRACT

18   PROHIBITS IS IT PROHIBITS SCRAPING POINT-OF-INTEREST DATA OR

19   OTHER CONFIDENTIAL AND PROPRIETARY INFORMATION FROM THE GAME.

20       WITH RESPECT TO THE... THERE'S NO EVIDENCE IN THE RECORD

21   THAT PEOPLE ARE BEING DRIVEN FROM THE GAME.  I AGREE, YOUR

22   HONOR, THAT IT DOESN'T TAKE A HUGE LEAP OF LOGIC TO INFER THAT

23   THAT'S THE CASE, BUT JUST TO NOTE ON DOCUMENT 7-5 NOW --

24           **THE COURT:**  YES.

25           **MR. HINNEN:**  -- EXHIBIT F, WHERE ONE OF THE PLAYERS

1    SAYS, THIS IS STARTING TO PUSH PLAYERS AWAY FROM THE GAME.

2         IT'S ALSO THE CASE IN THE FRANK DECLARATION -- THE FIRST

3    FRANK DECLARATION, WHICH IS DOCUMENT 7-4 AT PARAGRAPH 21.

4         MR. FRANK SAYS, BY REDUCING THE NUMBER OF PEOPLE WHO PLAY

5    NIANTIC'S GAMES AND BY REDUCING THE AMOUNT OF ENTHUSIASM THAT

6    PLAYERS HAVE FOR NIANTIC'S GAMES, THE CHEATING PROGRAMS

7    TARNISH NIANTIC'S REPUTATION AND ERODE THE GOODWILL ASSOCIATED

8    WITH NIANTIC'S GAMES.  IN ADDITION, BY REDUCING NIANTIC'S USER

9    BASE AND USER ENGAGEMENT, THE CHEATING PROGRAMS DEPRIVE

10   NIANTIC OF PROFITS IT OTHERWISE WOULD HAVE OBTAINED AS A

11   RESULT OF IN-GAME PURCHASES WHICH ARE A CRITICAL COMPONENT OF

12   NIANTIC'S BUSINESS MODEL AND INCOME STREAM.

13        HE MAKES THE SAME POINT IN HIS SECOND DECLARATION, WHICH

14   WE SUBMITTED IN RESPONSE TO THE SECOND DECLARATION.

15        SO I WOULD SUBMIT, YOUR HONOR, THAT THERE'S AMPLE EVIDENCE

16   IN THE RECORD THAT THEY ARE BOTH DRIVING PLAYERS AWAY FROM THE

17   GAME AND REDUCING NIANTIC'S IN-APP PURCHASES AND THEIR

18   REVENUE.

19        I GUESS PERHAPS THE LAST THING I WOULD SAY PENDING A QUICK

20   REVIEW OF MY NOTES, YOUR HONOR, TO ROUND UP ANYTHING ELSE, IS

21   THAT, YOU KNOW, IN ASKING US TO IDENTIFY THE USERS WHO ARE NO

22   LONGER PLAYING THE GAME, MR. MARINO IS ASKING US TO IDENTIFY

23   THE DOG THAT ISN'T BARKING IN THE NIGHT.  AND THAT'S A VERY

24   DIFFICULT, YOU KNOW, FACTUAL INQUIRY TO UNDERTAKE, WHICH IS

25   PRECISELY WHY THESE ARE IRREPARABLE DAMAGES, PRECISELY WHY

1    IT'S DIFFICULT TO CALCULATE THE MONETARY HARM --

2         **THE COURT:**  AT SOME POINT YOU MAY NEED TO.

3         **MR. HINNEN:**  AT SOME POINT WE MAY, YOUR HONOR.  I

4    THINK THAT DISCOVERY WILL BE A TREMENDOUS ASSISTANCE IN THAT,

5    BUT AT THIS POINT IT'S VERY, VERY, VERY DIFFICULT TO.

6         IF YOUR HONOR WILL INDULGE ME FOR JUST A SECOND, LET ME

7    JUST TAKE A QUICK LOOK AND SEE IF THERE'S ANYTHING ELSE.

8                  (PAUSE IN THE PROCEEDINGS.)

9         **MR. HINNEN:**  I DO THINK, YOUR HONOR, THERE IS

10   TESTIMONY IN THE RECORD ABOUT A COMPARISON OF THE CHEATING

11   PROGRAM CODE TO THE LEGITIMATE NIANTIC CODE.  I THINK THE

12   TESTIMONY IS THAT IT'S 99 PERCENT THE SAME, THAT SOMEONE

13   ACTUALLY DID LOOK AT THE CODE SIDE BY SIDE AND DETERMINED THAT

14   THEY ARE 99 PERCENT THE SAME.

15        **THE COURT:**  WHERE IS THAT EVIDENCE?

16        **MR. HINNEN:**  I CAN FIND THOSE IN THE RECORD, YOUR

17   HONOR.  I KNOW IT IS IN THE FIRST LANZ DECLARATION, I BELIEVE.

18                  (PAUSE IN THE PROCEEDINGS.)

19        **MR. HINNEN:**  SO, YOUR HONOR, IT IS SECTION E OF THAT

20   DECLARATION.  AND IT WALKS THROUGH AN ANALYSIS OF POKEGO++

21   BEGINNING AT PARAGRAPH 38 AND CONCLUDES THAT THE VERSIONS --

22   SORRY, YOUR HONOR.  I'M JUST READING IN REALTIME -- CONTAINS

23   MORE THAN 99 PERCENT OF THE CLIENT CODE IN -- THE CHEATING

24   PROGRAM CONTAINS MORE THAN 99 PERCENT OF THE CLIENT CODE IN

25   POKÉMON GO, THE COPYRIGHTED VERSION.  IT THEN UNDERTAKES

1    THE --

2            **THE COURT:**  IF I ACCEPT THAT REPRESENTATION, AM I

3    REQUIRED TO ENGAGE IN A CREDIBILITY DETERMINATION BETWEEN YOUR

4    DECLARANT AND MR. HUNT?

5        I AM NOT SAYING I WOULDN'T, BUT I NEED TO KNOW WHETHER I'M

6    REQUIRED TO.

7            **MR. HINNEN:**  I THINK YOUR HONOR HAS TO CERTAINLY

8    EXAMINE THE WEIGHT OF ALL THE EVIDENCE BEFORE THE COURT, WHICH

9    WOULD INCLUDE MY CLIENT'S DECLARATION BASED ON HIS

10   INVESTIGATION AND BACKGROUND AND TESTIMONY, AND MR. HUNT'S

11   DECLARATION AS WELL.

12           **THE COURT:**  FAIR ENOUGH.

13           **MR. HINNEN:**  IN ANY EVENT, THAT DECLARATION WALKS

14   THROUGH A SIMILAR ANALYSIS FOR INGRESS++ AND POTTER++.

15       TO THE COURT'S POINT REGARDING CREDIBILITY, YOUR HONOR, I

16   THINK IT BEARS TAKING A QUICK LOOK AT MR. HUNT'S SECOND

17   DECLARATION IN SUPPORT OF HIS OPPOSITION TO THE PRELIMINARY

18   INJUNCTION MOTION, AND I'M STRUGGLING QUICKLY TO FIND IT HERE.

19       IT IS DOCUMENT 32-1, YOUR HONOR.

20                  (PAUSE IN THE PROCEEDINGS.)

21           **MR. HINNEN:**  ARE YOU THERE, YOUR HONOR?

22           **THE COURT:**  NO.  I WAS WAITING FOR YOU TO TELL ME WHY

23   I SHOULD --

24           **MR. HINNEN:**  OKAY.  SURE.  SURE.

25       THAT DOCUMENT, WHICH IS ALSO A DECLARATION UNDER OATH,

```
1    FIRST OF ALL, SPENDS A LOT OF TIME ATTRIBUTING CONDUCT TO

2    GLOBAL++, WHICH MR. HUNT HAS ALREADY TOLD THE COURT IS A

3    NONENTITY THAT DOESN'T EXIST, BUT IT ALSO PURPORTS TO PUT

4    TESTIMONY BEFORE THE COURT BASED ON PERSONAL KNOWLEDGE OF

5    WHAT'S HAPPENED WITH NIANTIC'S REVENUES, WHAT'S HAPPENED WITH

6    THE NUMBER OF NIANTIC'S USERS, WHEN NIANTIC'S REVENUES WENT

7    UP, WHEN THEY WENT DOWN.  THIS IS IN PARAGRAPH --

8             THE COURT:  I'M NOT FOCUSED ON THAT PART.

9             MR. HINNEN:  -- 11 AND 12.  OKAY, YOUR HONOR.  IT

10   DOES, IF YOUR HONOR IS INCLINED TO ENGAGE ON A CREDIBILITY

11   ASSESSMENT, IT GOES TO MR. HUNT'S CREDIBILITY.

12            THE COURT:  FAIR ENOUGH.

13            MR. HINNEN:  I BELIEVE THAT'S ALL I HAVE, YOUR HONOR.

14            THE COURT:  ALL RIGHT.  THANKS.

15            MR. MARINO:  I DON'T WANT TO ARGUE.  I REQUEST FOR MY

16   CLIENT.

17            THE COURT:  I SEE.  SURE.

18            MR. MARINO:  I DO THIS JUST BECAUSE IT IS A

19   PRELIMINARY INJUNCTION MOTION.  THE COURT MENTIONED THAT THERE

20   IS A TENTATIVE AGAINST US.

21            THE COURT:  YES.

22            MR. MARINO:  SO I THINK IT'S IMPORTANT TO -- AND

23   THAT'S WHY MR. HUNT CAME TODAY.

24       TO THE EXTENT THAT HE HASN'T REBUTTED IN THE RECORD FACTS

25   THAT WERE ALLEGED BY NIANTIC, I WILL SUBMIT THAT THERE IS A
```

1    LOT OF FACTS ALLEGED IN THE ORIGINAL MOTION, A LOT MORE FACTS

2    ALLEGED IN THE REPLY, WHICH, OF COURSE, MY CLIENT HASN'T HAD

3    THE OPPORTUNITY TO REBUT, HE WOULD REQUEST THE OPPORTUNITY

4    EITHER BY TESTIFYING OR SUBMITTING A SUPPLEMENTAL DECLARATION.

5    AND HE COULD REPLY (PHONETIC) TO ARGUMENTS THAT WERE EXPANDED

6    IN THE FIRST INSTANCE IN THE REPLY.

7          **THE COURT:**  I AM NOT GOING TO ENTERTAIN THAT REQUEST

8    AT 3:24 ON THE DAY OF THE HEARING.  THE REQUEST IS DENIED.

9      I'M GOING TO DO SOMETHING THAT I HAVE EITHER NEVER DONE

10    BEFORE, OR IF I HAVE DONE IT, I DON'T REMEMBER IT, WHICH MEANS

11    I CAN'T HAVE DONE IT MORE THAN ONCE BEFORE, AND THAT IS, I'M

12    GOING TO ORDER YOU TO MEDIATION WITHIN THE NEXT 90 DAYS.

13      YOU CAN DO IT FOR FREE.  YOU CAN USE THE COURT'S MEDIATION

14    PROGRAM.  YOU CAN PICK YOUR OWN PERSON AND PAY.  I DON'T CARE.

15    YOU DON'T NEED TO SETTLE EITHER.  THE POINT OF THIS IS NOT

16    THAT I NEED YOU TO SETTLE.  I DON'T NEED YOU TO SETTLE.

17      IT IS AN EXTREMELY INTERESTING CASE.  WE DON'T TRY ENOUGH

18    CASES IN THE FEDERAL COURT OR IN COURTS IN GENERAL.  YOU WANT

19    TO TAKE THIS ALL THE WAY TO THE END?  MORE POWER TO YOU.  BUT

20    I HAVE A FEELING IT'S PROBABLY NOT THAT KIND OF CASE.  I THINK

21    I'M DOING YOU A FAVOR.

22      SO YOU WILL MEET AND CONFER WITH EACH OTHER.  AND WHAT IS

23    TODAY?  WEDNESDAY.  BY FRIDAY AT 5:00 P.M., YOU WILL FILE

24    SOMETHING THAT INDICATES EITHER THAT YOU HAVE AGREED ON COURT

25    MEDIATION, YOU HAVE AGREED ON PRIVATE MEDIATION AND YOU'LL

1    IDENTIFY THE MEDIATOR, OR YOU'LL SAY YOU CAN'T AGREE.  IF YOU

2    CAN'T AGREE, I'LL GET YOU BACK IN FRONT OF ME IN SHORT ORDER.

3              **MR. MARINO:**  YOUR HONOR, WE HAVE ALREADY AGREED TO AN

4    ENE.

5              **THE COURT:**  VERY GOOD.

6              **MR. MARINO:**  WE SUBMITTED THAT PAPER.  WE WILL STILL

7    MEET AND CONFER AND AGREE ON A PERSON --

8              **THE COURT:**  NO, NO.  I'M A HUGE RESPECTER OF THE

9    LAWYERS' JUDGMENT.  I THINK IF THE LAWYERS -- I THINK THE

10   LAWYERS KNOW THEIR CASE BETTER THAN THE JUDGE DOES.  I'M NOT

11   GOING TO TELL YOU DON'T DO ENE.  IF YOU THINK THAT'S THE MOST

12   EFFECTIVE MECHANISM FOR YOU, BY ALL MEANS DO IT.  SOMETIMES

13   THOSE TURN INTO MEDIATION, SOMETIMES THEY DON'T.

14       I JUST WANTED YOU, FOR YOUR CLIENTS' MUTUAL SAKES, TO

15   START USING A THIRD-PARTY NEUTRAL SOONER RATHER THAN LATER,

16   BUT YOU'RE ALREADY A STEP AHEAD OF ME.  AND IF I HAD LOOKED AT

17   THE DOCKET IMMEDIATELY BEFORE I TOOK THE BENCH, I PROBABLY

18   WOULD HAVE KNOWN THAT YOU PUT IN THIS STIPULATION.  SO I WILL

19   TAKE A LOOK AT THAT WHEN I GET OFF THE BENCH.

20       THE COURT IS GOING TO TAKE THESE MOTIONS UNDER SUBMISSION.

21   THE COURT IS NOW IN RECESS.

22       THANK YOU.

23              **THE CLERK:**  COURT IS IN RECESS.

24              (PROCEEDINGS CONCLUDED AT 3:25 P.M.)

25

### CERTIFICATE OF REPORTER

I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

*Diane E. Skillman*

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

WEDNESDAY, SEPTEMBER 25, 2019