FABIO E. MARINO (SBN 183825)
fmarino@polsinelli.com
REBECCA B. HORTON (SBN 308052)
rhorton@polsinelli.com
POLSINELLI LLP
1661 Page Mill Road, Suite A
Palo Alto, CA 94304
T:  650-461-7700
F:  650-461-7701

Phillip Zeeck (*Admitted PHV*)
pzeeck@polsinelli.com
POLSINELLI PC
900 West 48th Place, Ste. 900
Kansas City, MO 64112
T:  816-753-1000
F:  816-753-1536

Attorneys for Defendants
Ryan Hunt and Alen Hundur

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| NIANTIC, INC., <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL++, et al., <br><br> Defendants. | Case No. 4:19-cv-03425 JST <br><br> **DEFENDANTS RYAN HUNT'S AND ALEN HUNDUR'S ANSWER TO PLAINTIFF NIANTIC, INC.'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND COUNTERCLAIMS** <br><br> Judge:  Honorable Jon S. Tigar |

Defendants Ryan Hunt and Alen Hundur (collectively "Defendants"), by and through their undersigned counsel, hereby submit this Answer in response to the Complaint by Plaintiff Niantic, Inc. ("Plaintiff"), dated June 14, 2019.

## BACKGROUND

1. Paragraph 1 states a conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 1.

2. Defendants lack sufficient information to admit or deny the allegations in paragraph 2 and, therefore, deny those allegations.

3. Paragraph 3 states a conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 3.

4. Defendants deny the allegations in Paragraph 4.

5. Defendants admit that software distributed under the label "Global++" allows users to perform actions outside normal gameplay. Defendants deny the remaining allegations in Paragraph 5.

6. Paragraph 6 contains conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 6.

7. Defendants admit that Ryan Hunt helped develop dynamic library software distributed under the label "Global++." Defendants deny the remaining allegations in Paragraph 7.

8. Defendants deny the allegations in Paragraph 8.

9. Defendants deny the allegations in Paragraph 9.

10. Defendants deny the allegations in Paragraph 10.

11. Paragraph 11 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 11.

12. Paragraph 12 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 12.

13. Defendants deny the allegations in Paragraph 13.

14. Defendants deny the allegations in Paragraph 14.

15. Defendants lack sufficient information to admit or deny the allegations in paragraph 15 and, therefore, deny those allegations.

16. Defendants deny the allegations in Paragraph 16.

## PARTIES

17. Defendants lack sufficient information to admit or deny the allegations in paragraph 17 and, therefore, deny those allegations.

18. Defendants deny the allegations in Paragraph 18.

19. Defendants admit that Ryan Hunt helped develop software distributed under the label "Global++." Defendants deny the remaining allegations in Paragraph 19.

20. Defendants deny the allegations in paragraph 20.

21. Defendants lack sufficient information to admit or deny the allegations in Paragraph 21 and, therefore, deny those allegations.

## JURISDICTION AND VENUE

22. Paragraph 22 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 22.

23. Paragraph 23 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 23.

24. Paragraph 24 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 24.

25. Paragraph 25 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 25.

26. Paragraph 26 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 26.

27. Paragraph 27 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 27.

# INTRADISTRICT ASSIGNMENT

28. Paragraph 28 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 28.

# ALLEGATIONS COMMON TO ALL CLAIMS

29. Defendants lack sufficient information to admit or deny the allegations in Paragraph 29 and, therefore, deny those allegations.

30. Defendants lack sufficient information to admit or deny the allegations in Paragraph 30 and, therefore, deny those allegations.

31. Defendants lack sufficient information to admit or deny the allegations in Paragraph 31 and, therefore, deny those allegations.

32. Defendants lack sufficient information to admit or deny the allegations in Paragraph 32 and, therefore, deny those allegations.

33. Defendants lack sufficient information to admit or deny the allegations in Paragraph 33 and, therefore, deny those allegations.

34. Defendants lack sufficient information to admit or deny the allegations in Paragraph 34 and, therefore, deny those allegations.

35. Defendants lack sufficient information to admit or deny the allegations in Paragraph 35 and, therefore, deny those allegations.

36. Defendants lack sufficient information to admit or deny the allegations in Paragraph 36 and, therefore, deny those allegations.

37. Paragraph 37 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 37.

38. Paragraph 38 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 38.

39. Paragraph 39 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 39.

40. Defendants admit that Ryan Hunt helped develop dynamic library software distributed under the label "Global++." Defendants deny the remaining allegations in Paragraph 40.

41. Defendants deny the allegations in Paragraph 41.

42. Defendants deny the allegations in Paragraph 42.

43. Defendants deny the allegations in Paragraph 43.

44. Defendants deny the allegations in Paragraph 44 and the images appearing thereafter.

45. Defendants deny the allegations in Paragraph 45.

46. Defendants admit that software produced under the label "Global++" permits users to spoof their location. Defendants deny the remaining allegations in Paragraph 46.

47. Defendants deny the allegations in Paragraph 47.

48. Defendants deny the allegations in Paragraph 48.

49. Defendants deny the allegations in Paragraph 49.

50. Defendants deny the allegations in Paragraph 50.

51. Defendants lack sufficient information to admit or deny the allegations in Paragraph 51 and, therefore, deny those allegations.

52. Defendants admit that dynamic library software produced under the label "Global++" is distributed online, and that Alen Hundur maintains a YouTube channel. Defendants deny the remaining allegations in Paragraph 52.

53. Defendants deny the allegations in Paragraph 53.

54. Defendants deny the allegations in Paragraph 54.

55. Defendants deny the allegations in Paragraph 55.

56. Defendants deny the allegations in Paragraph 56.

57. Defendants admit that Niantic served them with cease and desist letters. Defendants deny the remaining allegations in Paragraph 57.

## COUNT ONE

### Copyright Infringement (17 U.S.C. §, *et seq.*)

### (Against All Defendants)

58. Defendants incorporate the preceding paragraphs as if set forth fully herein.

59. Defendants lack sufficient information to admit or deny the allegations in Paragraph 59 and, therefore, deny those allegations.

60. Defendants lack sufficient information to admit or deny the allegations in Paragraph 60 and, therefore, deny those allegations.

61. Paragraph 61 states a conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 61.

62. Paragraph 62 states a conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 62.

63. Defendants deny the allegations in Paragraph 63.

64. Defendants deny the allegations in Paragraph 64.

65. Defendants deny the allegations in Paragraph 65.

66. Paragraph 66 states a conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 66.

67. Defendants lack sufficient information to admit or deny the allegations in Paragraph 67 and, therefore, deny those allegations.

68. Paragraph 68 states a conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 68.

69. Paragraph 69 states a conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 69.

70. Defendants deny the allegations in Paragraph 70.

71. Defendants deny the allegations in Paragraph 71.

72. Defendants deny the allegations in Paragraph 72.

73. Defendants deny the allegations in Paragraph 73.

1  74.  Defendants deny the allegations in Paragraph 74.

2  75.  Defendants deny the allegations in Paragraph 75.

3  **COUNT TWO**

4  **Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)**

5  **(Against All Defendants)**

6  76.  Defendants incorporate the preceding paragraphs as if set forth fully herein.

7  77.  Defendants lack sufficient information to admit or deny the allegations in

8  Paragraph 77 and, therefore, deny those allegations.

9  78.  Defendants admit that Niantic served Defendants with a cease and desist letter.

10  79.  Defendants deny the allegations in Paragraph 79.

11  80.  Defendants deny the allegations in Paragraph 80.

12  81.  Defendants deny the allegations in Paragraph 81.

13  82.  Defendants deny the allegations in Paragraph 82.

14  83.  Defendants deny the allegations in Paragraph 83.

15  84.  Defendants deny the allegations in Paragraph 84.

16  **COUNT THREE**

17  **Violation of the Claifornia Comprehensive Computer Data Access and Fraud Act**

18  **(Cal. Penal Code § 502)**

19  **(Against All Defendants)**

20  85.  Defendants incorporate the preceding paragraphs as if set forth fully herein.

21  86.  Defendants deny the allegations in Paragraph 86.

22  87.  Defendants deny the allegations in Paragraph 87.

23  88.  Defendants deny the allegations in Paragraph 88.

24  89.  Defendants deny the allegations in Paragraph 89.

25  90.  Defendants deny the allegations in Paragraph 90.

26  91.  Defendants deny the allegations in Paragraph 91.

27  92.  Defendants deny the allegations in Paragraph 92.

28

### COUNT FOUR

**Violation of California Unfair Compeition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)**

**(Against All Defendants)**

93.     Defendants incorporate the preceding paragraphs as if set forth fully herein.

94.     Defendants deny the allegations in Paragraph 94.

95.     Defendants deny the allegations in Paragraph 95.

96.     Defendants deny the allegations in Paragraph 96.

### COUNT FIVE

**Breach of Contract**

**(Against All Defendants)**

97.     Defendants incorporate the preceding paragraphs as if set forth fully herein.

98.     Defendants admit that they each entered into a version of Niantic's Terms of Service. Defendants deny the remaining allegations in Paragraph 98.

99.     Defendants admit the allegations in Paragraph 99.

100.    Defendants lack sufficient information to admit or deny the allegations in Paragraph 100 and, therefore, deny those allegations.

101.    Defendants deny the allegations in Paragraph 101, including all its subparts.

102.    Defendants deny the allegations in Paragraph 102.

### COUNT SIX

**Intentional Interference with Contractual Relations**

**(Against All Defendants)**

103.    Defendants incorporate the preceding paragraphs as if set forth fully herein.

104.    Defendants lack sufficient information to admit or deny the allegations in Paragraph 104 and, therefore, deny those allegations.

105.    Paragraph 105 states a conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 105.

106.    Defendants deny the allegations in Paragraph 106.

1    107.    Defendants deny the allegations in Paragraph 107.

2    108.    Defendants deny the allegations in Paragraph 108.

3    109.    Defendants deny the allegations in Paragraph 109.

4    110.    Defendants deny the allegations in Paragraph 110.

## RESPONSE TO PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any relief whatsoever and deny all allegations contained in Niantic's Prayer for Relief, including all its subparts. Plaintiff is not entitled to recover statutory damages, compensatory damages—including, but not limited to, a reasonable royalty—accounting, injunctive relief, costs, fees, interest, or any type of recovery from Defendants.  Niantic's Prayer for Relief should, therefore, be denied in its entirety and with prejudice, and Plaintiff should take nothing from its Complaint.  Defendants ask that judgment be entered in their favor.  Defendants further ask that the Court declare this to be an exceptional case under 35 U.S.C. § 285 and that, as a result, Defendants be rewarded attorney's fees in defending against the Complaint, together with such other and further relief the Court deems appropriate.

## AFFIRMATIVE DEFENSES

1.    Niantic's allegations fail to state a claim on which relief can be granted.

2.    Niantic's claims are barred by permission, license, or implied license, in that Niantic knew about Defendants' alleged activities, possessed the ability to stop Defendants from engaging in the conduct about which Niantic now complains, and permitted Defendants to continue operating.

3.    Niantic's claims are barred by estoppel, in that Niantic knew about Defendants' allegedly infringing conduct, intended that Defendants rely on Niantic's acts or omissions, and Defendants relied on Niantic's acts or omissions to Defendants' detriment.

4.    Niantic's claims are barred by its own unclean hands, in that Niantic profited from Defendants alleged activities for a period of years before filing these claims.

5.    Niantic's claims are barred under the applicable statutes of limitation.

1.   6.   Niantic's claims are barred by laches.

2.   7.   Niantic's claims are barred under the fair use doctrine.

3.   8.   Niantic's claims are barred by waiver.

4.   9.   Niantic's claims are barred by Niantic's acquiescence.

5.   10.  Niantic's claims are barred because they are subject to mandatory arbitration.

## DEFENDANTS' COUNTERCLAIMS

For their counterclaims against Niantic, Defendants allege as follows:

## PARTIES

1. Plaintiff Niantic, Inc. is a corporation organized under Delaware law with a principal place of business at One Ferry Building, Suite 200, San Francisco, CA 94111.

2. Defendant Ryan Hunt is an individual residing in Ontario, Canada.

3. Defendant Alen Hundur is an individual residing in Brentwood, Tennessee.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over these counterclaims because they are compulsory under Fed. R. Civ. P. 13 and because they arise under a federal statute.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391.

## GENERAL ALLEGATIONS

**A. IT Haven developed a dynamic library software program.**

6. Mr. Hunt is the CEO of IT Haven Inc.

7. IT Haven is an information technology services company that provides consulting, software development, Azure implementations, and Office 365 migrations.

8. In 2017, IT Haven developed a proprietary "dynamic library" software program.

9. Dynamic library programs, also known as "shared library" programs, is a shared object file generated by compiling source code.

10. A dynamic library has an entirely separate code from the app it accessorizes.

11. A dynamic library does not copy, store, or combine any source code from the app it accessorizes, and it does not create any work, derivative or otherwise, based on any other

developer's code; instead, it is a separate piece of code that is executed in its own memory space.

12. IT Haven designed its dynamic library program (the "tweak") to link to any app that uses Apple, Inc.'s GPS hardware, displaying an overlay displaying a joystick to manipulate the GPS data the user's mobile device exchanges with Apple's servers.

13. The tweak is entirely unique code created by IT Haven's developers. IT Haven did not combine or copy the dynamic library program with any other applications, including with Niantic's code.

14. Once IT Haven completed writing code for its tweak, it made the tweak available on its social platform, which is open to the general public.

15. The tweak is not, by itself, set up to link with any particular app, and IT Haven does not distribute it except as a standalone product—IT Haven does not link it to third party software created by Niantic or any other entity.

16. Separate entities called enterprise signing services take IT Haven's tweak and link it to other apps developed by other entities, including but not limited to Niantic. Examples of signing services include AppHaven, Tweakbox, and AppValley.

17. Signing services—not IT Haven or any entity called Global++—then distribute signed apps, some of which contain IT Haven's tweak dynamically linked with other software, such as a Niantic game.

**B. IT Haven obtained a substantial part of its revenue through selling access to its tweak, and the tweak benefitted Niantic, too.**

18. Although IT Haven did not design or distribute linked apps directly or as a signing service, it derived revenue through use of its code, including use of its code in linked-apps.

19. Once a user downloads a linked app containing IT Haven's tweak from a signing service, the user is prompted to obtain an activation code by leaving the linked app, visiting Global++'s Patreon page, and making a donation.

20. After a user donates to Global++'s Patreon page, the user's Patreon account is

authorized to activate IT Haven's tweak.

21. When the user returns to the linked app and uses their Patreon user account to generate an activation code, which will activate the tweak. Unless the user has donated to the Global++ Patreon page, the tweak will not activate all features.

22. Users can use their Patreon user account to generate activation codes for multiple apps.

23. Users paid a monthly subscription to obtain activation codes for as long as the subscriber maintained the subscription.

24. As explained above, signing services may choose to dynamically link IT Haven's tweak to apps created by Niantic or other software developers.

25. A substantial portion of IT Haven's revenue was generated through donations users made to obtain activation codes so they could activate GPS spoofing features for various augmented reality games.

26. Upon information and belief, Niantic benefitted from the use IT Haven's tweak by users who acquired signed apps from signing services.

27. For example, by linking IT Haven's tweak with Niantic's games, signing services made Niantic's games—which depend on a user's ability to move through physical space—accessible to more users, including users with limited physical mobility, users who lack the time to physically play in the real world, users who prefer to play from the comfort of home, and users who want to avoid physical risks which are involved with playing augmented reality games.

28. The signed apps did not divert, sequester, or otherwise interfere with in-app purchases users made to Niantic. That is, if a user made an in-app purchase in one of the signing services' linked apps, 100 percent of the revenue from that purchase went to Niantic, just as it would if the user were using Niantic's own app. Moreover, many users developed a process to purchase coins from signing services linked apps which involved multiple copies of augmented reality games.

29. Because the signing services' linked apps increased usage without interfering with in-app purchases, the linked apps also increased Niantic's revenue.

**C.  Niantic has been targeting Global++ software for over a year.**

30. Since early 2018, Niantic has targeted Global++ software.

31. In or about April 2018, Niantic began systematically identifying user accounts associated with users who use apps installed from signing services that have linked apps and suspending those accounts in an attempt to halt Global++ software from operating.

32. Niantic suspending accounts identified with Global++ software decreased the number of users willing to donate to Global++'s Patreon in exchange for an activation code, causing Global++'s Patreon revenues to sharply decrease.

33. On June 7, 2019, Defendants received a cease-and-desist letter from Niantic.

34. Niantic's cease-and-desist letter stated that Niantic's counsel "demand[s] that [Defendants] stop your unauthorized and illegal activity targeting Niantic and Niantic's games."

35. Niantic's letter also accused Defendants of "circumvent[ing] the technical security measures protecting the code in Niantic's mobile apps; copies and modifies the code without Niantic's permission; then profits from derivative version of Niantic's apps." As explained above, each of these accusations is demonstrably false.

36. Niantic asserted that Defendants' "activities violate civil and criminal law, and your conduct harms Niantic and Niantic's users."

37. Niantic closed its letter by demanding that Defendants cease all operations related to Global++, turn over the code for it, and pay to Niantic all money Defendants received related to the tweak.

38. As a result of receiving Niantic's cease-and-desist letter, IT Haven ceased operating its software and maintaining the dynamic library, denying linked-app users access to services for which they paid.

39. In addition, Niantic contacted GoDaddy, the web hosting company that hosted the globalplusplus.com home page, to demand that GoDaddy disable the website, which allowed

Defendants to operate. Upon information and belief, GoDaddy complied with Niantic's demands.

40. Because Global++ users' subscriptions are paid one month in advance, Defendants were forced to refund thousands of dollars in users' already-paid subscription fees after Niantic forced Defendants to close their operation.

41. Niantic's conduct also deprived Defendants of obtaining any future subscription fees for the use of IT Haven's dynamic library tweak.

## COUNT I: DECLARATORY JUDGMENT

42. Defendants incorporate the preceding paragraphs as if set forth fully herein.

43. Niantic asserted in its demand letter to Defendants that IT Haven's dynamic library tweak violates Niantic's trademark rights and other rights under law by "circumvent[ing] the technical security measures protecting the code in Niantic's mobile apps; copies and modifies the code without Niantic's permission; then profits from derivative version of Niantic's apps."

44. Niantic asserted substantially similar allegations in its Complaint.

45. Defendants have maintained here and elsewhere that IT Haven's dynamic library tweak does not violate any Niantic right and specifically does not circumvent Niantic's security measures, copy Niantic's code, modify Niantic's code, or permit Defendants to profit from Niantic's code.

46. The parties' disagreement over how IT Haven's dynamic library tweak functions and its effect on Niantic's rights is a definite and concrete dispute appropriate for judicial determination.

47. Niantic's position and the actions it has taken based on that position has damaged Defendants' reputation and business relationships, and Defendants' injury lacks an adequate remedy at law.

## COUNT II: TORTIOUS INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE

48. Defendants incorporate the preceding paragraphs as if set forth fully herein.

-13-
DEFS' ANSWER TO PLAINTIFF'S COMPLAINT
AND COUNTERCLAIMS
CASE NO. 4:19-cv-03425-JST

49. Defendants had economic relationships with users who entered into monthly subscriptions through Global++, where users paid monthly subscription fees to obtain access codes for IT Haven's tweak.

50. Defendants had a reasonable probability of future economic benefit in their relationships with subscribing users because it was reasonable to expect that the subscribers would keep paying monthly subscription fees.

51. Niantic knew about Defendants' relationships with subscribing users.

52. Niantic's baseless demand that Defendants cease operations and pay to Niantic all revenues generated from IT Haven's dynamic library tweak and Niantic's demand that Defendants' third-party web hosting services provider disable Defendants' website were intentional acts designed to disrupt Defendants' relationships with subscribing users.

53. As a result of Niantic's intentional acts, Defendants' relationships with subscribing users were actually disrupted, and Niantic's activities caused many users to migrate to competitors.

54. As a direct and proximate result of Niantic's intentional acts, Defendants were damaged in an amount not less than $75,000.00.

## COUNT III: UNFAIR COMPETITION

55. Defendants incorporate the preceding paragraphs as if set forth fully herein.

56. The IT Haven dynamic library tweak caused no harm to Niantic and, in fact, increased the number of users playing its games and the revenues Niantic received from those games.

57. Niantic's baseless demand that Defendants cease operations and pay to Niantic all revenues generated from IT Haven's dynamic library tweak and Niantic's demand that Defendants' third-party web hosting services provider disable Defendants' website Defendants to incur substantial injury to their reputation, business relationships, and revenues.

58. The injury Niantic caused to Defendants exceeds any revenue Defendants received from linked apps developed by third parties that use IT Haven's dynamic library on

1  Niantic's games; the access users obtained to IT Haven's dynamic library tweak through
2  Global++'s Patreon page allowed users to access the tweak on all linked apps, not just ones
3  linking the tweak to Niantic's games.

4  59. As such, Niantic's baseless demand that Defendants cease operations and pay to
5  Niantic all revenues generated from IT Haven's dynamic library tweak and Niantic's demand
6  that Defendants' third-party web hosting services provider disable Defendants' website were
7  unfair business practices, in that the harm to Defendants far outweighs any benefit to Niantic.

8  60. As a direct and proximate result of Niantic's unfair business practices, Defendants
9  were injured in an amount not less than $75,000.00.

10  WHEREFORE, Defendants Ryan Hunt and Alen Hundur hereby request that this Court
11  enter judgment in their favor, including:

12  a. An order declaring that IT Haven's dynamic library tweak does not
13     infringe on Niantic's trademark rights or other rights at law;
14  b. An award of damages in an amount not less than $75,000.00;
15  c. An award reimbursing Defendants for reasonable costs, including
16     reasonable attorney's fees;
17  d. An award of prejudgment and postjudgment interest as allowable by law;
18     and
19  e. For such other relief as this Court deems just and proper.

Dated: October 24, 2019                         Respectfully Submitted,

                                                POLSINELLI LLP


                                                */s/ Phillip J. R. Zeeck*
                                        By:     Phillip J. R. Zeeck

                                                Attorneys for Defendants
                                                RYAN HUNT AND ALEN HUNDUR

-15-
DEFS' ANSWER TO PLAINTIFF'S COMPLAINT
AND COUNTERCLAIMS
CASE NO. 4:19-cv-03425-JST