1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
Perkins Coie LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

Todd M. Hinnen (admitted *pro hac vice*)
THinnen@perkinscoie.com
Ryan Spear (admitted *pro hac vice*)
RSpear@perkinscoie.com
Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff Niantic, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| NIANTIC, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL++, an unincorporated association; RYAN HUNT, a.k.a. "ELLIOTROBOT," an individual; ALEN HUNDUR, a.k.a. "IOS N00B," an individual; and DOES 1-20,<br><br>Defendants. | Case No. 19-cv-03425-JST<br><br>**NIANTIC, INC.'S COMBINED MOTION TO DISMISS COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM, MOTION TO STRIKE COUNTERCLAIMS UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16, AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES**<br><br>**Date:** January 22, 2020<br>**Hearing Time:** 2:00 p.m.<br>**Courtroom:** 6, 2nd Floor (Oakland)<br>**Judge:** Hon. Jon S. Tigar |

1

## NOTICE OF MOTION AND MOTION

2  TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on January 22, 2020, or as soon as the matter may be

4  heard, in the United States District Court for the Northern District of California, Oakland

5  Division, plaintiff Niantic, Inc. ("Niantic") will and hereby does move the Court to (1) dismiss all

6  of defendants' counterclaims under Federal Rule of Civil Procedure ("Rule") 12(b)(6); (2) strike

7  Counterclaims II and III under California's anti-SLAPP law (Cal. Civ. Proc. Code §

8  425.16(b)(1)); and (3) strike defendants' affirmative defenses under Rule 12(f).

9      Niantic's motion is based on this Notice of Motion and Motion; the accompanying

10  Memorandum of Points and Authorities; all pleadings and papers on file in this action; and such

11  other and further matters as the Court may consider.

12

13   DATED:  November 14, 2019                **PERKINS COIE LLP**

14                                By:   _/s/ Ryan Spear_

15                                      Ryan Spear
                                        RSpear@perkinscoie.com

16                                Attorneys for Plaintiff Niantic, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND FACTUAL BACKGROUND ..................................................... 1

II.  ISSUES TO BE DECIDED ................................................................................ 1

III. DEFENDANTS' COUNTERCLAIMS SHOULD BE DISMISSED UNDER
     RULE 12(B)(6) ............................................................................................... 2

     A.   Defendants' Counterclaims ................................................................... 2

     B.   Legal Standard ..................................................................................... 3

     C.   Argument ............................................................................................. 3

          1.   Counterclaim I should be dismissed because it serves no useful
               purpose .......................................................................................... 3

          2.   Counterclaims II and III should be dismissed for multiple reasons ........... 4

               a)   Counterclaims II and III are barred by the litigation
                    privilege ............................................................................... 5

               b)   Counterclaims II and III are barred by the *Noerr-Pennington*
                    doctrine ................................................................................ 7

               c)   Counterclaims II and III fail to state plausible claims ................... 8

                    (i)    Defendants have not alleged and cannot allege the
                           elements of tortious interference with prospective
                           economic advantage ........................................................ 8

                    (ii)   Defendants have not alleged and cannot allege the
                           elements of "unfair competition" ..................................... 10

                           (a)    No claim under California's UCL ........................ 10

                           (b)    No claim under California common law ............... 11

IV.  DEFENDANTS' COUNTERCLAIMS SHOULD ALSO BE STRICKEN UNDER
     CALIFORNIA'S ANTI-SLAPP LAW ........................................................... 12

     A.   Legal Standard ................................................................................... 12

     B.   Argument ........................................................................................... 13

          1.   Counterclaims II and III are based on protected activity ..................... 13

          2.   Defendants cannot prevail on Counterclaims II and III ....................... 14

          3.   Niantic is entitled to attorneys' fees and costs ................................. 15

- i -

**TABLE OF CONTENTS**
(continued)

| | | | Page |
|---|---|---|---|

V.    MOTION TO STRIKE ................................................................. 15

    A.    Defendants' Affirmative Defenses.................................................. 15

    B.    Legal Standard ................................................................. 15

    C.    Argument ...................................................................... 16

        1.    First affirmative defense: Failure to state a claim ..................... 16

        2.    Second affirmative defense: "Permission, license, or implied license"...................................................................... 16

        3.    Third affirmative defense: Estoppel....................................... 17

        4.    Fourth affirmative defense: Unclean hands ............................... 17

        5.    Fifth and sixth affirmative defenses: "Statutes of limitations" and laches...................................................................... 18

        6.    Seventh affirmative defense: "Fair use doctrine" ....................... 18

        7.    Eighth and ninth affirmative defenses: Waiver and "Niantic's acquiescence"................................................................. 18

        8.    Tenth affirmative defense: "Mandatory arbitration"...................... 19

VI.    CONCLUSION ...................................................................... 20

# TABLE OF AUTHORITIES

Page

CASES

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)...................................................................................19

*Adobe Sys. Inc. v. Alghazzy*,
  No. 15-cv-01443-BLF, 2016 WL 8223617 (N.D. Cal. May 16, 2016) ....................4

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*,
  No. C 11-2243 CW, 2012 WL 3877783 (N.D. Cal. Sept. 6, 2012) ....................6, 15

*Anderson v. City of Rialto*,
  No. EDCV 16-1915JGB, 2017 WL 10562687 (C.D. Cal. Aug. 8, 2017)................15

*Aquawood, LLC v. Toys "R" Us-Del., Inc.*,
  No. 2:15-cv-05869-AB, 2016 WL 10576620 (C.D. Cal. Mar. 10, 2016)...............12

*Arthur J. Gallagher & Co. v. Lang*,
  No. C 14–0909 CW, 2014 WL 6816644 (N.D. Cal. Dec. 3, 2014) ...........................8

*Arthur v. Constellation Brands, Inc.*,
  *No*. 16-cv-04680-RS, 2016 WL 6248905 (N.D. Cal. Oct. 26, 2016) ................18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................3, 10

*Baral v. Schnitt*,
  1 Cal. 5th 376 (2016) ...........................................................................................13, 14

*Barnes & Noble, Inc. v. LSI Corp.*,
  849 F. Supp. 2d 925 (N.D. Cal. 2012) .....................................................................18

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*,
  718 F. Supp. 2d 1167 (N.D. Cal. 2010) ...................................................................17

*Barrilleaux v. Mendocino County*,
  No. 14-CV-01373-TEH, 2016 WL 1298860 (N.D. Cal. Apr. 4, 2016) ...................16

*Barry v. State Bar of Cal.*,
  2 Cal. 5th 318 (2017) ...........................................................................................13, 14

*Boone v. Redevelopment Agency of City of San Jose*,
  841 F.2d 886 (9th Cir. 1988)......................................................................................8

*Brittain v. Twitter, Inc.*,
  No. 19-cv-00114-YGR, 2019 WL 2423375 (N.D. Cal. June 10, 2019) ....................5

- iii -

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ..........................................................................................11

*Collins v. Allstate Indem. Co.*,
   428 F. App'x 688 (9th Cir. 2011) ..........................................................................12

*Dairy Emps. Union Local No. 17 v. Dairy*,
   No. 5:14-cv-01295-RSWL-MAN, 2015 WL 505934 (C.D. Cal. Feb. 6, 2015) .......16

*Dastar v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003)..................................................................................................10

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
   47 Cal. App. 4th 777 (1996)...................................................................................14

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
   711 F. Supp. 2d 1074 (C.D. Cal. 2010)....................................................................7

*Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*,
   290 F. Supp. 3d 923 (N.D. Cal. 2017) ...................................................................12

*Fotohaus, LLC v. Proforma, Inc.*,
   No. 18-CV-01827-BLF, 2019 WL 1493355 (N.D. Cal. Apr. 4, 2019) .....................5

*Gamble v. Kaiser Found. Health Plan, Inc.*,
   348 F. Supp. 3d 1003 (N.D. Cal. 2018) ...................................................................8

*Gen-Probe, Inc. v. Amoco Corp.*,
   926 F. Supp. 948 (S.D. Cal. 1996) ...........................................................................7

*GWS Techs., Inc. v. Furth*,
   No. SA-cv-0800586CJCPLAX, 2010 WL 11520562 (C.D. Cal. Mar. 25, 2010) ....14

*Healy v. Tuscany Hills Landscape & Recreation Corp.*,
   137 Cal. App. 4th 1 (2006)........................................................................................6

*Hudson Martin Ferrante St. Witten & Demaria, PC v. Forsythe*,
   No. 16-cv-06551-BLF, 2017 WL 1315576 (N.D. Cal. Apr. 7, 2017) .....................13

*Inn S.F. Enter., Inc. v. Ninth St. Lodging, LLC*,
   No. 3:16-cv-00599-JD, 2016 WL 8469189 (N.D. Cal. Dec. 19, 2016)...................19

*Ironshore Specialty Ins. Co. v. 23andMe, Inc.*,
   No. 14-cv-03286-BLF, 2018 WL 5316173 (N.D. Cal. Oct. 26, 2018).....................19

- iv -

*Kashian v. Harriman*,
   98 Cal. App. 4th 892 (2002).............................................................................5

*Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.*,
   552 F. App'x 663 (9th Cir. 2014) ...................................................................19

*Ketab Corp. v. Mesriani & Assocs.*,
   No. 2:14-cv-07241-RSWL (MRW), 2015 WL 8022874 (C.D. Cal. Dec. 4,
   2015) ...............................................................................................................3, 4

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ...................................................................................9

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008).............................................................................3

*Loblaw Cos. v. Azimi*,
   No. C 00 3591 WHO, 2001 WL 36028016 (N.D. Cal. Oct. 17, 2001).....................4

*Maravilla v. Rosas Bros. Constr., Inc.*,
   No. 16-cv-06117-JST, 2019 WL 3820051 (N.D. Cal. Aug. 14, 2019)...................11

*Niantic, Inc. v. Global++*,
   No. 19-cv-03425-JST.........................................................................................10

*Optional Capital Inc. v. Akin Gump Strauss, Hauer & Feld LLP*,
   18 Cal. App. 5th 95 (2017).................................................................................15

*Oracle Am., Inc. v. CedarCrestone, Inc.*,
   No. 12-cv-04626 NC, 2012 WL 12897962 (N.D. Cal. Dec. 7, 2012) ...................11

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   No. 16-CV-01393-JST, 2017 WL 2311296 (N.D. Cal. May 26, 2017) ...................18

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   No. 16-cv-01393-JST, 2017 WL 635291 (N.D. Cal. Feb. 16, 2017).......................17

*Oracle Corp. v. DrugLogic, Inc.*,
   No. C 11–00910 JCS, 2011 WL 5576267 (N.D. Cal. Nov. 16, 2011).....................12

*Otey v. CrowdFlower, Inc.*,
   No. 12-CV-05524-JST, 2013 WL 5734146 (N.D. Cal. Oct. 22, 2013) ...................16

*People ex rel. Lockyer v. Fremont Life Ins. Co.*,
   104 Cal. App. 4th 508 (2003)..............................................................................11

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018), *as amended*, 897 F.3d 1224 (9th Cir. 2018) .............................14

*R Power Biofuels, LLC v. Chemex LLC*,
   No. 16-CV-00716-LHK, 2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) ..................................9

*Ramachandran v. City of Los Altos*,
   359 F. Supp. 3d 801 (N.D. Cal. 2019) ..................................................................................13

*Re/Max Int'l, Inc. v. Singh*,
   No. C 08-05785 JW, 2009 WL 10697753 (N.D. Cal. May 13, 2009) ........................................9

*Redbox Automated Retail, LLC v. Buena Vista Home Entm't, Inc.*,
   No. CV 18-00677DDP, 2019 WL 3237376 (C.D. Cal. July 17, 2019) ......................................7

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
   302 F. Supp. 3d 1005 (N.D. Cal. 2017) ...............................................................................13

*Riot Games Merch., Inc. v. Tri-Force Sales, LLC*,
   No. 2:15-cv-05817-ODW (Ex), 2015 WL 13344626 (C.D. Cal. Dec. 1, 2015) .......................4

*Robinson v. Alameda County*,
   875 F. Supp. 2d 1029 (N.D. Cal. 2012) ...............................................................................12

*Rosen v. Masterpiece Mktg. Grp. LLC*,
   222 F. Supp. 3d 793 (C.D. Cal. 2016)..................................................................................18

*Sharper Image Corp. v. Target Corp.*,
   425 F. Supp. 2d 1056 (N.D. Cal. 2006) ................................................................................5

*Silberg v. Anderson*,
   50 Cal. 3d 205 (1990) ........................................................................................................5

*Sparrow LLC v. Lora*,
   No. CV-14-1188-MWF (JCX), 2014 WL 12573525 (C.D. Cal. Dec. 4, 2014)...................6, 14

*Summerfield v. Randolph*,
   201 Cal. App. 4th 127 (2011).............................................................................................14

*Sun Microsystems, Inc. v. Datram Corp.*,
   No. CIV. 96-20708 SW, 1997 WL 50272 (N.D. Cal. Feb. 4, 1997) .....................................17

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008).............................................................................................11

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   No. 17-cv-00561-WHO, 2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) ................................16

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008)...................................................................................7, 8

*Toranto v. Jaffurs*,
   297 F. Supp. 3d 1073 (S.D. Cal. 2018) ....................................................................9

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015).................................................................5, 7

*United States v. Washington*,
   759 F.2d 1353 (9th Cir. 1985) (en banc)..................................................................3

*Vascular Imaging Prof'ls, Inc. v. Digirad Corp.*,
   No. 19-cv-486 JM(MSB), 2019 WL 3429178, at *4-5 (S.D. Cal. July 30, 2019).....................9

*Vogel v. Huntington Oaks Del. Partners, LLC*,
   291 F.R.D. 438 (C.D. Cal. 2013) ...........................................................................16

*Westport Ins. Corp. v. Vasquez, Estrada & Conway LLP*,
   No. 15-cv-05789-JST, 2016 WL 1394360 (N.D. Cal. Apr. 8, 2016) ....................................3, 8

*Wild v. Benchmark Pest Control, Inc.*,
   No. 1:15-cv-01876- JLT, 2016 WL 1046925 (E.D. Cal. Mar. 16, 2016) ................................18

*Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Reservation*,
   No. 3:17-cv-01436-GPC-MDD, 2019 WL 4277432 (S.D. Cal. Sept. 10, 2019).......................6

**STATUTES**

15 U.S.C. § 1125(a)(1)(A) ......................................................................................10

17 U.S.C. § 107 ...................................................................................................18

47 U.S.C. § 230(c) ................................................................................................5

Cal. Bus. & Prof. Code § 17200 ........................................................................3, 10, 12

Cal. Civ. Proc. Code § 425.16(b)(1) ...................................................................2, 13, 15

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................... passim

Federal Rule of Civil Procedure 12(f)................................................................ passim

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.        INTRODUCTION AND FACTUAL BACKGROUND

As explained in earlier briefing, this is a case about outright theft. Niantic, Inc. ("Niantic") alleges that defendants engaged in a sophisticated scheme to steal Niantic's valuable and proprietary software code and use that code to create, distribute, and profit from the Cheating Programs—"hacked" versions of mobile applications for playing Niantic's popular augmented reality games. The Court recently held that Niantic is likely to succeed on its claims for copyright infringement, violation of the federal Computer Fraud and Abuse Act, and breach of contract. The Court therefore denied defendants' motion to dismiss and preliminarily enjoined defendants from engaging in their unlawful activities. *See* Dkt. 55 ("PI Order"). Shortly after the Court issued its PI Order, defendants answered Niantic's Complaint. *See* Dkt. 64.[1]

Defendants' answer asserts 10 affirmative defenses to Niantic's claims. It also asserts three counterclaims against Niantic: a claim for "declaratory judgment" (Counterclaim I); a claim for "tortious interference with a prospective economic advantage" (Counterclaim II); and a claim for "unfair competition" (Counterclaim III).

All of defendants' counterclaims are meritless. Moreover, two of those counterclaims—Counterclaims II and III—arise from expressive activity protected by California's anti-SLAPP law. Defendants' affirmative defenses are also facially deficient. Thus, Niantic respectfully requests that the Court (1) dismiss all of defendants' counterclaims under Federal Rule of Civil Procedure ("Rule") 12(b)(6); (2) strike Counterclaims II and III under California's anti-SLAPP law; and (3) strike defendants' affirmative defenses under Rule 12(f).

### II.        ISSUES TO BE DECIDED

Whether all defendants' counterclaims should be dismissed under Rule 12(b)(6); whether Counterclaims II and III should be stricken under Cal. Civ. Proc. Code § 425.16(b)(1); and whether all defendants' affirmative defenses should be stricken under Rule 12(f).

---

[1] Defendants also filed a motion to reconsider the PI Order under Federal Rule of Civil Procedure 59(e). *See* Dkt. 63. Niantic will respond to defendants' motion for reconsideration separately according to the deadlines set by the Court. *See* Dkt. 68.

### III.   DEFENDANTS' COUNTERCLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6)

**A.   Defendants' Counterclaims**

As noted above, defendants allege three counterclaims. In Counterclaim I, defendants ask this Court to issue a declaratory judgment, presumably under the federal Declaratory Judgment Act. But defendants do not seek a judicial declaration resolving a specific legal issue. Rather, they ask the Court to issue a sweeping order that rejects every legal theory and factual claim in Niantic's Complaint. *See* Counterclaims ¶¶ 44-45 (asking the Court to reject the "allegations in [Niantic's] Complaint" and declare that defendants do not "violate any Niantic right and specifically do[] not circumvent Niantic's security measures, copy Niantic's code, modify Niantic's code, or . . . profit from Niantic's code"). In other words, Counterclaim I is merely a mirror image of Niantic's claims against defendants.

In Counterclaim II, defendants allege that Niantic is liable for the common law tort of interference with prospective economic advantage. *See id.* ¶¶ 48-54. Notably, Counterclaim II does not accuse Niantic of meddling in defendants' business relationships. Instead, Counterclaim II is based entirely on defendants' claim that Niantic (1) sent defendants a cease-and-desist letter demanding that defendants stop violating Niantic's rights and (2) asked GoDaddy, the non-party that hosted the now-defunct website that defendants used to violate Niantic's rights, to disable that website. *See id.* ¶¶ 33-39; *see also id.* ¶ 52.[2]

Finally, in Counterclaim III, defendants allege that Niantic is liable for "unfair competition." *Id.* ¶¶ 55-60. Counterclaim III, like Counterclaim II, is based entirely on Niantic's alleged litigation-related communications with defendants and GoDaddy. *See id.* ¶¶ 57, 59. Because nothing in Counterclaim III suggests that it arises under federal law, Niantic assumes

---

[2] If this claim survives, which it should not, discovery will show that Niantic did not ask GoDaddy to disable defendants' website. Rather, Niantic contacted Domains By Proxy (a service owned by GoDaddy and utilized by defendants to obscure their identities) and asked Domains By Proxy to disclose contact information for the person who registered the domain name for defendants' website. For purposes of this motion, however, Niantic assumes the truth of defendants' allegations, including defendants' inaccurate allegations about Niantic's litigation-related communications.

that it is based on California's Unfair Competition Law ("UCL"), *see* Cal. Bus. & Prof. Code §

17200, or California common law.

   Defendants' counterclaims suffer from a variety of fatal and incurable flaws. They should

be dismissed, with prejudice, under Rule 12(b)(6).

**B.**  **Legal Standard**

   "A motion to dismiss a counterclaim brought pursuant to Rule 12(b)(6) is evaluated under

the same standard as a motion to dismiss a plaintiff's complaint." *Westport Ins. Corp. v. Vasquez,*

*Estrada & Conway LLP*, No. 15-cv-05789-JST, 2016 WL 1394360, at *4 (N.D. Cal. Apr. 8,

2016). A counterclaim must therefore contain sufficient factual matter, accepted as true, to state a

claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements,"

will not defeat a Rule 12(b)(6) motion. *Id.*

**C.**  **Argument**

   **1.**   **Counterclaim I should be dismissed because it serves no useful purpose**

   "Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a

district court's discretion to dismiss an action for declaratory judgment." *Leadsinger, Inc. v. BMG*

*Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008). The Ninth Circuit has made clear that a request

for declaratory relief should be denied when it does not "serve a useful purpose in clarifying and

settling the legal relations in issue." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir.

1985) (en banc). Accordingly, "several district courts within the Ninth Circuit have found that

counterclaims for declaratory relief are improper if 'repetitious of issues already before the court

via the complaint o[r] affirmative defenses.'" *Ketab Corp. v. Mesriani & Assocs.*, No. 2:14-cv-

07241-RSWL (MRW), 2015 WL 8022874, at *9 (C.D. Cal. Dec. 4, 2015) (citing cases). "Courts

in other jurisdictions have also concluded that if the factual and legal issues in the claim and

counterclaim are identical, it is appropriate to dismiss the counterclaim." *Id.* (citing cases).

   That is precisely the case here. Counterclaim I is merely an across-the-board denial of

Niantic's legal and factual claims, repackaged as a request for declaratory relief. *See*

Counterclaims ¶¶ 42-47 (seeking a declaration contrary to the "allegations in the Complaint"); *see*

*also id.* ¶ 60 (seeking a declaration that defendants do not "infringe on Niantic's . . . rights").

Counterclaim I therefore adds nothing to the case. Moreover, Niantic would be prejudiced by

having to litigate such a duplicative claim. *See Riot Games Merch., Inc. v. Tri-Force Sales, LLC*,

No. 2:15-cv-05817-ODW (Ex), 2015 WL 13344626, at *3 (C.D. Cal. Dec. 1, 2015) (requiring

plaintiff to litigate redundant counterclaim would cause prejudice because plaintiff "would be

forced to incur fees drafting duplicative pleadings, discovery, and motions regarding that

counterclaim"). The Court should therefore dismiss Counterclaim I under Rule 12(b)(6). *See*

*Adobe Sys. Inc. v. Alghazzy*, No. 15-cv-01443-BLF, 2016 WL 8223617, at *2 (N.D. Cal. May 16,

2016) (dismissing declaratory judgment counterclaim because "Defendant's claims for

declaratory relief are mirror images of Plaintiff's affirmative claims"); *Loblaw Cos. v. Azimi*, No.

C 00 3591 WHO, 2001 WL 36028016, at *15 (N.D. Cal. Oct. 17, 2001) ("Here, the declaratory

relief sought is unnecessary and serves no useful purpose, as the issue upon which declaratory

relief is sought will be decided in the course of litigating [plaintiff's] claims."). Alternatively, the

Court should strike Counterclaim I under Rule 12(f). *See Riot Games*, 2015 WL 13344626, at *2

(noting that "[d]istrict courts have held that dismissing *or* striking counterclaims for declaratory

judgment is appropriate where they are either the mirror image of claims in the complaint or

redundant of affirmative defenses" and stating in dicta that such a motion "is more properly one

to strike redundant material") (emphasis added).

## 2. Counterclaims II and III should be dismissed for multiple reasons

As explained above, Counterclaims II and III are based entirely on Niantic's cease-and-

desist letter to defendants and Niantic's alleged request to GoDaddy to disable defendants'

website. But California's litigation privilege and the federal *Noerr-Pennington* doctrine immunize

Niantic against claims based on such litigation-related communications. And even if defendants

could somehow plead around those free-speech protections (they cannot), defendants have not

alleged and could not allege the essential elements of their claims. As a result, Counterclaims II

and III should be dismissed under Rule 12(b)(6).[3]

---

[3] Elsewhere in their Counterclaims, defendants allege that Niantic "systematically identif[ied]
user accounts . . . and suspend[ed] those accounts in an attempt to halt Global++ software from

### a)    Counterclaims II and III are barred by the litigation privilege

Under California's litigation privilege, "communications made in or related to judicial proceedings are absolutely immune from tort liability." *Fotohaus, LLC v. Proforma, Inc.*, No. 18-CV-01827-BLF, 2019 WL 1493355, at *2 (N.D. Cal. Apr. 4, 2019) (citing Cal. Civ. Code § 47(b)) (citation and internal quotation marks omitted). The privilege applies to communications "(1) made in a judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action." *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006). The purpose of the privilege is "to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990). Accordingly, courts extend the privilege not only to communications that take place after litigation has begun, but also to prelitigation communications made "in good faith and actual contemplation of litigation." *Fotohaus*, 2019 WL 1493355, at *2 (citation and internal quotation marks omitted). "Any doubt about whether the privilege applies is resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002).

Counterclaims II and III should be dismissed under those principles. **First**, the alleged litigation-related communications on which those claims are based—Niantic's cease-and-desist letter to defendants and Niantic's alleged communications with GoDaddy—are quintessential examples of privileged communications. *See, e.g.*, *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1114-15 (C.D. Cal. 2015) (plaintiff's cease-and-desist letter protected by litigation privilege); *Sparrow LLC v. Lora*, No. CV-14-1188-MWF (JCX), 2014 WL 12573525, at *5 (C.D. Cal. Dec. 4, 2014) (plaintiff's letters to non-parties regarding defendants' intellectual property infringement protected by litigation privilege).

---

operating." Counterclaims ¶ 31. That factual allegation does not seem to form the basis of Counterclaims II and III. Nor could it. The federal Communications Decency Act ("CDA"), 47 U.S.C. § 230(c), immunizes Niantic against claims based on exercises of its editorial discretion in policing its platform, including account suspensions. *See, e.g.*, *Brittain v. Twitter, Inc.*, No. 19-cv-00114-YGR, 2019 WL 2423375, at *2-4 (N.D. Cal. June 10, 2019) (CDA barred claims based on suspension of user accounts).

**Second**, Niantic's alleged communications were indisputably made in this judicial proceeding or in "actual contemplation" of it. Niantic sent its cease-and-desist letter shortly before filing this lawsuit, *see* Counterclaims ¶ 33, and, as defendants recognize, the claims in the letter are "substantially similar" to the claims alleged in Niantic's Complaint. *Id.* ¶ 44. Niantic's alleged communications with GoDaddy are equally intertwined with Niantic's claims in this case. *See id.* ¶¶ 39, 52, 57, 59; *see also Healy v. Tuscany Hills Landscape & Recreation Corp.*, 137 Cal. App. 4th 1, 5 (2006) ("[I]t has been established for well over a century that a communication is absolutely immune from any tort liability if it has some relation to judicial proceedings.") (citation and internal quotation marks omitted). Thus, those communications also qualify for immunity.

Defendants may argue that Niantic's litigation-related communications are not privileged because Niantic's claims are "baseless." Counterclaims ¶¶ 52, 59. That argument fails. Niantic's claims are anything but baseless, as this Court made clear when it preliminarily enjoined defendants from engaging in their unlawful activities. *See* PI Order at 8-17. But even if Niantic's claims lacked merit, that would not change the analysis here. "It is the *contemplation* of the litigation that must be in good faith, not the merits of the actual litigation itself that animates the litigation privilege." *Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Reservation*, No. 3:17-cv-01436-GPC-MDD, 2019 WL 4277432, at *9 (S.D. Cal. Sept. 10, 2019).

In short, Counterclaims II and III are based entirely on litigation-related communications that fall squarely within California's litigation privilege. They should be dismissed on that ground. *See Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. C 11-2243 CW, 2012 WL 3877783, at *12 (N.D. Cal. Sept. 6, 2012) ("Wowza is barred by California's litigation privilege from using Adobe's letters or its filing of the instant lawsuit as the basis of Wowza's counterclaims for fraud and unfair competition."); *see also, e.g.*, *Sparrow LLC*, 2014 WL 12573525, at *3  (litigation-related communications to third parties held to be protected under the California litigation privilege); *UMG Recordings*, 117 F. Supp. 3d at 1114-15 (dismissing tortious interference claims based on plaintiff's cease-and-desist letter).

b)    **Counterclaims II and III are barred by the *Noerr-Pennington* doctrine**

For similar reasons, Counterclaims II and III are barred by the *Noerr-Pennington* doctrine. *See, e.g.*, *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (affirming dismissal of tortious interference claims under that doctrine). "The essence of the *Noerr-Pennington* doctrine is that those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct." *Id*. at 1006. The doctrine "bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 956 (S.D. Cal. 1996). As with the litigation privilege, "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr-Pennington* doctrine." *Theme Promotions*, 546 F.3d at 1007; *see also EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1082 (C.D. Cal. 2010) ("[A]ll communications between private parties related to litigation—including presuit demand letters and settlement offers—are entitled to immunity").

Here, Counterclaims II and III are based on conduct incidental to a lawsuit—i.e., Niantic's cease-and-desist letter to defendants and Niantic's purported communications with GoDaddy. It follows that Counterclaims II and III should be dismissed under the *Noerr-Pennington* doctrine as well. *See, e.g.*, *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1114  (dismissing counterclaims for tortious interference based on cease-and-desist letter under both the California litigation privilege and the *Noerr-Pennington* doctrine); *see also Redbox Automated Retail, LLC v. Buena Vista Home Entm't, Inc.*, No. CV 18-00677DDP (AGRx), 2019 WL 3237376, at *8 (C.D. Cal. July 17, 2019) (*Noerr-Pennington* doctrine immunized prelitigation communications to non-parties).

Defendants may argue that the *Noerr-Pennington* doctrine does not immunize communications in connection with "sham litigation." *Theme Promotions*, 546 F.3d at 1007. That is true but irrelevant. To invoke the sham litigation exception, a party must specifically and plausibly allege that the litigation at issue is "objectively baseless" and "conceals an attempt to interfere directly with the business relationships of a competitor, through the use of a governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive

- 7 -

weapon." *Id.* (citation and internal quotation marks omitted); *see also Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988) ("[A] plaintiff's complaint [must] contain specific allegations demonstrating that the *Noerr-Pennington* protections do not apply."). Here, defendants do not even mention the sham litigation exception, let alone plead it with specificity. *See Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1028 (N.D. Cal. 2018) (rejecting sham litigation exception defense where, as here, party failed to plead it with specificity). Nor could they, given that this Court has already held that Niantic is likely to prevail on every one of the claims for which it sought preliminary relief. *See* PI Order at 8-17.

**c)**      **Counterclaims II and III fail to state plausible claims**

Even if defendants could somehow plead around the California litigation privilege and the *Noerr-Pennington* doctrine, Counterclaims II and III should still be dismissed because defendants have not alleged and cannot allege the essential elements of their claims.

**(i)**      **Defendants have not alleged and cannot allege the elements of tortious interference with prospective economic advantage**

To adequately allege tortious interference with prospective economic advantage, defendants must allege (1) an economic relationship between defendants and some third party, with the probability of future economic benefit to defendants; (2) Niantic's knowledge of the relationship; (3) intentional acts on the part of Niantic designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to defendants proximately caused by Niantic's acts. *See Westport Ins. Corp.*, 2016 WL 1394360, at *9. Defendants must also show that Niantic's alleged acts of interference were "wrongful by some legal measure other than the fact of the interference itself." *Arthur J. Gallagher & Co. v. Lang*, No. C 14–0909 CW, 2014 WL 6816644, at *3 (N.D. Cal. Dec. 3, 2014).

Defendants have not alleged and could not allege at least three of those elements.

**First**, defendants do not allege that Niantic disrupted any specific economic relationships with the probability of future benefit. Defendants allege generally that they received "monthly subscription fees" from "users." Counterclaims ¶ 49. But defendants do not identify specific users or describe their relationships with those users. *See, e.g.*, *Vascular Imaging Prof'ls, Inc. v.*

- 8 -

1   *Digirad Corp.*, No. 19-cv-486 JM(MSB), 2019 WL 3429178, at *4-5 (S.D. Cal. July 30, 2019)

2   (explaining that "merely referring to customers in general," as defendants do here, "is not

3   sufficient to show a specific prospective relationship"); *R Power Biofuels, LLC v. Chemex LLC*,

4   No. 16-CV-00716-LHK, 2016 WL 6663002, at *16-17 (N.D. Cal. Nov. 11, 2016) (granting

5   motion to dismiss where plaintiff failed to allege facts showing that defendants interfered with

6   plaintiff's relationship with a particular individual). Nor do defendants explain why their alleged

7   relationships with their users—which appear to have been based on voluntary "donations" rather

8   than obligatory contracts or other enforceable promises, *id.* ¶¶ 19, 25—were likely to produce

9   future benefits. *See Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1098-99 (S.D. Cal. 2018) (granting

10  motion to dismiss where complaint contained allegations contradicting the existence of an

11  economic relationship with the probability of future benefit). Furthermore, because defendants do

12  not identify any users at all, defendants also do not identify any economic relationships that were

13  disrupted by Niantic's alleged acts of interference.

14      **Second**, defendants cannot show that Niantic's alleged acts of interference were

15  independently wrongful, i.e., "proscribed by some constitutional, statutory, regulatory, common

16  law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.

17  4th 1134, 1159 (2003). There is nothing unlawful about sending defendants a cease-and-desist

18  letter. *See Re/Max Int'l, Inc. v. Singh*, No. C 08-05785 JW, 2009 WL 10697753, at *2-3 (N.D.

19  Cal. May 13, 2009) (dismissing tortious interference counterclaim based on cease-and-desist

20  letter because "Plaintiff's conduct in asserting [its] rights was [not] unlawful by any ascertainable

21  measure"). Nor is there anything unlawful about asking third-party service providers, like

22  GoDaddy, to help protect Niantic from defendants' unlawful conduct (again, accepting

23  defendants' allegations as true for the purpose of this motion). Indeed, far from being unlawful,

24  Niantic's alleged litigation-related communications with defendants and with GoDaddy are

25  privileged under California and federal law. *See supra* at 5-8.

26      **Third**, defendants cannot show that they suffered any economic harm caused by *Niantic's*

27  conduct. According to defendants, they suffered three harms: (1) they "were forced to refund

28  thousands of dollars in users' already-paid subscription fees"; (2) they lost "future subscription

- 9 -

fees for the use of IT Haven's dynamic library tweak"; and (3) their users "migrate[d] to competitors." Counterclaims ¶¶ 40, 41, 53. But those purported harms could not have been caused by *Niantic's* alleged conduct, none of which was directed at defendants' users. Rather, if those harms occurred at all, they were caused by *defendants'* conduct—specifically, defendants' admittedly voluntary decision to stop offering their services in the hope of minimizing their legal exposure. *See Niantic, Inc. v. Global++*, No. 19-cv-03425-JST, Tr. of Prelim. Injunction Hearing at 30:21-25 (N.D. Cal. Sept. 11, 2019) (counsel for defendants arguing that defendants "*voluntarily* stopped the operation of the [Global++] website until this issue could be resolved") (emphasis added); Dkt. 32 at 7 (defendants arguing, in opposition to Niantic's motion for preliminary injunction, that Niantic could not establish irreparable harm because "Global++'s developers shut down all of its programs as soon as Defendants received a cease-and-desist letter"). Niantic should not be held liable for defendants' self-inflicted harms.

### (ii) Defendants have not alleged and cannot allege the elements of "unfair competition"

Defendants' claim for "unfair competition" in Counterclaim III fares no better. As noted above, nothing in Counterclaim III suggests that it arises under federal law. Niantic therefore assumes that Counterclaim III arises under California's UCL, *see* Cal. Bus. & Prof. Code § 17200, or California common law. It fails in either case.[4]

### (a) No claim under California's UCL

If defendants seek relief under the UCL, then Counterclaim III fails for two reasons.

**First**, just as plaintiffs must allege an independently actionable wrong to state a claim for tortious interference, so too they must allege an independently actionable wrong to state a claim

---

[4] To be clear, defendants could not state a claim for unfair competition under the federal Lanham Act, 15 U.S.C. § 1125(a), even if they mean to do so. Section 1125(a) "does not have boundless application as a remedy for unfair trade practices," and it is not a "federal 'codification' of the overall law of 'unfair competition.'" *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003). Instead, it applies "only to certain unfair trade practices prohibited by its text." *Id.* Here, defendants do not allege that Niantic engaged in conduct prohibited by § 1125(a); for example, they do not allege that Niantic "cause[d] confusion" as to "the origin, sponsorship, or approval" of goods or services. 15 U.S.C. § 1125(a)(1)(A). Rather, defendants simply assert that "the harm to Defendants" from Niantic's communications "far outweighs any benefit to Niantic." Counterclaims ¶ 59. That bare assertion is legally irrelevant to any conceivable claim under § 1125(a). It is also wholly conclusory and entitled to no weight. *See, e.g.*, *Iqbal*, 556 U.S. at 678.

1    under the UCL. *See, e.g.*, *Oracle Am., Inc. v. CedarCrestone, Inc.*, No. 12-cv-04626 NC, 2012

2    WL 12897962, at *3-6 (N.D. Cal. Dec. 7, 2012). As explained above, however, Counterclaim III

3    arises exclusively from Niantic's alleged litigation-related communications with defendants and

4    with GoDaddy—communications that are not only lawful, but privileged. *See supra* at 5-8.

5        **Second**, the UCL proscribes "any (1) unlawful, (2) unfair, or (3) fraudulent business

6    practice or act," *Maravilla v. Rosas Bros. Constr., Inc.*, No. 16-cv-06117-JST, 2019 WL

7    3820051, at *8 (N.D. Cal. Aug. 14, 2019), and thereby "establishes three varieties of unfair

8    competition," *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2003)

9    (citation and internal quotation marks  omitted). But defendants do not identify which of those

10   three theories they are pursuing here, let alone allege facts in support of any particular theory.

11   *See, e.g.*, *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999)

12   ("unfair" conduct under the UCL "means conduct that threatens an incipient violation of an

13   antitrust law, or violates the policy or spirit of one of those laws . . . , or otherwise significantly

14   threatens or harms competition"). Counterclaim III fails for that reason as well.

15                    **(b)    No claim under California common law**

16       If defendants instead seek relief under the common law, then Counterclaim III fails for

17   different but equally insurmountable reasons.

18       "The common law tort of unfair competition is generally thought to be synonymous with

19   the act of passing off one's goods as those of another." *Sybersound Records, Inc. v. UAV Corp.*,

20   517 F.3d 1137, 1153 (9th Cir. 2008) (citation and internal quotation marks omitted). Here,

21   however, defendants have not alleged and could not allege that Niantic passed off defendants'

22   goods or engaged in any other comparable conduct. *See id.* (affirming dismissal of common-law

23   unfair competition claim where, as here, plaintiff failed to allege that the defendants "passed off

24   their goods as those of another" or "exploit[ed] trade names or trademarks"). Thus, to the extent

25   that Counterclaim III seeks to hold Niantic liable under the common law, it should be dismissed.

26   *See Aquawood, LLC v. Toys "R" Us-Del., Inc.*, No. 2:15-cv-05869-AB (MRWx), 2016 WL

27   10576620, at *3 (C.D. Cal. Mar. 10, 2016) (dismissing common law unfair competition claim

28   where plaintiff failed to plead a claim "akin to passing off"); *Oracle Corp. v. DrugLogic, Inc.*,

No. C 11–00910 JCS, 2011 WL 5576267, at \*12-14 (N.D. Cal. Nov. 16, 2011) ("DrugLogic's [common law] claim for unfair competition fails to state a claim because no passing off, or any analogous claim, is alleged.").

\*          \*          \*

In sum, all of defendants' counterclaims fail for multiple reasons. Counterclaim I serves no purpose and seems designed solely to impose unnecessary burdens on Niantic and this Court. Counterclaims II and III are barred by the California litigation privilege and the *Noerr-Pennington* doctrine and also fail to state plausible claims. The Court should therefore dismiss all of defendants' counterclaims, with prejudice, under Rule 12(b)(6).

## IV. DEFENDANTS' COUNTERCLAIMS SHOULD ALSO BE STRICKEN UNDER CALIFORNIA'S ANTI-SLAPP LAW

In addition to dismissing all three of defendants' counterclaims under Rule 12(b)(6), the Court should also strike two of those counterclaims—Counterclaims II and III—under California's anti-SLAPP law. *See Collins v. Allstate Indem. Co.*, 428 F. App'x 688, 690 (9th Cir. 2011) (district courts should resolve anti-SLAPP motions even if the challenged claims are dismissed on other grounds); *Robinson v. Alameda County*, 875 F. Supp. 2d 1029, 1046 (N.D. Cal. 2012) (resolving anti-SLAPP motion after granting motion to dismiss "[b]ecause the issue of attorney fees and costs [under the anti-SLAPP law] is not rendered moot by a dismissal").

### A. Legal Standard

As this Court has explained, "California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*, 290 F. Supp. 3d 923, 943 (N.D. Cal. 2017) (citation and internal quotation marks omitted). Specifically, California's anti-SLAPP law provides that

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

- 12 -

Cal. Civ. Proc. Code § 425.16(b)(1). "California's anti-SLAPP statute clearly applies to state claims brought in federal courts." *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1024 (N.D. Cal. 2017).[5]

The analysis of an anti-SLAPP motion "proceeds in two steps." *Barry v. State Bar of Cal.*, 2 Cal. 5th 318, 321 (2017). First, the court determines whether the moving party (here, Niantic) has made "a threshold showing" that the challenged claims "aris[e] from protected activity." *Id.* (citation and internal quotation marks omitted). Second, if the moving party makes that threshold showing, then the non-moving party (here, defendants) must show that the challenged claims are "legally sufficient and factually substantiated." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). If the non-moving party does not carry that burden, then the challenged claims must be stricken, along with all allegations supporting those claims—unless those allegations "also support a distinct claim on which the [non-moving party] has shown a probability of prevailing." *Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 810-11 (N.D. Cal. 2019).

**B.     Argument**

**1.     Counterclaims II and III are based on protected activity**

Under the first step of the analysis, Niantic must show that Counterclaims II and III arise from expressive activity protected by the anti-SLAPP law. That requirement is easily met.

There is no genuine dispute that Counterclaims II and III are based on Niantic's expressive activity—namely, the cease-and-desist letter that Niantic sent to defendants and Niantic's purported communications with non-party GoDaddy. In fact, the plain language of defendants' pleadings leaves no doubt on that score. *See* Counterclaims ¶ 52 (Counterclaim II) (claim based on "Niantic's baseless demand that Defendants cease operations and pay to Niantic all revenues generated from IT Haven's dynamic library tweak and Niantic's demand that Defendants' third-party web hosting services provider disable Defendants' website"); *id.* ¶ 59 (Counterclaim III) (same).

---

[5] Here again, Niantic assumes that Counterclaim III is asserted under state law. *See supra* at 3, 10. Niantic acknowledges that "the anti-SLAPP statute does not apply to federal claims." *Hudson Martin Ferrante St. Witten & Demaria, PC v. Forsythe*, No. 16-cv-06551-BLF, 2017 WL 1315576, at *2 (N.D. Cal. Apr. 7, 2017).

It is equally clear that the anti-SLAPP law applies to those alleged communications. Courts routinely hold that analogous litigation-related communications fall within the scope of the law. *See, e.g.*, *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1996) ("Just as communications preparatory to or in anticipation of the bringing of an action or other official proceedings are within the protection of the litigation privilege, . . . such statements are equally entitled to the benefits of [the anti-SLAPP statute]."); *see also, e.g.*, *GWS Techs., Inc. v. Furth*, No. SA-cv-0800586CJCPLAX, 2010 WL 11520562, at *2-3 (C.D. Cal. Mar. 25, 2010) (litigation-related communications to non-parties were protected under anti-SLAPP law); *Sparrow LLC*, 2014 WL 12573525, at *3 (cease-and-desist letters were protected under anti-SLAPP law); *Summerfield v. Randolph*, 201 Cal. App. 4th 127, 136 (2011) (explaining that the anti-SLAPP law "has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation") (collecting cases). Niantic has therefore made the requisite showing that Counterclaims II and III "aris[e] from protected activity." *Barry*, 2 Cal. 5th at 321.

### 2.      Defendants cannot prevail on Counterclaims II and III

Because Niantic has met its burden on the first step of the analysis, the burden shifts to defendants to show that Counterclaims II and III are "legally sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 396. Defendants cannot carry that burden.

Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *as amended*, 897 F.3d 1224 (9th Cir. 2018). Counterclaims II and III do not meet that standard. As explained above, Counterclaims II and III should be dismissed under Rule 12(b)(6) because (1) they are barred by California's litigation privilege, (2) they are barred by the *Noerr-Pennington* doctrine, and (3) they fail to allege plausible claims for tortious interference or unfair competition. *See supra* at 8-12. Defendants therefore cannot show that Counterclaims II and III are "legally sufficient and factually substantiated," and the Court should grant Niantic's special motion to strike. *See, e.g.*, *Adobe*,

- 14 -

1    2012 WL 3877783, at *18 (granting anti-SLAPP motion after determining that the

2    counterclaimant "failed to state legally sufficient counterclaims, and that the new counterclaims

3    are barred by the litigation privilege and the *Noerr-Pennington* doctrine"); *Optional Capital Inc.*

4    *v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal. App. 5th 95, 115 (2017) ("A plaintiff cannot

5    establish a probability of prevailing [under California's anti-SLAPP statute] if the litigation

6    privilege precludes a defendant's liability on the claims.").

7    **3.    Niantic is entitled to attorneys' fees and costs**

8    A party that prevails on a special motion to strike "shall be entitled to recover his or her

9    attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1). If the Court grants Niantic's

10   motion to strike, then Niantic will file a motion for fees and costs, including detailed time records.

11   *See Anderson v. City of Rialto*, No. EDCV 16-1915JGB (SPx), 2017 WL 10562687, at *3 (C.D.

12   Cal. Aug. 8, 2017) ("[T]he party prevailing on a special motion to strike may seek an attorney

13   fees award . . . by a subsequent noticed motion[.]").

14   **V.    MOTION TO STRIKE**

15   Even if the Court does not dismiss and/or strike defendants' counterclaims, it should at

16   least strike defendants' affirmative defenses to Niantic's claims, all of which are fatally flawed.

17   **A.    Defendants' Affirmative Defenses**

18   Defendants assert 10 affirmative defenses: (1) failure to state a claim; (2) "permission,

19   license, or implied license"; (3) estoppel; (4) unclean hands; (5) "the applicable statutes of

20   limitations"; (6) laches; (7) "the fair use doctrine"; (8) waiver; (9) "Niantic's acquiescence"; and

21   (10) "mandatory arbitration." None of those defenses meets the most basic pleading requirements.

22   They should therefore be stricken under Rule 12(f).

23   **B.    Legal Standard**

24   Under Rule 12(f), a court may strike any "insufficient defense." An affirmative defense

25   may be "insufficient as a matter of pleading or as a matter of law." *Dairy Emps. Union Local No.*

26   *17 v. Dairy*, No. 5:14-cv-01295-RSWL-MAN, 2015 WL 505934, at *2 (C.D. Cal. Feb. 6, 2015).

27   Like many courts, this Court has held that affirmative defenses must meet the same pleading

28   standard that governs affirmative claims; that is, the plausibility standard. *See Otey v.*

- 15 -

*CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2013 WL 5734146, at *4 (N.D. Cal. Oct. 22, 2013) ("This Court agrees with the many judges in this district . . . who routinely apply *Iqbal's* heightened pleading standard to affirmative defenses.").

## C.   Argument

### 1.   First affirmative defense: Failure to state a claim

For their first affirmative defense, defendants assert that "Niantic's allegations fail to state a claim on which relief can be granted." Affirmative Defenses ¶ 1. This defense should be stricken because it is a denial, not an affirmative defense. *See Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 442 (C.D. Cal. 2013) (striking defense because "failure to state a claim is not an affirmative defense").

### 2.   Second affirmative defense: "Permission, license, or implied license"

For their second affirmative defense, defendants assert that "Niantic's claims are barred by permission, license, or implied license, in that Niantic knew about Defendants' alleged activities, possessed the ability to stop Defendants from engaging in the conduct about which Niantic now complains, and permitted Defendants to continue operating." Affirmative Defenses ¶ 2. This defense should be stricken because it merely recites legal elements without any supporting facts, thereby depriving Niantic of fair notice of the defense. *See, e.g.*, *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO, 2017 WL 3485881, at *18 (N.D. Cal. Aug. 15, 2017) ("[T]he simple listing of a series of conclusory statements asserting the existence of an affirmative defense without stating a reason why that affirmative defense might exist is not sufficient.") (citation and internal quotation marks omitted); *Barrilleaux v. Mendocino County*, No. 14-CV-01373-TEH, 2016 WL 1298860, at *2 (N.D. Cal. Apr. 4, 2016) ("At a minimum, 'fair notice' requires some pleading of facts: Neither mere reference to a legal doctrine, nor a bare recitation of statutory provisions, provides fair notice of an affirmative defense absent some fact or argument explaining the defense.") (citation and internal quotation marks omitted).

In particular, defendants do not describe a specific grant of permission from Niantic, let alone a true license. *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-cv-01393-JST, 2017 WL 635291, at *5 (N.D. Cal. Feb. 16, 2017) ("Since evidence of a license is readily

1  available to the alleged licensee, it is sensible to place upon that party the burden of coming

2  forward with evidence of a license."). Nor do defendants offer any facts in support of an implied

3  license; for example, they fail to explain how Niantic "permitted Defendants to continue

4  operating." *See Sun Microsystems, Inc. v. Datram Corp.*, No. CIV. 96-20708 SW, 1997 WL

5  50272, at *4 (N.D. Cal. Feb. 4, 1997) (striking implied license affirmative defense where

6  defendant failed to allege factual allegations to support such a claim such as "some factual

7  allegations that demonstrate the existence of a license"). This defense is therefore insufficient.

8      **3.      Third affirmative defense: Estoppel**

9      For their third affirmative defense, defendants assert that "Niantic's claims are barred by

10  estoppel, in that Niantic knew about Defendants' allegedly infringing conduct, intended that

11  Defendants rely on Niantic's acts or omissions, and Defendants relied on Niantic's acts or

12  omissions to Defendants' detriment." Affirmative Defenses ¶ 3. But defendants do not explain

13  which "acts or omissions" Niantic intended for them to rely upon; how defendants relied on those

14  "acts or omissions"; or the "detriment" defendants allegedly experienced. Thus, this defense also

15  fails to give Niantic fair notice and should be stricken. *See Barnes v. AT&T Pension Benefit Plan-*

16  *Nonbargained Program*, 718 F. Supp. 2d 1167, 1172-73 (N.D. Cal. 2010) (striking estoppel

17  defense on that ground).

18      **4.      Fourth affirmative defense: Unclean hands**

19      For their fourth affirmative defense, defendants assert that "Niantic's claims are barred by

20  its own unclean hands, in that Niantic profited from Defendants['] alleged activities for a period

21  of years before filing these claims." Affirmative Defenses ¶ 4. But defendants allege no facts that

22  might support the elements of that defense: "(1) inequitable conduct by the plaintiff; (2) that the

23  plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3)

24  plaintiff's conduct injured the defendant." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No.

25  16-CV-01393-JST, 2017 WL 2311296, at *2 (N.D. Cal. May 26, 2017). The Court should

26  therefore strike this defense as legally insufficient. *See id.*

27

28

### 5. Fifth and sixth affirmative defenses: "Statutes of limitations" and laches

For their fifth and sixth affirmative defense, respectively, defendants assert that "Niantic's claims are barred under the applicable statutes of limitation," Affirmative Defenses ¶ 5, and that "Niantic's claims are barred by laches," *id*. ¶ 6. Defendants' timeliness defenses should be stricken because they are wholly conclusory, making it impossible for Niantic to evaluate them. *See, e.g.*, *Arthur v. Constellation Brands, Inc., No*. 16-cv-04680-RS, 2016 WL 6248905, at *3 (N.D. Cal. Oct. 26, 2016) ("[T]he catchall 'all applicable statutes of limitation' does not give fair notice."); *Rosen v. Masterpiece Mktg. Grp. LLC*, 222 F. Supp. 3d 793, 804 (C.D. Cal. 2016) ("At a minimum, [defendant] must allege which statute(s) of limitations it is relying upon, what cause(s) of action are barred, the date after which such bar became effective, and some factual allegations concerning why the limitations period has expired."); *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 941 (N.D. Cal. 2012) ("[S]ome factual support for their laches claim is both necessary and within Plaintiffs' ability to plead even absent discovery.").

### 6. Seventh affirmative defense: "Fair use doctrine"

For their seventh affirmative defense, defendants assert that "Niantic's claims are barred under the fair use doctrine." Affirmative Defenses ¶ 7. Here again, defendants allege no facts in support of that defense, let alone facts relevant to the fair-use factors: the purpose and character of the use; the nature of the copyrighted work; the amount and substantiality of the copying; and the effect of the use upon the potential market for or value of the copyrighted work. *See* 17 U.S.C. § 107. This defense is therefore legally insufficient, fails to provide fair notice, and should be stricken. *See, e.g.*, *Wild v. Benchmark Pest Control, Inc.*, No. 1:15-cv-01876- JLT, 2016 WL 1046925, at *4 (E.D. Cal. Mar. 16, 2016) (striking fair use defense where, as here, defendants made no effort to "allege any facts addressing the [fair use] factors," and therefore did not give "plaintiff notice of how the defense is applicable in the action").

### 7. Eighth and ninth affirmative defenses: Waiver and "Niantic's acquiescence"

For their eighth and ninth affirmative defenses, respectively, defendants assert that "Niantic's claims are barred by waiver," Affirmative Defenses ¶ 8, and that "Niantic's claims are barred by Niantic's acquiescence," *id*. ¶ 9. Both defenses suffer from a now-familiar defect: they

are wholly conclusory and hence insufficient. *See Inn S.F. Enter., Inc. v. Ninth St. Lodging, LLC*, No. 3:16-cv-00599-JD, 2016 WL 8469189, at *2 (N.D. Cal. Dec. 19, 2016) (striking waiver and acquiescence defenses for lack of supporting facts). Supporting facts are especially critical with respect to Niantic's copyright claims because "waiver or abandonment of copyright" occurs only if "there is an intent by the copyright proprietor to surrender rights in his work." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001). Unless and until defendants come forward with facts suggesting that Niantic "surrendered" its copyrights, these defenses are insufficient and should be stricken.

### 8.   Tenth affirmative defense: "Mandatory arbitration"

Finally, defendants assert that "Niantic's claims are barred because they are subject to mandatory arbitration." Affirmative Defenses ¶ 10. Defendants have waived this defense by engaging in acts inconsistent with their purported right to arbitrate—including filing a motion to dismiss, opposing Niantic's motion for preliminary injunction, and alleging counterclaims. *See Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.*, 552 F. App'x 663, 664 (9th Cir. 2014) (defendant waived right to seek arbitration by engaging in litigation activities "inconsistent with preserving the right to compel arbitration"). Further, this defense should be stricken because it fails to identify the contract under which Niantic allegedly agreed to arbitrate its claims against defendants, and therefore fails to provide fair notice. *See, e.g.*, *Constellation Brands*, 2016 WL 6248905, at *3 (striking arbitration defense where defendant did not "allege that it entered into an arbitration agreement").

*          *          *

In sum, defendants' affirmative defenses do not comply with basic pleading standards. *See Ironshore Specialty Ins. Co. v. 23andMe, Inc.*, No. 14-cv-03286-BLF, 2018 WL 5316173, at *4 (N.D. Cal. Oct. 26, 2018) (striking affirmative defenses because "[t]hey are entirely conclusory in that they are unsupported by any factual allegations whatsoever"). As a result, Niantic cannot respond to those defenses, and the Court cannot evaluate them. Rule 12(f) provides the right remedy in this situation: defendants' affirmative defenses should be stricken.

## VI.    CONCLUSION

For the foregoing reasons, Niantic respectfully requests that the Court dismiss all of defendants' counterclaims under Rule 12(b)(6), strike Counterclaims II and III under California's anti-SLAPP law, and strike defendants' affirmative defenses under Rule 12(f).

DATED:  November 14, 2019                    **PERKINS COIE LLP**

By:    */s/ Ryan Spear*
Ryan Spear
RSpear@perkinscoie.com

Attorneys for Plaintiff Niantic, Inc.

- 20 -