FABIO E. MARINO (SBN 183825)
fmarino@polsinelli.com
REBECCA B. HORTON (SBN 308052)
rhorton@polsinelli.com
POLSINELLI LLP
1661 Page Mill Road, Suite A
Palo Alto, CA 94304
T:  650-461-7700
F:  650-461-7701

Phillip J. R. Zeeck (*Admitted PHV*)
pzeeck@polsinelli.com
POLSINELLI PC
900 West 48th Place, Ste. 900
Kansas City, MO 64112
T:  816-753-1000
F:  816-753-1536

Attorneys for Defendants
Ryan Hunt and Alen Hundur

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| NIANTIC, INC., | Case No. 4:19-cv-03425 JST |
| Plaintiff, | **DEFENDANTS RYAN HUNT AND ALEN HUNDUR'S OPPOSITION TO PLAINTIFF NIANTIC, INC.'S COMBINED MOTION TO DISMISS COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM, MOTION TO STRIKE COUNTERCLAIMS, AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES** |
| v. | |
| GLOBAL++, et al., | |
| Defendants. | |
| | Date:   January 29, 2020 |
| | Time:   2:00 P.M. |
| | Ctrm:   6, 2nd Floor |
| | Judge:  Honorable Jon S. Tigar |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND FACTUAL BACKGROUND .............................................. 1

II.   ISSUES TO BE DECIDED ........................................................................ 2

III.  LEGAL STANDARD ............................................................................... 2

IV.   ARGUMENT ......................................................................................... 3

    A.    Defendants state valid claims for relief. ........................................... 3

        1.    Defendants' claim for declaratory judgment is not identical to any claim Niantic asserts. ................................. 3

        2.    California's litigation privilege does not bar Defendants' tortious interference and unfair competition claims. ............ 5

        3.    The *Noerr-Pennington* doctrine does not bar Defendants' tortious interference and unfair competition claims. ............ 8

        4.    Defendants sufficiently pleaded tortious interference and unfair competition claims. ................................... 10

            a.    Defendants state a plausible tortious interference claim. ............................................................... 10

            b.    Defendants adequately pleaded their unfair competition claim. ..................................................... 11

    B.    California's Anti-SLAPP law does not bar Defendants' claims ................... 12

        1.    Niantic's prelitigation activities are not protected because there is no evidence Niantic acted in reasonable contemplation of litigation. ......................................... 12

        2.    Defendants have pleaded all facts necessary to sustain their tortious interference and unfair competition claims. ......... 14

    C.    Defendants sufficiently pleaded valid affirmative defenses. ..................... 14

        1.    The Court should not strike Defendants' assertion that Niantic failed to state a claim for relief. ......................... 14

        2.    Defendants stated facts sufficient to assert that they operated under a license from Niantic. ............................ 15

        3.    Defendants sufficiently pleaded their estoppel defense. ............ 15

-i-

1

**TABLE OF CONTENTS**
**CONTINUED**

2

3

Page

4

        4.     Defendants sufficiently pleaded their unclean hands defense. ............................................................. 16

5

6

        5.     Defendants sufficiently pleaded their timeliness defenses, at least until discovery can obtain additional facts. ........................... 17

7

        6.     Niantic has sufficient notice of Defendants' fair use defense. ................................................................. 17

8

9

        7.     Defendants pleaded facts sufficient to support their waiver and acquiescence defenses. ................................... 18

10

        8.     Defendants have not waived their arbitration rights. ........................ 19

11

V.       CONCLUSION .......................................................................... 19

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFTS' OPP. TO NIANTIC'S MTD
CASE NO. 4:19-cv-03425-JST

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adobe Systems v. Coffee Cup Partners, Inc.*,
5
   CW, 2012 WL 3877783, at *12 (N.D. Cal. Sept. 6, 2012) ........................................................7

6
*Amini Innovation Corp. v. McFerran Home Furnishings Inc.*,
   No. CV 13-6496 ......................................................................................................................18
7

8
*Anderson v. The Hain Celestial Group, Inc.*,
   87 F. Supp. 3d 1226 (N.D. Cal. 2015) ......................................................................................3

9
*In re Anthem, Inc. v. Data Breach Litig.*,
10
   162 F. Supp. 3d 953 (N.D. Cal. 2016) .....................................................................................11

11
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................14
12

*Briggs v. Eden Council for Hope & Opportunity*,
13
   19 Cal.4th 1106 (1999) ............................................................................................................12

14
*Bylin Heating Sys., Inc. v. M&M Gutters, LLC*,
15
   No. 2:07-CV-00505-FCD-KJM, 2008 WL 744706 (E.D. Cal. Mar. 18, 2008) ...................6, 7

16
*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal.4th 163 (1999) ..............................................................................................................12
17

*Center for Biological Diversity v. Envtl. Protection Agency*,
18
   316 F. Supp. 3d 1156 (N.D. Cal. 2018) ...................................................................................14

19
*Chocolate Magic Las Vegas LLC v. Ford*,
20
   337 F. Supp. 3d 950 (D. Nev. 2018) ........................................................................................15

21
*Citizens for Beach Rights v. City of San Diego*,
   17 Cal.App.5th 230 (2017) ......................................................................................................17
22

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
23
   47 Cal.App.4th 777, 780 (1996) ..............................................................................................13

24
*Edelbrock LLC v. Genesis Group Int'l (USA), Inc.*,
25
   119 F. Supp. 3d 1168 (C.D. Cal. 2015) .....................................................................................5

26
*Effects Assocs., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990) ...................................................................................................15
27

*Ellis v. San Francisco State Univ.*,
28
   114 F. Supp. 3d 884 (N.D. Cal. 2015) ......................................................................................3

1

## TABLE OF AUTHORITIES
## CONTINUED

2

3

**Page(s)**

4

**Cases**

5

*Flores v. Emerich & Fike*,
   416 F. Supp. 2d 885 (E.D. Cal. 2006)........................................................................8

6

*Fong v. United States*,
   300 F.2d 400 (9th Cir. 1962) ....................................................................................7

7

8

*Freaner v. Valle*,
   966 F. Supp. 2d 1068 (S.D. Cal. 2013)...................................................................19

9

10

*Free Speech Sys., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ..................................................................17

11

*GWS Techs., Inc. v. Furth*
   No. SACV 08-00586-CJC(PLAx), 2010 WL 11520562, at *2 (C.D. Cal. Mar.
   25, 2010) ..................................................................................................................13

12

13

*Hall v. City of Santa Barbara*,
   833 F.2d 1270 (9th Cir. 1986) ..................................................................................2

14

15

*Hernandez v. City of El Monte*,
   138 F.3d 383 (9th Cir. 1998) ....................................................................................2

16

17

*I.C. Mktg., Inc. v. Amos Press, Inc.*,
   147 Fed. App'x 671 (9th Cir. 2005) ........................................................................10

18

19

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
   287 F.3d 866 (9th Cir. 2002) ..................................................................................16

20

*Kearney v. Foley & Lardner, LLP*,
   590 F.3d 638 (9th Cir. 2009) ....................................................................................9

21

22

*Kimmel v. Goland*,
   51 Cal. 3d 202, 793 P.2d 524 (1990) ......................................................................8

23

24

*Lazy Y. Ranch LTD v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) ...............................................................................2, 15

25

26

*Lippitt v. Raymond James Fin. Servs., Inc.*,
   340 F.3d 1033 (9th Cir. 2003) ................................................................................11

27

*Loi Nguyen v. Durham School Servs., L.P.*,
   358 F. Supp. 3d 1056 (C.D. Cal. 2019) ..................................................................14

28

1

**TABLE OF AUTHORITIES**
**CONTINUED**

2

3
**Page(s)**

4
**Cases**

5
*Mancini & Assocs. v. Schwetz,*

6
    39 Cal.App.5th 656 (2019) ................................................................................5

*Md. Cas. Co. v. Pac. Coal & Oil Co.,*

7
    312 U.S. 270 (1941)..........................................................................................4

8
*Microsoft Corp. v. Motorola, Inc.,*

9
    795 F.3d 1024 (9th Cir. 2015) ........................................................................8

10
*Miller Marital Deduction Trust v. Zurich Am. Ins. Co.,*
    41 Cal.App.5th 247, 254 Cal.Rptr.3d 124 (2019)...................................14

11
*Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers,*

12
    795 F.3d 1124 (9th Cir. 2015) ......................................................................10

13
*Nat'l Grange of the Order of Patrons of Husbandry v. California State Grange,*

14
    Civ. No. 2:15-676 WBS DAD, 2014 WL 3837434 (E.D. Cal. July 30, 2014)...................4, 18

15
*Newirth by and through Newirth v. Aegis Senior Communities, LLC,*
    931 F.3d 935 (9th Cir. 2019) ........................................................................19

16
*Northbay Wellness Group, Inc. v. Beyries,*

17
    789 F.3d 956 (9th Cir. 2015) ...................................................................16, 17

18
*Northstar Fin. Advisors, Inc. v. Schwab Invs.,*

19
    904 F.3d 821 (9th Cir. 2018) .....................................................................2, 15

20
*Northstar Fin. Advisors Inc. v. Schwab Invs.,*
    779 F.3d 1036 (9th Cir. 2015) ......................................................................15

21
*O'Brien as Tr. Of Raymond F. O'Brien Revocable Tr. v. XPO CNW, Inc.,*

22
    362 F. Supp. 3d 778 (N.D. Cal. 2018) ........................................................11

23
*Olivares v. Pineda,*

24
    40 Cal.App.5th 343 (2019) .....................................................................5, 6, 13

25
*Oregon Natural Resources Council v. Mohla,*
    944 F.2d 531 (9th Cir. 1991) ..........................................................................8

26
*Parducci v. Overland Solutions, Inc.,*

27
    399 F. Supp. 3d 969 (N.D. Cal. 2019) .....................................................2, 11

28

1

**TABLE OF AUTHORITIES**
**CONTINUED**

2

3
                                                                                                    **Page(s)**

4
**Cases**

5
*Pennsylvania R. Co. v. Musante-Phillips, Inc.,*
        42 F. Supp. 340 (N.D. Cal. 1941) .......................................................................3

6

7
*Perez v. DirecTV Group Holdings, LLC,*
        Case No. 8:16-cv-01440-JLS-DFM, 2019 WL 6362471 (C.D. Cal. July 23,

8
        2019) .................................................................................................................8, 9

9
*Planned Parenthood Fed'n of Am., Inc. v. Ct. for Med. Progress,*
        890 F.3d 828 (9th Cir. 2018) ..........................................................................14

10

11
*Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.,*
        No. C-06-5693 JCS, 2007 WL 1394427 (N.D. Cal. May 10, 2007) ..................5, 7

12
*Rosen v. Masterpiece Mktg. Group, LLC,*
        222 F. Supp. 3d 793 (C.D. Cal. 2016) ..............................................................17

13

14
*Salon Supply Store, LLC v. Creative Nail Design, Inc.,*
        Case No. 14-cv-01083-BAS(RBB), 2015 WL 11438492 (S.D. Cal. June 19,

15
        2015) ..................................................................................................................5

16
*Sanders v. Brown,*
        504 F.3d 903 (9th Cir. 2007) .............................................................................8

17

18
*Saunders v. Superior Court,*
        27 Cal.App.4th 832 (1994) ...............................................................................11

19

20
*Seville Classics, Inc. v. Neatfreak Group, Inc.,*
        Case No.: CV 16-06460 SJO, 2017 WL 3473932 (C.D. Cal. Feb. 14, 2017) ........18

21
*Smeed v. Carpenter,*
        274 F.2d 414 (9th Cir. 1960) ...........................................................................15

22

23
*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC,*
        634 F. Supp. 2d 1009 (N.D. Cal. 2007) ............................................................12

24

25
*Sonus Networks, Inc. v. Inventergy, Inc.,*
        No. C-15-0322 EMC, 2015 WL 4539814 (N.D. Cal. July 27, 2015) ...................9

26
*Sosa v. DirecTV, Inc.,*
        437 F.3d 923 (9th Cir. 2006) .............................................................................8

27

28
*Sparrow LLC v. Lora,*
        2014 WL 12573525, at *4 (C.D. Cal. Dec. 4, 2014) ...........................................7

-vi-

# TABLE OF AUTHORITIES
## CONTINUED

Page(s)

**Cases**

*Summerfield v. Randolph,*
201 Cal.App.4th 127, 136 (2011) ........................................................13

*Swift v. Zynga Game Network, Inc.,*
805 F. Supp. 2d 904 (N.D. Cal. 2011) ..................................................19

*Ukiah Automotive Investments v. Mitsubishi Motors of N.A., Inc.,*
No. 04-3932 MMC, 2005 WL 645960 (N.D. Cal. Mar. 18, 2005)............7

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.,*
117 F. Supp. 3d 1092, 1114-15 (C.D. Cal. 2015) ..................................7

*Unigestion Holding, S.A. v. UPM Tech., Inc.,*
305 F. Supp. 3d 1134 (D. Or. 2018) ....................................................14

*United Feature Syndicate, Inc. v. Powell,*
No. 80 00155 DWW, 1981 WL 1289 (C.D. Cal. Mar. 27, 1981)............8

*United States v. Amwest Surety Ins. Co.,*
54 F.3d 601 (9th Cir. 1995) ................................................................18

*United States v. King Features Entm't, Inc.,*
843 F.2d 394 (9th Cir. 1988) ..............................................................18

*United States v. Washington,*
759 F.2d 1353 (9th Cir. 1985) ..........................................................4, 5

*In re Urbanski,*
Bankruptcy No. 09-16027-A7, 2012 WL 1514772 (Bankr. S.D. Cal. Apr. 27,
2012) ..................................................................................................8

*Vascular Imaging Professionals, Inc. v. Digirad Corp.,*
401 F. Supp. 3d 1005, 1013 (S.D. Cal. 2019)......................................10

*Visto Corp. v. Sproqit Techs., Inc.,*
360 F. Supp. 2d 1065 (N.D. Cal. 2005) ............................................5, 7

*Watison v. Carter,*
668 F.3d 1108 (9th Cir. 2012) ..............................................................2

*Westport Ins. Corp. v. Northern California Relief,*
76 F. Supp. 3d 869 (N.D. Cal. 2014) ..................................................16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>
## <u>CONTINUED</u>

**Page(s)**

**Statutes**

28 U.S.C. § 2201(a) ....................................................................................................3

Cal. Civ. Code § 47(b) ...............................................................................................5

California's Unfair Competition Law .......................................................................11

Civil Code section 47, subdivision (b)......................................................................12

Federal Rule of Civil Procedure 12(b)(6) ................................................................14

**Other Authorities**

6 Arthur R. Miller & Mary Kane, Fed. Prac. & Proc. § 1406 (3d ed.) ...........................4

DEFTS' OPP. TO NIANTIC'S MTD
CASE NO. 4:19-cv-03425-JST

1

## I.    INTRODUCTION AND FACTUAL BACKGROUND

2          When this case began, Niantic asserted that Defendants created "an unauthorized

3  derivative version" of Niantic's games by "copy[ing] and modify[ing]" proprietary Niantic code

4  and "broadly distribut[ing] their Cheating programs." Dkt. 1 ¶¶ 2, 9. Since then, Defendants have

5  shown repeatedly that each of these assertions is demonstrably false. Dkt. 32-1 at ¶ 5-6

6  (Global++ software does not modify Niantic's source code); Dkt. 63-20 at ¶¶ 7-15 (Defendant

7  Ryan Hunt developed only a dynamic library ("DLL"), which does not include any Niantic code,

8  and neither IT Haven nor Defendants distributed the linked apps that signing services created);

9  Dkt. 63-1 at ¶¶ 29-41 (the DLL does not access or communicate with Niantic's servers or

10 incorporate or alter Niantic's code); Dkt. 64 (Counterclaims) at ¶¶ 6-17 (describing the DLL).

11 Indeed, Defendants' expert has conclusively shown that Defendants did not copy Niantic's

12 proprietary code or distribute it. *See* Dkt. 63-1 at ¶¶ 21-26, 31. Yet, Niantic has not sued the

13 signing services that actually distributed the so-called Cheating Programs.

14         Rather than amending its Complaint to correct the record, Niantic has doubled down,

15 attempting to shoehorn its now-debunked initial allegations into new and unsupportable legal

16 theories. In opposing Defendants' motion to lift the preliminary injunction, for example, Niantic

17 did not dispute the overwhelming majority of the facts that Defendants' expert established. *See*

18 Dkt. 78-1 at ¶¶ 4-9 (listing issues Niantic did not contest). Instead, Niantic only presented

19 inadmissible layperson opinions unsupported by any corroborating evidence, calling into

20 question the veracity of Niantic's assertions in the first place. *See, e.g.,* Dkt. 78-1 at ¶¶ 30-41

21 (Niantic did not use a recognized method to determine if its code had been copied), 42-49

22 (Niantic's declarations fail to support its distribution assertions with qualified opinions).

23         Niantic continues its willful blindness to both law and fact in its motion to dismiss and

24 motion to strike. It asks the Court to dismiss Defendants' declaratory judgment claim, but it does

25 not identify any pending claim that presents the same issues. Niantic also tries to justify its pre-

26 litigation conduct by claiming it was a part of this litigation, but the record belies this argument.

27 First, Niantic's pre-litigation activities made no reference to the upcoming lawsuit. Second,

28 Niantic's pre-litigation activities far exceeded the scope of the claims it actually presented in

1  litigation, and they interfered with Defendants' business activities that had no relationship at all

2  with Niantic, such as licensing the DLL for use with non-Niantic apps.

3         Niantic also flings various privileges at Defendants tort claims, but none of Niantic's

4  supporting authority analyzes pre-litigation conduct where, as here, the party engaging in that

5  conduct never mentions ongoing or potential litigation. And Niantic asserts that both Defendants

6  counterclaims and affirmative defenses are inadequately pleaded, but does so by ignoring whole

7  sections of Defendants' responsive pleading. Defendants therefore ask this Court to deny both

8  Niantic's motion to dismiss Defendants' counterclaims and Niantic's motion to strike

9  Defendants' affirmative defenses.

10  **II.      ISSUES TO BE DECIDED**

11         1.      After accepting all allegations in Defendants' counterclaims as true, construing

12  the pleadings in the light most favorable to Defendants, and granting Defendants all reasonable

13  inferences, do Defendants' counterclaims fail to state any possible ground for relief?

14         2.      Does Defendants' Answer and Counterclaims meet the relatively light burden of

15  containing direct or inferential allegations respecting the material elements of Defendants'

16  affirmative defenses?

17  **III.     LEGAL STANDARD**

18         Dismissing a claim "is a harsh penalty and, therefore, it should only be imposed in

19  *extreme circumstances.*" *Hernandez v. City of El Monte*, 138 F.3d 383, 399 (9th Cir. 1998)

20  (internal quotation marks omitted). Motions to dismiss are therefore viewed with disfavor and

21  are rarely granted. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1275 (9th Cir. 1986).

22         In evaluating a claim challenged with a motion to dismiss, a court accepts all factual

23  allegations supporting the claim as true and construes the pleadings in the light most favorable to

24  the nonmoving party. *Northstar Fin. Advisors, Inc. v. Schwab Investments*, 904 F.3d 821, 828

25  (9th Cir. 2018). A court also draws all reasonable inferences and resolves all doubts in the

26  nonmoving party's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008);

27  *Parducci v. Overland Solutions, Inc.*, 399 F. Supp. 3d 969, 975 (N.D. Cal. 2019). Once that is

28  done, a claim should be dismissed only if it states no possible ground for relief. *See Watison v.*

*Carter*, 668 F.3d 1108, 1118 (9th Cir. 2012); *Pennsylvania R. Co. v. Musante-Phillips, Inc.*, 42 F. Supp. 340, 341 (N.D. Cal. 1941) ("it is incumbent upon the court to sustain a complaint if there is any possible theory upon which liability can be based. Obviously, this doctrine must apply to counterclaims.").

If any question of fact exists, dismissal is inappropriate. *Ellis v. San Francisco State Univ.*, 114 F. Supp. 3d 884, 888 (N.D. Cal. 2015). Such a question must only be resolved after discovery and trial. *Anderson v. The Hain Celestial Group, Inc.*, 87 F. Supp. 3d 1226, 1233 n.2 (N.D. Cal. 2015).

## IV.   ARGUMENT

Defendants assert valid claims not barred by any privilege or statute. Their defenses likewise contain all facts necessary to meet the applicable pleading standard. Niantic's motion to dismiss and motion to strike therefore both fail.

### A.   Defendants state valid claims for relief.

Defendants' declaratory judgment claim is not subject to dismissal because it is not identical to other claims asserted in this action. Defendants' other claims are sufficiently pleaded, and they are not barred by California's litigation privilege, the *Noerr-Pennington* doctrine, or the anti-SLAPP statute because, at minimum, they raise a genuine question as to whether Niantic's tortious conduct was made in good faith contemplation of litigation. For these reasons, Niantic's motion to dismiss should be denied.

#### 1.   Defendants' claim for declaratory judgment is not identical to any claim Niantic asserts.

Defendants' declaratory judgment claim seeks this Court's ruling on issues not presented by any other claim that the parties assert. The Declaratory Judgment Act states that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

> Basically, the question in each [declaratory judgment] case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Contrary to Niantic's assertions, dismissing a declaratory judgment counterclaim as redundant is not warranted simply because it arises from the same transaction pleaded in the complaint. *Nat'l Grange of the Order of Patrons of Husbandry v. California State Grange*, Civ. No. 2:15-676 WBS DAD, 2014 WL 3837434, at *6 (E.D. Cal. July 30, 2014). Instead, "[a] court should consider whether [such] counterclaims serve any useful purpose, and should strike a counterclaim only when it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim." *Id.* (internal quotation marks omitted). Even where a counterclaim "substantially mirrors" claims asserted in a complaint, the counterclaim is valid if it asserts that the party asserting the counterclaim violated none of the plaintiff's rights, taking "the counterclaim beyond the specific scope of the plaintiff's pleadings." *Id.* To hold otherwise "ignores the possibility that it is very difficult to determine whether the declaratory-judgment counterclaim really is redundant prior to trial." 6 Arthur R. Miller & Mary Kane, Fed. Prac. & Proc. § 1406 (3d ed.) (quoted in *Nat'l Grange*, 2014 WL 3837434, at *7).

In this case, Defendants' declaratory judgment counterclaim does not present "a complete identity of factual and legal issues" with any claim Niantic asserts. Niantic does not identify any other claim containing the same elements and it can only support its position by selective quotation. For example, Niantic relies on *United States v. Washington*, 759 F.2d 1353 (9th Cir. 1985) for the proposition that "declaratory relief should be denied when it does not 'serve a useful purpose in clarifying and settling the legal relations in issue.'" Dkt. 69 at 3 (*quoting Washington*, 759 F.2d at 1357). What the Ninth Circuit actually held was: "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling legal relations in issue *nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties*." *Washington*, 759 F.2d at 1357 (emphasis added). It specifically upheld a declaratory judgment claim that "affords relief from a precise dispute

-4-

1   identified in the proceedings." *Id.* at 1358. Niantic therefore omits an entire element of the Ninth

2   Circuit's analysis. *See id.*; *Edelbrock LLC v. Genesis Group Int'l (USA), Inc.*, 119 F. Supp. 3d

3   1168, 1173 (C.D. Cal. 2015) (describing both *Washington* elements and holding that declaratory

4   relief should be denied "when neither of these results can be accomplished.").

5       In fact, a declaratory judgment in Defendants' favor would settle "a precise dispute"

6   among the parties. Specifically, such a judgment would require the Court to find that Defendants

7   did not infringe any of Niantic's legal rights. No other claim in this case presents an identical

8   question, and Defendants' declaratory judgment claim is thus valid.

9
10       **2.    California's litigation privilege does not bar Defendants' tortious
    interference and unfair competition claims.**

11       Under California law, a communication "made . . . [i]n any . . . judicial proceeding" is

12   privileged. Cal. Civ. Code § 47(b). But this privilege "does not apply to tortious courses of

13   conduct. *Mancini & Assocs. v. Schwetz*, 39 Cal.App.5th 656, 661 (2019).

14       A prelitigation communication "is privileged only when it relates to litigation that is

15   contemplated in good faith and under serious consideration." *Olivares v. Pineda*, 40 Cal.App.5th

16   343, 357 (2019). Not only that, the communication also "must function as a necessary or useful

17   step in the litigation process and must serve its purposes." *Salon Supply Store, LLC v. Creative*

18   *Nail Design, Inc.*, Case No. 14-cv-01083-BAS(RBB), 2015 WL 11438492 at *4 (S.D. Cal. June

19   19, 2015) (internal quotation marks omitted). "This test cannot be satisfied by communications

20   which only serve interests that happen to parallel or compliment a party's interest in the

21   litigation." *Id.* (internal quotation marks omitted). Instead, it can only be satisfied "by

22   communications which function intrinsically, and apart from any consideration of the speaker's

23   intent, to advance a litigant's case." *Id.* (internal quotation marks omitted).

24       Ultimately, "[w]hether a prelitigation communication relates to litigation that is

25   contemplated in good faith and under serious consideration is an issue of fact." *Olivares*, 40

26   Cal.App.5th at 357. This bars dismissal even when prelitigation communications expressly

27   threaten litigation so long as the party asserting the claim raises this question of fact. *See Visto*

28   *Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1065, 1068 (N.D. Cal. 2005); *Reid-Ashman Mfg.,*

-5-

1   *Inc. v. Swanson Semiconductor Serv., L.L.C.*, No. C-06-5693 JCS, 2007 WL 1394427, at *11

2   (N.D. Cal. May 10, 2007). Dismissal is even more inappropriate when the claim challenged

3   under the privilege includes allegations that the prelitigation communication included

4   "[d]eliberate misrepresentations intended to harm" the claimant. *See Bylin Heating Sys., Inc. v.*

5   *M&M Gutters, LLC*, No. 2:07-CV-00505-FCD-KJM, 2008 WL 744706, at *5 (E.D. Cal. Mar.

6   18, 2008).

7           Here, the Counterclaim allegations which relate to Niantic's June 2019 Letters to

8   Defendants and GoDaddy ("Letters") are not privileged because they were not made in good-

9   faith contemplation of litigation. Niantic's Letters went beyond the scope of Niantic's claims in

10  this case—even if those claims could be proven—because they insist that Defendants

11  "[d]eactivate and render unusable" their code, despite the fact that Defendants' code is not

12  specific to Niantic games, can and is used with non-Niantic games, and third-party signing

13  services are responsible for the conduct which Niantic alleges it is wronged by.  Dkt. 64

14  (Counterclaims) at ¶¶ 37-39; *see also*, Dkt. 7-9 (June 7, 2019 Letter) at 12-13 (demanding that

15  Defendants "[d]eactivate and render unusable" its code and "[d]eactivate and make inaccessible

16  all online channels and other channels through which" Defendants distribute their code,

17  including the Global++ website, among other actions); Dkt. 63-1 (Zeidman Decl.) at ¶¶ 22, 26;

18  Dkt. 63-20 (Hunt Decl.) at ¶¶ 7-26.  Niantic's harassing conduct therefore prevented Defendants

19  from making a profit from the use of its code in apps that have no affiliation with Niantic and

20  that Niantic has no right to control.  *See e.g.*, Dkt. 63-20 (Hunt Decl.) at ¶ 26 (indicating that

21  Defendants' DLL is linked to games such as *Draconius Go* made by developer Elyland).  To the

22  extent that Niantic responds that even if its allegations were factually incorrect, it made the

23  allegations in good faith, what constitutes "good faith" is a factual dispute not properly resolved

24  at the motion to dismiss stage. *Olivares*, 40 Cal.App.5th at 358 (deny the motion to dismiss

25  because "plaintiffs sufficiently raised a triable issue of fact as to whether litigation was

26  contemplated in good faith and under serious consideration to withstand the defense of the

27  litigation privilege."). Indeed, Niantic's failure to correct the record once Defendants provided

28

-6-

1   substantial evidence that Niantic's allegations were the product of an inadequate pre-filing

2   investigation creates serious doubt as to the good faith basis for Niantic's claims.

3        Moreover, Niantic's Letters did not even mention litigation. This makes their connection

4   to this case even more tenuous than those at issue in *Visto Corp.* or *Reid-Ashman Mfg.* where the

5   courts denied dismissal even though the letters expressly threatened litigation. *See* 360 F. Supp.

6   2d at 1065, 1068; 2007 WL 1394427, at *11. And as set forth above and explained more fully

7   below, Defendants have also shown that Niantic's Letters contained "deliberate

8   misrepresentations" about Defendants, their role as it relates to the tweaked apps which Niantic

9   contends has caused them harm, and their ultimate legal liability. *Bylin Heating Systems*, 2008

10  WL 744706, at *5. California's litigation privilege therefore does not protect these

11  communications, and Niantic's motion should be denied. *See Visto*, 360 F. Supp. 2d at 1068.

12       Niantic fails to cite any distinguishing authority. In *Adobe Systems v. Coffee Cup*

13  *Partners, Inc.*, the court analyzed prelitigation communications specifically referencing

14  "potential future proceedings." No. C 11-2243 CW, 2012 WL 3877783, at *12 (N.D. Cal. Sept.

15  6, 2012) (cited in Dkt. 69 at 6). Likewise, in *Sparrow LLC v. Lora*, the pre-litigation

16  communication at issue "directly mentions that it was sent in contemplation of 'legal

17  proceedings.'" Case No. CV-14-1188-MWF (JCx), 2014 WL 12573525, at *4 (C.D. Cal. Dec. 4,

18  2014). And in *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, the parties did not litigate

19  whether the relevant communications were made in contemplation of litigation or assert any

20  noncommunicative conduct as a basis for liability. *See* 117 F. Supp. 3d 1092, 1114-15 (C.D. Cal.

21  2015). None of these cases, therefore, controls the outcome here, and Niantic's arguments fail.

22       Finally at least part of the tortious conduct committed by Niantic was not communicative

23  and thus the privilege does not apply. As explained above, Defendants allege that Niantic injured

24  them by suspending user accounts which used the tweaked Apps that incorporate Defendants'

25  DLL file. *See* Dkt. 64 (Counterclaims) at ¶¶ 31-32.[1] Because Defendants accuse an act—the

26

27  ─────────────────────────
    [1] Defendants incorporated these allegations by reference into their pleading of specific counts
28  against Niantic. They are thus a sufficient basis for asserting liability against Niantic. *See Fong v.*
    *United States*, 300 F.2d 400, 413 (9th Cir. 1962); *see also, e.g., Ukiah Automotive Investments v.*

DEFTS' OPP. TO NIANTIC'S MTD
CASE NO. 4:19-cv-03425-JST

suspension of accounts—as the wrongful conduct from which Defendants were injured, this allegation does not relate to a communication protected by the litigation privilege. *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 900 (E.D. Cal. 2006) ("pure conduct [] is not covered"); *Kimmel v. Goland*, 51 Cal. 3d 202, 209, 793 P.2d 524, 528 (1990) ("[h]ere, park management alleges that it suffered injury from the taping of confidential telephone conversations, not from any 'publication' or 'broadcast' of the information contained in these conversations. Thus, the litigation privilege is plainly *not* applicable.")

### 3.    The *Noerr-Pennington* doctrine does not bar Defendants' tortious interference and unfair competition claims.

The *Noerr-Pennington* doctrine arises from two Supreme Court cases holding "that private actors are immune from antitrust liability for petitioning the government, even when the private actors' motives are anticompetitive." *Sanders v. Brown*, 504 F.3d 903, 913 (9th Cir. 2007). "Because [it] grows out of the [First Amendment's] Petition Clause, its reach extends only so far as necessary to steer clear of violating the First Amendment." *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1048 (9th Cir. 2015).

The doctrine protects petitions to all branches of government, but "[c]ourts have taken a narrower view of *Noerr-Pennington* protections where petitions to adjudicatory bodies are at issue." *Oregon Natural Resources Council v. Mohla*, 944 F.2d 531, 533 n.2 (9th Cir. 1991). For example, the doctrine does not apply to conduct "that is not closely related to petitioning activity." *Perez v. DirecTV Group Holdings, LLC*, Case No. 8:16-cv-01440-JLS-DFM, 2019 WL 6362471, at *7 (C.D. Cal. July 23, 2019). It also does not apply to "sham litigation," including lawsuits that are "objectively baseless" or involve "intentional misrepresentations[] to the court." *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 931 (9th Cir. 2006). Both these questions—whether the

---

*Mitsubishi Motors of N.A., Inc.*, No. 04-3932 MMC, 2005 WL 645960, at *3 n.7 (N.D. Cal. Mar. 18, 2005); *United Feature Syndicate, Inc. v. Powell*, No. 80 00155 DWW, 1981 WL 1289, at *3 (C.D. Cal. Mar. 27, 1981). Although "the better practice is to incorporate by reference only the prior paragraphs that are pertinent to a particular count," dismissing a claim for violating "this pleading technicality" is inappropriate. *In re Urbanski*, Bankruptcy No. 09-16027-A7, 2012 WL 1514772, at *3 (Bankr. S.D. Cal. Apr. 27, 2012).

1   conduct is "closely related to petitioning activity" and whether the litigation is a sham—are

2   questions of fact. *Sonus Networks, Inc. v. Inventergy, Inc.*, No. C-15-0322 EMC, 2015 WL

3   4539814, at *2 (N.D. Cal. July 27, 2015). As a result, "courts rarely award *Noerr-Pennington*

4   immunity at the motion to dismiss stage, where the Court must accept as true the non-moving

5   party's well-pleaded allegations." *Id*. Even where

6          In this case, Defendants' claims are not barred under *Noerr-Pennington*. As explained

7   above, Defendants assert that Niantic first injured Defendants by suspending user accounts

8   associated with Defendants' software. *See* Dkt. 64 (Counterclaims) at ¶¶ 31-32. In asserting

9   *Noerr-Pennington*, Niantic does not even acknowledge these allegations. *See* Dkt. 69 at 7-8

10  (arguing only that Niantic's cease-and-desist letters and communications with GoDaddy are

11  protected). That is understandable—Niantic deliberately targeting Defendants' customers has no

12  legitimate link to "petitioning activity." *See Perez*, 2019 WL 6362471, at *7. Whatever Niantic

13  argues about its other tortious conduct, this alone defeats Niantic's *Noerr-Pennington* defense.

14         In addition, Niantic's conduct also meets the criteria for *Noerr-Pennington*'s sham

15  litigation exception. As is becoming clear, Niantic only filed its baseless claims because it failed

16  to investigate how Global++ software actually worked or Defendants' role in creating it. *See*

17  Dkt. 78-1 at ¶¶ 30-41 (Niantic did not use a recognized method to determine if its code had been

18  copied); *see also* Dkt. 63-20 at ¶¶ 7-15 (contrary to Niantic's repeated allegations and arguments,

19  Defendants did not create or distribute any linked apps); Dkt. 63-1 at ¶¶ 29-41 (stating that

20  Global++ software does not access or communicate with Niantic's servers or incorporate or alter

21  Niantic's code); Dkt. 64 (Counterclaims) at ¶¶ 6-17 (describing the DLL).[2] Defendants pleaded

22  facts supporting these assertions specifically in its Answer and Counterclaims. *See* Dkt. 64

23  (Counterclaims) at ¶¶ 6-17, 30-41. *Noerr-Pennington* therefore does not bar Defendants'

24  _____

25  [2] Confronted with evidence contradicting Niantic's allegations, Niantic has doubled-down on its
    misrepresentations to the Court by continuing to accuse Defendants of distributing Global++
26  apps and copying, compiling, and modifying Niantic's code. *See* Dkt. 71 at 13-16. As
    Defendants have conclusively explained, signing services linked the dynamic library software
27  Mr. Hunt designed to Niantic's software, and Niantic's continuing refusal to identify and name
    proper defendants continues to injure Defendants. *See* Dkt. 78-1 at ¶¶ 42-49 (Niantic cannot
28  support an argument that Defendants distributed linked apps).

counterclaims. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 647-48 (9th Cir. 2009) (reversing a *Noerr-Pennington* dismissal where a complaint states exactly what conduct a defendant made, to whom a defendant's communications were made, and what the defendants "improper and/or unlawful methods of advocacy were.").

> ### 4. Defendants sufficiently pleaded tortious interference and unfair competition claims.

Defendants pleaded all necessary elements of their tortious interference and unfair competition claims, and Defendants supported those elements with sufficient factual material to plausibly assert claims for relief.

> #### a. Defendants state a plausible tortious interference claim.

To allege tortious interference with a prospective economic advantage under California law, a party must plead (1) a valid prospective business relationship; (2) the opposing party's knowledge of that relationship; (3) the opposing party's intentional acts designed to disrupt that relationship; (4) actual breach or disruption; and (5) resulting damage. *Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015). Niantic does not assert that Defendants failed to allege any of these elements. *See* Dkt. 69 at 8-10.

Instead, Niantic asserts that Defendants were required to personally identify all Defendants' subscribers whose subscriptions were terminated by Niantic's tortious conduct. But the Ninth Circuit has repeatedly held that tortious interference claims identifying subscribers generally are sufficient to establish liability. *See, e.g., I.C. Mktg., Inc. v. Amos Press, Inc.*, 147 Fed. App'x 671, 673 (9th Cir. 2005). The authority on which Niantic relies does not avoid this fact. Niantic cites *Vascular Imaging Professionals, Inc. v. Digirad Corp.* for the proposition "merely referring to customers in general is not sufficient to show a specific prospective relationship." 401 F. Supp. 3d 1005, 1013 (S.D. Cal. 2019) (cited in Dkt. 69 at 8-9). In that case, the complaint alleged only that the plaintiff "had existing prospective business relationships with doctors and medical groups" with a "substantial probability of future economic benefit." *See id.* Here, however, Defendants have pleaded that their business derived primarily from monthly subscribers who "paid monthly subscription fees," and that it "it was reasonable to expect that

-10-

the subscribers would keep paying monthly subscription fees." Dkt. 64 (Counterclaims) at ¶¶ 49-50. These facts support Defendants' allegation that they had a valid prospective economic expectancy in their relationships with subscribers and the subscribers can be identified in discovery.

Niantic also asserts that Defendants "cannot show that Niantic's alleged acts of interference were independently wrongful," Dkt. 69 at 9, but that is a question of fact and an inappropriate basis for dismissal. *See O'Brien as Tr. Of Raymond F. O'Brien Revocable Tr. v. XPO CNW, Inc.*, 362 F. Supp. 3d 778, 786 (N.D. Cal. 2018). And Niantic asserts that Defendants fail to tie Niantic's conduct to their injury. Dkt. 69 at 9-10. But Niantic argues only that its threatening cease-and-desist letters did not injure Defendants, ignoring that Niantic also suspended users connected with Defendants' software and bullied GoDaddy into closing the website that allowed Defendants to operate. *See* Dkt. 64 (Counterclaims) at ¶¶ 33-40. Even under Niantic's own terms, therefore, Defendants have adequately pleaded their tortious interference claim, and Niantic's counterarguments fail.

### b. Defendants adequately pleaded their unfair competition claim.

A party asserts a valid claim under California's Unfair Competition Law when it shows an . . . unlawful, unfair, or fraudulent business act or practice." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (internal quotation marks omitted). The law's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Parducci v. Overland Solutions, Inc.*, 399 F. Supp. 3d 969, 981 (N.D. Cal. 2019) (internal quotation marks omitted). "The 'unlawful' prong of the [law] borrows violations of other laws and treats them as independently actionable." *Id.* (internal quotation marks omitted). "'Unfair' simply means any practice whose harm to the victim outweighs its benefits." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 839 (1994).

Niantic asks this Court to add an additional element to the Unfair Competition Law. It asserts that Defendants "must allege an independently actionable wrong," and that Defendants' claim fails unless they allege unlawful conduct. Dkt. 69 at 10-11. This is false. *See In re Anthem, Inc. v. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016) ("parties may proceed with

-11-

a UCL claim . . . by alleging immoral, unethical, oppressive, unscrupulous, or substantially injurious conduct *or* by demonstrating that [the opposing party] violated an established public policy."). Niantic also states that Defendants were required to "identify which of [the] three theories they are pursuing here," Dkt. 69 at 11, but this is also false—neither of the cases Niantic cites requires such identification. *See, e.g., Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999) (considering a UCL claim tried to a court and not addressing pleading requirements at all). In short, Defendants' UCL claim—just like their tortious interference claim—is adequately pleaded, and Niantic cannot support any argument to the contrary.

**B.      California's Anti-SLAPP law does not bar Defendants' claims.**

The anti-SLAPP statute does not bar Defendants' tortious interference or unfair competition claims. Niantic cannot meet its initial burden to show that its prelitigation conduct is protected under the statute because Defendants' allegations raise a genuine question of fact as to whether Niantic acted in good faith contemplation of litigation. Even if Niantic could meet its initial burden, Defendants claims would still survive because they show that Defendants have a probability of success on the merits.

**1.      Niantic's prelitigation activities are not protected because there is no evidence Niantic acted in reasonable contemplation of litigation.**

A prelitigation statement is entitled to protection under California's anti-SLAPP statute only to the same extent it is entitled to "the protection of the litigation privilege of Civil Code section 47, subdivision (b)." *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1115 (1999) (internal quotation marks omitted). The party defending a claim must make "a threshold showing that the challenged cause of action is one 'arising from' protected activity." *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1016 (N.D. Cal. 2007).

Niantic cannot meet its burden under the anti-SLAPP statute that the alleged wrong constitutes a "protective activity" for the same reason it cannot show that its prelitigation conduct is privileged. To qualify for anti-SLAPP protection, Niantic's prelitigation conduct must have been "made in anticipation contemplated in good faith and under serious consideration." *Bailey*,

197 Cal.App.4th at 789-90. "Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact." *Olivares*, 40 Cal.App.5th at 357. As explained above, Defendants have alleged that Niantic targeted and suspended user accounts associated with Defendants' customers, sent Letters that did not mention even the possibility of litigation, referenced conduct in said Letters that are not related to Defendants, demanded Defendants cease the use of code which has substantial uses unrelated to Niantic, and forced GoDaddy to shut down the website that permitted Defendants to operate. *See* Dkt. 64 (Counterclaims) at ¶¶ 30-41. At minimum, these allegations raise a question of fact as to whether Niantic acted in good-faith contemplation of litigation, and Niantic's motion should be denied.

Niantic fails to cite any authority that avoids this obvious conclusion—the cases it does cite all arise from a communication, not conduct, and specifically referenced intended or ongoing litigation. Niantic cites *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, in which a demand letter expressly stated that the party sending it "intend[ed] to file a complaint with the State Attorney General's office." 47 Cal.App.4th 777, 780 (1996); Dkt. 69 at 14. In *GWS Techs., Inc. v. Furth*, the anti-SLAPP action arose from a plaintiff "communicat[ing] the existence of [a] lawsuit" against a defendant to brokerages doing business with the defendant. Case No. SACV 08-00586-CJC(PLAx), 2010 WL 11520562, at *2 (C.D. Cal. Mar. 25, 2010); Dkt. 69 at 14. And in *Summerfield v. Randolph*, the anti-SLAPP claim was to address plaintiff's improper allegations which were based on an affidavit submitted by the defendant in a Zimbabwean court "to influence the determination of issues pending in the [California] case." 201 Cal.App.4th 127, 136 (2011). The relevant actions in each of these cases thus were communications and expressly referenced litigation. Niantic's prelitigation conduct in this case made no such references, and Niantic cannot meet its burden of showing that that conduct is protected activity. California's anti-SLAPP statute is therefore no bar to Defendants' counterclaims. *See Olivares*, 40 Cal.App.5th at 357.

1

2

   **2.**  **Defendants have pleaded all facts necessary to sustain their tortious interference and unfair competition claims.**

3

   Even where a moving party can show its conduct is protected under the anti-SLAPP

4

statute, a claim can be stricken under the statute only if it also "lacks even minimal merit." *Miller*

5

*Marital Deduction Trust v. Zurich Am. Ins. Co.*, 41 Cal.App.5th 247, 254 Cal.Rptr.3d 124, 131

6

(2019) (internal quotation marks omitted). "[w]hen an anti-SLAPP motion to strike challenges

7

only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil

8

Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned*

9

*Parenthood Fed'n of Am., Inc. v. Ct. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). As

10

explained above, Defendants' tortious interference and unfair competition claims are both

11

supported by specific factual allegations establishing each necessary element. Niantic's anti-

12

SLAPP argument thus fails, and this Court should reject it.

13

  **C.**  **Defendants sufficiently pleaded valid affirmative defenses.**

14

   Niantic is not entitled to an order striking Defendants' affirmative defenses. Other Ninth

15

Circuit courts have expressly concluded that "the strict pleading standard of *Twiqbal* should not

16

apply to affirmative defenses and instead appl[y] the less-demanding 'fair notice' standard used

17

by the Ninth Circuit . . ." *Loi Nguyen v. Durham School Servs., L.P.*, 358 F. Supp. 3d 1056, 1060

18

(C.D. Cal. 2019). But even the Rule 8 "plausibility" standard "is relatively light" when applied to

19

affirmative defenses. *Center for Biological Diversity v. Envtl. Protection Agency*, 316 F. Supp.

20

3d 1156, 1163 (N.D. Cal. 2018). Under that standard, Defendants must merely present "direct or

21

inferential allegations respecting all the material elements . . . ." *Bell Atl. Corp. v. Twombly*, 550

22

U.S. 544 (2007). Here, Defendants' defenses each easily meet this standard, and Niantic's

23

motion should thus be denied.

24

   **1.**  **The Court should not strike Defendants' assertion that Niantic failed to state a claim for relief.**

25

26

   It is true that asserting that a plaintiff has failed to state a claim for relief "is a 'negative

27

defense' that can be set up by a denial, not an affirmative defense." *Unigestion Holding, S.A. v.*

28

*UPM Tech., Inc.*, 305 F. Supp. 3d 1134, 1143 (D. Or. 2018). But Defendants' asserting a failure

DEFTS' OPP. TO NIANTIC'S MTD
CASE NO. 4:19-cv-03425-JST

to state a claim in an answer preserves the issue and allows them to litigate it later. *Chocolate Magic Las Vegas LLC v. Ford*, 337 F. Supp. 3d 950, 954-55 (D. Nev. 2018). By presenting the precise question of whether Niantic met its pleading obligations, Defendants' assertion—however labeled—"as a statement of defense in such general terms suffices," and should not be stricken. *Smeed v. Carpenter*, 274 F.2d 414, 418 (9th Cir. 1960).

> ### 2. Defendants stated facts sufficient to assert that they operated under a license from Niantic.

A license to use copyrighted work is a defense to infringement liability and "may be granted orally, or may even be implied from conduct." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990) (*quoting* 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.03[A] at 10-36 (1989)). Asserting implied license requires allegations supporting "the same elements necessary to evidence an express contract: mutual assent . . ., consideration, legal capacity and lawful subject matter." *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1050-51 (9th Cir. 2015).

Here, Defendants pleaded expressly that "Niantic knew about Defendants' alleged activities, possessed the ability to stop Defendants from engaging in the conduct about which Niantic now complains, and permitted Defendants to continue operating." Dkt. 64 (Affirmative Defenses) at ¶ 2. Specifically, Defendants alleged that Niantic knew about Defendants' allegedly improper conduct no later than April 2018. *Id.* at 12 ¶ 31. Defendants also allege that their software tweak actually increased Niantic's revenue. *Id*. at 12 ¶ 29. And Niantic did not file this action until over a year later. *See* Dkt. 1 (filed June 14, 2019). These facts are more than sufficient to infer that Niantic continued to permit Defendants to operate for over a year because Defendants were making Niantic richer. At this stage, the Court must treat these allegations and inferences as true. *See Northstar Fin. Advisors*, 904 F.3d at 828; *Lazy Y. Ranch*, 546 F.3d at 588. Niantic's motion to strike Defendants' license defense thus fails.

> ### 3. Defendants sufficiently pleaded their estoppel defense.

"[E]stoppel looks to the parties' actions in relation to each other and is applicable where the conduct of one side has induced the other to take such a position that it would be injured if

the first should be permitted to repudiate its acts." *Westport Ins. Corp. v. Northern California Relief*, 76 F. Supp. 3d 869, 885 (N.D. Cal. 2014) (internal quotation marks omitted). A party asserting it must "

> show that: (1) the party to be estopped knew the facts; (2) the other party was ignorant of the true facts; (3) the party intended his or her conduct to be acted upon, or acted in a manner that the party asserting estoppel had a right to believe it so intended; and (4) the other party relied on the conduct to his injury.

*Id.*

In this case, Defendants pleaded that Niantic is estopped from asserting its claims because it "knew about Defendants' allegedly infringing conduct, intended that Defendants rely on Niantic's acts or omissions, and Defendants relied on Niantic's acts or omissions to Defendants' detriment." Dkt. 64 (Affirmative Defenses) at ¶ 3. As explained above, these allegations are bolstered by others specifically asserting that Niantic knew about Defendants' conduct for over a year before taking serious action to stop it because Niantic wanted to continue receiving additional revenue from Defendants' software tweak. *See id.* at 12 ¶¶ 29-31. This is more than enough to assert that Niantic allowed Defendants to continue acting in a particular manner and that Niantic should now be barred from asserting that Defendants' conduct was wrongful. *See Westport Ins.*, 76 F. Supp. 3d at 885.

**4.    Defendants sufficiently pleaded their unclean hands defense.**

"[T]he doctrine of unclean hands requires that a plaintiff shall have acted fairly and without fraud or deceit as to the controversy in issue." *Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015) (internal quotation marks omitted). An alleged infringer asserting the defense "must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (internal quotation marks omitted).

Defendants in this case pleaded that Niantic's unclean hands derive from the fact that it "profited from Defendants activities for a period of years before filing these claims." This is consistent with the allegations cited above showing that Niantic knowingly permitted Defendants

-16-

1   to continue in the course of conduct about which Niantic now complains. If Defendants' conduct

2   was improper, Niantic's profiteering on that conduct bars Niantic from attempting to use this

3   Court to double its winnings. *See Northbay Wellness Group*, 789 F.3d at 959. Niantic's

4   unsupported assertion that "Defendants allege no facts that might support" an unclean hands

5   defense thus fails. Dkt. 69 at 17.

6             **5.**      **Defendants sufficiently pleaded their timeliness defenses, at least until**
7                      **discovery can obtain additional facts.**

8         Under California law, "[i]t is well settled . . . that there are two ways to properly plead a

9   statute of limitations: (1) allege facts showing that the action is barred, and indicating that the

10   lateness of the action is being urged as a defense and (2) plead the specific section and

11   subdivision." *Citizens for Beach Rights v. City of San Diego*, 17 Cal.App.5th 230, 239 n.10

12   (2017) (internal quotation marks omitted). Here,

13         Defendants have pleaded facts sufficient to show that Niantic's claims are barred and

14   have specifically pleaded both limitations and laches as defenses. *See* Dkt. 64 (Affirmative

15   Defenses) at ¶¶ 5-6, (Counterclaims) at ¶ 8 (alleging that the DLL was developed in 2017), 12,

16   29 (alleging that Defendants' alleged conduct increased Niantic's revenues), 33 (alleging that

17   Niantic waited at least a year after targeting Defendants' customers to take legal action). Critical

18   additional facts—including when Niantic first knew that Defendants were engaging in conduct

19   they now assert as improper—are only available through discovery. At minimum, this Court

20   should permit Defendants to seek additional facts necessary to assert their timeliness defenses

21   before deciding Niantic's motion to strike or amend their answer to include additional facts

22   supporting this defense. *See Rosen v. Masterpiece Mktg. Group, LLC*, 222 F. Supp. 3d 793, 804

23   (C.D. Cal. 2016) (cited in Dkt. 69 at 18).

24             **6.**      **Niantic has sufficient notice of Defendants' fair use defense.**

25         Fair use is an affirmative defense to copyright infringement claims. *See Free Speech Sys.,*

26   *LLC v. Menzel*, 390 F. Supp. 3d 1162, 1173 (N.D. Cal. 2019). Analyzing a fair use defense

27   requires a case-by-case assessment of statutory factors "weighed together in light of the purposes

28   of copyright." *Id.* at 1174. Even where striking a fair use defense is an appropriate remedy, leave

-17-

1   to amend should be freely granted. *See Amini Innovation Corp. v. McFerran Home Furnishings*
2   *Inc.*, No. CV 13-6496 RSWL (SSx), 2014 WL 360048, at *4 (Jan. 31, 2014).

3        Here, Defendants allege in very specific detail how the dynamic library software worked
4   independently from any proprietary Niantic code. Dkt. 9-10 ¶¶ 7-17. Even after signing services
5   linked the dynamic library software with Niantic's publicly-available code, that linked software
6   did not interfere with any right or revenue to which Niantic claims title. *See, e.g., id.* at 11 ¶ 28.
7   These allegations easily suffice to put Niantic on notice of how the fair use doctrine would apply
8   in this case, but even if the Court disagrees, it should grant Defendants leave to amend their
9   defenses to clarify their supporting allegations.

10         **7.**     **Defendants pleaded facts sufficient to support their waiver and**
11                  **acquiescence defenses.**

12       "Waiver is the intentional relinquishment of a known right with knowledge of its
13  existence and the intent to relinquish it." *United States v. King Features Entm't, Inc.*, 843 F.2d
14  394, 399 (9th Cir. 1988). A waiver can be implied "where there is clear, decisive and
15  unequivocal conduct which indicates a purpose to waive the legal rights involved." *United States*
16  *v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602-03 (9th Cir. 1995) (internal quotation marks
17  omitted).

18       Likewise, acquiescence can bar liability "following an affirmative act by word or deed by
19  the [opposing] party that conveys implied consent to another." *Seville Classics, Inc. v. Neatfreak*
20  *Group, Inc.*, Case No.: CV 16-06460 SJO (RAOx), 2017 WL 3473932, at *6 (C.D. Cal. Feb. 14,
21  2017). In cases like this, an acquiescence defense should only be stricken if, "[t]aken as a whole,
22  defendant's pleadings contain [no] sufficient facts for the court to infer that defendants alleged
23  longstanding use of the marks plausibly supports [the] defense." *Nat'l Grange*, 2014 WL
24  3837434, at *3.

25       As explained throughout, Defendants in this case have alleged that Niantic knew what
26  Defendants were doing and let Defendants continue doing it because Defendants' activities made
27  Niantic more money. *See* Dkt. 64 (Counterclaims) at ¶¶ 29-31. This is more than enough to give

28

1    Niantic fair notice of how waiver and acquiescence defenses will be litigated in this action.

2    Niantic's motion to strike these defenses thus fails.

3            **8.      Defendants have not waived their arbitration rights.**

4            "A party seeking to prove that the right to compel arbitration must carry the heavy burden

5    of demonstrating: (1) knowledge of an existing right to compel arbitration; (2) intentional acts

6    inconsistent with that existing right; and (3) prejudice to the person opposing arbitration from

7    such inconsistent acts." *Newirth by and through Newirth v. Aegis Senior Communities, LLC*, 931

8    F.3d 935, 941 (9th Cir. 2019). Although conduct substantially invoking "the litigation machinery

9    prior to seeking arbitration" may be conduct inconsistent with an existing right to arbitrate, "[t]he

10   point at which involvement in litigation becomes substantial [enough to waive arbitration rights]

11   is determined on a case-by-case basis." *Freaner v. Valle*, 966 F. Supp. 2d 1068, 1085 (S.D. Cal.

12   2013). An arbitration clause in a video game's terms of service is still enforceable even if a party

13   to those terms proceed with litigation for many months without moving to compel arbitration if

14   the terms do not require an election as soon as litigation is initiated. *Swift v. Zynga Game*

15   *Network, Inc.*, 805 F. Supp. 2d 904, 912-13 (N.D. Cal. 2011).

16           Here, Niantic has not alleged or proven any of the elements required to show that

17   Defendants have waived their arbitration rights. *See Newirth*, 931 F.3d at 941. Niantic certainly

18   has not shown that Defendants' participation in this litigation would prejudice Niantic in later

19   arbitration proceedings. And although Niantic argues that this Court should strike Defendants'

20   arbitration defense because the defense "fails to identify the contract under which Niantic

21   allegedly agreed to arbitrate," Dkt. 69 at 19, Niantic repeatedly referenced its terms of service,

22   which contains the arbitration agreement, in its Complaint. *See* Dkt. 1 ¶¶ 25, 27, 37-39, 98-102.

23   Niantic's gamesmanship cannot cover its failure to assert necessary facts, and Defendants'

24   arbitration defense therefore stands.

25   **V.      CONCLUSION**

26           For the reasons set forth above, Niantic's Motion to Dismiss should be denied.

27

28

1  Dated:  December 11, 2019                    Respectfully Submitted,

2                                               POLSINELLI LLP

3

4                                               */s/ Fabio E. Marino*
                                        By:      Fabio E. Marino
5
                                               Attorneys for Defendants
6                                              RYAN HUNT AND ALEN HUNDUR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28