Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
Perkins Coie LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

Todd M. Hinnen (admitted *pro hac vice*)
THinnen@perkinscoie.com
Ryan Spear (admitted *pro hac vice*)
RSpear@perkinscoie.com
PERKINS COIE LLP
1201 Third Ave., Suite 4900
Seattle, WA  98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff Niantic, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| NIANTIC, INC., a Deleware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL++, an unincorporated association; RYAN HUNT, a.k.a. "ELLIOTROBOT," an individual; ALEN HUNDUR, a.k.a. "IOS N00B," an individual; and DOES 1-20,<br><br>Defendants. | Case No. 19-cv-03425-JST<br><br>**NIANTIC, INC.'S REPLY IN SUPPORT OF ITS COMBINED MOTION TO DISMISS COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM, MOTION TO STRIKE COUNTERCLAIMS UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16, AND MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES**<br><br>Date:          January 29, 2020<br>Hearing Time: 2 p.m.<br>Courtroom:   6, 2nd Floor (Oakland)<br>Judge:         Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ............................................................................................. 1

II.  DEFENDANTS' COUNTERCLAIMS SHOULD BE DISMISSED............................... 2

     A.   Counterclaim I Should Be Dismissed ..................................................... 2

     B.   Counterclaims II and III Should Be Dismissed........................................ 4

          1.   To the extent that Counterclaims II and III are based on litigation-related communications, they are barred by the California litigation privilege ............................................................................................. 4

          2.   To the extent that Counterclaims II and III are based on litigation-related communications, they are barred by the *Noerr-Pennington* doctrine............................................................................................ 7

          3.   To the extent that Counterclaims II and III are based on Niantic's exercise of its editorial discretion, they are barred by the Communications Decency Act.................................................... 8

          4.   Counterclaims II and III fail to state plausible claims ................................ 9

               a.   Defendants have not alleged and cannot allege the elements of tortious interference with prospective economic advantage ..................................................................... 9

               b.   Defendants have not alleged and cannot allege the elements of a claim under California's Unfair Competition Law ............... 10

III. DEFENDANTS' COUNTERCLAIMS SHOULD ALSO BE STRICKEN UNDER CALIFORNIA'S ANTI-SLAPP LAW ......................................................... 11

     A.   Counterclaims II and III Are Based on Protected Activity .................... 11

     B.   Defendants Cannot Prevail on Counterclaims II and III....................... 12

IV.  DEFENDANTS' AFFIRMATIVE DEFENSES SHOULD BE STRICKEN.................. 12

V.   CONCLUSION.......................................................................................... 14

1

## TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Adobe Sys. Inc. v. Alghazzy,*
  No. 15-cv-01443-BLF, 2016 WL 8223617 (N.D. Cal. May 16, 2016) ....................................2

5

6

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.,*
  No. C 11-2243 CW, 2012 WL 3877783 (N.D. Cal. Sept. 6, 2012) ............................................5

7

*Baral v. Schnitt,*
  1 Cal. 5th 376 (2016) ..................................................................................................................10

8

9

*Brittain v. Twitter, Inc.,*
  No. 19-cv-00114-YGR, 2019 WL 2423375 (N.D. Cal. June 10, 2019) ....................................8

10

*Bylin Heating Sys., Inc. v. M & M Gutters, LLC,*
  No. 2:07-CV-00505-FCD-KJM, 2008 WL 744706 (E.D. Cal. Mar. 18, 2008).........................5

11

12

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
  11 Cal. 4th 376 (1995) ................................................................................................................8

13

14

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,*
  47 Cal. App. 4th 777 (1996) ......................................................................................................10

15

16

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.,*
  711 F. Supp. 2d 1074 (C.D. Cal. 2010) ......................................................................................6

17

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
  7521 F.3d 1157, 1170-71 (9th Cir. 2008) ...................................................................................9

18

19

*Fin. Corp. of Am. v. Wilburn,*
  189 Cal. App. 3d 764 (1987)........................................................................................................5

20

21

*Fotohaus, LLC v. Proforma, Inc.,*
  No. 18-cv-01827-BLF, 2019 WL 1493355 (N.D. Cal. Apr. 4, 2019) ....................................3, 5

22

*Gratke v. Andersen Windows, Inc.,*
  No. 10-CV-963, 2010 WL 5439763 (D. Minn. Dec. 8, 2010), *report and
  recommendation adopted*, Civil No. 10-963 (PJS/LIB), 2010 WL 5441940
  (D. Minn. Dec. 28, 2010)..............................................................................................................3

23

24

*Hong v. AXA Equitable Life Ins. Co.,*
  No. 18-cv-04039-JST, 2018 WL 6331012 (N.D. Cal. Dec. 4, 2018) .........................................4

25

26

*Inn S.F. Enter., Inc. v. Ninth St. Lodging, LLC,*
  No. 3:16-cv-00599-JD, 2016 WL 8469189 (N.D. Cal. Dec. 19, 2016)....................................12

27

28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3
*Intel Corp. v. Tela Innovations, Inc.*,

4
No. 3:18-cv-02848-WHO, 2019 WL 2476620 (N.D. Cal. June 13, 2019)..............................11

5
*Kashian v. Harriman*,
98 Cal. App. 4th 892 (2002) ...................................................................................................5

6
*Kelly v. Pub. Util. Dist. No. 2*,

7
552 F. App'x 663 (9th Cir. 2014) ...........................................................................................13

8
*MedImmune Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)..................................................................................................................2

9

10
*Nat'l Grange of Order of Patrons of Husbandry v. Cal. State Grange*,
No. 2:14-676 WBS DAD, 2014 WL 3837434 (E.D. Cal. July 30, 2014)..................................3

11
*Northbay Wellness Grp., Inc. v. Beyries*,

12
789 F.3d 956 (9th Cir. 2015)...................................................................................................11

13
*Nuvo Research Inc. v. McGrath*,
No. C 11-4006 SBA, 2012 WL 1965870 (N.D. Cal. May 31, 2012) ........................................9

14

15
*Oracle Am., Inc. v. CedarCrestone, Inc.*,
No. 12-cv-04626 NC, 2012 WL 12897962 (N.D. Cal. Dec. 7, 2012) ......................................9

16

17
*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
No. 16-cv-01393-JST, 2017 WL 635291 (N.D. Cal. Feb. 16, 2017)......................................11

18
*Parks Sch. of Bus., Inc. v. Symington*,

19
51 F.3d 1480 (9th Cir. 1995)....................................................................................................8

20
*People ex rel. Lockyer v. Fremont Life Ins. Co.*,
104 Cal. App. 4th 508 (2002) ..................................................................................................9

21
*Qureshi v. Countrywide Home Loans, Inc.*,

22
No. C 09-4198 SBA, 2010 WL 841669 (N.D. Cal. Mar. 10, 2010) .........................................9

23
*Riggs v. MySpace, Inc.*,
444 F. App'x 986, 987 (9th Cir. 2011) ....................................................................................9

24

25
*Rise Basketball Skill Dev., LLC v. K Mart Corp.*,
No. 16-cv-04895-WHO, 2017 WL 2775030 (N.D. Cal. June 27, 2017)..................................9

26
*Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*,

27
No. 1:17-cv-01207-DAD-BAM, 1:17-cv-01056-DAD-BAM, 2019 WL
3946895 (E.D. Cal. Aug. 21, 2019) .........................................................................................4

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Rosen v. Masterpiece Mktg. Grp., LLC*,

4

   222 F. Supp. 3d 793 (C.D. Cal. 2016) ...................................................................11

5

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,

   144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir.

6

   2017) .....................................................................................................................7

7

*Stickrath v. Globalstar, Inc.*,

   No. C07-1941 TEH, 2008 WL 2050990 (N.D. Cal. May 13, 2008) ....................2, 3

8

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,

9

   546 F.3d 991 (9th Cir. 2008)................................................................................6

10

*United States v. Ritchie*,

11

   342 F.3d 903 (9th Cir. 2003)................................................................................3

12

*United States v. State of Wash.*,

   759 F.2d 1353, 1357 (9th Cir. 1985).....................................................................3

13

*Vascular Imaging Prof'ls, Inc. v. Digirad Corp.*,

14

   401 F. Supp. 3d 1005 (S.D. Cal. 2019) ...............................................................9

15

*Westport Ins. Corp. v. N. Cal. Relief*,

16

   76 F. Supp. 3d 869 (N.D. Cal. 2014) ................................................................11

17

*Wild v. Benchmark Pest Control, Inc.*,

   No. 1:15-cv-01876- JLT, 2016 WL 1046925 (E.D. Cal. Mar. 16, 2016) ...............12

18

*Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Reservation*,

19

   No. 3:17-cv-01436-GPC-MDD, 2019 WL 4277432 (S.D. Cal. Sept. 10, 2019)......5

20

**STATUTES**

21

17 U.S.C. § 107 ......................................................................................................12

22

Cal. Civ. Proc. Code § 425.16(c)(1)..........................................................................10

23

Communications Decency Act, 47 U.S.C. § 230(c) ...................................................7

24

**OTHER AUTHORITIES**

25

Fed. R. Civ. P. 12(b)(6)......................................................................................10, 13

26

Fed. R. Civ. P. 12(f) ......................................................................................2, 10, 13

27

28

I.     **INTRODUCTION**

Defendants' opposition ("Opp.") to Niantic's combined motions to dismiss and to strike ("Mot.") desperately tries to paint Niantic's efforts to protect its rights as malicious and unethical. But defendants' serial mischaracterizations of the record, and their irresponsible attacks on Niantic's integrity, are mere distractions. The bottom line is that defendants were caught raking in massive profits by stealing Niantic's code, scraping Niantic's data, and enabling cheating in Niantic's games. Based on undisputed evidence of that misconduct, the Court rightly enjoined defendants' schemes during the pendency of this suit. The new arguments and evidence that defendants have since raised in the hope of undermining that injunction are procedurally improper, irrelevant, and unpersuasive. *See generally* Dkt. 71.

Defendants' attempts to distract are understandable given the flaws in their pleadings. Counterclaim I (for declaratory judgment) is nothing more than a mirror image of the claims in Niantic's Complaint. It should be dismissed as redundant and wasteful. Hoping to avoid that result, defendants now argue that Counterclaim I also seeks to resolve *all* conceivable disputes between the parties—including disputes that neither party has raised. The Declaratory Judgment Act does not allow such vague and indefinite demands.

Counterclaims II and III (for tortious interference and unfair competition, respectively) fare no better. Those counterclaims are based on Niantic's litigation-related communications, including the cease-and-desist letter that Niantic sent to defendants. They are therefore barred by the California litigation privilege and the federal *Noerr-Pennington* doctrine, both of which protect litigants' free-speech rights. Recognizing that their counterclaims fail to the extent that they are based on Niantic's *communications*, defendants now argue that their counterclaims are also based on Niantic's *conduct*—namely, Niantic's alleged suspension of Niantic player accounts associated with defendants' Cheating Programs. But that new theory runs headlong into the Communications Decency Act, which bars defendants from seeking to hold Niantic liable for such conduct. And even if defendants could somehow plead around the litigation privilege, the *Noerr-Pennington* doctrine, and the Communications Decency Act, they have not alleged and

1    could not allege the essential elements of Counterclaims II and III. Thus, all defendants'

2    counterclaims should be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

3         But that is not all. Because Counterclaims II and III are indisputably based on Niantic's

4    protected expressive activities, they should also be stricken under California's anti-SLAPP law.

5    Indeed, courts routinely strike counterclaims where, as here, they are based on litigation-related

6    communications and are brought solely to punish a litigant for protecting its rights.

7         Finally, defendants' affirmative defenses do not meet even the most rudimentary pleading

8    standards. The Court should therefore strike those defenses under Rule 12(f).

9              **II.    DEFENDANTS' COUNTERCLAIMS SHOULD BE DISMISSED**

10   **A.   Counterclaim I Should Be Dismissed**

11        Defendants struggle to articulate the declaration they seek in Counterclaim I. *See, e.g.*,

12   Counterclaims ¶¶ 42-47 (merely describing the parties' positions); *id*. ¶ 60(a) (seeking a

13   declaration regarding "Niantic's trademark rights," even though neither party has raised a

14   trademark dispute); Opp. at 3 (arguing that Counterclaim I seeks relief regarding "issues not

15   presented by any other claim," but failing to identify those issues).

16        While it is not clear what relief defendants seek, it is clear that Counterclaim I is

17   inappropriate. If, as it appears from defendants' pleadings, Counterclaim I simply seeks a

18   declaration that defendants are not liable as alleged in Niantic's Complaint, then Counterclaim I is

19   redundant of the parties' claims and defenses and should be dismissed on that ground. *See* Mot. at

20   3-4; *see also Adobe Sys. Inc. v. Alghazzy*, No. 15-cv-01443-BLF, 2016 WL 8223617, at *2 (N.D.

21   Cal. May 16, 2016) (striking counterclaim for declaratory relief where, as here, the counterclaim

22   appeared to be a "mirror image[] of Plaintiff's affirmative claims" and sought "the same relief as

23   Defendant's affirmative defenses").[1]

24

25

---

26   [1] Defendants fault Niantic for arguing that a counterclaim for declaratory relief should be
     dismissed merely because "it arises from the same transaction pleaded in the complaint." Opp. at
27   4. But Niantic made no such argument. Rather, Niantic argued—based on well-established case
     law—that a counterclaim for declaratory relief should be dismissed if it is wholly redundant of
28   the parties' claims and defenses and therefore serves no useful purpose. *See* Mot. at 3-4.

1    Defendants do not argue otherwise. Instead, they argue that Counterclaim I is not

2    redundant because, in addition to seeking a declaration contrary to all Niantic's claims, it also

3    seeks a declaration that defendants violated "none of [Niantic's] rights," and therefore goes

4    "beyond the scope of" the parties' pleadings. Opp. at 4 (internal quotation marks and citation

5    omitted). That argument fails. If, as defendants now argue, Counterclaim I seeks an amorphous

6    declaration that resolves all potential disputes between the parties, including disputes that neither

7    party has identified or alleged, then it does not raise a "definite and concrete" dispute amenable to

8    declaratory relief. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

9    *Stickrath v. Globalstar, Inc.* is instructive. *See* No. C07-1941 TEH (N.D. Cal. May 13,

10   2008). There, the district court analyzed a counterclaim for declaratory relief that did not identify

11   "what specific dispute or uncertainty the counterclaim could resolve" and instead sought "an

12   abstract declaration . . . that will ward off all future litigation." *Id*. at *6. The Court rightly

13   rejected the counterclaim because the Declaratory Judgment Act does not tolerate such "blanket

14   ruling[s]" untethered from specific legal disputes. *Id.* But that is precisely what defendants now

15   claim to seek in this case: a free-floating declaration that defendants "did not infringe any of

16   Niantic's legal rights." Opp. at 5. That is improper. As the Ninth Circuit has explained:

17       It serves neither the needs of the parties, nor the jurisprudence of the court, nor the
         interests of the public for the judiciary to employ the declaratory judgment
18       procedure to announce legal rules imprecise in definition and uncertain in
         dimension. *Precise resolution, not general admonition, is the function of*
19       *declaratory relief*.

20   *United States v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985) (emphasis added). Thus, to

21   the extent that it seeks blanket immunity, Counterclaim I should be dismissed. *See Stickrath*, 2008

22   WL 2050990, at *6; *see also Gratke v. Andersen Windows, Inc.*, No. 10-CV-963 (PJS/LIB), 2010

23   WL 5439763, at *5 (D. Minn. Dec. 8, 2010) (rejecting counterclaim for declaratory relief that

24   failed to identify a specific "actual case or controversy"), *report and recommendation adopted*,

25   Civ. No. 10-963 (PJS/LIB), 2010 WL 5441940 (D. Minn. Dec. 28, 2010).[2]

26

27   _____
     [2] The lone case cited by defendants is not to the contrary. *See* Opp. at 4 (citing *Nat'l Grange of*
     *Order of Patrons of Husbandry v. Cal. State Grange*, No. 2:14-676 WBS DAD, 2014 WL
28   3837434 (E.D. Cal. July 30, 2014)). In *National Grange*, neither party argued that the
     counterclaim at issue was impermissibly vague and the court did not address that issue.

-3-

1

**B.      Counterclaims II and III Should Be Dismissed**

2

**1.      To the extent that Counterclaims II and III are based on litigation-related communications, they are barred by the California litigation privilege**

3

4

As alleged, Counterclaims II and III are based solely on (1) Niantic's cease-and-desist

5

letter to defendants and (2) a letter from Niantic to GoDaddy allegedly demanding that GoDaddy

6

disable defendants' website. *See* Mot. at 2-3. Defendants do not deny that Niantic's letter and the

7

purported demand to GoDaddy (collectively, the "Communications") were "made in or related"

8

to this case. *Fotohaus, LLC v. Proforma, Inc.*, No. 18-cv-01827-BLF, 2019 WL 1493355, at *2

9

(N.D. Cal. Apr. 4, 2019). To the contrary, they allege as much. *See* Counterclaims ¶¶ 33-41; *id.*

10

¶¶ 52-53; *id.* ¶¶ 57, 59. The Communications therefore fall within the scope of California's

litigation privilege and Counterclaims II and III should be dismissed. *See* Mot. at 5-6.[3]

11

Defendants raise a slew of arguments in response. None is persuasive. **First,** defendants

12

argue that the Communications are not privileged because they go "beyond the scope of Niantic's

13

claims in this case." Opp. at 6. But *defendants themselves* allege that Niantic's cease-and-desist

14

letter is "substantially similar" to Niantic's Complaint, *see* Counterclaims ¶ 44, and they are

15

correct, *see* Spear Decl., Ex. A. Niantic's communications with Domains By Proxy mirror

16

Niantic's claims as well. *See, e.g.*, *id.*, Ex. B at 2-3.

17

**Second,** defendants argue that the Communications are not privileged because they "did

18

not even mention litigation." Opp. at 7. But communications need not "explicitly threaten to

19

initiate litigation" to be privileged. *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*,

20

---

21

[3] Again, defendants' claim that Niantic asked GoDaddy to disable defendants' website is false.
*See* Mot. at 2 n.2. Rather, Niantic contacted Domains By Proxy (a service owned by GoDaddy

22

and used by defendants to obscure their identities) and asked Domains By Proxy to disclose
contact information for registrants of certain domain names associated with defendants'

23

misconduct, including globalplusplus.com. *See* Decl. of Ryan Spear ("Spear Decl.") ¶ 6, Ex. B.
Because defendants' Opposition ignores that point, and because defendants continue to

24

misrepresent the Communications, Niantic attaches them here. *See id.*, Ex. A (cease-and-desist
letter); *id.*, Ex. B (communications with Domains By Proxy). The Court may consider the

25

Communications without converting Niantic's Motion into a motion for summary judgment
because defendants' pleadings incorporate the Communications. *See United States v. Ritchie*, 342

26

F.3d 903, 908 (9th Cir. 2003) (document is incorporated "if the plaintiff refers extensively to the
document or the document forms the basis of the plaintiff's claim"); *Hong v. AXA Equitable Life*

27

*Ins. Co.*, No. 18-cv-04039-JST, 2018 WL 6331012, at *2 (N.D. Cal. Dec. 4, 2018) (incorporating
documents because they "form[ed] the basis for [plaintiff's] claims" and "the complaint

28

extensively reference[d]" them).

-4-

1   Nos. 1:17-cv-01207-DAD-BAM, 1:17-cv-01056-DAD-BAM, 2019 WL 3946895, at *13-14

2   (E.D. Cal. Aug. 21, 2019). In any case, Niantic's cease-and-desist letter *does* clearly allude to

3   potential litigation. It informs defendants that their "activities violate civil and criminal law" and

4   "harm[] Niantic and Niantic's users"; it explains that defendants' misconduct "exposes [them] to

5   serious penalties, including money damages, injunctive relief, and attorneys' fees and costs"; and

6   it warns defendants that "[i]f [they] ignore this letter and continue in [their] current unauthorized

7   and improper conduct, Niantic will take measures it believes are necessary to enforce its rights."

8   Spear Decl., Ex. A at 2, 3, 4. It also pointedly reserves Niantic's "rights and remedies, whether at

9   law or in equity." *Id.* at 4. Niantic's communications with Domains By Proxy are even more to

10  the point; because they were sent after Niantic filed its Complaint, those communications

11  expressly refer to this case. *See, e.g.*, *id.*, Ex. B at 3.

12          **Third,** defendants argue that the Communications are not privileged because they are

13  legally and factually baseless. *See, e.g.*, Opp. at 7. That argument fails for two reasons. For

14  starters, this Court has already held that Niantic is likely to succeed on the merits of the claims

15  articulated in Niantic's Communications. *See* Dkt. 55 ("PI Order"). Nor do any of the new

16  arguments and evidence that defendants have improperly crammed into the record since then

17  undermine that conclusion. *See* Dkt. 71. To give but one example: Even after more than 55 pages

18  of briefing on defendants' motion for reconsideration (excluding declarations and exhibits), it

19  remains undisputed that defendants operated a website at www.globalplusplus.com; that

20  defendants' customers could use that website to download IPA files containing the Cheating

21  Programs by clicking on buttons titled "Download IPA"; and that those IPA files contained

22  copies of Niantic's copyrighted Client Code. *See* Dkt. 71-2 ¶¶ 26-46 (establishing those points);

23  Dkt. 78 at 13-14 (failing to deny those points). Thus, notwithstanding defendants' thorough effort

24  to muddy the waters, it remains undisputed that defendants illegally distributed Niantic's

25  copyrighted code. Niantic is likely to succeed on the merits of its infringement claim for that

26  reason alone (among others).

27          Moreover, and more to the point, defendants' argument is irrelevant. Even if the claims in

28  the Communications are legally and factually wrong (they are not), and even if Niantic sent the

-5-

1   Communications knowing they were wrong (it did not), that would not matter. "[I]t is the

2   '*contemplation* of litigation that must be in good faith, not the merits of the actual litigation

3   itself.'" *Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Reservation*, No.

4   3:17-cv-01436-GPC-MDD, 2019 WL 4277432, at *9 (S.D. Cal. Sept. 10, 2019). "If this state of

5   mind exists, [even] a groundless statement is privileged." *Fin. Corp. of Am. v. Wilburn*, 189 Cal.

6   App. 3d 764, 777 (1987). And "the presence or absence of malice or good or bad faith is

7   irrelevant to the inquiry whether the litigation privilege is applicable." *Adobe Sys. Inc. v. Coffee

8   Cup Partners, Inc.*, No. C 11-2243 CW, 2012 WL 3877783, at *12 (N.D. Cal. Sept. 6, 2012).

9          Accordingly, all that matters is whether the Communications show that Niantic expected

10   to litigate against defendants when they were sent. Defendants cannot colorably claim otherwise:

11   Niantic's cease-and-desist letter was sent by outside counsel (the same counsel litigating this

12   case); it was "substantially similar" to Niantic's Complaint, Counterclaims ¶ 44; and it was sent a

13   mere *seven days* before Niantic filed its Complaint. *See* Spear Decl., Ex. A at 1. Again, the issue

14   is even more clear-cut with respect to Niantic's communications with Domains By Proxy. Those

15   communications were sent *after* Niantic filed this lawsuit, *see* Spear Decl., Ex. B, and were

16   therefore "necessarily [sent] in good faith contemplation of litigation," *Fotohaus*, 2019 WL

17   1493355, at *3.

18          **Fourth,** defendants argue that dismissal is inappropriate because there is a factual dispute

19   about whether Niantic anticipated litigation. *See* Opp. at 5-6. Again, defendants are wrong. When

20   "there is no dispute as to the operative facts, the applicability of the litigation privilege is a

21   question of law." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002). Thus, courts routinely

22   dismiss claims where, as here, the undisputed facts make clear that litigation was anticipated. *See

23   Adobe*, 2012 WL 3877783, at *12 (applying privilege even though "Wowza argues that Adobe's

24   filing of the instant lawsuit . . . was not initiated in good faith and is wrongful"). Nor is that

25   surprising, as the privilege would be virtually meaningless if litigants could avoid it simply by

26   asserting (as defendants do here) that there was no good-faith anticipation of litigation.

27          Defendants are correct that some courts have declined to dismiss claims based on

28   extraordinary circumstances calling into question whether a litigant truly acted in anticipation of

-6-

litigation. *See* Opp. at 5-6. In those cases, however, the parties resisting the privilege came

forward with plausible evidence and specific facts indicating ulterior motives. *See, e.g.*, *Bylin*

*Heating Sys., Inc. v. M & M Gutters, LLC*, No. 2:07-CV-00505-FCD-KJM, 2008 WL 744706, at

*5 (E.D. Cal. Mar. 18, 2008) (litigant "ha[d] a history of asserting bad faith threats of []

litigation" and "informed distributors its case had no merit, but that [it] wanted to injure Thermal

Technologies"). Defendants have done no such thing. Instead, defendants simply argue that

Niantic's failure to adopt their view of the case in light of new materials they filed months after

the case began "creates serious doubt as to the good faith basis for Niantic's claims." Opp. at 7.

As explained elsewhere, however, those new materials are procedurally improper and

substantively meritless. *See* Dkt. 71. And even if those new materials cast doubt on Niantic's

claims *now* (they do not), they cannot cast doubt on whether Niantic had a good-faith anticipation

of litigation when it sent the Communications *months earlier*.

**2.    To the extent that Counterclaims II and III are based on litigation-related communications, they are barred by the *Noerr-Pennington* doctrine**

"Conduct incidental to a lawsuit, including a pre-suit demand letter, falls within the

protection of the *Noerr-Pennington* doctrine." *Theme Promotions, Inc. v. News Am. Mktg. FSI*,

546 F.3d 991, 1007 (9th Cir. 2008). Thus, to the extent that Counterclaims II and III are based on

Niantic's Communications, they should be dismissed on that basis too.

Defendants do not deny that Niantic's Communications fall within the scope of the *Noerr-*

*Pennington* doctrine. Instead, they argue that "Niantic's conduct . . . meets the criteria for *Noerr-*

*Pennington*'s sham litigation exception." Opp. at 9. Tellingly, however, defendants do not

identify the relevant "criteria" or even try to show that they meet those criteria. Nor is that

surprising, because defendants have not met and could not meet those criteria.

"To establish [that Niantic's conduct] was a 'sham,' [defendants] must prove

(1) [Niantic's] alleged threats were objectively baseless in the sense that it could not have

reasonably expected to prevail in litigation *and* (2) [Niantic's] subjective motivation was to

interfere with [defendants'] business relationships." *EcoDisc Tech. AG v. DVD Format/Logo*

*Licensing Corp.*, 711 F. Supp. 2d 1074, 1083 (C.D. Cal. 2010). And defendants "must meet a

-7-

heightened pleading standard because [they] seek[] damages based on conduct that implicates the First Amendment." *Id.*

Defendants do not clear that high bar. It would be absurd to argue that Niantic could not have expected to prevail on its claims when it sent the Communications, especially considering that the Court has held that Niantic is likely to succeed on the claims outlined in the Communications. *See* Dkt. 55. Accordingly, defendants do not even try to argue that Niantic lacked a reasonable expectation of prevailing, let alone allege it with the required specificity. Instead, defendants insinuate—based on nothing but their own views of the case—that Niantic failed to conduct a sufficient pre-suit investigation. *See* Opp. at 9. That is both untrue and irrelevant to the "objectively baseless" inquiry.

Defendants also fail to show that Niantic's subjective intent was to interfere with defendants' business relationships. Nothing in defendants' Counterclaims suggests that Niantic filed this lawsuit, and incurred its costs and burdens, out of a bare desire to harm defendants. Nor do defendants argue as much in their Opposition; rather, as noted above, they argue that Niantic filed this lawsuit because it failed to conduct a sufficient pre-suit investigation. *See* Opp. at 9. Again, that is both untrue and irrelevant. Even if Niantic did not conduct a sufficient pre-suit investigation (it did), that would not show that Niantic pursued this case solely to interfere with defendants' business relationships. Defendants' reliance on the sham litigation exception fails.

### 3. To the extent that Counterclaims II and III are based on Niantic's exercise of its editorial discretion, they are barred by the Communications Decency Act

Hoping to avoid dismissal, defendants belatedly argue that "at least part of the tortious conduct committed by Niantic was not communicative." Opp. at 7; *see also id.* at 7-8, 9. Specifically, they argue that Niantic tortiously interfered with their business and engaged in unfair competition "by suspending user accounts associated with [the Cheating Programs]." *Id.* at 9. Thus, they reason, Counterclaims II and III should survive even if the Court agrees with Niantic that the Communications are protected by the California litigation privilege and the *Noerr-Pennington* doctrine.

Defendants are wrong. As Niantic explained in its Motion, the federal Communications Decency Act ("CDA") immunizes Niantic against claims based on the exercise of its editorial discretion, including decisions about whether, when, and how to suspend users' accounts. *See* Mot. at 4-5 n.3; *see also Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (CDA barred claims based on "MySpace's decisions to delete . . . user profiles"); *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (explaining that "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under" the CDA); *Brittain v. Twitter, Inc.*, No. 19-cv-00114-YGR, 2019 WL 2423375, at *2-4 (N.D. Cal. June 10, 2019) (CDA barred claims based on suspension of user accounts). In fact, the CDA bars *all* defendants' counterclaims to the extent they are based on Niantic's editorial conduct, including not only Counterclaims II and III but also Counterclaim I. Defendants ignore that black-letter law, and thereby concede it.

### 4. Counterclaims II and III fail to state plausible claims

As noted above, Counterclaims II and III also fail because defendants have not alleged and could not allege the essential elements of those claims.

#### a. Defendants have not alleged and cannot allege the elements of tortious interference with prospective economic advantage

To properly plead Counterclaim II, defendants must allege that Niantic's acts were wrongful by some legal measure other than the fact of the interference itself. *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995). Defendants have not met and cannot meet that essential element because, as explained above and in Niantic's opening brief, none of the alleged conduct underlying defendants' counterclaims is wrongful; to the contrary, it is all privileged or otherwise protected by law. Defendants disagree, arguing that the "independent wrong" element raises a "question of fact" and is thus "an inappropriate basis for dismissal." Opp. at 11. That is wrong. Whether defendants have alleged the essential elements of their counterclaim is not a question of fact; it is a question of law. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

The Court should also dismiss Counterclaim II because defendants have not alleged that Niantic disrupted any specific economic relationships with any specific "subscribers." *See* Mot. at 8-9. Defendants try to dodge the issue, insisting that "subscribers can be identified in discovery." Opp. at 11. But nothing prevents defendants from identifying their own subscribers, and describing how Niantic's conduct supposedly interfered with defendants' relationships with those subscribers, right now. Defendants also claim that "the Ninth Circuit has repeatedly held that tortious interference claims identifying subscribers generally are sufficient to establish liability." Opp. at 10. But the lone case they cite says nothing of the sort. *See id.* (citing *I.C. Mktg., Inc. v. Amos Press, Inc.*, 147 F. App'x 671, 673 (9th Cir. 2005)). As explained in Niantic's Motion, "merely referring to customers in general"—which is all defendants have done—"is not sufficient to show a specific prospective relationship." *Vascular Imaging Prof'ls, Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1013 (S.D. Cal. 2019).

Finally, defendants do not dispute that any business harm they suffered was caused by *their own* conduct—in particular, their voluntary decision to stop offering their services in the hope of minimizing their legal exposure. Defendants therefore have not alleged and could not allege that they were proximately harmed by *Niantic's* conduct—another essential element of their claim. *See* Mot. at 8-10. That, too, is sufficient to dispose of Counterclaim II.

### b. Defendants have not alleged and cannot allege the elements of a claim under California's Unfair Competition Law

Niantic's Motion explained that Counterclaim III is fatally flawed because it does not specify which of the three prongs of the Unfair Competition Law ("UCL") defendants intend to pursue in this case, making it impossible for Niantic (or this Court) to understand the basic contours of the claim. *See* Mot. at 11; *see also People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515-17 (2002) (UCL "establishes three varieties of unfair competition," each of which involves different elements and, in some cases, different pleading standards). That alone justifies dismissal of Counterclaim III. *See Nuvo Research Inc. v. McGrath*, No. C 11-4006 SBA, 2012 WL 1965870, at *6 (N.D. Cal. May 31, 2012) ("fail[ure] to identify which prong or prongs of the UCL on which they are attempting to predicate Defendant's liability . . . .

-10-

1    improperly deprives [Defendant] of 'fair notice' of the claims alleged against him"); *Qureshi v.*

2    *Countrywide Home Loans, Inc.*, No. C 09-4198 SBA, 2010 WL 841669, at *7 (N.D. Cal. Mar.

3    10, 2010) (similar). Defendants disagree, but they cite no cases in support of their position. *See*

4    Opp. at 12.

5           Defendants also dispute that the UCL requires them to allege an independently actionable

6    wrong, as explained in Niantic's Motion. *See* Mot. at 10-11. But again, defendants cite no

7    authority in support of their position and do not distinguish the authority cited by Niantic, which

8    makes clear that an independently wrongful act is an element of a UCL claim. *See Oracle Am.,*

9    *Inc. v. CedarCrestone, Inc.*, No. 12-cv-04626 NC, 2012 WL 12897962, at *3-6 (N.D. Cal. Dec. 7,

10   2012); *see also Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-cv-04895-WHO, 2017

11   WL 2775030, at *5 (N.D. Cal. June 27, 2017).

12   **III.     DEFENDANTS' COUNTERCLAIMS SHOULD ALSO BE STRICKEN UNDER**
            **CALIFORNIA'S ANTI-SLAPP LAW**

13

14   **A.     Counterclaims II and III Are Based on Protected Activity**

15          In its Motion, Niantic showed that Counterclaims II and III arise from expressive activity

16   protected by California's anti-SLAPP law because Counterclaims II and III are based on Niantic's

17   litigation-related communications. *See* Mot. at 13-14; *see also, e.g., Dove Audio, Inc. v.*

18   *Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1996) ("Just as communications

19   preparatory to or in anticipation of the bringing of an action . . . are within the protection of the

20   [California] litigation privilege . . . such statements are equally entitled to the benefits of [the

21   California anti-SLAPP law].") In response, defendants regurgitate their earlier arguments for

22   why Niantic's litigation-related communications are not privileged. *See* Opp. at  12. Niantic

23   rebutted those arguments above and incorporates those points here. *See supra* at 4-7.

24          Defendants also argue, for the first time, that their counterclaims do not fall within the

25   scope of the anti-SLAPP law to the extent they are based on Niantic's alleged account

26   suspensions. *See* Opp. at 13. But again, the CDA bars defendants from seeking relief based on

27   those alleged suspensions. *See supra* at 8-9. Defendants' new argument is therefore irrelevant.

28

REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
Case No. 19-cv-03425-JST

1

**B.     Defendants Cannot Prevail on Counterclaims II and III**

2         Because Niantic has met its burden on the first step of the anti-SLAPP analysis, the

3    burden shifts to defendants to show that Counterclaims II and III are "legally sufficient and

4    factually substantiated." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). As explained above,

5    Counterclaims II and III should be dismissed under Rule 12(b)(6) for multiple reasons. *See supra*

6    at 3-10. The Court should therefore grant Niantic's special motion to strike and award Niantic

7    reasonable "attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1).

8         **IV.     DEFENDANTS' AFFIRMATIVE DEFENSES SHOULD BE STRICKEN**

9         Defendants' affirmative defenses are just as meritless as their counterclaims. They should

10   be stricken under Rule 12(f).

11        **Failure to state a claim.** Defendants admit that failure to state a claim is not a cognizable

12   affirmative defense. *See* Opp. at 14. Still, they argue that the Court should not strike this defense

13   to "preserve[] the issue and allow[] them to litigate it later." *Id.* at 14-15. Of course, striking this

14   defense would not affect defendants' ability to deny Niantic's claims as provided by the Federal

15   Rules, and defendants cite no authority to the contrary. This defense should be stricken.

16        **"Permission, license, or implied license."** Defendants do not allege an offer of a license,

17   an acceptance of a license, or an exchange of consideration—all required elements of their

18   license-based defenses. Nor do they explain why Niantic would grant defendants permission to

19   violate Niantic's rights only to turn around and sue defendants. This defense should be stricken as

20   both conclusory and implausible. *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-cv-

21   01393-JST, 2017 WL 635291, at *5 (N.D. Cal. Feb. 16, 2017).

22        **Estoppel.** The only allegation defendants muster in support of this defense is that

23   "[b]ecause the signing services' linked apps increased usage without interfering with in-app

24   purchases, the linked apps also increased Niantic's revenue." Counterclaims ¶ 29. But if that

25   allegation helps anyone (it does not), it helps the purported "signing services"—not defendants,

26   who claim to be wholly independent from the signing services. Moreover, that allegation does not

27   establish any of the elements of estoppel, including an act or omission that Niantic (supposedly)

28

-12-

1    meant for defendants to rely upon. *See Westport Ins. Corp. v. N. Cal. Relief*, 76 F. Supp. 3d 869,

2    885 (N.D. Cal. 2014). The Court should strike this defense.

3          **Unclean hands.** Here again, defendants assert—with no facts, and no basis for alleging

4    any such facts—that Niantic somehow profited from their misconduct. *See* Opp. at 16-17. But

5    that is not enough to show that Niantic has "acted [un]fairly and with[] fraud or deceit," let alone

6    the other elements of this defense. *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 959

7    (9th Cir. 2015). This defense should be stricken. *See Intel Corp. v. Tela Innovations, Inc.*, No.

8    3:18-cv-02848-WHO, 2019 WL 2476620, at *10-11 (N.D. Cal. June 13, 2019).

9          **"Statutes of limitations" and laches.** To properly allege this defense, defendants must

10   "allege which statute(s) of limitations [they are] relying upon, what cause(s) of action are barred,

11   the date after which such bar became effective, and some factual allegations concerning why the

12   limitations period has expired." *Rosen v. Masterpiece Mktg. Grp., LLC*, 222 F. Supp. 3d 793, 804

13   (C.D. Cal. 2016). Defendants do none of those things. The Court should strike this defense.

14         **"Fair use doctrine."** Defendants argue that their "allegations easily suffice to put Niantic

15   on notice of how the fair use doctrine would apply in this case." Opp. at 18. But how? The

16   essence of a fair use defense is that the defendant arguably infringed the plaintiff's rights (e.g., by

17   copying a copyrighted work) but the infringement, if any, is legally permissible. Here, however,

18   defendants strenuously maintain that they did nothing resembling infringement. *See, e.g.*, Opp. at

19   1, 18. Thus, defendants' allegations are not just devoid of facts that would support a fair use

20   defense; they directly contradict any such defense. That will not do. If defendants wish to

21   maintain this defense, they must plausibly allege it, and that includes alleging specific facts about

22   "the purpose and character" of their use of copyrighted works. 17 U.S.C. § 107 (fair-use factors);

23   *see also* Opp. at 17 (conceding that the fair use defense "requires a case-by-case assessment of

24   statutory factors"). Otherwise, this defense should be stricken. *See Wild v. Benchmark Pest*

25   *Control, Inc.*, No. 1:15-cv-01876- JLT, 2016 WL 1046925, at *4 (E.D. Cal. Mar. 16, 2016).

26         **Waiver and "Niantic's acquiescence."** Yet again, defendants point to conclusory

27   allegations about the revenue Niantic allegedly earned from their misconduct and assert, without

28   more, that those allegations are "more than enough to give Niantic fair notice of how waiver and

-13-

1   acquiescence defenses will be litigated in this action." Opp. at 18-19. They are not. Merely

2   asserting that defendants' misconduct helped Niantic's bottom line does not, for example, explain

3   how Niantic intentionally waived or abandoned its copyrights, as these defenses would require.

4   The Court should strike these defenses. *See Inn S.F. Enter., Inc. v. Ninth St. Lodging, LLC*, No.

5   3:16-cv-00599-JD, 2016 WL 8469189, at *2 (N.D. Cal. Dec. 19, 2016).

6       **"Mandatory arbitration."** Finally, the Court should strike defendants' tenth affirmative

7   defense, which reads: "Niantic's claims are barred because they are subject to mandatory

8   arbitration." Affirmative Defenses ¶ 10. Defendants fail to allege the most elementary

9   requirement of that defense, namely, the specific contract under which Niantic supposedly agreed

10  to arbitrate its current claims. (Contrary to defendants' argument, *see* Opp. at 19, *they* bear the

11  burden of identifying the contract that supports *their* defense.) In addition, defendants waived this

12  defense by repeatedly engaging in acts inconsistent with their purported right to arbitrate—

13  including filing a motion to dismiss, opposing Niantic's motion for preliminary injunction, filing

14  a motion to reconsider the PI Order, alleging counterclaims, and serving and responding to

15  discovery requests. *See Kelly v. Pub. Util. Dist. No. 2*, 552 F. App'x 663, 664 (9th Cir. 2014).

16  Defendants do not explain how their decision to litigate this case aggressively for half a year is

17  consistent with preserving the right to arbitrate. Nor could they.

18              **V.      CONCLUSION**

19      For the foregoing reasons, Niantic respectfully requests that the Court dismiss all of

20  defendants' counterclaims under Rule 12(b)(6), strike Counterclaims II and III under California's

21  anti-SLAPP law (and award Niantic its reasonable attorneys' fees and costs), and strike

22  defendants' affirmative defenses under Rule 12(f).

23   DATED:  December 30, 2019              **PERKINS COIE** LLP

24

25                                  By:   */s/ Ryan Spear*
                                        Ryan Spear
26                                      RSpear@perkinscoie.com

27                                  Attorneys for Plaintiff Niantic, Inc.

28