UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIANTIC, INC., <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL++, et al., <br><br> Defendants. | Case No. 19-cv-03425-JST <br><br> **ORDER DENYING DEFENDANTS' MOTION TO LIFT PRELIMINARY INJUNCTION** <br><br> Re: ECF No. 63 |

Before the Court is Defendants' motion to lift the preliminary injunction. ECF No. 63. The Court will deny the motion.

## I.   BACKGROUND

### A.   Factual Background

Unless stated otherwise, the following facts are taken from Plaintiff Niantic, Inc.'s complaint.

Niantic publishes location-based augmented reality games such as *Harry Potter: Wizards Unite* ("*Harry Potter*"), *Pokémon GO*, and *Ingress*. ECF No. 1 ¶ 2. To play Niantic's games, users install Niantic's mobile applications ("apps") on their mobile devices. *Id.* Those apps connect to the Internet, through which users obtain game-related information from Niantic's servers. *Id.* The information is then rendered on players' mobile devices and enables them to perform game functions, such as collecting Pokémon in real-world locations. *Id.* ¶¶ 2, 31.

To obtain a limited license to access its games, users must agree to Niantic's terms of service. *Id.* ¶ 37. Under the terms of service, users may not copy, modify, or create derivative works based on Niantic's games or use Niantic's games for any commercial purpose. *Id.* ¶ 39.

Defendant Global++ is an association of hackers that allegedly creates and distributes unauthorized derivative versions of Niantic's mobile apps. *Id.* ¶ 3. Defendant Ryan Hunt is the alleged leader of Global++ and the primary developer of the derivative programs. *Id.* ¶ 7. Defendant Alen Hundur helps develop, market, and distribute Global++ products. *Id.* Defendants allegedly create the derivative programs by obtaining legitimate versions of Niantic's apps and circumventing the technical security measures put in place to protect the binary computer code ("Client Code") in the apps. *Id.* ¶ 8. Defendants then access, copy, and modify Niantic's Client Code in order to create derivative versions of Niantic's apps. *Id.* ¶ 9. These derivative versions ("Cheating Programs") allow players to access unauthorized game features and cheat within Niantic's games. *Id.* ¶ 10. Defendants allegedly sell "subscriptions" for their Cheating Programs to hundreds of thousands of users. *Id.*

### B. Procedural History

On June 14, 2019, Niantic filed a complaint seeking injunctive and monetary relief against Global++, Ryan Hunt, and Alen Hundur. ECF No. 1 at 20-22. Niantic's complaint alleges that Defendants' actions: (1) constitute copyright infringement, 17 U.S.C. § 101, *et seq.*; (2) violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (3) violate the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal. Code § 502; (4) breach Niantic's terms of service; and (5) constitute intentional interference with contractual relations. ECF No. 1 ¶ 58-110.

Niantic filed a motion for preliminary injunctive relief concurrently with its complaint. ECF No. 7. On September 11, 2019, the Court heard oral argument on Niantic's motion. ECF No. 52. On September 26, 2019, the Court granted Niantic's motion for preliminary injunction ("Preliminary Injunction Order"). ECF No. 55.

On October 24, 2019, Defendants Hunt and Hundur ("Defendants") filed a motion to lift the preliminary injunction.[1] Niantic opposes the motion, ECF No. 71, and Defendants have filed a reply, ECF No. 78.

---

[1] The Court construes Defendants' motion to lift the preliminary injunction as a motion for reconsideration under Federal Rule of Civil Procedure 59(e).

## II. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III. LEGAL STANDARDS

### A. Preliminary Injunction

A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

### B. Reconsideration of Previous Ruling

Under Federal Rule of Civil Procedure 59(e), a party may move a court to reconsider a previous ruling and alter a previous order. *See Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *Sacchi v. Mortgage Elec. Registration Sys., Inc.*, No. CV11-01658 AHM (CWx), 2012 WL 13006267, at *2 (C.D. Cal. March 6, 2012).  Reconsideration is appropriate "when (1) the court committed manifest errors of law or fact, (2) the court is presented with newly discovered or previously unavailable evidence, (3) the decision was manifestly unjust, or (4) there is an intervening change in the controlling law." *Rishor v. Ferguson*, 822 F.3d 482, 491-92 (9th Cir. 2016).

Rule 59(e) "offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll*, 342 F.3d at 945 (internal quotation marks and citation omitted).  A motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis in original).  It must also do more than rehash arguments or recapitulate cases already considered by the court. *Young v. Peery*, 163 F. Supp. 3d 751, 753 (N.D. Cal. 2015); *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001).  "A party seeking modification or dissolution

3

of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000); *Seehawer v. Kehoe*, No. 1:16-cv-00082-BLW, 2017 WL 1745027, at *2 (D. Idaho May 3, 2017) (quoting *Sharp*, 233 F.3d at 1170).

## IV.  DISCUSSION

Niantic requests reconsideration on the grounds that (1) the court committed manifest errors of law or fact, (2) Defendants present the Court with previously unavailable evidence, and (3) the Court's decision to issue a preliminary injunction was manifestly unjust. ECF No. 63 at 7. Defendants fail to establish that the Court should dissolve or modify the preliminary injunction on any of these grounds.

### A.  Manifest Errors of Law or Fact

#### 1.  Enjoining Defendants from Scraping User Data

The Consumer Fraud and Abuse Act states that "[w]hoever . . . intentionally accesses a computer *without authorization* or exceeds authorized access, and thereby obtains . . . information from any protected computer . . . shall be punished" by fine or imprisonment. 18 U.S.C. § 1030. On September 9, 2019, the Ninth Circuit issued a decision in *hiQ Labs, Inc. v. LinkedIn Corp.*, which examined the meaning of "without authorization" in the context of website scraping. 938 F.3d 985, 9999-1004 (9th Cir. 2019) ("*hiQ Labs II*"). Defendants argue that the Court's Preliminary Injunction Order conflicts with the Ninth Circuit's conclusion that it likely is not a violation of the CFAA to access publicly available data on a computer network. ECF No. 5, 8-15; *see hiQ Labs II*, 938 F.3d at 1003 ("It is likely that when a computer network generally permits public access to its data, a user's accessing that publicly available data will not constitute access without authorization under the CFAA.").

A Rule 59(e) motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona*, 229 F.3d at 890. Defendants' arguments regarding the alleged public availability of Niantic's user data undoubtedly could have been raised earlier in the ligation. The district court decision that the Ninth Circuit affirmed in *hiQ Labs II* was issued nearly two years before Niantic

4

filed this lawsuit. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099 (N.D. Cal. 2017) ("*hiQ Labs I*"), *aff'd and remanded*, 938 F.3d 985 (9th Cir. 2019). In the district court decision, the court engaged in a robust discussion of the meaning of "without authorization" and found that the "application of the CFAA to the accessing of websites open to the public would have sweeping consequences well beyond anything Congress could have contemplated." *Id.* at 1108-15. Similar to the Ninth Circuit analysis in *hiQ Labs II*, the district court distinguished LinkedIn's publicly-available data from the password-protected, private data at issue in *Facebook, Inc. v. Power Ventures, Inc.* and *United States v. Nosal*. *See hiQ Labs I*, 273 F. Supp. 3d at 1108-13; *hiQ Labs II*, 938 F.3d at 1002. Defendants could have cited the district court's opinion in *hiQ Labs I* – and relied on its reasoning – to challenge the merits of Niantic's CFAA claim at any point during this litigation.

Moreover, because *hiQ Labs II* was published after the filing of Defendants' opposition to Niantic's motion for preliminary injunction and "[b]efore the noticed hearing date," Defendants were permitted to file a "Statement of Recent Decision." Civil L. R. 7-3(d)(2). Defendants also could have brought the *hiQ Labs II* decision to the Court's attention during the period of over two weeks between the motion hearing and the Court's issuance of its Preliminary Injunction Order. *See, e.g., Sec. & Exch. Comm'n v. Sabrdaran*, 252 F. Supp. 3d 866, 877 (N.D. Cal. 2017) (considering notices of supplemental authority submitted after oral argument); *Ridgeway v. Wal-Mart Stores, Inc.* No. 08-cv-05221-SI, 2016 WL 4529430, at *14 (N.D. Cal. Aug. 30, 2016) (same).

Defendants had ample opportunity to present applicable case law and challenge Niantic's CFAA claim during the briefing on Niantic's motion for preliminary injunction and prior to the Court's issuance of the Preliminary Injunction Order. Instead of raising these arguments, Defendants did "not [even] acknowledge Niantic's core allegations that Defendants scrape [Point of Interest] data and ephemeral game information from Niantic's computer," ECF No. 55 at 11, a silence the Court reasonably interpreted as a concession. "Rule 59 is not a vehicle for . . . presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Baldonado v. United States*, No. 2:06-cv-07266-JHN-RZ, 2011 WL

5

13213543, at *2 (C.D. Cal. Oct. 12, 2011) (internal quotation marks and citation omitted) (emphasis omitted). Defendants' motion for reconsideration "may *not* be used to raise arguments . . . for the first time when they could reasonably have been raised earlier in the litigation."[2] *Kona*, 229 F.3d at 890 (emphasis in original).

### 2. Enjoining Defendants for Actions of Independent Third Parties

Defendants argue that, in issuing its preliminary injunction order, the Court improperly enjoined Defendants for the actions of independent third parties. ECF No. 63 at 5. In particular, Defendants assert that the Court relied on an "incomplete and incorrect factual record" in reaching its conclusions that: (1) Defendants are "responsible for third-party AppHaven's actions," (2) Defendants "are still distributing at least one of their Cheating Programs," and (3) "Niantic cannot unilaterally block the Cheating Programs due to Defendants' efforts to obscure their true entities." ECF No. 63 at 16. Defendants mischaracterize the Court's reasoning.

In the Court's description of the parties' arguments regarding irreparable harm, it noted that, "[i]n response [to Defendants' arguments], Niantic asserts that Defendants are still distributing at least one of their Cheating Programs and that Niantic cannot unilaterally block the Cheating Programs due to Defendants' efforts to obscure their true entities." ECF No. 55 at 13. The Court, however, did not base its finding of irreparable harm on Niantic's assertion. Instead, the Court grounded its finding in Defendants' past illegal conduct and the potential for that conduct to recur. ECF No. 55 at 13-14. The Court reasoned:

> "An inference arises from illegal past conduct that future violations may occur," and "the fact that illegal conduct has ceased does not foreclose injunctive relief." *S.E.C. v. Koracorp Indus.*, 575 F.2d 692, 698 (9th Cir. 1978) (internal citations omitted). "If there is a possibility of recurrence," injunctive relief may be appropriate. *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999). In order for cessation of unlawful conduct to moot a dispute, "the reform of the defendant must be irrefutably demonstrated and total." *Polo Fashions*, 793 F.2d at 1135-36. Defendants fall well below this threshold. Moreover, "courts must be particularly skeptical about attaching any significance to contrition under protest." *Id*; *see Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986) (district court abused its discretion by denying

---

[2] Defendants make no argument that the Ninth Circuit's decision in *hiQ Labs II* constitutes an intervening change in the controlling law.

6

request for preliminary injunction where defendants refused to stop violating plaintiff's right until plaintiff sued).

ECF No. 55 at 14.

Defendants are incorrect in their assertion that the Court held that Defendants were "affiliated with a third party" and were "still distributing at least one of their Cheating Programs."[3] ECF No. 63 at 16. Therefore, their argument fails to identify any "clear or manifest" error which merits the Court's reconsideration of its preliminary injunction order. *See Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. 13-cv-04513-PJH, 2019 WL 2059661, at *2 (N.D. Cal. May 9, 2019) ("[T]he court is satisfied that it did not commit a 'clear' or 'manifest' error, or fail to consider dispositive legal arguments, as plaintiff is required to show under Rule 59(e).").

### B. Previously Unavailable Evidence

In their motion for reconsideration, Defendants introduce several new pieces of evidence that purportedly "undercut Niantic's claim to likelihood of success on the merits." ECF No. 63 at 17-27; *see, e.g.,* ECF No. 63-1; ECF No. 63-17, ECF No. 63-20. Defendants assert that this evidence demonstrates that "Global++ solely develops software code and does not create nor distribute tweaked apps," ECF No. 63 at 17, "Global++ software does not circumvent Niantic's security encryption," *id.* at 25, "Niantic's allegations [] are not technically feasible," *id.*, etc. ECF No. 63 at 17-27; ECF No. 78 at 15-19.

A motion for reconsideration, however, "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona*, 229 F.3d at 890 (emphasis in original). Defendants provide no indication that this evidence is "newly discovered" or was "previously unavailable." *Rishor v. Ferguson*, 822 F.3d at 491-92. Therefore, this evidence provides no basis for reconsideration of the Court's prior order.

Defendants argue that, because they "were not afforded an opportunity to respond to the

---

[3] Defendants also argue that the Court improperly relied on evidence of Defendants' affiliation with AppHaven offered in Niantic's reply brief. ECF No. 63 at 16. However, the court referenced the evidence presented in Niantic's reply solely in the context of describing Niantic's response to Defendants' argument that other "spoofers" violate Niantic's copyrights. ECF No. 55 at 14. The Court did not rely on Niantic's reply evidence as a basis for its preliminary injunction order. *See generally* ECF No. 55.

evidence in Niantic's Reply [to its motion for preliminary injunction], Defendants properly brought a Rule 59 motion with the rebuttal evidence which undercuts Niantic's attempt to enjoin Defendants for the actions of third parties." ECF No. 78 at 13 (citing *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (Where "new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond."). Defendants' argument is premised on the assumption that the Court's Preliminary Injunction Order "relied upon" Niantic's reply evidence and found that Defendants are "responsible for third-party AppHaven's actions" and "are still distributing at least one of their Cheating Programs." ECF No. 63 at 16-17. As discussed above, the Court's order neither relies upon Niantic's reply evidence nor enjoins Defendants based on the actions of third parties.[4] *See* ECF No. 55 (reasoning that "'[a]n inference arises from [Niantic's] illegal past conduct that future violations may occur,' and 'the fact that illegal conduct has ceased does not foreclose injunctive relief.'" (citing *S.E.C. v. Koracorp Indus.*, 575 F.2d 692, 698 (9th Cir. 1978)). Therefore, the court will not consider this previously-available evidence.[5]

### C.  Manifest Injustice

Defendants argue that the Court's decision to issue a preliminary injunction was manifestly unjust because it "enjoin[s] Defendants for the actions of independent third parties" and impairs "Defendants' ability to make any profit off of its software." ECF No. 63 at 5-7, 17, 27. As discussed above, however, the preliminary injunction enjoins Defendants based on their own past conduct, not the actions of third parties. Moreover, Defendants do not offer a single case which finds that harm to a party's business interests constitutes manifest injustice. Defendants fail to

---

[4] During the hearing on Niantic's motion for preliminary injunction, the Court recognized that evidence regarding an affiliation between Defendants and AppHaven was raised for the first time in Niantic's reply. ECF No. 59 at 29. The Court then informed the parties, that "I don't want you to think that this question [of entitlement to injunctive relief] is going to turn on whether App Haven is distributing PokeGo++ or not. I just don't think I'm going to reach that question." ECF No. 59 at 30.

[5] Niantic has filed objections to Defendants' reply evidence under Local Rule 7-3(d)(1). ECF No. 80. Because the Court refrains from considering this evidence on the basis that it was previously available, the Court need not determine whether Defendants' reply evidence would be permitted under Local Rule 7-3.

establish that the Court's decision to issue a preliminary injunction was manifestly unjust.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to lift the preliminary injunction.

**IT IS SO ORDERED.**

Dated: January 29, 2020



_____
JON S. TIGAR
United States District Judge