UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NIANTIC, INC.,

    Plaintiff,

v.

GLOBAL++, et al.,

    Defendants.

Case No. 19-cv-03425-JST

**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS, STRIKE COUNTERCLAIMS, AND STRIKE AFFIRMATIVE DEFENSES**

Re: ECF No. 69

Before the Court is Plaintiff's combined motion to dismiss counterclaims for failure to state a claim, motion to strike counterclaims under California Code of Civil Procedure § 425.16, and motion to strike affirmative defenses. ECF No. 69. For the foregoing reasons, the Court will grant the motions.

**I.    BACKGROUND**

Niantic, Inc. publishes location-based augmented reality games such as *Harry Potter: Wizards Unite* ("*Harry Potter*"), *Pokémon GO*, and *Ingress*. ECF No. 1 ¶ 2. To play Niantic's games, users install Niantic's mobile applications ("apps") on their mobile devices. *Id.* Those apps connect to the Internet, through which users obtain game-related information from Niantic's servers. *Id.* The information is then rendered on players' mobile devices and enables them to perform game functions, such as collecting Pokémon in real-world locations. *Id.* ¶¶ 2, 31. To obtain a limited license to access its games, users must agree to Niantic's terms of service. *Id.* ¶ 37. Under the terms of service, users may not copy, modify, or create derivative works based on Niantic's games or use Niantic's games for any commercial purpose. *Id.* ¶ 39.

Defendant Global++ is an association of hackers that allegedly creates and distributes unauthorized derivative versions of Niantic's mobile apps. *Id.* ¶ 3. Defendant Ryan Hunt is the

alleged leader of Global++ and the primary developer of the derivative programs. *Id.* ¶ 7. Defendant Alen Hundur helps develop, market, and distribute Global++ products. *Id.* Defendants allegedly create the derivative programs by obtaining legitimate versions of Niantic's apps and circumventing the technical security measures put in place to protect the binary computer code ("Client Code") in the apps. *Id.* ¶ 8. Defendants then access, copy, and modify Niantic's Client Code in order to create derivative versions of Niantic's apps. *Id.* ¶ 9. These derivative versions ("Cheating Programs") allow players to access unauthorized game features and cheat within Niantic's games. *Id.* ¶ 10. Defendants allegedly sell "subscriptions" for their Cheating Programs to hundreds of thousands of users. *Id.*

On June 7, 2019, Defendants received a cease-and-desist letter from Niantic which demanded that Defendants stop their "unauthorized and illegal activity targeting Niantic and Niantic's games." ECF No. 64 at 13. The letter stated that Defendants "circumvent[] the technical security measures protecting the code in Niantic's mobile apps; cop[y] and modif[y] the code without Niantic's permission; then profit[] from derivative versions of Niantic's apps." *Id.* It also asserted that Defendants' "activities violate civil and criminal law" and "harm[] Niantic and Niantic's users." *Id.* Niantic closed its letter by stating that "Niantic will take measures it believes are necessary to enforce its rights" if Defendants "ignore this letter and continue in [their] current unauthorized and improper conduct." ECF No. 81-1 at 8.[1]

On June 14, 2019, Niantic filed a complaint seeking injunctive and monetary relief against Global++, Ryan Hunt, and Alen Hundur. ECF No. 1 at 20-22. Niantic's complaint alleges that Defendants' actions: (1) constitute copyright infringement, 17 U.S.C. § 101, *et seq.*; (2) violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (3) violate the California Comprehensive

---

[1] Although the cease-and-desist letter is "not attached" to Defendants' answer, "it may be incorporated by reference" into the pleadings because Defendants "refer[] extensively to the document" and "the document forms the basis of [Defendants'] claim." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 942 n.1 (9th Cir. 2008) ("We're allowed to consider the plan documents, even on a motion to dismiss, because [plaintiff] refers to them in his complaint."); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1066 (N.D. Cal. 2010) ("[W]here a plaintiff references and relies on a particular document as part of the moving allegations of the complaint, . . . the court is justified in looking outside the four corners of the complaint, to the document itself if offered.").

Computer Data Access and Fraud Act, Cal. Penal. Code § 502; (4) breach Niantic's terms of service; and (5) constitute intentional interference with contractual relations. ECF No. 1 ¶ 58-110.

After the lawsuit was filed, Niantic allegedly "contacted GoDaddy, the web hosting company that hosted the globalplusplus.com home page, to demand that GoDaddy disable the website, which allowed Defendants to operate." ECF No. 64 at 13; ECF No. 81-1 at 37.[2] In her correspondence with Domains by Proxy and GoDaddy, Niantic's attorney requested the "full contact information for the registrant of the domain name globalplusplus.com," noted that "Niantic has filed a lawsuit" regarding the illegal conduct of the owner(s) of the globalplusplus.com domain name, and attached "[a] copy of the complaint." ECF No. 81-1 at 35-37. GoDaddy responded to Niantic's communication by stating the following: "Per the legal documents received, the following domain name(s) has been placed on Registrar-Lock: GLOBALPLUSPLUS.COM." ECF No. 81-1 at 35. Niantic did not request that GoDaddy disable or take any other adverse action regarding the Global++ website.

On September 26, 2019, the Court granted Niantic's motion for preliminary injunctive relief and enjoined Defendants from (1) "[a]cquiring or copying without authorization any portion of the mobile apps developed and published by Niantic and used to play Niantic's location-based augmented reality games, (2) "[r]everse engineering, decompiling, or disassembling Niantic's mobile apps," (3) "[c]reating derivative works based on any portion of Niantic's games, mobile apps, and Client Code," etc. ECF No. 55 at 16-17. Hunt and Hundur ("Defendants") filed a motion to lift the preliminary injunction, which the Court denied on January 29, 2020. ECF Nos. 63, 89.

On October 24, 2019, Defendants filed an answer to Niantic's complaint and alleged counterclaims for (1) declaratory judgment, (2) tortious interference with a prospective economic advantage, and (3) unfair competition. ECF No. 64. Niantic now moves to dismiss and strike

---

[2] Although the correspondence with GoDaddy is "not attached" to Defendants' answer, "it may be incorporated by reference" into the pleading because the communication forms the basis of Defendants' counterclaims. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court "may treat such a document as part of [Defendants' counterclaims], and thus may assume that its contents are true for the purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*

Defendants' counterclaims and strike Defendants' affirmative defenses. ECF No. 69. Defendants oppose Niantic's motion, ECF No. 79, and Niantic has filed a reply, ECF No. 81.

## II. JURISDICTION

"This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III. MOTION TO DISMISS COUNTERCLAIMS

### A. Legal Standard

A motion to dismiss a counterclaim brought pursuant to Rule 12(b)(6) is evaluated under the same standard as motion to dismiss a plaintiff's complaint. On a Rule 12(b)(6) motion to dismiss, the Court accepts the material facts alleged by the non-moving party together with all reasonable inferences to be drawn from those facts, as true. *Navarro v. Block*, 250 F. 3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the party asserting a claim must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 687.

### B. Discussion

#### 1. Counterclaim One: Declaratory Judgment

The Federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The "Act does not grant litigants an absolute right to a legal determination." *t'Bear v. Forman*, 359 F. Supp. 3d 882, 902 (N.D. Cal. 2019) (quoting *U.S. v. Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985)). "Rather, the decision to grant declaratory relief rests within a district court's discretion." *Allstate Ins. Co. v. Bos*, No. CV 12-1024 PSG (RZx), 2012 WL 12930703, at *1 (N.D. Cal. Feb. 17, 2012).

"Declaratory relief should be denied when it will neither serve a useful purpose in

clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *t'Bear*, 359 F. Supp. 3d at 902-03 (quoting *U.S. v. Washington*, 759 F.2d at 1357). "On a motion to dismiss, . . . counterclaims for declaratory relief are improper if repetitious of issues already before the court via the complaint o[r] affirmative defenses." *Ketab Corp. v. Mesriani & Associates*, No. 2:14-cv-07241-RSWL (MRW), 2015 WL 8022874, at *9 (C.D. Cal. Dec. 4, 2015); *see Sw. Windpower, Inc. v. Imperial Elec., Inc.*, No. CV-108200-SMM, 2011 WL 486089, at *3 (D. Ariz. Feb. 4, 2011) (same); *Infa-Lab, Inc. v. KDS Nail Int'l*, No. CIV 2:07-01270 WBS EFB, 2008 WL 4793305, at *3 (E.D. Cal. Oct. 27, 2008) (same).

Niantic argues that Defendants' counterclaim for declaratory judgment is "merely an across-the-board denial of Niantic's legal and factual claims, repackaged as a request for declaratory relief." ECF No. 69 at 12. The argument is well-taken. The counterclaim begins by describing Niantic's cease-and-desist letter and noting that the letter asserts allegations "substantially similar" to those in the complaint. ECF No. 64 at 14. The counterclaim then states that Defendants "do not violate any Niantic right" and denies several allegations asserted in Niantic's complaint. ECF No. 64 at 10, 14 (The "dynamic library tweak" created by Defendant Hunt's company "does not circumvent Niantic's security measures, copy Niantic's code, modify Niantic's code, or permit Defendants to profit from Niantic's code."). Because Defendant's counterclaim merely seeks a declaration that Defendants are not liable for the allegations in Niantic's complaint, it is "repetitious of issues already before the court via the complaint" and serves no useful purpose in clarifying and settling the legal relations in issue. *Ketab*, 2015 WL 8022874, at *9. Therefore, the Court dismisses Defendants' counterclaim for declaratory relief. *See id.* (dismissing counterclaims for declaratory judgment "because they are repetitious of issues already before the court via the complaint") (internal quotation marks and citation omitted).

### 2. Counterclaims Two and Three: Tortious Interference and Unfair Competition

Counterclaims two and three seek damages for Niantic's "tortious interference with a prospective economic advantage" and "unfair business practices." ECF No. 64 at 14-16. In

particular, Defendants allege that Niantic's cease-and-desist letter and correspondence with GoDaddy were "designed to disrupt Defendants' relationships with subscribing users" and were "unfair business practices, in that the harm to Defendants far outweighs any benefit to Niantic." ECF No. 64 ¶¶ 13-16.

Niantic argues that counterclaims two and three should be dismissed because "the alleged litigation-related communications on which those claims are based – Niantic's cease-and-desist letter to defendants and Niantic's alleged communications with GoDaddy – are . . . privileged communications." ECF No. 69 at 14-17. The Court concludes that the California litigation privilege immunizes Niantic's communications from suit.

### a. Legal Standard

Under California Civil Code § 47(b), any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action" is immune from tort liability. *Graham-Sult v.Clainos*, 756 F.3d 724, 741 (9th Cir. 2014) (citations omitted); *Fotohaus, LLC v. Proforma, Inc.*, No. 18-cv-01827-BLF, 2019 WL 1493355, at *2 (N.D. Cal. Apr. 4, 2019). "The third and fourth requirements are, in essence, the same – both simply require that the communication be connected with, or have some logical relation to, the action, *i.e.*, that it not be extraneous to the action." *Langley v. Check Game Solutions, Inc.*, No. 05-CV-2265 (AJB), 2006 WL 8455429, at *3 (S.D. Cal. Apr. 14, 2006).

"California courts have given Section 47(b) extraordinarily broad construction and application," *id.*, in order to "afford[] litigants freedom of access to the courts and open channels of communication," *Kupiec v. Am. Int'l Adjustment Co.*, 235 Cal. App. 3d 1326, 1331 (1991). The privilege extends to "prelitigation communications, so long as they are made 'in good faith and actual contemplation of litigation.'" *Fotohaus*, 2019 WL 1493355, at *2 (citing *Visto v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1070 (N.D. Cal. 2005)). Moreover, the privilege "provides *absolute* immunity over all communicative acts occurring in a judicial proceeding, even when they involve intentional misconduct." *Langley*, 2006 WL 8455429, at *3 (emphasis in original). "Any doubt about whether the privilege applies is resolved in favor of applying it." *Ubiquiti Networks,*

6

*Inc. v. Kozumi USA Corp*, No. C 12-2582 CW, 2013 WL 368365, at *10 (N.D. Cal. Jan. 29, 2013) (internal quotation marks and citations omitted).

### b. Discussion

Niantic's cease-and-desist letter constitutes a prelitigation communication protected by the litigation privilege. First, the letter is a privileged communication. *Knoell v. Petrovich,* 76 Cal. App. 4th 164, 169 (1999) ("The privilege has been broadly construed to apply to demand letters and prelitigation communications by an attorney."); *see UMG Recordings, Inc. v. Glob. Eagle Entm't Inc.*, 117 F. Supp 3d 1092, 1114-15 (C.D. Cal. 2015) ("[T]he interference claims, to the extent premised on the cease-and-desist letter, must be dismissed pursuant to California's litigation privilege."). Second, the communication was made in "good faith and actual contemplation of litigation." *See Fotohaus*, 2019 WL 1493355, at *2. The cease-and-desist letter asserted allegations "substantially similar" to those in Niantic's complaint, which Niantic filed one week later. ECF No. 64 at 13-14; ECF No. 1; *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, Nos. 1:17-cv-01207-DAD-BAM, 1:17-cv-01056-DAD-BAM, 2019 WL 3946895, at *14 (E.D. Cal. Aug. 21, 2019) ("[W]hile not dispositive, whether a lawsuit was ultimately brought is relevant to the determination of whether one was contemplated in good faith at the time of the demand letter."). Although it did not explicitly threaten to initiate litigation, the cease-and-desist letter stated that Niantic "will take measures it believes are necessary to enforce its rights" if Defendants "ignore this letter and continue in [their] current unauthorized and improper conduct." ECF No. 81-1 at 8; *Roadrunner*, 2019 WL 3946895, at *13-14 (finding that a demand letter was protected "[d]espite not explicitly threatening litigation," because "the letter on its face appears to have been sent in good faith for the purpose of resolving a dispute and was not merely a tactical play to negotiate a bargain" (internal quotation marks omitted)).

Niantic's communications with GoDaddy are also protected by California's litigation privilege. *See Healy v. Tuscany Hills Landscape & Recreation Corp.*, 137 Cal. App. 4th 1, 5 (2006) ("[I]t has been established for well over a century that a communication is absolutely immune from any tort liability if it has "some relation" to judicial proceedings.") (internal quotation marks and citation omitted). Niantic's correspondence with GoDaddy was initiated after

7

1   Niantic filed its complaint and seeks information relevant to the judicial proceedings. *See* ECF
2   No. 64 at 13; ECF No. 81-1 at 37. The communications "expressly refer[ed] to the litigation"
3   arising from Defendants' alleged violations of the Copyright Act, Computer Fraud and Abuse Act,
4   and Niantic's Terms of Service. *Healy*, 137 Cal. App. 4th at 5; ECF No. 81-1 at 36-37. The
5   communications also notified interested third parties of the pending lawsuit. *Ubiquiti*, 2013 WL
6   368365, at *10-11 (finding that an email sent by plaintiff to notify customers of a preliminary
7   injunction against defendant was privileged); *see also Adams v. Superior Court*, 2 Cal. App. 4th
8   521, 529, (1992) (noting that "the privilege is not restricted to the parties in the lawsuit but need
9   merely be connected or related to the proceedings"). Therefore, Niantic's communications with
10  GoDaddy are "absolutely immune from tort liability." *Fotohaus*, 2019 WL 1493355, at *2
11  ("[C]ommunications made in or related to judicial proceedings are absolutely immune from tort
12  liability.").[3]

13  Defendants' objections to the application of the litigation privilege are unpersuasive. First,
14  Defendants argue that the privilege does not apply because Niantic's communications go "beyond
15  the scope of Niantic's claims in this case." ECF No. 79 at 15. However, the allegations in
16  Niantic's complaint mirror those asserted in the cease-and-desist letter and correspondence with
17  Domain by Proxy and GoDaddy. *See* ECF No. 1 ¶¶ 58-110; ECF No. 81-1 at 5-8, 35-37.
18  Additionally, Defendants' first counterclaim alleges that Niantic asserted "substantially similar
19  allegations" in its cease-and-desist letter and its Complaint. ECF No. 64 at 14.

20  Second, Defendants argue that "what constitutes 'good faith' is a factual dispute not
21  properly resolved at the motion to dismiss stage." ECF No. 79 at 15. This is incorrect. "If there
22  is no dispute as to the operative facts, the applicability of the litigation privilege is a question of
23  law." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 895, 913 (2002). Moreover, whether there is a
24  good faith basis for Niantic's *claims* is "irrelevant to the inquiry of whether the litigation privilege
25  is applicable." *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. C 11-2243 CW, 2012 WL

---

[3] Niantic argues that counterclaims two and three are also barred by the *Noerr-Pennington* doctrine. ECF No. 69 at 16-17. Because Niantic's cease-and-desist letter and GoDaddy communications are subject to California's litigation privilege, the Court need not address whether they are also protected by the *Noerr-Pennington* doctrine.

3877783, at *12 (N.D. Cal. Sept. 6, 2012) (citing *Mansell v. Otto*, 108 Cal. App. 4th 265, 277 n.47 (2003). "The California Supreme Court has made clear that the notion of good faith is relevant only" to the question of whether communications were "made with a 'good faith *intention to bring a suit*.'" *Adobe*, 2012 WL 3877783, at *12 (citing *Action Apartment Assn.,* 41 Cal. 4th 1232, 1251 (2007)) (emphasis added). Therefore, Defendants' challenge to whether there was a "good faith basis for Niantic's claims" is inapposite. ECF No. 79 at 15-16. Defendants offer no argument that Niantic's communications were "merely a negotiating tactic and not a serious proposal made in good faith contemplation of going to court." *Olivares v. Pineda*, 40 Cal. App. 5th 343, 357-58 (2019).

Third, Defendants attempt to avoid the litigation privilege by recharacterizing counterclaims two and three and asserting that "Defendants allege that Niantic injured them by suspending user accounts" with Defendants' software. ECF No. 79 at 16. They contend that, because "Defendants accuse an act – the suspension of accounts – as the wrongful conduct from which Defendants were injured, this allegation does not relate to a communication protected by the litigation privilege." *Id.* at 16-17. Defendants are correct that "pure conduct" is not covered by the litigation privilege. *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 900 (E.D. Cal. 2006). However, counterclaims two and three make no reference to Niantic's suspension of user accounts. Therefore, the counterclaims fail to provide Defendants with "fair notice" of these allegations. *Agent Anonymous v. Gonzales*, No. 16-CV-0374 W (BLM), 2016 WL 8999470, at *2 (S.D. Cal. May 2, 2016) ("Because the [defendants] lack fair notice of the allegations against them, their motions to dismiss will be granted.").[4]

## IV.    MOTION TO STRIKE COUNTERCLAIMS

### A.    Legal Standard

"California law provides for the pre-trial dismissal of certain actions, known as Strategic

---

[4] Defendants argue that, to the extent counterclaims two and three are based on Niantic's suspension of user accounts associated with Defendants' software, "they are barred by the Communications Decency Act" ("CDA"). Because Defendants' counterclaims, as pleaded, are not based on Niantic's suspension of user accounts, the Court need not reach the issue of whether these claims would be barred by the CDA.

9

Lawsuits Against Public Participation, or SLAPPs, that 'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so.'" *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003)). "The Ninth Circuit has held that this provision may be applied to state law claims that are asserted in federal court." *Robinson v. Alameda County*, 875 F. Supp. 2d 1029, 1048 (N.D. Cal. 2012) (citing *U.S. ex rel. Newsham v. Lockheed Missiles and Space, Co., Inc.,* 190 F.3d 963, 973 (9th Cir.1999)).

The analysis of an anti-SLAPP motion is a two-step process. First, the anti-SLAPP plaintiff must show that the claim against it arose from an act in furtherance of the plaintiff's free speech rights. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). Qualifying acts include statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body," and statements "made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(e). Second, if the anti-SLAPP plaintiff meets its initial burden, the defendant is "then charged with the burden of establishing, by competent and admissible evidence, a probability of prevailing on his or her claims at trial." *See Robinson*, 875 F. Supp. 2d at 1048. Put another way, the defendant "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment" if the evidence submitted by the defendant is credited. *Id.* (quoting *Wilson v. Parker,* 28 Cal. 4th 811, 821 (2002)).

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—*i.e.,* that arises from protected speech or petitioning *and* lacks even minimal merit—*is* a SLAPP, subject to being stricken under the statute." *Id.* (citing *Navellier v. Sletten,* 29 Cal. 4th 82, 89 (2002)) (emphasis in original).

**B.     Discussion**

Defendants argue that counterclaims two and three should be stricken under California's anti-SLAPP law. ECF No. 69 at 21-24. "Because the issue of attorney['s] fees and costs is not rendered moot by a dismissal, the Court proceeds to an analysis" of Niantic's motion to strike. *Robinson*, 875 F. Supp. 2d at 1046 (resolving a party's anti-SLAPP motion after granting its

motion to dismiss).

### 1. Protected Activity

As discussed above, counterclaims two and three are based on Niantic's cease-and-desist letter and Niantic's communications with non-party GoDaddy. Courts routinely hold that litigation-related communications such as these fall within the protection of California's anti-SLAPP statute. *See, e.g., Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1996) ("Just as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege, . . . such statements are equally entitled to the benefits of [the anti-SLAPP statute]."); *GWS Techs., Inc. v. Furth*, No. SA-cv-0800586CJCPLAX, 2010 WL 11520562, at *2-3 (C.D. Cal. Mar. 25, 2010) (finding statements "made in connection with litigation" and "directed to persons having some interest in the litigation" were protected under the Anti-SLAPP law); *Sparrow LLC v. Lora*, No. CV-14-1188-MWF (JCx), 2014 WL 12573525, at *3 (finding cease-and-desist letters were protected under anti-SLAPP statute); *Summerfield v. Randolph*, 201 Cal. App. 4th 127, 136 (2011) (The anti-SLAPP law "has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation.") (collecting cases). Therefore, Niantic has shown that counterclaims two and three "aris[e] from protected activity." *Barry v. State Bar of Cal.*, 2 Cal. 5th 318, 321 (2017) (internal quotation marks omitted).

Defendants argue that Niantic's communications are not protected activity because "there is no evidence that Niantic acted in reasonable contemplation of litigation." ECF No. 79 at 21. The assertion is groundless. Not only did Niantic's cease-and-desist letter assert allegations "substantially similar" to those in the complaint, state that Defendants' "activities violate civil and criminal law," and state that Niantic "will take measures it believes are necessary to enforce its rights," but Niantic then proceeded to file this lawsuit merely a week later. ECF No. 64 at 13-14; ECF No. 81-1 at 8; ECF No. 1; *Roadrunner*, 2019 WL 3946895, at *14 ("[W]hile not dispositive, whether a lawsuit was ultimately brought is relevant to the determination of whether one was contemplated in good faith at the time of the demand letter."). Defendants offer nothing to

11

1  undermine Niantic's showing or suggest that Niantic's pre-suit communications were "merely a
2  negotiating tactic and not a serious proposal made in good faith contemplation of going to court."
3  *Olivares v. Pineda*, 40 Cal. App. 5th 343, 357-58 (2019).[5]  Second, because this litigation had
4  already commenced at the time of Niantic's communications with GoDaddy, Defendants'
5  arguments as to whether Niantic "acted in good-faith contemplation of litigation" are inapplicable
6  to these communications.  ECF No. 79 at 22.

7        Defendants also argue that counterclaims two and three do not involve any protected
8  activity because they arise from Niantic's "conduct" of suspending user accounts rather than
9  Niantic's "communications."  *See* ECF No. 79 at 16-17, 22.  Defendants' characterization of its
10 allegations is unpersuasive.  Defendants' counterclaims for tortious interference and unfair
11 competition plainly arise from Niantic's cease-and-desist letter and communications with
12 GoDaddy.  *See, e.g.,* ECF No. 64 at 13 (Niantic cease-and-desist letter "demand[ed] that
13 Defendants cease all operations related to Global++" and "pay to Niantic all money Defendants
14 received related to the tweak); *id.* at 15 (alleging "Niantic's baseless demand that Defendants
15 cease operations and pay to Niantic all revenues" as a basis for Defendants' tortious interference
16 and unfair competition claims); *id.* at 13 ("Niantic contacted GoDaddy, the web hosting company
17 that hosted the globalplusplus.com home page, to demand that GoDaddy disable the website."); *id.*
18 15 (alleging "Niantic's demand that Defendants' third-party web hosting services provider disable
19 Defendants' website" as a basis for Defendants' tortious interference and unfair competition
20 claims).  Moreover, counterclaims two and three make no reference to Niantic's suspension of
21 user accounts.

---

[5] Defendants argue that Niantic's communications referenced conduct that is "not related to Defendants," "demanded Defendants cease the use of code which has substantial uses unrelated to Niantic," and "forced GoDaddy to shut down the website that permitted Defendants to operate." ECF No. 79 at 22.  While this alleged conduct might shed light on whether there is a good faith basis for Niantic's *claims*, it is irrelevant to the inquiry of whether California's litigation privilege and anti-SLAPP protections are applicable.  *See Adobe*, 2012 WL 3877783, at *12 (citing *Action Apartment Assn.,* 41 Cal. 4th 1232, 1251 (2007) ("[T]he notion of good faith is relevant only" to the question of whether communications were "made with a 'good faith *intention to bring a suit*.'") (emphasis added).

12

### 2. Probability of Prevailing at Trial

Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *as amended*, 897 F.3d 1224 (9th Cir. 2018). As discussed above, counterclaims two and three are barred by California's litigation privilege. Defendants, therefore, cannot demonstrate that these claims are "legally sufficient and factually substantiated." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016); *See Optional Capital Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal. App. 5th 95, 115 (2017) ("A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes a defendant's liability on the claims.").

In sum, the Court finds that counterclaims two and three arise from protected activities and lack even minimal merit. *See Robinson*, 875 F. Supp. 2d at 1048. Accordingly, the Court grants Niantic's motion to strike these counterclaims under California's anti-SLAPP statute. *See Adobe*, 2012 WL 3877783, at *18 (granting anti-SLAPP motion where counterclaimant "failed to state legally sufficient counterclaims" and the "counterclaims are barred by the litigation privilege and the *Noerr-Pennington* doctrine").

In its motion, Niantic announced an intention to file a motion for attorney's fees and costs it prevailed on the anti-SLAPP portion of the motion. ECF No. 69 at 24; *see also* Cal. Civ. Proc. Code § 425.16(c)(1) ("a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs"). The parties are ordered to meet and confer regarding Niantic's request for attorney's fees and costs. A stipulated proposed order or a motion for that relief is due by February 28, 2020.

### V. MOTION TO STRIKE AFFIRMATIVE DEFENSES

#### A. Legal Standard

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Relying on *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957), the Ninth Circuit has held that a defense is

insufficiently pleaded if it fails to give the plaintiff "fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). But the Ninth Circuit has not addressed "whether the 'plausibility' pleading standard for complaints articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) applies to the 'fair notice' required of an affirmative defense in an answer, and district courts within the Ninth Circuit are split on that issue." *Espitia v. Mezzetti Fin. Servs., Inc.*, No. 18-cv-02480-VKD, 2019 WL 359422, at *2 (N.D. Cal. Jan. 29, 2019).

This Court is among "the majority of courts in this district [that] have held that the heightened pleading standard of *Twombly* and *Iqbal* . . . is now the correct standard to apply to affirmative defenses." *Pertz v. Heartland Realty Inv'rs, Inc.*, No. 19-cv-06330-CRB, 2020 WL 95636, at *1 (N.D. Cal. Jan. 8, 2020); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-cv-01393-JST, 2017 WL 2311296, at *1 (N.D. Cal. May 26, 2017). "Just as a plaintiff's complaint must allege enough supporting facts to nudge a legal claim across the line separating plausibility from mere possibility, a defendant's pleading of affirmative defenses must put a plaintiff on notice of the underlying factual bases of the defense." *Hernandez v. Cty. of Monterey*, 306 F.R.D. 279, 284 (N.D. Cal. 2015) (quoting *Dion v. Fulton Friedman & Gullace LLP*, No. 3:11–2727–SC, 2012 WL 160221, at *2 (N.D. Cal. Jan. 17, 2012) (internal citations omitted)). "That standard does not require extensive factual allegations, but rejects bare statements reciting mere legal conclusions." *Finjan, Inc. v. Bitdefender Inc.*, No. 17-cv-04790-HSG, 2018 WL 1811979, at *3 (N.D. Cal. Apr. 17, 2018) (internal quotation marks and citation omitted)

In evaluating whether an affirmative defense is sufficiently pleaded, the court should view the pleading in a light most favorable to the defendant. *FTC v. Lending Club Corp.*, No. 18-cv-02454-JSC, 2019 WL 7488991, at *2 (N.D. Cal. Apr. 29, 2019). If the court strikes an affirmative defense, "leave to amend should be freely given" unless doing so would result in prejudice to the opposing party. *Wyshak*, 481 F.2d at 826-27.

**B.     Discussion**

Defendants have not alleged sufficient facts to provide notice to Niantic as to the nature of any of its affirmative defenses.

### 1. First Affirmative Defense: Failure to State a Claim

Defendants' first affirmative defense asserts that "Niantic's allegations fail to state a claim on which relief can be granted." ECF No. 64 at 9. The Court strikes this defense with prejudice because it is a denial rather than an affirmative defense. *See Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 442 (C.D. Cal. 2013) ("[F]ailure to state a claim is not an affirmative defense; it is a defect in a plaintiff's claim and is not an additional set of facts that would bar recovery notwithstanding the plaintiff's valid prima facie case."); *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense.").

### 2. Second Affirmative Defense: Permission, License, or Implied License

The existence of an express or implied license is an affirmative defense to a claim of copyright infringement. *See Oracle USA, Inc. v. Rimini Street, Inc.*, 6 F. Supp. 3d 1086, 1093 (D. Nev. 2014); *Furie v. Infowars, LLC*, 401 F. Supp. 3d 952, 968 (C.D. Cal. 2019). When alleging the existence of an express license, the defendant "has the initial burden to identify any license provision(s) that it believes excuses its infringement." *Oracle USA*, 6 F. Supp. 3d at 1093; *Oracle Am.*, 2017 WL 635291, at *6. When asserting the affirmative defense of an implied license, the defendant "must prove 'the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter.'"[6] *Furie*, 401 F. Supp. 3d at 968 (quoting *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1050–51 (9th Cir. 2015).

Defendants' second affirmative defense asserts that "Niantic's claims are barred by permission, license, or implied license, in that Niantic knew about Defendants' alleged activities, possessed the ability to stop Defendants from engaging in the conduct about which Niantic now complains, and permitted Defendants to continue operating." ECF No. 64 at 9. In asserting this defense, Defendants do not identify any applicable license provision(s). They also fail to allege an

---

[6] "[W]hether an implied license exists is a matter of contract law; as such, it is governed by state law so long as the state law does not conflict with the Copyright Act." *Interscope Records v. Time Warner, Inc.*, No. 10-CV-1772-SVW (PJWx), 2010 WL 11505708, at *5 (C.D. Cal. June 28, 2010) (citing *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001)).

1  offer of a license, an acceptance of a license, or an exchange of consideration. Therefore, the

2  Court strikes this defense because it fails to allege any facts to support the existence of an express

3  or implied license. *See Oracle Am.*, 2017 WL 635291, at *5 (striking an express and implied

4  license defense which consisted of "a conclusory statement devoid of any factual support").

### 3. Third Affirmative Defense: Estoppel

"To establish the affirmative defense of estoppel, a party must show that the adverse party, either intentionally or under circumstances that induced reliance, engaged in conduct upon which the relying party relied and that the relying party acted or changed its position to its detriment." *Eurow & O'Reilly Corp. v. Superior Mfg. Group, Inc.*, No. CV 14-6595-RSWL (VBKx), 2015 WL 1020116, at *4 (C.D. Cal. March 6, 2015) (internal quotation marks and citation omitted).

Defendants' third affirmative defense asserts that "Niantic's claims are barred by estoppel, in that Niantic knew about Defendants' allegedly infringing conduct, intended that Defendants rely on Niantic's acts or omissions, and Defendants relied on Niantic's acts or omissions to Defendants' detriment." ECF No. 64 at 9. While Defendants assert that they "relied on Niantic's acts or omissions," they fail to allege any facts or provide any explanation as to which "acts or omissions" induced reliance, how Defendants relied on such acts or omissions, or how Defendants changed position to their detriment. Defendants' pleading, therefore, fails to "put [Niantic] on notice of the underlying factual basis of the defense." *Hernandez*, 306 F.R.D. at 284. Accordingly, the Court strikes Defendants' third affirmative defense.

### 4. Fourth Affirmative Defense: Unclean Hands

"To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *Kaseberg v. Conaco, LLC*, 360 F. Supp. 3d 1026, 1038 (N.D. Cal. 2018) (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007). "In the Ninth Circuit, unclean hands is a defense to copyright infringement 'when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action.'" *Oracle Am., Inc. v. Terix*

*Computer Co., Inc.*, No. 5:13-cv-03385-PSG, 2015 WL 1886968, at *5 (N.D. Cal. April 24, 2015) (quoting *Dream Games of Ariz., Inc. v. PC Onsite,* 561 F.3d 983, 990-91 (9th Cir. 2009).

Defendants' fourth affirmative defense asserts that "Niantic's claims are barred by its own unclean hands, in that Niantic profited from Defendants' alleged activities for a period of years before filing these claims." ECF No. 64 at 9. In asserting this affirmative defense, Defendants allege no facts to show (1) inequitable conduct by Niantic, (2) that Niantic's conduct directly relates to any claims it has asserted against Defendants, or (3) that Niantic's conduct injured Defendants. Therefore, the Court strikes this defense as legally insufficient. *See Oracle Am.*, 2017 WL 635291, at *6 (dismissing unclean hands affirmative defense because defendant failed to adequately plead the alleged conduct resulting in copyright misuse).

### 5. Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Affirmative Defenses

Defendants' remaining affirmative defenses "simply list[] a series of conclusory statements asserting the existence of an affirmative defense without stating a reason why that affirmative defense might exist." *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010). Defendants' fifth, sixth, seventh, eighth, and ninth affirmative defenses assert only that "Niantic's claims are barred" by (1) "the applicable statutes of limitations," (2) "laches," (3) "the fair use doctrine," (4) "waiver," and (5) "Niantic's acquiescence." ECF No. 64 at 9-10. Defendants' tenth affirmative defense alleges that "Niantic's claims are barred because they are subject to mandatory arbitration." The Court strikes the fifth, sixth, seventh, eighth, ninth, and tenth affirmative defenses because they are conclusory and include no factual allegations. *See Barnes*, 718 F. Supp. 2d at 1172 (striking affirmative defenses where defendant simply asserts the existence of the defenses and, therefore, does not "allege[] sufficient facts to provide notice to [plaintiff] as to the nature of any of its affirmative defenses").

### CONCLUSION

Plaintiff's motion to dismiss and motion to strike Defendants' counterclaims is granted with leave to amend. Plaintiff's motion to strike Defendants' affirmative defenses is granted with leave to amend regarding affirmative defenses Nos. 2, 3, 4, 5, 6, 7, 8, 9, and 10. The motion is granted without leave to amend with respect to affirmative defense No. 1. Defendants may file an

17

amended answer within 30 days from the filing date of this order.

**IT IS SO ORDERED.**

Dated: January 30, 2020



JON S. TIGAR
United States District Judge