# Exhibit 1

1  Julie E. Schwartz, Bar No. 260624
   JSchwartz@perkinscoie.com
2  PERKINS COIE LLP
   3150 Porter Drive
3  Palo Alto, CA 94304-1212
   Telephone: 650.838.4300
4  Facsimile: 650.838.4350
5
   Todd M. Hinnen (admitted *pro hac vice*)
6  THinnen@perkinscoie.com
   Ryan Spear (admitted *pro hac vice*)
7  RSpear@perkinscoie.com
   PERKINS COIE LLP
8  1201 Third Ave., Suite 4900
   Seattle, WA 98101-3099
9  Telephone: 206.359.8000
   Facsimile: 206.359.9000
10
11 Attorneys for Plaintiff Niantic, Inc.

12                  **UNITED STATES DISTRICT COURT**

13                 **NORTHERN DISTRICT OF CALIFORNIA**

14                        **OAKLAND DIVISION**

15 NIANTIC, INC., a Delaware corporation,        Case No. 19-cv-03425-JST
16                      Plaintiff,
                                                 **AMENDED COMPLAINT FOR DAMAGES**
17          v.                                   **AND INJUNCTIVE RELIEF FOR:**

18 GLOBAL++, an unincorporated                   **(1)   Direct, Contributory, and Vicarious
19 association; RYAN HUNT, a.k.a.                        Copyright Infringement,
   "ELLIOTROBOT," an individual;                        17 U.S.C. § 101, *et seq.*
20 IT HAVEN INC., a foreign corporation;
   MATTHEW JOHNSON, an individual;              **(2)   Violation of the Computer Fraud and
21 HLP TECH, LLC, a Missouri limited                    Abuse Act, 18 U.S.C. § 1030
   liability company; MATTHEW
22 RAGNARSON, an individual; MANDY              **(3)   Violation of the California
   JOHNSON, an individual; MANDY                       Comprehensive Computer Data
23 LOMBARDO, an individual;                            Access and Fraud Act,
   ALEN HUNDUR, a.k.a. "IOS N00B,"                     Cal. Penal Code § 502
24 an individual; APPHAVEN, an
   unincorporated association;                  **(4)   Violation of the California Unfair
25 RAJESHWAR GHODERAO, an                              Competition Law,
   individual; and DOES 1-20,                          Cal. Bus. & Prof. Code § 17200, *et seq.*
26                      Defendants.
                                                 **(5)   Breach of Contract**
27
                                                 **(6)   Intentional Interference with
28                                                      Contractual Relations**

                                                 **DEMAND FOR JURY TRIAL**

For its amended complaint, plaintiff Niantic, Inc. ("Niantic") hereby alleges as follows:

## I.     NATURE OF THE ACTION

1.     Niantic brings this action to stop defendants' willful and serial infringement of Niantic's valuable intellectual property, and to recover damages and other relief for defendants' infringement and other violations of Niantic's rights.

2.     Niantic publishes location-based augmented reality games that are played on users' mobile devices, including the games titled *Harry Potter: Wizards Unite* ("*Harry Potter*"), *Pokémon GO*, and *Ingress*. To play Niantic's games, players download and install Niantic's mobile applications ("apps") on their mobile devices. Those apps connect to the Internet and, through the Internet, obtain game-related information from Niantic's servers (e.g., names and locations of nearby characters or features), which is then rendered on the screens of players' mobile devices.

3.     As explained in greater detail below, defendants have created, distributed, advertised, and profited from unauthorized derivative versions of Niantic's mobile apps (the "Cheating Programs"), which incorporate substantial portions of Niantic's copyrighted computer code (the "Client Code").[1]

4.     In addition or alternatively, defendants have conspired with others to create, distribute, advertise, and profit from the Cheating Programs; knowingly, intentionally, and materially contributed to and induced that unlawful conduct; or failed to exercise their right and ability to stop that unlawful conduct.

5.     Specifically, defendants have created, distributed, advertised, and profited from a program titled *Potter++* (or, in some cases, *Unite++*), which is an unauthorized derivative version of Niantic's mobile app for *Harry Potter*; a program titled *PokeGo++*, which is an

---

[1] For purposes of this amended complaint, the term "client code" refers to code that users install on their mobile devices when they install apps. Client code is distinguished from "server code," which exists on a remote computer server. Niantic's games utilize client code and server code. When players use Niantic's mobile apps on their mobile devices, the client code in Niantic's mobile apps interacts with the server code on Niantic's servers to create the game-playing experience.

1

unauthorized derivative version of Niantic's mobile app for *Pokémon GO*; and a program titled *Ingress++*, which is an unauthorized derivative version of Niantic's mobile app for *Ingress*.

6.      All the Cheating Programs allow defendants and defendants' customers to perform unauthorized actions while playing Niantic's games. In other words, the Cheating Programs enable cheating.

7.      Niantic's games are multiplayer games, meaning that users play in a shared online environment. Thus, the Cheating Programs give defendants and defendants' customers an unfair advantage over other players and undermine the integrity of the gaming experience for other players.

8.      Defendants have profited from their illegal activity by selling "subscriptions." Defendants' customers purchase those subscriptions in order to access the unauthorized features within the Cheating Programs, which in turn enable defendants' customers to cheat within Niantic's games. On information and belief, defendants have sold subscriptions to their Cheating Programs to hundreds of thousands of users, reaping massive profits.

9.      Defendants' schemes have harmed and will continue to harm Niantic in many ways. Among other things, defendants' schemes have undermined the integrity of the gaming experience for legitimate players, diminishing enthusiasm for Niantic's games and, in some cases, driving players away from Niantic's games altogether. Defendants' schemes have therefore damaged Niantic's reputation and goodwill and interfered with Niantic's business.

10.      In addition, defendants' schemes have inflicted substantial harm by interfering with the United States launch of *Harry Potter*, Niantic's highly anticipated new game.

11.      Equally important, Niantic's investigation indicates that the Cheating Programs have accessed and collected valuable and proprietary game-related data about Niantic's games, including data about geographical points of interest within Niantic's games, while they are running on the mobile devices of defendants and defendants' customers. On information and belief, the Cheating Programs then transfer that data to defendants, allowing defendants to exploit the data for their own commercial purposes. Defendants are not authorized to obtain and exploit that game-related information. To the contrary, Niantic has expended substantial resources to

curate and protect that unique data, which is an extremely important component of Niantic's business model.

12.     Defendants are not unwitting violators. They have defeated, removed, or bypassed technical measures implemented by Niantic to thwart their schemes. They have also openly and repeatedly declared their intent to misappropriate Niantic's intellectual property.

13.     Niantic frequently releases updated versions of its mobile apps, in some cases every few weeks. On many occasions when Niantic has released new versions of its mobile apps, defendants have created and distributed unauthorized derivative versions of Niantic's updated mobile apps.

14.     Niantic contacted defendants Global++, Ryan Hunt, and Alen Hundur before filing this lawsuit, explained that their schemes violated Niantic's rights and harmed Niantic's customers, demanded that they cease their unlawful conduct, and attempted to resolve the parties' dispute without judicial intervention. Defendants Global++, Hunt, and Hundur ignored Niantic. Accordingly, Niantic had no choice but to file this action to protect its rights and the rights of the millions of consumers who enjoy Niantic's mobile games.

## II.     PARTIES

### A.     Plaintiff Niantic, Inc.

15.     Plaintiff Niantic is a Delaware corporation with its principal place of business in San Francisco, California.

### B.     Defendant Global++

16.     Defendant Global++ is an unincorporated association of hackers that has created, distributed, advertised, and profited from the Cheating Programs. In addition or alternatively, Global++ has conspired with others to create, distribute, advertise, and profit from the Cheating Programs; knowingly, intentionally, and materially contributed to and induced that unlawful conduct; or failed to exercise its right and ability to stop that unlawful conduct.

17.     On information and belief, and as further alleged below, all of the following, and likely others, are principals, leaders, agents, or members of Global++ and are therefore responsible and liable for the acts of Global++: Ryan Hunt, IT Haven Inc., Matthew Johnson,

3

HLP Tech, LLC, Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo (to the extent those names are not pseudonyms for Matthew Johnson), Alen Hundur, and John Does 1-20.

**C.     Defendant Ryan Hunt**

18.     Defendant Ryan Hunt is a principal and leader of Global++, and in that capacity he directs, controls, and is responsible for all relevant actions of Global++.

19.     On information and belief, Hunt also serves as the chief executive officer and sole director of defendant IT Haven Inc., and in that capacity he directs, controls, and is responsible for all relevant actions of IT Haven Inc.

20.     Hunt is the primary software designer and engineer responsible for developing and maintaining Global++ code, software, and products, including the Cheating Programs.

21.     Hunt often uses the moniker "ElliotRobot" in social media and online forums.

22.     On information and belief, Hunt resides in Ontario, Canada.

**D.     Defendant IT Haven Inc. ("IT Haven")**

23.     Defendant IT Haven is a foreign corporation with its principal place of business in Ontario, Canada.

24.     On information and belief, there exists a complete unity of interest between IT Haven and Hunt because Hunt exercises sole ownership and control over IT Haven, and because IT Haven is a mere instrumentality for Hunt's business and/or other conduct. Given this unity of interest, treating IT Haven as an entity distinct from Hunt would result in injustice because it would allow either entity to avoid the liabilities incurred by the other.

**E.     Defendant Matthew Johnson**

25.     Defendant Matthew Johnson is a principal and leader of Global++, and in that capacity he directs, controls, and is responsible for all relevant actions of Global++.

26.     On information and belief, Matthew Johnson also serves as the chief executive officer, member, organizer, and sole director of defendant HLP Tech, LLC, and in that capacity he directs, controls, and is responsible for all relevant actions of HLP Tech, LLC.

27.     On information and belief, Matthew Johnson financed the activities of Global++, including by commissioning and paying Hunt to develop and maintain the Global++ code, software, and products, including the Cheating Programs.

28.     Matthew Johnson has also been or remains the registrant of domain names for websites that have been used to advertise, distribute, and profit from the Cheating Programs, including Global++'s official website (www.globalplusplus.com) and AppHaven's official website (www.apphaven.org), and in that capacity he has had specific knowledge of that infringing conduct and has directed, controlled, and contributed to that infringing conduct.

29.     On information and belief, Matthew Johnson resides in Poplar Bluff, Missouri.

**F.     Defendant HLP Tech, LLC ("HLP Tech")**

30.     Defendant HLP Tech is a limited liability company with its principal place of business in Poplar Bluff, Missouri.

31.     On information and belief, there exists a complete unity of interest between HLP Tech and Johnson because Johnson exercises sole ownership and control over HLP Tech, and because HLP Tech is a mere instrumentality for Johnson's business and/or other conduct. Given this unity of interest, treating HLP Techas an entity distinct from Johnson would result in injustice because it would allow either entity to avoid the liabilities incurred by the other.

**G.     Defendants Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo**

32.     On information and belief, defendants Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo are agents and/or members of Global++ who support, conspire with, and act in active concert and participation with the other defendants to further the unlawful conduct alleged in this amended complaint.

33.     Alternatively, on information and belief, Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo are pseudonyms for defendant Matthew Johnson.

34.     On information and belief, and to the extent that Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo are not pseudonyms for defendant Matthew Johnson, they reside in Missouri.

**H.    Defendant Alen Hundur**

35.    Defendant Alen Hundur is a member of Global++, and in that capacity he has, among other things, maintained a popular YouTube channel devoted to advertising and providing customer support for Global++'s code, software, and products, including the Cheating Programs.

36.    On information and belief, Hundur has also contributed to the creation and development of Global++'s code, software, and products.

37.    Hundur often uses the moniker "iOS n00b" (or, in some cases, "i0S n00b") in social media and online forums.

38.    On information and belief, Hundur resides in Brentwood, Tennessee.

**I.    Defendant AppHaven**

39.    Defendant AppHaven is an unincorporated association of hackers that has created, distributed, advertised, and profited from the Cheating Programs. In addition or alternatively, AppHaven has conspired with others to create, distribute, advertise, and profit from the Cheating Programs; knowingly, intentionally, and materially contributed to and induced that unlawful conduct; or failed to exercise its right and ability to stop that unlawful conduct.

**J.    Defendant Rajeshwar Ghoderao**

40.    On information and belief, defendant Rajeshwar Ghoderao is the principal and leader of AppHaven, and in that capacity he directs, controls, and is responsible for all relevant actions of AppHaven.

41.    On information and belief, Ghoderao resides in India.

**K.    Does 1-20**

42.    The defendants named as Does 1-20 are individuals who support, conspire with, and act in active concert and participation with the other defendants to further the unlawful conduct alleged in this amended complaint.

43.    Niantic will seek to amend this complaint to add the true names and capacities of Does 1-20 when they become known.

### III.     JURISDICTION AND VENUE

44.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 because Niantic alleges violations of the federal Copyright Act, 17 U.S.C. § 101, *et seq.*, and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

45.     This Court has supplemental jurisdiction over Niantic's state law claims under 28 U.S.C. § 1367 because Niantic's state law claims are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy.

46.     This Court has personal jurisdiction over each of the defendants because defendants' unlawful activities are targeted at Niantic, which defendants know is headquartered in California; because defendants conduct substantial, continuous, and systematic business within this district, including by utilizing California-based social media platforms and other California-based services to perpetrate unlawful activities targeting Niantic; because defendants engaged in acts or omissions causing injury within this district (including, on information and belief, distributing Cheating Programs in this district); because defendants engaged in acts or omissions outside this district causing injury within this district; and because the claims alleged in this amended complaint arise out of or relate to defendants' forum-related activities.

47.     In addition or alternatively, this Court has personal jurisdiction over each of the defendants because each defendant, or agents for each defendant, agreed to the personal jurisdiction of the state and federal courts located in the Northern District of California by agreeing to the forum-selection clause in the current version of Niantic's Terms of Service or a substantially similar forum-selection clause in an earlier version of Niantic's Terms of Service.

48.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Niantic's claims occurred in this district.

49.     In addition or alternatively, venue is proper in this district because each defendant, or agents for each defendant, consented to venue in this district by agreeing to the forum-selection clause in the current version of Niantic's Terms of Service or a substantially similar forum-selection clause in an earlier version of Niantic's Terms of Service.

#### IV.    INTRADISTRICT ASSIGNMENT

50.    This is an intellectual property action to be assigned on a district-wide basis under Civil Local Rule 3-2(c).

#### V.    ALLEGATIONS COMMON TO ALL CLAIMS

**A.    Niantic's Mobile Games and Applications**

51.    Niantic currently publishes three popular location-based augmented reality games: *Harry Potter*, *Pokémon GO*, and *Ingress.*

52.    *Harry Potter* is Niantic's newest game. *Harry Potter* combines content and characters from the original Harry Potter series and the Fantastic Beasts films to create a unique experience in which players use wands, spells, and magical items to protect the Wizarding World. Players recharge Spell Energy by obtaining food from Inns, which are located at places like public art spaces, unique pieces of architecture, or public gathering places. The beta version of *Harry Potter* launched in New Zealand on April 16, 2019, and in the United States on June 20, 2019.

53.    *Pokémon GO* was launched in 2016. *Pokémon GO* allows players to collect imaginary creatures called Pokémon by finding them in real-world locations (presented in a map view or via augmented reality in the game's mobile app) and "capturing" them using Pokéballs. Players can obtain Pokéballs by visiting "Pokéstops," among other game actions, which are located at real-world locations that help players discover and enjoy their communities. *Pokémon GO* has been downloaded more than 850 million times and has received many accolades, including "Best Mobile Game" from The Game Developers Choice Awards and "Best App of the Year" from TechCrunch. To this day, *Pokémon GO* frequently has more than 16 million daily active users and over 33 million monthly active users.

54.    *Ingress* was launched in 2012. *Ingress* transforms the real world into the landscape for a covert global struggle between two teams: The Enlightened and The Resistance. Players join a team, strategize and communicate with their fellow "Agents," and interact with locations of cultural significance (e.g., public art installations, landmarks, and monuments) known as

"Portals" to collect valuable resources, battle for control over territory, and solve mysteries. Ingress has been downloaded over 25 million times.

55.     Niantic's mobile games are based on three core principles: exploration and discovery of new places, exercise, and real-world social interaction with other people. Through these principles, and by leveraging sophisticated mapping and augmented reality technologies, Niantic encourages players to head outside, visit new places, and play together with friends and family in games that span and unite the entire planet.

56.     Niantic's apps are free to download and use, and it is possible to play Niantic's games for free indefinitely. However, to obtain in-game items that can be beneficial during game play, players can make in-game purchases. For example, in *Pokémon GO*, players can purchase in-game currency ("Pokécoins") to redeem for additional Pokéballs, which are used to capture Pokémon. Players may do this, for example, if they run out of Pokéballs when they are not near a Pokéstop at which they could otherwise obtain Pokéballs for free by interacting with the location.

57.     In-game purchases are a fundamental aspect of Niantic's business model and represent one of Niantic's primary sources of revenue.

58.     Niantic's games are the product of Niantic's skills, resources, and creative energies and have great value to Niantic. Niantic has invested significant resources, including time, effort, talent, creativity, and money, to develop and produce its games.

**B.     Niantic's Terms of Service**

59.     To obtain a limited license to access and use Niantic's services and games, users must agree to Niantic's Terms of Service. Attached as Exhibit A, and incorporated by reference, is a true and correct copy of the current version of Niantic's Terms of Service.

60.     The limited license that Niantic grants to users to access and use Niantic's services and games is conditioned on compliance with Niantic's Terms of Service.

61.     Under Niantic's Terms of Service, users may not, among other things, copy, modify, or create derivative works based on Niantic's games or use Niantic's games for any commercial purpose.

**C.      Defendants and the Cheating Programs**

62.      All of the defendants are participants in a scheme to create, distribute, advertise, and profit from the Cheating Programs, which target Niantic's games and misappropriate Niantic's intellectual property.

63.      On information and belief, the Cheating Programs created, distributed, and advertised by the defendants include two main components: (a) unauthorized copies of Niantic's copyrighted Client Code, and (b) computer code developed, maintained, and distributed by defendants that defendants refer to as the Global++ "dynamic library."

64.      The Cheating Programs could not function as intended by defendants if they did not contain copies of Niantic's Client Code.

65.      The Cheating Programs could not function as intended by defendants without the Global++ "dynamic library."

66.      To obtain copies of Niantic's Client Code, defendants obtain legitimate versions of Niantic's mobile apps from Apple's online App Store and then circumvent the technical security measures put in place by Niantic and by Apple to protect the Niantic Client Code. Defendants then access and copy Niantic's Client Code without authorization.

67.      After copying Niantic's Client Code, defendants modify the Niantic Client Code to enable it to operate with the Global++ "dynamic library."

68.      The Cheating Programs could not function as intended by defendants without defendants modifying the Niantic Client Code to enable it to operate with the Global++ "dynamic library."

69.      Finally, defendants combine the modified Niantic Client Code with the Global++ "dynamic library" to create the Cheating Programs, which they distribute to their customers.

70.      Based on Niantic's analysis, defendants copy large amounts of Niantic's Client Code and incorporate that Client Code directly into the Cheating Programs.

71.      A side-by-side comparison of the user interfaces for Niantic's legitimate apps and defendants' Cheating Programs helps illustrate the extent to which defendants have copied Niantic's Client Code in order to create the Cheating Programs.

_**Harry Potter** Interface_                    _**Potter++** Interface_




AMENDED COMPLAINT
Case No. 19-cv-03425-JST

1

**_Pokémon GO_ Interface**          **_PokeGo++_ Interface**

2

3

4

5

6

7

8

9

10

11

12

          

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

**_Ingress_ Interface**          **_Ingress++_ Interface**



72.     Defendants have advertised and distributed their Cheating Programs through numerous online channels, including the official Global++ website (www.globalplusplus.com); a YouTube channel maintained by defendant Alen Hundur; the official AppHaven website (www.apphaven.org); and a stand-alone app operated and controlled by AppHaven. Attached as Exhibits B, C, and D, and incorporated by reference, are true and correct copies of excerpts of the Global++ website, the YouTube channel maintained by Hundur, and the AppHaven website.

AMENDED COMPLAINT
Case No. 19-cv-03425-JST

73.     When defendants' customers download and install the Cheating Programs on their mobile devices, the Cheating Programs allow those customers to access Niantic's computer servers, play Niantic's games, and perform unauthorized actions while playing Niantic's games.

74.     For example, the Cheating Programs allow defendants' customers to "spoof" their locations (i.e., visit geographical locations in the games without visiting those locations in the real world by communicating to Niantic's servers GPS coordinates that do not match the GPS coordinates generated by the customers' mobile devices); obtain items and achievements that they have not legitimately earned; automate certain in-game tasks so that they are always successful; and obtain valuable information that is not available to other users.

75.     The Cheating Programs also allow defendants and defendants' customers to use their mobile devices as bots, that is, automated computer programs that interact with Niantic's servers to make it appear as if defendants and defendants' customers are playing Niantic's games 24 hours a day, 7 days a week. This gives defendants and defendants' customers an unfair advantage over honest players because Niantic's legitimate apps do not allow players to automate game play in the same way.

76.     In addition, the Cheating Programs have accessed and obtained valuable and proprietary game-related data, including data about points of interest within Niantic's games (e.g., PokéStops in *Pokémon GO*, Portals in *Ingress*, and Inns in *Harry Potter*), such as names, descriptions, photographs, game states, and precise coordinates for those points of interest. Niantic refers to this data as point-of-interest data ("POI Data").

77.     The Cheating Programs have also accessed and obtained valuable ephemeral game information, such as the type and value of particular Pokémon appearing in precise locations. Niantic refers to this data as "Spawn Data."

78.     On information and belief, after accessing and obtaining POI Data and Spawn Data, the Cheating Programs have then uploaded the POI Data and the Spawn Data to servers controlled by defendants.

79.     Niantic's servers are not configured to support the Cheating Programs. As a result, the Cheating Programs have imposed additional burdens on Niantic's servers.

80.     Defendants are serial infringers. When Niantic has released new versions of its mobile apps, defendants have circumvented the security measures protecting Niantic's Client Code and released new versions of their Cheating Programs.

81.     Defendants have realized significant profits from the Cheating Programs. On information and belief, defendants have sold hundreds of thousands of subscriptions for their Cheating Programs and, as a result, obtained millions of dollars in illicit profits.

82.     Defendants know that their conduct is unlawful. Defendants have thwarted technical measures that Niantic has implemented to prevent defendants from accessing, copying, and creating unauthorized derivative versions of Niantic's apps.

83.     Moreover, before filing this lawsuit, Niantic contacted some of the defendants in writing and explained that their schemes violate Niantic's rights and harm Niantic's customers. Niantic also demanded that defendants cease creating, selling, and distributing the Cheating Programs, and expressly revoked defendants' limited license to access Niantic's computers and servers and to access Niantic's games and services. Defendants did not respond.

## VI.     NIANTIC'S COPYRIGHTED WORKS

84.     Niantic has obtained from the U.S. Copyright Office a Certificate of Registration for a computer program titled "*Pokémon GO*, Version 0.133.0." Attached as Exhibit E, and incorporated by reference, is a true and correct copy of the Certificate of Registration issued by the Copyright Office for *Pokémon GO*, Version 0.133.0.

85.     *Pokémon GO*, Version 0.133.0 is the client code for Version 0.133.0 of Niantic's app for the *Pokémon GO* game, which was released worldwide on January 28, 2019.

86.     *Pokémon GO*, Version 0.133.0 is an original, creative work and is copyrightable subject matter under the laws of the United States.

87.     The copyright in *Pokémon GO*, Version 0.133.0 is presently valid and subsisting.

88.     Substantial portions of *Pokémon GO*, Version 0.133.0, are incorporated into Niantic's computer program titled *Harry Potter*, Version 0.7.0.

89.     *Harry Potter*, Version 0.7.0 is the client code for Version 0.7.0 of Niantic's app for the *Harry Potter* game, which was released worldwide on June 20, 2019.

90.     Niantic has obtained from the U.S. Copyright Office a Certificate of Registration for a computer program titled "*Ingress*, Version 2.11.2." Attached as Exhibit F, and incorporated by reference, is a true and correct copy of the Certificate of Registration issued by the Copyright Office for *Ingress*, Version 2.11.2.

91.     *Ingress*, Version 2.11.2 is the client code for Version 2.11.2 of Niantic's app for the *Ingress* game, which was released worldwide on November 5, 2018.

92.     *Ingress*, Version 2.11.2 is an original, creative work and is copyrightable subject matter under the laws of the United States.

93.     The copyright in *Ingress*, Version 2.11.2 is presently valid and subsisting.

## VII.    CLAIMS

### COUNT ONE
#### Direct Copyright Infringement (17 U.S.C. § 101, *et seq.*)
#### (Against Defendants Global++, Ryan Hunt, and IT Haven)

94.     Niantic realleges and incorporates by reference all of the preceding paragraphs.

95.     Defendants Global++, Hunt, and IT Haven copied *Pokémon GO*, Version 0.133.0 to incorporate it into the Cheating Programs (e.g., *PokeGo++*, Version R104).

96.     Defendants Global++, Hunt, and IT Haven modified *Pokémon GO*, Version 0.133.0 to ensure that it functioned as defendants intended it to function in the context of the Cheating Programs.

97.     Defendants Global++, Hunt, and IT Haven copied substantial portions of *Pokémon GO*, Version 0.133.0 and incorporated it into the computer code that defendants refer to as the Global++ "dynamic library."

98.     Defendants Global++, Hunt, and IT Haven copied *Pokémon GO*, Version 0.133.0 to develop and maintain the computer code that defendants refer to as the Global++ "dynamic library."

99.     Defendants Global++, Hunt, and IT Haven distributed the Cheating Programs through the Global++ website and other platforms, including the Cheating Programs that contain a significant portion of *Pokémon GO*, Version 0.133.0.

16

100.    Defendants Global++, Hunt, and IT Haven copied *Harry Potter*, Version 0.7.0, which contains substantial portions of *Pokémon GO*, Version 0.133.0, to incorporate *Harry Potter*, Version 0.7.0 into the Cheating Programs (e.g., *Potter++*, Version r01).

101.    Defendants Global++, Hunt, and IT Haven modified *Harry Potter*, Version 0.7.0 to ensure that it functioned as defendants intended it to function in the context of the Cheating Programs.

102.    Defendants Global++, Hunt, and IT Haven copied substantial portions of *Harry Potter*, Version 0.7.0 and incorporated it into the computer code that defendants refer to as the Global++ "dynamic library."

103.    Defendants Global++, Hunt, and IT Haven copied *Harry Potter*, Version 0.7.0, to develop and maintain the computer code that defendants refer to as the Global++ "dynamic library."

104.    Defendants Global++, Hunt, and IT Haven distributed the Cheating Programs through the Global++ website and other platforms, including the Cheating Programs that contain a significant portion of *Harry Potter*, Version 0.7.0.

105.    Defendants Global++, Hunt, and IT Haven copied *Ingress*, Version 2.11.2 to incorporate it into the Cheating Programs (e.g., *Ingress++*, Version r1a).

106.    Defendants Global++, Hunt, and IT Haven modified *Ingress*, Version 2.11.2 to ensure that it functioned as defendants intended it to function in the context of the Cheating Programs.

107.    Defendants Global++, Hunt, and IT Haven copied substantial portions of *Ingress*, Version 2.11.2 and incorporated it into the computer code that defendants refer to as the Global++ "dynamic library."

108.    Defendants Global++, Hunt, and IT Haven copied *Ingress*, Version 2.11.2 to develop and maintain the computer code that defendants refer to as the Global++ "dynamic library."

17

109.    Defendants Global++, Hunt, and IT Haven distributed the Cheating Programs through the Global++ website and other platforms, including the Cheating Programs that contain a significant portion of *Ingress*, Version 2.11.2.

110.    Accordingly, defendants Global++, Hunt, and IT Haven have directly infringed Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

111.    Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

112.    Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

113.    In addition, Niantic is entitled to its attorney's fees and costs.

114.    Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer program.

### COUNT TWO
**Contributory Copyright Infringement (17 U.S.C. § 101, *et seq.*)**
**(Against Defendants Global++, Ryan Hunt, and IT Haven)**

115.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

116.    On information and belief, the computer code that defendants refer to as the Global++ "dynamic library" is an essential component of the Cheating Programs and has no practical purpose other than as a component of the Cheating Programs.

18

117.    Defendants Global++, Hunt, and IT Haven have developed, distributed, and advertised the Global++ "dynamic library," knowing and specifically intending that the Global++ "dynamic library" would be used by others (e.g., AppHaven) to infringe Niantic's copyrights.

118.    Defendants Global++, Hunt, and IT Haven have encouraged, induced, and assisted others (e.g., AppHaven) to use the Global++ "dynamic library" to create and distribute the Cheating Programs.

119.    Defendants Global++, Hunt, and IT Haven have formed and participated in commercial partnerships with others (e.g., AppHaven and Matthew Johnson) to create, distribute, advertise, and profit from the Cheating Programs.

120.    Accordingly, defendants Global++, Hunt, and IT Haven have contributorily infringed Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

121.    Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

122.    Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

123.    In addition, Niantic is entitled to its attorney's fees and costs.

124.    Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

19

**COUNT THREE**
**Vicarious Copyright Infringement (17 U.S.C. § 101, *et seq.*)**
**(Against Defendants Global++, Ryan Hunt, and IT Haven)**

125.   Niantic realleges and incorporates by reference all of the preceding paragraphs.

126.   Defendants Global++, Hunt, and IT Haven are or have been the owners and operators of websites and other online platforms that have been used to distribute the Cheating Programs and enable access to and use of the Cheating Programs by others, including AppHaven and users of the Cheating Programs.

127.   As the owners and operators of websites and other online platforms that have been used to distribute the Cheating Programs and enable access to and use of the Cheating Programs, defendants Global++, Hunt, and IT Haven retained both the legal and practical ability to block access to the Cheating Programs or to otherwise stop the direct infringement of Niantic's copyrights by others (e.g., AppHaven and users of the Cheating Programs).

128.   Defendants Global++, Hunt, and IT Haven are or have been the owners and operators of the computer code that defendants refer to as the Global++ "dynamic library."

129.   As the owners and operators of the Global++ "dynamic library," defendants Global++, Hunt, and IT Haven retained both the legal and practical ability to block access to the Cheating Programs or to otherwise stop the direct infringement of Niantic's copyrights by others (e.g., AppHaven and users of the Cheating Programs).

130.   Defendants Global++, Hunt, and IT Haven failed to block access to the Cheating Programs and stop the direct infringement of Niantic's copyrights.

131.   Defendants Global++, Hunt, and IT Haven received payments from users of the Cheating Programs in exchange for providing and enabling access to the Cheating Programs, and therefore received a direct financial benefit from the Cheating Programs.

132.   Defendants Global++, Hunt, and IT Haven received payments from defendants Matthew Johnson and/or HLP Tech in exchange for creating, distributing, and advertising the Cheating Programs, and therefore received a direct financial benefit from the Cheating Programs.

20

133.   Accordingly, defendants Global++, Hunt, and IT Haven are vicariously liable for infringement of Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

134.   Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

135.   Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

136.   In addition, Niantic is entitled to its attorney's fees and costs.

137.   Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

<u>**COUNT FOUR**</u>
**Contributory Copyright Infringement (17 U.S.C. § 101, *et seq.*)**
**(Against Defendants Matthew Johnson (a.k.a. Mandy Lombardo, Mandy Johnson, and/or Matthew Ragnarson) and HLP Tech)**

138.   Niantic realleges and incorporates by reference all of the preceding paragraphs.

139.   Defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech have commissioned and paid defendants Hunt and IT Haven to develop, distribute, and advertise the Cheating Programs.

140.   In addition or alternatively, defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech have commissioned and paid defendants Hunt and IT Haven to develop, distribute, and advertise the computer code that

defendants refer to as the Global++ "dynamic library," knowing and specifically intending that the "dynamic library" would be used to create and distribute the Cheating Programs.

141.     Defendant Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech have encouraged, induced, and assisted others (e.g., AppHaven) to create, distribute, and advertise the Cheating Programs.

142.     In addition or alternatively, defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech have encouraged, induced, and assisted others (e.g., AppHaven) to use the Global++ "dynamic library" to create and distribute the Cheating Programs.

143.     Defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech have formed and participated in commercial partnerships with others (e.g., AppHaven) to create, distribute, advertise, and profit from the Cheating Programs and/or the Global++ "dynamic library."

144.     Accordingly, defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech have contributorily infringed Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

145.     Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

146.     Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

147.     In addition, Niantic is entitled to its attorney's fees and costs.

148.     Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of

22

Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

**COUNT FIVE**
**Vicarious Copyright Infringement (17 U.S.C. § 101, *et seq.*)**
**(Against Defendants Matthew Johnson (a.k.a. Mandy Lombardo, Mandy Johnson, and/or Matthew Ragnarson) and HLP Tech)**

149.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

150.    Defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech are or have been the owners and operators of websites and other online platforms that have been used to distribute the Cheating Programs and enable access to and use of the Cheating Programs by others, including AppHaven and users of the Cheating Programs.

151.    As the owners and operators of websites and other online platforms that have been used to distribute the Cheating Programs and enable access to and use of the Cheating Programs, defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech retained both the legal and practical ability to block access to the Cheating Programs or to otherwise stop the direct infringement of Niantic's copyrights by others (e.g., AppHaven and users of the Cheating Programs).

152.    Defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech are or have been the owners and operators of the computer code that defendants refer to as the Global++ "dynamic library."

153.    As the owners and operators of the Global++ "dynamic library," defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech retained both the legal and practical ability to block access to the Cheating Programs or to stop the direct infringement of Niantic's copyrights by others (e.g., AppHaven and users of the Cheating Programs).

154.    Defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech failed to block access to the Cheating Programs and stop the direct infringement of Niantic's copyrights.

155.    Defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech received payments from users of the Cheating Programs in exchange for providing and enabling access to the Cheating Programs, and therefore received a direct financial benefit from the Cheating Programs.

156.    Accordingly, defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech are vicariously liable for infringement of Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

157.    Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

158.    Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

159.    In addition, Niantic is entitled to its attorney's fees and costs.

160.    Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

1
2

**COUNT SIX**
**Contributory Copyright Infringement (17 U.S.C. § 101, *et seq.*)**
**(Against Defendant Alen Hundur)**

3
161.   Niantic realleges and incorporates by reference all of the preceding paragraphs.

4
162.   Defendant Alen Hundur has maintained a popular YouTube channel devoted to

5
advertising and providing customer support for Global++'s code, software, and products,

6
including the Cheating Programs.

7
163.   Defendant Hundur has also acted as a "moderator" for Global++'s official

8
Facebook page, used the Twitter platform to advertise Global++'s code, software, and products,

9
including the Cheating Programs, and used the Twitter platform to encourage and induce others to

10
access and use the Cheating Programs through multiple online platforms, including AppHaven's

11
website. In those capacities, he has encouraged and induced third parties, including users of the

12
Cheating Programs, to infringe Niantic's copyrights.

13
164.   Defendant Hundur has formed and participated in commercial partnerships with

14
others (e.g., Global++ and, on information and belief, AppHaven) to advertise and profit from the

15
Cheating Programs.

16
165.   Accordingly, defendant Hundur has contributorily infringed Niantic's copyrights

17
in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

18
166.   Defendant's infringement of Niantic's copyrights has been deliberate, willful, and

19
in utter disregard of Niantic's rights.

20
167.   Niantic is entitled to recover from defendant the damages it has sustained and will

21
sustain, and any gains, profits and advantages obtained by defendant as a result of their acts of

22
infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for

23
defendant's willful infringement of its copyrights.

24
168.   In addition, Niantic is entitled to its attorney's fees and costs.

25
169.   Furthermore, as a direct and proximate result of defendant's wrongful conduct,

26
Niantic has been substantially harmed in an amount not readily capable of determination, i.e.,

27
irreparably, and, unless restrained by this Court, defendant will cause further irreparable injury to

28

Niantic. Niantic is therefore entitled to injunctive relief enjoining defendant, and all persons acting in concert or participation with him, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendant's computers and computer programs.

<u>**COUNT SEVEN**</u>
**Direct Copyright Infringement (17 U.S.C. § 101, *et seq*.)**
**(Against Defendants AppHaven and Ghoderao)**

170.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

171.    Defendants AppHaven and Ghoderao copied *Pokémon GO*, Version 0.133.0 to incorporate it into the Cheating Programs (e.g., *PokeGo++*, Version R104).

172.    Defendants AppHaven and Ghoderao modified *Pokémon GO*, Version 0.133.0 to ensure that it functioned as defendants intended it to function in the context of the Cheating Programs.

173.    Defendants AppHaven and Ghoderao distributed the Cheating Programs through the AppHaven website and other platforms, including the Cheating Programs that contain a significant portion of *Pokémon GO*, Version 0.133.0.

174.    Defendants AppHaven and Ghoderao copied *Harry Potter*, Version 0.7.0, which contains substantial portions of *Pokémon GO*, Version 0.133.0, to incorporate *Harry Potter*, Version 0.7.0 into the Cheating Programs (e.g., *Potter++*, Version r01).

175.    Defendants AppHaven and Ghoderao modified *Harry Potter*, Version 0.7.0 to ensure that it functioned as defendants intended it to function in the context of the Cheating Programs.

176.    Defendants AppHaven and Ghoderao distributed the Cheating Programs through the AppHaven website and other platforms, including the Cheating Programs that contain a significant portion of *Harry Potter*, Version 0.7.0.

177.    Defendants AppHaven and Ghoderao copied *Ingress*, Version 2.11.2 to incorporate it into the Cheating Programs (e.g., *Ingress++*, Version r1a).

178.   Defendants AppHaven and Ghoderao modified *Ingress*, Version 2.11.2 to ensure that it functioned as defendants intended it to function in the context of the Cheating Programs.

179.   Defendants AppHaven and Ghoderao distributed the Cheating Programs through the AppHaven website and other platforms, including the Cheating Programs that contain a significant portion of *Ingress*, Version 2.11.2.

180.   Accordingly, defendants AppHaven and Ghoderao have directly infringed Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

181.   Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

182.   Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

183.   In addition, Niantic is entitled to its attorney's fees and costs.

184.   Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

**COUNT EIGHT**
**Contributory Copyright Infringement (17 U.S.C. § 101, *et seq*.)**
**(Against Defendants AppHaven and Ghoderao)**

185.   Niantic realleges and incorporates by reference all of the preceding paragraphs.

27

186.   Defendants AppHaven and Ghoderao have maintained multiple online platforms, including an official website (www.apphaven.org), a stand-alone AppHaven app, and a Twitter account, through which they advertised and enabled users to access Global++'s code, software, and products, including the Cheating Programs. In that capacity, they have encouraged and induced third parties, including users of the Cheating Programs, to infringe Niantic's copyrights..

187.   Defendants AppHaven and Ghoderao have formed and participated in commercial partnerships with others (e.g., Global++, Hunt, IT Haven, and, on information and belief, Hundur) to create, distribute, advertise, and profit from the Cheating Programs.

188.   Accordingly, defendants AppHaven and Ghoderao have contributorily infringed Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

189.   Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

190.   Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

191.   In addition, Niantic is entitled to its attorney's fees and costs.

192.   Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

**COUNT NINE**
**Vicarious Copyright Infringement (17 U.S.C. § 101, *et seq.*)**
**(Against Defendants AppHaven and Ghoderao)**

193.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

194.    Defendants AppHaven and Ghoderao are or have been the owners and operators of websites and other online platforms that have been used to distribute the Cheating Programs and enable access to and use of the Cheating Programs by others (e.g., Global++ and users of the Cheating Programs).

195.    As the owners and operators of websites and other online platforms that have been used to distribute the Cheating Programs and enable access to and use of the Cheating Programs by others, defendants AppHaven and Ghoderao retained both the legal and practical ability to block access to the Cheating Programs or otherwise stop the direct infringement of Niantic's copyrights by others (e.g., Global++ and users of the Cheating Programs).

196.    Defendants AppHaven and Ghoderao failed to block access to the Cheating Programs and stop the direct infringement of Niantic's copyrights.

197.    On information and belief, defendants AppHaven and Ghoderao received payments from users of the Cheating Programs in exchange for providing and enabling access to the Cheating Programs, and therefore received a direct financial benefit from the Cheating Programs.

198.    On information and belief, defendants AppHaven and Ghoderao received payments from defendants Matthew Johnson and/or HLP Tech in exchange for creating, distributing, and advertising the Cheating Programs, and therefore received a direct financial benefit from the Cheating Programs

199.    On information and belief, defendants AppHaven and Ghoderao received payments from defendants Ryan Hunt and/or IT Haven in exchange for creating, distributing, and advertising the Cheating Programs, and therefore received a direct financial benefit from the Cheating Programs.

200.     Accordingly, defendants AppHaven and Ghoderao are vicariously liable for infringement of Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

201.     Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

202.     Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

203.     In addition, Niantic is entitled to its attorney's fees and costs.

204.     Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

**<u>COUNT TEN</u>**
**Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)**
**(Against All Defendants)**

205.     Niantic realleges and incorporates by reference all the preceding paragraphs.

206.     Niantic's network, computers, and servers, including the computers and servers that enable users to play Niantic's games via Niantic's mobile apps ("Niantic's Computers"), are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

30

207.    Niantic's legitimate mobile apps are the only authorized mechanism for accessing Niantic's Computers to play Niantic's games. Defendants and defendants' customers are not authorized to access Niantic's Computers using the Cheating Programs.

208.    By letter dated June 7, 2019, Niantic expressly revoked defendants' limited license to access Niantic's Computers.

209.    When defendants and defendants' customers download, install, and use the Cheating Programs to play Niantic's mobile games and interact with Niantic's services, the Cheating Programs access Niantic's Computers without authorization.

210.    When the Cheating Programs access Niantic's Computers, they obtain information from Niantic's Computers, including Niantic's POI Data and Spawn Data. On information and belief, the Cheating Programs also transfer copies of Niantic's POI Data and Spawn Data to defendants' computers.

211.    Defendants knowingly and intentionally designed the Cheating Programs to access Niantic's Computers, obtain Niantic's POI Data and Spawn Data, and transfer copies of that data to defendants' computers. Defendants therefore knowingly and intentionally accessed Niantic's Computers through the Cheating Programs and thereby obtained information from Niantic's Computers, without Niantic's authorization.

212.    Defendants knowingly and intentionally accessed Niantic's Computers through the Cheating Programs and thereby obtained information from Niantic's Computers even after Niantic expressly revoked defendants' limited license to access Niantic's Computers.

213.    In addition or alternatively, defendants agreed and conspired to access Niantic's Computers without authorization. In particular, defendants worked in concert to develop and implement the Cheating Programs and/or the computer code that defendants refer to as the Global++ "dynamic library" knowing that they were designed to access Niantic's Computers without authorization.

214.    Defendants' unauthorized access to Niantic's Computers has caused Niantic to suffer in excess of $5,000 in damage or loss, including, without limitation, expenses associated with investigating and remedying defendants' unauthorized access to Niantic's Computers.

31

215.    In addition, Niantic has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, Niantic is entitled to injunctive relief.

**COUNT ELEVEN**
**Violation of the California Comprehensive Computer Data Access and Fraud Act**
**(Cal. Penal Code § 502)**
**(Against All Defendants)**

216.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

217.    Defendants have violated California Penal Code § 502(c)(1) by knowingly accessing and without permission, altering, damaging, deleting, destroying, or otherwise using Niantic's Computers to wrongfully control or obtain money, property, or data from Niantic, including Niantic's POI Data and Spawn Data.

218.    Defendants have violated California Penal Code § 502(c)(2) by knowingly and fraudulently, and without permission, accessing, taking, copying, and making use of programs, data, and files from Niantic's Computers, including Niantic's POI Data and Spawn Data.

219.    Defendants have violated California Penal Code § 502(c)(3) by knowingly, fraudulently, and without permission accessing and using Niantic's Computers, in particular Niantic's computer services.

220.    Defendants have violated California Penal Code § 502(c)(7) by knowingly and without permission accessing or causing to be accessed Niantic's Computers.

221.    In addition or alternatively, defendants agreed and conspired to access Niantic's Computers without authorization. In particular, defendants worked in concert to develop and implement the Cheating Programs and/or the computer code that defendants refer to as the Global++ "dynamic library" knowing that they were designed to alter, damage, delete, destroy, or otherwise use Niantic's Computers without authorization.

222.    As a direct and proximate result of defendants' unlawful conduct, defendants have caused and continue to cause damage to Niantic in an amount to be proven at trial. Niantic is also entitled to recover its reasonable attorneys' fees pursuant to California Penal Code § 502(e).

223.    On information and belief, defendants' misconduct was willful and malicious in that it was done with the intent to injure Niantic's business and improve defendants' business, and in disregard and derogation of Niantic's rights and the rights of legitimate players of Niantic's games. Niantic is therefore entitled to punitive damages pursuant to California Penal Code § 502(e)(4).

224.    In addition, Niantic has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, Niantic is entitled to injunctive relief.

## COUNT TWELVE
### Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) (Against All Defendants)

225.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

226.    As detailed above, defendants have engaged in unlawful conduct by, among other things, accessing Niantic's Computers without authorization and obtaining information from Niantic's Computers, or conspiring to do so, even after Niantic expressly revoked defendants' limited license to access Niantic's Computers, in violation of the Computer Fraud and Abuse Act and the California Comprehensive Computer Data Access and Fraud Act.

227.    In addition or alternatively, defendants have engaged in unfair conduct by knowingly and intentionally designing and using the Cheating Programs to access, obtain, and commercially exploit proprietary game-related data from Niantic's servers, without permission or authorization from Niantic.

228.    In addition or alternatively, defendants have engaged in unfair conduct by knowingly and intentionally trading on the popularity of Niantic's games, including by using the names of Niantic's games to market the Cheating Programs, and distributing and advertising their Cheating Programs using names similar to Niantic's games.

229.    In addition or alternatively, defendants have engaged in fraudulent conduct by knowingly and intentionally using the names of Niantic's games to market the Cheating Programs, and distributing and advertising their Cheating Programs using names similar to

33

1    Niantic's games, thereby suggesting, falsely, that the Cheating Programs are affiliated with,

2    sponsored by, or approved by Niantic.

3          230.    As a direct and proximate result of defendants' conduct, defendants have caused

4    damage to Niantic in an amount to be proven at trial. Niantic is entitled to recover from

5    defendants such damages and any gains, profits, and advantages obtained as a result of the

6    violations alleged above.

7          231.    In addition, Niantic has suffered and will continue to suffer irreparable harm, and

8    its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants.

9    Accordingly, Niantic is entitled to injunctive relief.

### COUNT THIRTEEN
**Breach of Contract**
**(Against All Defendants)**

12         232.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

13         233.    Each of the defendants, or agents for each of the defendants, knowingly and

14   willingly agreed to the current version of Niantic's Terms of Service or a similar version of

15   Niantic's Terms of Service, and is therefore bound by Niantic's Terms of Service.

16         234.    Niantic's Terms of Service create a valid and enforceable contract.

17         235.    Niantic has fully performed or tendered all performance required under the Terms

18   of Service.

19         236.    As alleged above, defendants have breached their duties under Niantic's Terms of

20   Service, including but not limited to their duties to refrain from some or all of the following

21   conduct:

22         a.  Cheating, which includes "[a]ccessing Services in an unauthorized manner
               (including using modified or unofficial third party software)" and "[u]sing
23             any techniques to alter or falsify a device's location (for example through
               GPS spoofing)";

24         b.  "[C]opy[ing], modify[ing], or creat[ing] derivative works based on"
               Niantic's mobile apps;

25

26         c.  "Extract[ing], scrap[ing], or index[ing] [Niantic's] Services or Content
               (including information about users or gameplay)";

27         d.  "[U]s[ing] [Niantic's] Services or Content, or any portion thereof, for any
               commercial purpose or in a manner not permitted by these Terms"; and

28

34

e.   "[B]ypass[ing], remov[ing], deactivat[ing], descrambl[ing], or otherwise circumvent[ing] any technological measure implemented by Niantic or any of Niantic's providers or any other third party (including another user) to protect [Niantic's] Services or Content"; and

f.   "[S]ubmit[ting] fake, falsified, misleading, or inappropriate data submissions."

237.   Niantic is entitled to recover compensatory and consequential damages resulting from defendants' breaches of their contractual duties.

## COUNT FOURTEEN
### Intentional Interference with Contractual Relations
### (Against All Defendants)

238.   Niantic realleges and incorporates by reference all of the preceding paragraphs.

239.   Through Niantic's Terms of Service, Niantic enters into valid contractual agreements with its users.

240.   The contractual agreements between Niantic and its users prohibit those users from, among other things, cheating while playing Niantic's games.

241.   Defendants knew or should have known of the valid contractual agreements between Niantic and Niantic's users.

242.   Defendants engaged in intentional acts designed to induce and encourage Niantic's users to breach and act contrary to their valid contractual agreements with Niantic, including by providing the Cheating Programs and/or the computer code that defendants refer to as the Global++ "dynamic library," and enticing and enabling users to employ the Cheating Programs to cheat within Niantic's games.

243.   Defendants' intentional acts, as described above, have caused actual breaches and disruption of the contractual relations between Niantic and its users.

244.   As a direct and proximate result of defendants' misconduct, Niantic has suffered damages and is entitled to monetary relief in an amount to be proven at trial.

245.   In addition, Niantic has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, Niantic is entitled to injunctive relief.

35

# VIII.   PRAYER FOR RELIEF

WHEREFORE, Niantic prays for the following relief:

A.      For injunctive relief, as follows: A preliminary and permanent injunction enjoining and restraining defendants and all persons, firms and corporations acting in concert with them, during the pendency of this action and thereafter perpetually from:

1.      Acquiring or copying without authorization any portion of the mobile apps developed and published by Niantic and used to play Niantic's location-based augmented reality games, including Niantic's Client Code;

2.      Reverse engineering, decompiling, or disassembling Niantic's mobile apps;

3.      Creating derivative works based on any portion of Niantic's games, mobile apps, and Client Code, including without limitation the Cheating Programs;

4.      Distributing, selling, renting, leasing, or otherwise trafficking in copies of Niantic's Client Code or any apps or computer programs that include any portion of Niantic's Client Code, including without limitation the Cheating Programs;

5.      Retaining any portion of Niantic's mobile apps, including Niantic's Client Code;

6.      Cheating or enabling cheating within Niantic's mobile games, including through the Cheating Programs;

7.      Accessing Niantic's network, computers, and servers, including the computers and servers that enable users to play Niantic's games via Niantic's mobile apps, by any direct or indirect means or method;

8.      Extracting, scraping, or indexing Niantic's POI Data, Niantic's Spawn Data, or any other game-related data;

9.      Retaining Niantic's POI Data, Niantic's Spawn Data, or any other game-related data;

10.      Using Niantic's Client Code, or any other aspect of Niantic's mobile apps, mobile games, or other services or content, for any commercial purpose;

11.      Violating Niantic's Terms of Service;

12.     Inducing or attempting to induce Niantic's users to breach or act contrary to their valid contractual agreements with Niantic, including by providing the Cheating Programs and enticing and enabling users to employ the Cheating Programs to cheat within Niantic's games;

13.     Inducing, causing, or otherwise materially contributing to defendants' customers' creation of unauthorized copies of Niantic's Client Code, including through downloads of the Cheating Programs, and defendants' customers' use of Niantic's Client Code in a manner that exceeds the scope of their license to use Niantic's Client Code;

14.     Inducing, causing, or otherwise materially contributing to any party's acquiring, copying, or retaining of Niantic's POI Data; and

15.     Participating or assisting in any such activity;

B.     For an order requiring the seizure and impoundment of all copies of the Cheating Programs, as well as all articles by means of which the Cheating Programs may be reproduced, and all devices or products in defendants' custody or control that are involved in the circumvention, bypass, or defeat of the technical security measures that prevent unauthorized parties from accessing, copying, and modifying Niantic's Client Code;

C.     For an order requiring defendants to provide to Niantic a complete copy of any of Niantic's POI Data, Niantic's Spawn Data, or any other game-related data in defendants' possession, custody, or control, and requiring defendants thereafter to permanently destroy all such data and provide to Niantic and to this Court a certificate of destruction;

D.     For an award to Niantic for all damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants attributable to their wrongful conduct as alleged above;

E.     For an award to Niantic for statutory damages based upon defendants' willful acts of infringement pursuant to the Copyright Act;

F.     For an award to Niantic for punitive or exemplary damages based upon defendants' willful and malicious violations of the California Comprehensive Computer Data Access and Fraud Act;

37

G.      For an award to Niantic of reasonable costs, including reasonable attorney's fees;

H.      For pre- and post-judgment interest on the foregoing, as allowed by law; and

I.      For such other, further and different relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Niantic demands a trial by jury on all issues so triable in this action.

DATED:  January 24, 2020                 **PERKINS COIE LLP**


By:    */s/ Ryan Spear*
Ryan Spear
RSpear@perkinscoie.com

Attorneys for Plaintiff Niantic, Inc.

# EXHIBIT A

# Niantic Terms of Service
**Last Modified: May 15, 2019**

## Table of Contents

1       Terms
2       Privacy
3       Use of the Services
4       Limited License to Use
5       Content and Content Rights
6       Conduct, General Prohibitions, and Niantic's Enforcement Rights
7       Participation in Events
8       Sweepstakes, Contests, Raffles, Surveys And Similar Promotions
9       Beta Programs
10      Third Party Websites or Resources
11      Disclaimer of Warranties
12      Limitation of Liability
13      Dispute Resolution
14      General
15      Terms Specific to Residents of the Republic of Korea
16      Terms Specific to Residents of the EEA
17      Terms Specific to Residents of Germany

## 1    Terms

Welcome to Niantic. We publish real-world augmented reality mobile experiences, including mobile game applications ("**Apps**"), and operate a real-world augmented reality platform ("**Platform**"). Please read these Niantic Terms of Service and any applicable App guidelines (the "Guidelines" and, collectively, "the **Terms**"), because the Terms govern your use of the Apps and Platform.  The Terms also govern your interaction with any websites we own or operate ("**Sites**"), purchase of any Niantic merchandise, participation in Niantic live events or promotions ("**Events**"), and more generally your use of any Niantic products or services (together with Apps and Platform, the "**Services**").

Some exceptions to the Terms may apply based on your country of residence - please see the country-specific sections below.

If you live in the United States, these Terms are entered into between you and Niantic, Inc., 1 Ferry Building Suite 200, San Francisco, CA 94111.  If you live in any other country, these Terms are entered into between you and Niantic International Limited, a company registered to do business under the laws of the United Kingdom.  Niantic, Inc. and Niantic International Limited are collectively referred to as "Niantic" or "we" in these Terms.

By using the Services, you are agreeing to these Terms. If you don't agree to these Terms, you may not use the Services.  Niantic may modify these Terms at any time, and if we do, we will notify you by posting the modified Terms on the Site or in the App. It's important that you review any modified Terms before you continue using the Services. If you continue to use the Services, you are bound by the modified Terms. If you don't agree to be bound by the modified Terms, then you may not use the Services.

SECTION 13 "DISPUTE RESOLUTION" CONTAINS A BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER THAT AFFECT YOUR LEGAL RIGHTS.   If you are a user in the European Economic Area ("**EEA**"), or any other country that does not allow such arbitration agreement, Section 13 does not apply to you.

If you breach these Terms we may take action against you, including but not limited to terminating your account.  You acknowledge that Niantic has no obligation to, and will not, reimburse or refund you for Services lost due to involuntary suspension or termination of your account.

## 2   Privacy

Our Services are designed to enable you to interact in shared game worlds blended with information from the real world. To provide the Services, we need information about you, and we only use your information where we have a legal basis to do so. Please refer to our Privacy Policy to help you understand what information we collect, how we use it and what choices you have when you use our Services.

## 3   Use of the Services

### 3.1   Cheating

Niantic prohibits cheating, and we constantly take steps to improve our anti-cheat measures. Cheating includes any action that attempts to or actually alters or interferes with the normal behavior or rules of a Service.   Cheating includes, but is not limited to, any of the following behavior, on your own behalf or on behalf of others:

- Accessing Services in an unauthorized manner (including using modified or unofficial third party software);
- Playing with multiple accounts for the same Service;
- Sharing accounts;
- Using any techniques to alter or falsify a device's location (for example through GPS spoofing); and/or
- Selling or trading accounts.

Apps may not work on devices that Niantic detects or reasonably suspects to be cheating, and Niantic will not provide support to players who attempt to cheat.  You agree that Niantic may employ any lawful mechanisms to detect and respond to cheating, fraud, and other behavior prohibited under these Terms, including checking your device for the existence of exploits or hacking and/or unauthorized software. Please see the Guidelines and our Privacy Policy for more information.

2

### 3.2   Safe and Appropriate Use

While you are using our Services, please be aware of your surroundings, and play and communicate safely.  You agree that your use of the Services is at your own risk, and that you will not use the Services to violate any applicable law, regulation, Event policies, or instructions as outlined in these Terms and you will not encourage or enable any other individual to do so.

Further, you agree that in conjunction with your use of the Services you will not make available any unlawful, inappropriate, or commercial Content (defined below). You agree that you will not submit inaccurate, misleading, or inappropriate Content, including data submissions, edits, or removal requests.

Niantic does not intend Apps to be medical or health devices, or provide medical or health advice.

### 3.3   Your Interactions with Other People

You agree that in conjunction with your use of the Services, you will maintain safe and appropriate contact with other players and other people in the real world.  You will not harass threaten or otherwise violate the legal rights of others. You will not trespass, or in any manner attempt to gain or gain access to any property or location where you do not have a right or permission to be, and will not otherwise engage in any activity that may result in injury, death, property damage, nuisance, or liability of any kind. If you have a dispute with any third party relating to your use of Services, you release Niantic (and our officers, directors, agents, subsidiaries, joint ventures, and employees) from all claims, demands, and damages (actual and consequential) of every kind and nature, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way connected with such disputes.

### 3.4   Eligibility and Account Registration

If you want to use certain Services, you will have to create an account with us (an "**Account**"), and you will also need access to a supported mobile phone and an Internet connection. The help centers at Niantic Game Resources contain a list of supported devices. We do not support rooted or jailbroken devices.

You can create an Account using (a) your pre-existing Google account; (b) your pre-existing Facebook account, (c) a Niantic Kids account, or (d) such other third-party accounts that we support, as selected by you on the App account creation screen.

You agree that you won't disclose your Account password to anyone and you will notify us immediately of any unauthorized use of your Account. Niantic takes its account security obligations seriously; however, you are responsible for all activities that occur under your Account, whether or not you know about them.

### 3.5   Account Suspension or Termination

We may suspend or terminate your access to and use of the Services, at our sole discretion, at any time and without notice to you, including if (a) you fail to comply with these Terms; (b) we

3

suspect fraud, cheating, or misuse by you of Content or Services; or (c) we suspect any other unlawful activity associated with your Account.  If your Account is inactive (i.e., not used or logged-into) for a period of time, we will notify you via the Services or in the App prior to termination of your Account.

You may terminate your Account at any time by visiting the App help centers. Upon termination of any Services or your Account, the following provisions of these Terms will survive: Content Ownership, Rights Granted by You, Disclaimer of Warranties, Indemnity, Limitation of Liability, Dispute Resolution, General Terms and this sentence on Termination.

3.6    *Who May Use Our Services*
Unless stated otherwise for a particular Service, children are not allowed to use the Services. A "**Child**" is a person (a)  under 13 years old (for residents outside of the EEA, except for the Republic of Korea); (b) under 16 years old or such age needed to consent to the processing of personal data in their country of residence (for residents of the EEA); or (c) under 14 years old (for residents of the Republic of Korea).  Niantic Game Resources contains information on the age requirement for each of our Apps.

For Services that permit Child participation, parents or legal guardians ("**Parents**") must provide verified consent.  Parents can provide and verify their consent through the Niantic Kids Parent Portal, or through another authorized third-party provider made available through the Service. Where Parental consent is required, Niantic recommends that Parents monitor the Child's online activity and use of the Service.

The verification and consent process for Children is performed by one of several third-party providers ("**Verification Provider**"). The Parent must register with the Verification Provider before a Child may use the Services. The Verification Provider will ask the Parent to verify their identity and to consent to the creation of an Account for the Child. Upon receipt of Parent verification and consent, the Verification Provider will enable the Parent to create an Account for the Child. Parental consent applies exclusively to the Service for which it has been granted.

A Parent who wishes to rescind their previously-provided consent to a Child's access to and use of the Services should follow the instructions for Account deletion, which can be found in the respective help centers here.

Purchases made through the Services are limited to Account holders who either (a) are the age needed to consent to a contract in their country of residence; or (b) if younger, have the consent of a Parent to use the Service. Parents can consult their device settings for the App to restrict in-App purchases by a Child, and should also monitor activity in their Child's Account, including the purchase of Virtual Money or Virtual Goods.

TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, NIANTIC DECLINES ANY RESPONSIBILITY REGARDING ANY ACTIVITIES CONDUCTED BY A CHILD WITH OR WITHOUT THE PERMISSION OF A PARENT. IF YOU ARE A PARENT AND YOU GIVE YOUR

PERMISSION FOR YOUR CHILD TO REGISTER FOR ONE OF THE SERVICES, YOU THEREBY AGREE TO THE TERMS RELATING TO USE OF THE SERVICES BY YOUR CHILD.

**4    Limited License to Use**

Subject to your compliance with these Terms, Niantic grants you a limited, nonexclusive, nontransferable, non-sublicenseable license to download and install a copy of the Apps on a mobile device and to run such copy of the Apps solely for your own personal non-commercial purposes. Except as expressly permitted in these Terms or under applicable law, you may not: (a) copy, modify, or create derivative works based on the Apps; (b) distribute, transfer, sublicense, lease, lend, or rent the Apps to any third party; (c) reverse engineer, decompile, or disassemble the Apps; or (d) make the functionality of the Apps available to multiple users through any means. Niantic reserves all rights in and to the Apps not expressly granted to you under these Terms.

**5    Content and Content Rights**

Subject to your compliance with these Terms, Niantic grants you a personal, noncommercial, nonexclusive, nontransferable, nonsublicensable, revocable, limited license to download, view, display, and use the Content solely for your permitted use within the Services. "**Content**" means the text, software, scripts, graphics, photos, sounds, music, videos, audiovisual combinations, communications, interactive features, works of authorship of any kind, and information or other materials that are generated, provided, or otherwise made available through the Services, including User Content. "**User Content**" means any Content a user of a Service provides to be made available through Services.

*5.1   Content Ownership*

Niantic does not claim ownership rights in User Content and nothing in these Terms restricts any rights that you may have to use and exploit your User Content. Subject to the foregoing, Niantic and its licensors exclusively own all right, title, and interest in and to the Services and Content, including all associated intellectual property rights. You acknowledge that the Services and Content are protected by copyright, trademark, and other laws of the United States and foreign countries. You agree not to remove, alter, or obscure any copyright, trademark, service mark, or other proprietary rights notices incorporated in or accompanying the Services or Content.

*5.2   Rights Granted by You*

By making any User Content available through the Services you grant to Niantic a nonexclusive, transferable, sublicenseable, worldwide, royalty-free, perpetual license (or, if not permitted under applicable law, a license for the whole duration, including for any extension thereof, of all relevant rights under any applicable law), to use, copy, modify, create derivative works based upon, publicly display, publicly perform, market, promote and distribute your User Content in connection with operating and providing the Services and Content to you and to others.  By accepting these terms, you allow Niantic to benefit freely from the above rights, including but not limited to:

1. The right to reproduce User Content by any means and in any form.
2. The right to publicly or privately broadcast or make available the User Content (or any product incorporating the User Content), in return for payment or free of charge in all places by any means or process known or unknown at the present time, and in particular

5

via Internet, pay per view, pay per play, theatrical or television broadcasting, DVD, and print.

3. The right to use the User Content for demonstration, promotion and advertising for all Niantic Services.

4. The right to produce or order the production of any new product or service from the User Content or from any product incorporating or exploiting the User Content, either reproduced as it stands or modified by Niantic or by any outside party of its choice.

You are solely responsible for all your User Content. You represent and warrant that you own all your User Content or you have all rights that are necessary to grant us the license rights in your User Content under these Terms. You also represent and warrant that neither your User Content, nor your use and provision of your User Content to be made available through the Services, nor any use of your User Content by Niantic on or through the Services will infringe, misappropriate or violate a third party's intellectual property rights, or rights of publicity or privacy, or result in the violation of any applicable law or regulation.  To the extent permitted by applicable law, you also agree that you will not exercise your moral rights (or equivalent rights under applicable laws), such as your right to be identified as the author of any of the User Contents, against Niantic or any third party designated by Niantic.

### 5.3   Trading

Certain Apps permit Account holders to capture and trade virtual items, including but not limited characters or other items ("**Trading Items**"), during gameplay. Unlike Virtual Money and Virtual Goods, Trading Items are obtained at no additional charge during gameplay. Trading Items are a category of Content, and you acknowledge that you do not acquire any ownership rights in or to Trading Items and that Trading Items do not have monetary value. Trading Items may be traded with other Account holders for other Trading Items, but Trading Items can never be sold, transferred, or exchanged for Virtual Money, Virtual Goods, "real" goods, "real" money, or "real" services, or any other consideration from us or anyone else.

You agree that you will only obtain Trading Items from other Account holders and through means provided by Niantic, and not through any third-party platform, broker, or other mechanism, unless expressly authorized. Any such sale, transfer, or exchange (or attempt to do so) is prohibited and may result in the termination of your Account or cancellation of such Trading Items. All Trading Items and other Content are provided "as is," without any warranty, except where prohibited under applicable law.

### 5.4   Virtual Money and Virtual Goods

Certain Apps permit the purchase of virtual currency ("**Virtual Money**"), specific to each App, and use of that Virtual Money to purchase virtual items or services expressly available for use in the respective Apps ("**Virtual Goods**"). Virtual Money is a category of Content. You may access and purchase Virtual Goods for your personal, non-commercial use of the Services. You acknowledge that you do not acquire any ownership rights in or to the Virtual Money or Virtual Goods. Any balance of Virtual Goods or Virtual Money does not reflect any stored value and you agree that Virtual Money and Virtual Goods have no monetary value and do not constitute currency or

6

property of any type. Virtual Money may be redeemed only for Virtual Goods and can never be sold, transferred, or exchanged for "real" money, "real" goods, or "real" services from us or anyone else. You agree that you will only obtain Virtual Money and/or Virtual Goods from us and through means provided by us, and not from any third party unless expressly authorized. Once you acquire a license to Virtual Money or Virtual Goods, you may not transfer them to another individual or account. Any such sale, transfer, or exchange (or attempt to do so) is prohibited, is a violation of these Terms and may result in cancellation of such Virtual Money or Virtual Goods or the termination of your Account.

During the term of your license to your Virtual Money, you may redeem your Virtual Money for selected Virtual Goods. As set forth below, all Virtual Money, Virtual Goods, and other Content is provided "as is," without any warranty. You agree that all sales by us to you of Virtual Money and Virtual Goods are final and that we will not permit exchanges or refunds for any unused Virtual Money or Virtual Goods once the transaction has been made.

Generally, we have the right to offer, modify, eliminate, and/or terminate Virtual Money, Virtual Goods, the Content, and/or the Services, or any portion thereof, at any time, without notice or liability to you. If we discontinue the use of Virtual Money or Virtual Goods, we will provide at least 60 days advance notice to you by posting a notice through the Services  or through other communications.

*5.5   Feedback*
You can submit feedback, comments, and suggestions for improvements to the Services ("**Feedback**") by reaching out to us on social media or support channels. Feedback is a form of User Content.

*5.6   DMCA/Copyright Policy*
Niantic respects copyright law and expects its users to do the same. It is Niantic's policy to terminate in appropriate circumstances Account holders who infringe or are believed to be infringing the rights of copyright holders. Please see Niantic's Copyright Policy for further information.

## 6   Conduct, General Prohibitions, and Niantic's Enforcement Rights
You agree that you are responsible for your own conduct and User Content while using the Services, and for any consequences thereof. In addition, you agree not to do any of the following, unless applicable law mandates that you be given the right to do so:
- collect, store or share any personally identifiable information of other users from the Services  without their express permission;
- extract, scrape, or index the Services or Content (including information about users or gameplay);
- use the Services or Content, or any portion thereof, for any commercial purpose or in a manner not permitted by these Terms, including but not limited to (a) gathering in-App items or resources for sale outside the Apps, (b) performing services in the Apps in

7

exchange for payment outside the Apps, or (c) selling, reselling, or renting the Apps or your Account;

- attempt to access or search the Services or Content or download Content from the Services through the use of any technology or means other than those provided by Niantic or other generally available third party web browsers (including without limitation automation software, bots, spiders, crawlers, data mining tools, or hacks, tools, agents, engines, or devices of any kind);
- attempt to decipher, decompile, disassemble, or reverse engineer any of the software used to provide the Services or Content;
- bypass, remove, deactivate, descramble, or otherwise circumvent any technological measure implemented by Niantic or any of Niantic's providers or any other third party (including another user) to protect the Services or Content;
- use, display, mirror, or frame the Services or any individual element within the Services, Niantic's name, any Niantic trademark, logo, or other proprietary information, or the layout and design of any page or App without Niantic's express written consent;
- post, publish, submit or transmit any Content that infringes, misappropriates, or violates a third party's patent, copyright, trademark, trade secret, moral rights, or other intellectual property rights, or rights of publicity or privacy;
- access, tamper with, or use nonpublic areas of the Services, Niantic's computer systems, or the technical delivery systems of Niantic's providers;
- attempt to probe, scan, or test the vulnerability of any Niantic system or network or Service, or breach any security or authentication measures;
- use any meta tags or other hidden text or metadata utilizing a Niantic trademark, logo, URL, or product name without Niantic's express written consent;
- forge any TCP/IP packet header or any part of the header information in any email or newsgroup posting, or in any way use the Services or Content to send altered, deceptive, or false source identifying information;
- interfere with, or attempt to interfere with, the access of any user, host, or network, including, without limitation, sending a virus, overloading, flooding, spamming, or mailbombing the Services;
- delete, obscure, or in any manner alter any attribution, warning, or link that appears in the Services or the Content;
- violate any applicable law or regulation; or
- encourage or enable any other individual to do any of the foregoing.

Although Niantic is not obligated to monitor access to or use of the Services or Content or to review or edit any Content, we have the right to do so for the purpose of operating the Services, to ensure compliance with these Terms, and to comply with applicable law or other legal requirements. We reserve the right to remove or disable access to any Content, at any time and without notice. Niantic may remove any Content we consider to be objectionable or in violation of these Terms. We have the right to investigate violations of these Terms or conduct that affects the Services. We may also consult and cooperate with law enforcement authorities to prosecute users and others who violate the law.

ANY ATTEMPT BY YOU TO DISRUPT OR INTERFERE WITH THE SERVICES, INCLUDING WITHOUT LIMITATION UNDERMINING OR MANIPULATING THE LEGITIMATE OPERATION OF ANY SITE OR APP, IS A BREACH OF NIANTIC'S TERMS AND MAY BE A BREACH OR VIOLATION OF CRIMINAL AND CIVIL LAWS.

## 7    Participation in Events

### 7.1    Event Registration and Tickets

The term "**Event(s)**" means any in-person event, gathering, activity or the like which is directly organized, hosted, or managed by Niantic, and any Promotion (as defined below). By registering or, where required, purchasing tickets for an Event, you represent and warrant that the information you provide is true and accurate. If you are registering or purchasing tickets on behalf of others, you represent and warrant you have all necessary rights and consents to register and provide this information for others.

Subject to applicable law and the exceptions set forth in these Terms, no refunds or exchanges of Event tickets are permitted and tickets are non-transferable. Reasonably acceptable proof of identity, for example a driver's license or passport, showing the same first and last name as those provided at time of prior registration, may be required to access an Event. Actual or attempted resale of tickets subjects them to revocation without refund. Tickets obtained from unauthorized sources may be invalid, lost, stolen, or counterfeit and may not be honored. Tickets cannot be replaced if lost, stolen or destroyed. Commercial use of tickets is prohibited without written approval from Niantic. Tickets are not redeemable for cash or credit. You agree to abide by any published ticket limits or restrictions, and orders exceeding or violating these restrictions are subject to cancellation without notice or refund. Events may have limited space and/or availability and Niantic does not guarantee your ability to purchase a ticket or attend an Event.

Unless otherwise prohibited under applicable law, by attending an Event you acknowledge that Niantic will use your data collected pursuant to the Privacy Policy for providing Event features (both in person and online), **including contacting you and giving you updates about the Event, mailing you required materials (e.g., a QR wristband), providing emergency or severe weather notifications, or public Event leaderboards and gameplay competitions.**

### 7.2    Event Conduct and Policies

You shall at all times comply with all applicable laws and any rules and policies provided by Niantic or any other authorized party involved in creating or delivering the Event, including all health and safety policies and procedures and all reasonable instructions of the venue staff and Niantic representatives at the Event. As a condition of participation, you agree to comply with all policies on the Sites, including, without limitation, any applicable Event website.

Illicit drugs, controlled substances, contraband, weapons and illegal items are prohibited at Events. You agree and consent to reasonable security precautions and search on entry.  To the fullest extent permitted by applicable law, you waive and release Niantic and any other party involved in creating or delivering the Event from any and all claims, demands, causes of action, damages, losses, expenses or liability which may arise out of, result from, or relate in any way to

such security precautions and/or searches. If you elect not to consent to such security precautions and searches, you may be denied entry, or removed from, an Event without refund or other compensation.

Niantic and its authorized third parties reserve the right to refuse admission to, or to remove from an Event without refund or compensation of any kind, any person that (a) does not comply with these Terms, (b) engages in disorderly conduct or willful misconduct, or (c) Niantic or its authorized third parties believe will cause a negative effect on the Event, participants, spectators, and/or personnel.

Any minor attending an Event must be accompanied by a Parent.

### 7.3   Assumption of Risks

Unless prohibited by applicable law, you agree that by purchasing tickets to, participating in or attending an Event, you willingly, knowingly and voluntarily assume any and all risks occurring before, during or after the Event, including injury by any cause and damage, loss, or theft of property. You acknowledge that Events, and certain activities at Events, have inherent and unforeseen risks, including but not limited to (a) contact or collision with persons or objects, (b) obstacles (e.g., natural and man-made water, road and surface hazards), (c) equipment related hazards (e.g., broken, defective or inadequate equipment, unexpected equipment failure), (d) weather related hazards, (e) inadequate first aid and/or emergency measures, (f) judgment and/or behavior related problems (e.g., erratic or inappropriate participant, co-participant, or spectator behavior or errors in judgment by personnel at the Event), and (g) natural hazards (e.g., uneven or difficult terrain, wildlife and insects, contact with plants). You agree to take reasonable precautions before attending or participating in an Event and its activities, for example consulting with a personal physician and ensuring you are in good physical health, wearing appropriate attire, and bringing necessary or recommended supplies. You further understand and acknowledge it is your responsibility to inspect the Event grounds, facilities, equipment and areas to be used, and that by participating in the Event, you acknowledge the Event grounds, facilities, equipment, and areas to be used are safe, adequate, and acceptable for participation. If you believe or become aware of any unsafe conditions or unreasonable risks, you agree to immediately notify appropriate personnel and cease participation in the Event.

To the extent permitted under applicable law, you hereby waive and release Niantic and any other party involved in creating or delivering the Event from any and all claims, demands, causes of action, damages, losses, expenses or liability which may arise out of, result from, or relate in any way to your attendance or participation in an Event, including for negligence, inherent and unforeseen risks, injury or damage to persons or property and the actions of third parties or Event participants and spectators.

### 7.4   Event Features and Cancellation

Subject to applicable law, all schedules and any live or in-game experiences, activities, goods, services, perks, items, rewards and/or Content (collectively "**Event Features**") advertised in connection with an Event are not guaranteed and are subject to change and/or cancellation at

any time prior to or during an Event without notice or compensation of any kind. Admittance to an Event does not guarantee any specific Event Features while at the Event.

Event date, time and/or location are subject to change at any time, and Niantic will make a commercially reasonable effort to notify you in advance of any material changes. If an Event is canceled, suspended, or rescheduled and you are not able to attend, you will not be entitled to any compensation other than a refund of the ticket price at its face value with no further liability or compensation from Niantic or any other party. Any travel or accommodation costs incurred are entirely your responsibility.

*7.5   Recordings and Use of Likeness*
You consent to and approve of Niantic's recording of your image, likeness, name, dialogue, biographic information, personal characteristics, and voice at Events and the royalty free use of this information subject to the same "Rights Granted by You" above. Niantic may publish the results of any competitions (including rankings and any winners), gameplay statistics, and pictures of participants in promotional and marketing materials and on social media in accordance with these Terms.

## 8   Sweepstakes, Contests, Raffles, Surveys And Similar Promotions

Periodically, Niantic and/or its partners may organize sweepstakes, contests, raffles, surveys, games, and similar promotions on the Services (each a "**Promotion**"). In addition to these Terms, Promotions will be subject to particular terms which we shall communicate to you at the time of these Promotions ("**Promotional Terms**"). By participating in any Promotion, you will become subject to those Promotional Terms.  All Promotional Terms are incorporated into, may vary from, and shall supercede these Terms. Niantic urges you to read the Promotional Terms. Our Privacy Policy, in addition to these Terms and any Promotional Terms, governs any information you submit in connection with such Promotions.

## 9   Beta Programs

Niantic may offer you early access to certain pre-release mobile application software ("**Beta Software**") in order to allow you to test and provide feedback on Beta Software as part of Niantic's beta testing program ("**Beta Program**").  **This Section only applies to closed Beta Programs, where Niantic offers private access to selected testers.  This Section does not apply to open betas that Niantic makes publicly available on an app store.**

You acknowledge that any product features or content, game documentation, promotional materials and/or any other information that Niantic may provide to you in connection with the Beta Program ("**Test Materials**"), the Beta Software, as well as everything related to the Beta Program is the exclusive property of Niantic, is confidential, and should be treated as confidential until such time as Niantic releases it.

If Niantic offers you access to the Beta Software, then, subject to your compliance with these Terms, Niantic grants you a personal, non-exclusive, non-transferable, revocable, limited license to use the Beta Software solely for the purposes of testing and providing feedback on the Beta Software as part of the Beta Program.

11

Without limiting the foregoing and except as prohibited under applicable law, the following are prohibited and you may not:

- copy, modify, or create derivative works based on the Beta Software;
- give or sell the Beta Software to anyone;
- reverse engineer, decompile, disassemble, decrypt or otherwise attempt to derive the source code of the Beta Software;
- install the Beta Software on systems you don't directly control or that you share with others;
- discuss the Beta Software with or demonstrate it to anyone outside of Niantic;
- blog, tweet, or otherwise publicly post information about the Beta Software;
- take screenshots, photos, videos, or audio recordings of the Beta Software unless Niantic has allowed you to do so in writing; or
- make Beta Feedback (as defined below) available to any third party, unless approved by Niantic in writing and in advance.

Be careful when using the Beta Software in public.  Do not allow anyone to see, hear, film, or photograph the Beta Software.  Please notify Niantic promptly of any unauthorized access or of any suspected breach of your account's security.

Niantic may collect your comments, suggestions, and feedback on the Software, and may also track your use of the Software through analytic tools, in accordance with Niantic's Privacy Policy. All such comments, suggestions, feedback, and analytic data (collectively, the "**Beta Feedback**") is the exclusive property of Niantic.

You understand and agree that participation in the Beta Program is voluntary and does not create a legal partnership, agency, or employment relationship between you and Niantic, and you will not be compensated for your participation or any Beta Feedback.

Unless prohibited by applicable law, all Test Materials are provided to you "as is" without any explicit or implicit warranty of any kind. You understand that the Beta Software is in development and may contain errors, bugs, and other problems that could cause loss of data and/or system failure. You should install the Beta Software on non-production devices that are not business critical and have been backed up. To the extent permitted under applicable law, Niantic is not liable in any way for any damages you might incur as a result of your participation in the Beta Program.

You agree that any breach of your confidentiality obligation will result in irreparable harm to Niantic, the extent of which would be difficult to ascertain, and that monetary damages will not be an adequate remedy.  Accordingly, you agree that in the event you breach your confidentiality obligation, Niantic will be entitled to injunctive or other equitable relief as the court deems appropriate, in addition to any other remedies which it may have available.

## 10   Third Party Websites or Resources

Services may contain links to third party websites or resources. Niantic provides these links only as a convenience and is not responsible for the content, products, or services on or available from those websites or resources, or links displayed on such websites. To the extent permitted under applicable law, you acknowledge sole responsibility for and assume all risk arising from, your use of any third party websites or resources.

Niantic is not responsible for the availability or quality of third party services, including cell phone networks, hotspots, wireless internet and other services. Such third party services may affect your ability to utilize the Services or participate in an Event and you hereby waive and release Niantic and any other party involved in creating or delivering the Services from all claims, demands, causes of action, damages, losses, expenses or liability which may arise out of, result from, or relate in any way to such third party services.

## 11   Disclaimer of Warranties

TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, THE SERVICES AND CONTENT ARE PROVIDED "AS IS," WITHOUT WARRANTY OF ANY KIND. WITHOUT LIMITING THE FOREGOING, WE EXPLICITLY DISCLAIM ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, QUIET ENJOYMENT, OR NONINFRINGEMENT, AND ANY WARRANTIES ARISING OUT OF COURSE OF DEALING OR USAGE OF TRADE. WE MAKE NO WARRANTY THAT THE SERVICES WILL MEET YOUR REQUIREMENTS OR BE AVAILABLE ON AN UNINTERRUPTED, SECURE, OR ERROR-FREE BASIS. WE MAKE NO WARRANTY REGARDING THE QUALITY, ACCURACY, TIMELINESS, TRUTHFULNESS, COMPLETENESS OR RELIABILITY OF ANY CONTENT.

YOU ASSUME ALL RISKS RELATING TO YOUR ONLINE OR OFFLINE COMMUNICATIONS AND INTERACTIONS WITH OTHER USERS OF THE SERVICES AND WITH OTHER PERSONS WITH WHOM YOU COMMUNICATE OR INTERACT AS A RESULT OF YOUR USE OF THE SERVICES. YOU UNDERSTAND THAT NIANTIC DOES NOT SCREEN OR INQUIRE INTO THE BACKGROUND OF ANY USERS OF THE SERVICES. NIANTIC MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THE CONDUCT OF USERS OF THE SERVICES. YOU AGREE TO TAKE REASONABLE PRECAUTIONS IN ALL COMMUNICATIONS AND INTERACTIONS WITH OTHER USERS OF THE SERVICES AND WITH OTHER PERSONS WITH WHOM YOU COMMUNICATE OR INTERACT AS A RESULT OF YOUR USE OF THE SERVICES, PARTICULARLY IF YOU DECIDE TO MEET OFFLINE OR IN PERSON.

## 12   Limitation of Liability

TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, NEITHER NIANTIC NOR ANY OTHER PARTY INVOLVED IN CREATING, PRODUCING, OR DELIVERING THE SERVICES OR CONTENT WILL BE LIABLE TO YOU FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, EXEMPLARY, OR CONSEQUENTIAL DAMAGES, INCLUDING LOST PROFITS, LOSS OF DATA OR GOODWILL, SERVICE INTERRUPTION, COMPUTER DAMAGE OR SYSTEM FAILURE OR THE COST OF SUBSTITUTE SERVICES, ARISING OUT OF OR IN

13

CONNECTION WITH THESE TERMS, OR FROM THE USE OF OR INABILITY TO USE THE SERVICES OR CONTENT, OR FROM ANY COMMUNICATIONS, INTERACTIONS, OR MEETINGS WITH OTHER USERS OF THE SERVICES OR PERSONS WITH WHOM YOU COMMUNICATE OR INTERACT AS A RESULT OF YOUR USE OF THE SERVICES, WHETHER BASED ON WARRANTY, CONTRACT, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY, OR ANY OTHER LEGAL THEORY, AND WHETHER OR NOT NIANTIC HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, EVEN IF A LIMITED REMEDY SET FORTH HEREIN IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, SO THE FOREGOING LIMITATION OF LIABILITY SHALL APPLY TO THE FULLEST EXTENT PERMITTED BY LAW IN THE APPLICABLE JURISDICTION.

TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, IN NO EVENT WILL NIANTIC'S TOTAL LIABILITY ARISING OUT OF OR IN CONNECTION WITH THESE TERMS, AN EVENT, OR FROM THE USE OF OR INABILITY TO USE THE SERVICES OR CONTENT EXCEED ONE THOUSAND DOLLARS ($1000), OR, IF CONTRACTING WITH NIANTIC INTERNATIONAL LIMITED, ONE THOUSAND POUNDS (£1000). THE EXCLUSIONS AND LIMITATIONS OF DAMAGES SET FORTH ABOVE ARE FUNDAMENTAL ELEMENTS OF THE BASIS OF THE BARGAIN BETWEEN NIANTIC AND YOU.

**13   Dispute Resolution**
**YOU AGREE THAT DISPUTES BETWEEN YOU AND NIANTIC WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION, AND YOU ARE WAIVING YOUR RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING.**

**THIS NOTICE DOES NOT APPLY: (1) IF YOU ARE A RESIDENT OF THE EEA, OR ANY JURISDICTION WHICH DOES NOT ALLOW THIS ARBITRATION AGREEMENT, (2) IF YOU OPT OUT OF ARBITRATION AS DESCRIBED IN THE "ARBITRATION" SECTION BELOW, OR (3) TO CERTAIN TYPES OF DISPUTES DESCRIBED IN SECTION 13.1, "ARBITRATION," BELOW.**

*13.1 Arbitration*
If you live in the US or another jurisdiction which allows you to agree to arbitration, you and Niantic agree that any disputes will be settled by binding arbitration, except that each party retains the right: (a) to bring an individual action in small claims court and (b) to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation, or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights (the action described in this clause (b), an "**IP Protection Action**"). Notwithstanding this arbitration agreement, Niantic reserves the right to bring an action in any court of competent jurisdiction against you to stop and/or seek compensation for the intentional or willful misuse or abuse (e.g. hacking or falsifying location) of its IP, products, and Services.

Without limiting the preceding paragraph, you will also have the right to litigate any other dispute if you provide Niantic with written notice of your desire to do so by email to termsofservice@nianticlabs.com within thirty (30) days following the date you first accept these Terms (such notice, an "**Arbitration Opt-out Notice**"). If you don't provide Niantic with an Arbitration Opt-out Notice within the thirty (30) day period, you will be deemed to have knowingly and intentionally waived your right to litigate any dispute except as expressly set forth in clauses (a) and (b) above.  Further, unless both you and Niantic otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding. If this class action waiver is held unenforceable, then the parties' agreement to arbitrate will be deemed void.  Except as provided in the preceding sentence, this "Dispute Resolution" section will survive any termination of these Terms.  If the terms of this Section 13.1 "Arbitration" are found unenforceable as to any claim for relief, that claim must be severed from the arbitration and brought pursuant to Section 13.6, "Governing Law and Exclusive Venue."  All other claims will be arbitrated.  The arbitrator, and not any court or agency, shall have exclusive authority to (a) determine the scope and enforceability of this arbitration agreement and (b) resolve any dispute related to its interpretation, applicability, enforceability, or formation including any claim that all or any part of it is void or voidable.

*13.2 Arbitration Rules*

The arbitration will be administered by the American Arbitration Association ("**AAA**") in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer-Related Disputes (the "**AAA Rules**") then in effect, except as modified by this "Dispute Resolution" section. (The AAA Rules are available at https://www.adr.org/Rules or by calling the AAA at 1-800-778-7879.) The Federal Arbitration Act will govern the interpretation and enforcement of this Section.

*13.3 Arbitration Process*

A party who desires to initiate arbitration must provide the other party with a written Demand for Arbitration as specified in the AAA Rules. (The AAA provides a general Demand for Arbitration) The single arbitrator will be either a retired judge or an attorney licensed to practice law and will be selected by the parties from the AAA's roster of arbitrators. If the parties are unable to agree upon an arbitrator within fourteen (14) days of delivery of the Demand for Arbitration, then the AAA will appoint the arbitrator in accordance with the AAA Rules.

*13.4 Arbitration Location and Procedure*

Unless you and Niantic otherwise agree, the arbitration will be conducted in a confidential manner, in the county where you reside. If your claim does not exceed $10,000, then the arbitration will be conducted solely on the basis of the documents that you and Niantic submit to the arbitrator, and there will be no other discovery conducted (such as depositions), unless the arbitrator determines that a hearing is necessary. If your claim exceeds $10,000, your right to a hearing will be determined by the AAA Rules. Subject to the AAA Rules, the arbitrator will have the discretion to direct a reasonable exchange of information by the parties, consistent with the expedited nature of the arbitration.  Notwithstanding the arbitrator's discretion, absent a showing of good cause, in

15

no event shall the parties be allowed more than three (3) depositions per side, and there will be no corporate deposition of the type contemplated by Federal Rule of Civil Procedure 30(b)(6) and California Code of Civil Procedure 2025.230.

*13.5 Arbitrator's Decision*

The arbitrator will render an award within the time frame specified in the AAA Rules. The arbitrator's decision will be treated as confidential, and will include the essential findings and conclusions upon which the arbitrator based the award. Confirmation and enforcement of the arbitration award may be done in any court of competent jurisdiction. The arbitrator's award of damages must be consistent with the terms of Section 12 "Limitation of Liability" as to the types and amounts of damages for which a party may be held liable. The arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim. If you prevail in arbitration, you will be entitled to an award of attorneys' fees and expenses to the extent provided under applicable law. Niantic will not seek, and hereby waives, all rights it may have under applicable law to recover attorneys' fees and expenses if it prevails in arbitration.

*13.6 Governing Law and Exclusive Venue*

To the extent that these Terms allow you or Niantic to initiate litigation in a court, other than for small claims court actions, both you and Niantic agree to the exclusive jurisdiction of and venue in the state and federal courts located in the Northern District of California.  Each of the parties hereto waives any objection to jurisdiction and venue in such courts. These Terms and your use of the Services are governed by the laws of the State of California, excluding its conflicts-of-law rules. If you are resident in a member state of the EEA or a country in which this clause is prohibited by local law, this section does not apply to you, and does not deprive you of the protection of the mandatory provisions of the consumer protection laws in your country.

*13.7 Fees*

Our responsibility to pay any AAA filing, administrative, and arbitrator fees will be solely as set forth in the AAA Rules. However, if your claim for damages does not exceed $75,000, Niantic will pay all such fees unless the arbitrator finds that either the substance of your claim or the relief sought in your Demand for Arbitration was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rules of Civil Procedure 11(b)).

*13.8 Changes to Dispute Resolution*

Notwithstanding the provisions of the "Changes to Terms or Services" section above, if Niantic changes this "Dispute Resolution" section after the date you first accepted these Terms (or accepted any subsequent changes to these Terms), you may reject any such change by sending us written notice (by email to termsofservice@nianticlabs.com) within thirty (30) days of the date such change became effective, as indicated in the "Last Updated" date above or in the date of Niantic's email to you notifying you of such change. By rejecting any change, you are agreeing that you will arbitrate any Dispute between you and Niantic in accordance with the provisions of this "Dispute Resolution" section as of the date you first accepted these Terms (or accepted any subsequent changes to these Terms).

16

**14   General**

*14.1   Entire Agreement*

These Terms constitute the entire and exclusive understanding and agreement between Niantic and you regarding the Services and Content, and these Terms supersede and replace any and all prior oral or written understandings or agreements between Niantic and you regarding the Services and Content.

*14.2   Severability*

If any provision of these Terms is held invalid or unenforceable, that provision will be enforced to the maximum extent permissible and the other provisions of these Terms will remain in full force and effect. You may not assign or transfer these Terms, by operation of law or otherwise, without Niantic's prior written consent. Any attempt by you to assign or transfer these Terms, without such consent, will be null. Niantic may freely assign or transfer these Terms without restriction, and the transferor or assignor shall not remain jointly and severally liable. Subject to the foregoing, these Terms will bind and inure to the benefit of the parties, their successors and permitted assigns.

*14.3   Force Majeure*

Neither Niantic, any user, nor any other party involved in creating, producing, or delivering the Services or Content shall be liable with respect to any damages, injuries, nonperformance or delay in performance by reason of any act of God, weather, fire, flood, acts of terror or foreign enemy, satellite or network failure, governmental order or regulation, trade dispute,or any other cause beyond its respective control.

*14.4   Notice*

Any notices or other communications provided by Niantic under these Terms, including those regarding modifications to these Terms, will be given: (a) via email; or (b) by posting to the Services. For notices made by email, the date of receipt will be deemed the date on which such notice is transmitted to any email address Your provided.

*14.5   Waiver*

Niantic's failure to enforce any right or provision of these Terms will not be considered a waiver of such right or provision. The waiver of any such right or provision will be effective only if in writing and signed by a duly authorized representative of Niantic. Except as expressly set forth in these Terms, the exercise by either party of any of its remedies under these Terms will be without prejudice to its other remedies under these Terms or otherwise.

*14.6   Contact Information*

If you have any questions about these Terms or the Services, please contact Niantic at *termsofservice@nianticlabs.com* or *1 Ferry Building Suite 200, San Francisco, CA 94111.*

## 15   Terms Specific to Residents of the Republic of Korea

*15.1   Purchases by End Users in the Republic of Korea*

If you live in the Republic of Korea, the E-Commerce Act provides you with certain rights to refunds within seven (7) days of purchase.  However, please note that once you exchange Virtual Money for Virtual Goods within the App, a refund will no longer be available.  We reserve the right to control, regulate, change, or remove any Virtual Money or Virtual Goods as permitted under applicable law without any liability to you.

## 16   Terms Specific to Residents of the EEA

*16.1   Purchases and Refunds Services*

If you live in the **EEA**, you have certain rights to withdraw from online purchases. However, please note that once you download Virtual Money from us, your right of withdrawal ends. You agree that (a) purchase of Virtual Money involves immediate download of such Content; and (b) you lose your right of withdrawal once your purchase is complete. If you live in the EEA, we will provide you with a VAT invoice when we are required to do so by law. You agree that these invoices may be electronic in format. We reserve the right to control, regulate, change, or remove any Virtual Money or Virtual Goods without any liability to you.

## 17   Terms Specific to Residents of Germany

*17.1   Limitation of Liability*

In the event of intentional or gross negligence, including  by its representatives and vicarious agents (*Erfüllungsgehilfen*), either Party shall be liable according to statutory provisions. The same shall apply in the event of culpably caused damages resulting from an injury to life, body or health, in the event of damages resulting from a violation of a guarantee as to quality (*Beschaffenheitsgarantie*), as well as in the event of defaults concealed fraudulently (a*rglistig verschwiegene Mängel*).

In the event of damages to property and financial damages (*Sach- und Vermögensschäden*) caused by slight negligence of either Party, its representatives or vicarious agents, such Party shall be liable only in the event of a violation of a contractual core duty (*wesentliche Vertragspflicht*), however limited to the amount of the damage which was foreseeable at the time of conclusion of the contract and typical taking into account the nature of the contract (*vorhersehbarer und vertragstypischer Schaden*). Contractual core duties are such duties whose accomplishment enables proper fulfilment of an agreement and whose observance the contracting parties may and do regularly rely on.

Insofar as statutory limitations of liability acc. to Sec. 521, 599 German Civil Code apply to the provision of services free of charge, they remain unaffected by the aforementioned provisions.

Liability based on the German Product Liability Act shall remain unaffected.

Any further liability of either Party other than set out above shall be excluded.

18

# EXHIBIT B

 Global++

Home    Subscribe    Activate Donor    Cydia Repo    Knowledge Base    Videos    Discord    Facebook



We make iOS Tweaks!
To access Donor Features, please sign up below:







 Global++

Home   Subscribe   Activate Donor   Cydia Repo   Knowledge Base   Videos   Discord   Facebook

# iOS Spoofing Tweaks & Apps

Global++ allows you to simulate your location anywhere in the world. Get your joystick now!



### Pokemon Go

PokeGo++ 2.0 | Available for iOS only
For the latest updates and information, follow us

`build passing`

ⓘ **No Computer?** Click here to install R119: Link #1 Link #2

Version: R119
(0.146.2)

 Follow @globaltweaks

Download IPA ▾

iOS Ninja App ▾



### Walking Dead: Our World

WalkingDead++ | Available for iOS only
This version works on both jailed and jailbroken devices. Please read the instructions for installing.

`build passing`

ⓘ **No Computer?** Install from iOS Ninja App

Version: R19
(7.0.1)

 Follow @globaltweaks

Download IPA ▾

Instructions ▾

# Global++

Home   Subscribe   Activate Donor   Cydia Repo   Knowledge Base   Videos   Discord   Facebook



## Jurassic World Alive

**Jurassic++ | Available for iOS only**
This version works on both jailed and jailbroken devices. Please read the instructions for installing.

`build` `passing`

ⓘ No Computer? Install from App Haven

Version: R32
(1.7.36)

🐦 Follow @globaltweaks

Download IPA ▾

Instructions ▾



## Ghostbusters World++

**Ghostbusters World+++ | Available for iOS only**
This version works on both jailed and jailbroken devices. Please read the instructions for installing.

`build` `passing`

ⓘ No Computer? Install from App Haven

Version: R8
(1.16.0)

Download IPA ▾

Instructions ▾



## Draconius Go

**Draconius++ | Available for iOS only**
This version works on both jailed and jailbroken devices. Please read the instructions for installing.

`build` `passing`

ⓘ No Computer? Install from iOS Ninja App

Version: R32
(1.10.0)

Download IPA ▾

Instructions ▾

Home   Subscribe   Activate Donor   Cydia Repo   Knowledge Base   Videos   Discord   Facebook



### Ingress Prime

**Ingress++ | Available for iOS only.**
This version works on both jailed and jailbroken devices. Please read the instructions for installing.

`build` `passing`

ⓘ **No Computer?** Install from iOS Ninja App

Version: R13 (2.23.1)

🐦 Follow @globaltweaks

Download IPA ▾

Instructions ▾



### Maguss - Wizarding MMORP

**Maguss++ | Available for iOS only.**
This version works on both jailed and jailbroken devices. Please read the instructions for installing.

`build` `passing`

ⓘ **Just Updated!** Download the new IPA.

Version: R9 (1.018)

Download IPA ▾

Instructions ▾



### App Haven

**App Haven | Direct Install Utility**
Over The Air App Installation, Update from Anywhere. Please read the instructions for installing. Patreon Monthly Subscription | Price $5.00/month |

`build` `passing`

ⓘ **Certficate Signing Utility!**

Official Website

🐦 Follow @apphaven1

Link ▾

Instructions ▾

**Global++**



### Cydia Impactor

Version: 0.9.52

Cydia Impactor | Available for Windows, Mac and Linux
Required Tool to "side-load" IPA's onto your devices. Please ensure you have iTunes installed on your workstation before using.
Make sure you install this to an empty directory. Do not overwrite old impactor files.

`build` `passing`

Download Impactor ▾

⚠ Just Updated! Download now. Supports iOS12 and all X-Series Phones.



### iPASTORE

Official Website

iPASTORE | Code Signing Utility
Over The Air App Installation, Update from Anywhere. Please read the instructions for installing. iPASTORE Lite | Price $19.99/year | iPASTORE Premium | Price $29.99/year

`build` `passing`

Link ▾

Instructions ▾

ⓘ Best and Fastest Signing Utility!

## Screenshots







## Screenshots









Become a Donor Now

# EXHIBIT C



## iOS n00b

▶ Subscribe  2,032

Home   Videos   Playlists   Community   Channels   About

### Uploads

| | | | | | |
|---|---|---|---|---|---|
| Harry Potter Wizards Unite Hack Install | How to install AppHaven | How to properly Use Coordinate Generator | How to install Spotify hack on iPhone(NO JAILBREAK) | Everything you need to know about IpaStore | How to use Cydia Impactor |
| 763 views • 3 weeks ago | 915 views • 4 weeks ago | 3,690 views • 1 month ago | 3,044 views • 1 month ago | 7,330 views • 2 months ago | 45,107 views • 2 months ago |





## i0S n00b

▶ Subscribe  2,032

Home   Videos   Playlists   Community   Channels   About

Uploads

Date added (newest) ▼   Grid ▼


**Harry Potter Wizards Unite Hack Install**
763 views • 3 weeks ago


**How to install AppHaven**
915 views • 4 weeks ago


**How to properly Use Coordinate Generator**
3,690 views • 1 month ago


**How to install Spotify hack on iPhone(NO JAILBREAK)**
3,044 views • 1 month ago


**Everything you need to know about IpaStore**
7,330 views • 2 months ago

**How to use Cydia Impactor**
45,107 views • 2 months ago


**Poke ++ Patreon activation and 2 FA**
3,767 views • 2 months ago


**Poke++ 2 Factor Authentication Impactor Method**
1,578 views • 3 months ago


**Poke ++ 2 device activation**
2,835 views • 4 months ago


**All Pokemon GO event this month and March!**
698 views • 4 months ago


**Everything you need to know about Pokemon GO Lunar New...**
1,239 views • 4 months ago

**Explanation on Poke ++ Direct install,New Tiers and IV checker.**
5,919 views • 4 months ago


**How to use Coords Feed Generator in ++**
5,695 views • 4 months ago


**All you Need to know about December community Day and...**
2,711 views • 6 months ago


**How to create a GPX on Poke ++**
4,385 views • 6 months ago


**How to install IPA's Using IPAStore**
14,889 views • 6 months ago

**Poke ++ Cooldown Detailed Explanation**
9,446 views • 6 months ago


**Poke++ Enhanced throw Explanation**
9,911 views • 6 months ago



How to use Coords Feed Generator in ++
5,695 views • 4 months ago

All you Need to know about December community Day and...
2,711 views • 6 months ago

How to create a GPX on Poke ++
4,385 views • 6 months ago

How to install IPA's Using IPAStore
14,889 views • 6 months ago

Poke ++ Cooldown Detailed Explanation
9,446 views • 6 months ago

Poke++ Enhanced throw Explanation
9,911 views • 6 months ago

Poke ++ details on Cooldown, IV Checker and URL's
6,432 views • 7 months ago

Best Locations for Pokemon GO Community day and farming!
3,403 views • 7 months ago

Explanation on IV's,Coords List, and MITM for Poke ++
9,400 views • 7 months ago

How to use URL Feed in Pokemon GO++
13,385 views • 7 months ago

Poke Go ++ How to Properly use snipe and Cooldown
28,266 views • 8 months ago

Poke ++ How to use GPX and Custom GPX Files
6,232 views • 8 months ago

Explanation on all Poke ++ Donor Features
16,737 views • 8 months ago

Poke++ How to donate and Activate Using Patreon
19,478 views • 8 months ago

Pokego ++ Discord Activation
9,720 views • 8 months ago

Become donor and activate ++ with Patreon
37,640 views • 10 months ago

How to impact poke ++ on PC
3,297 views • 10 months ago

Pokemon ++ Jailbreak Install
1,344 views • 10 months ago

Jailbreak iOS 11 to 11.3.1
188 views • 10 months ago

How to completely remove Electra Jailbreak
888 views • 1 year ago

   



# i0S n00b

▶ Subscribe  2,032

Home    Videos    **Playlists**    Community    Channels    About

↩   Created playlists

Last video added ▼    Grid ▼

**16 VIDEOS**

GlobalPlusPlus



**GlobalPlusPlus**

16 videos • 2,072 views • Last updated on May 14, 2019

i0S n00b          SUBSCRIBE

1  Poke ++ Patreon activation and 2 FA
   i0S n00b
   3:05

2  Poke++ 2 Factor Authentication Impactor Method
   i0S n00b
   2:05

3  Poke ++ 2 device activation
   i0S n00b
   2:48

4  Explanation on Poke ++ Direct install,New Tiers and IV checker.
   i0S n00b
   3:14

5  How to use Coords Feed Generator in ++
   i0S n00b
   3:33

6  How to create a GPX on Poke ++
   i0S n00b
   3:50

7  How to install IPA's Using IPAStore
   i0S n00b
   3:47

8  Poke ++ Cooldown Detailed Explanation
   i0S n00b
   3:48

9  Poke++ Enhanced throw Explanation
   i0S n00b
   3:55

16 videos • 2,072 views • Last updated on May 14, 2019

i0S n00b

**SUBSCRIBE**

10    Poke ++ details on Cooldown, IV Checker and URL's
      5:34    i0S n00b

11    (UPDATED)How to Impact ++ using Cydia Impactor and How to Fix Error Cpp 81
      5:12    i0S n00b

12    Explanation on IV's,Coords List, and MITM for Poke ++
      3:10    i0S n00b

13    Poke Go ++ How to Properly use snipe and Cooldown
      2:50    i0S n00b

14    How to use Cydia Impactor
      4:09    i0S n00b

15    How to properly Use Coordinate Generator
      3:36    i0S n00b

16    [Deleted video]



# i0S n00b

Subscribe 2,032

Home    Videos    Playlists    **Community**    Channels    About    🔍



**i0S n00b** 3 weeks ago
(UPDATED SPOTIFY++ IPA) [UPDATED]Spotify IPA:
https://mega.nz/#!SnAhxSbS!oHwrMENGPD...

Comment • 2  🖒 🖓

View all 2 comments ⌄



**i0S n00b** 1 month ago
I know a lot of you have been bummed with how Apple has been revoking left and right.
So I'm here to make your lives easier! Please go and watch
https://youtu.be/NAOghO_7myA it will show you how to impact Spotify. You can use
this for any working IPA on the iphones! Good luck



How to install Spotify hack on
iPhone(NO JAILBREAK)
i0S n00b
1 month ago • 3,044 views

Comment • 1 🖒 🖓

 **iOS n00b** 2 months ago

Let's go SMASHVILLEEEEE

 **Nashville Predators Playoffs 2017 [HD]**

7thPredator Productions®

2 years ago • 17,167 views

Comment • 

 YouTube

Language: English ▾     Location: United States ▾     Restricted Mode: Off ▾     History     Help

About   Press   Copyright   Creators   Advertise   Developers

Terms   Privacy   Policy & Safety   Send feedback   Test new features



# iOS n00b

Subscribe 2,032

Home    Videos    Playlists    Community    Channels    **About**

**2,032** subscribers • **281,047** views
Joined Jun 4, 2018

**Description**

Videographer, iOS enthusiast.Let's define the future. Share and Subscribe!

Twitter- https://twitter.com/i0sn00b

**Details**

**Country:**   United States

# EXHIBIT D



**Secure Onion ++**
1.1 ◉ SarahH12099
Patreon

**Speedtest ++**
4.1.2 ◉ SarahH12099
Patreon

**iTorrent**
1.6.1 ◉ XITRIX
Patreon

**Sleep Cycle ++**
5.5.6 ◉ SarahH12099
Patreon

**Minecraft**
1.11.1 ◉ Mojang AB
Patreon

**Cimera**
1.0.4 ◉ @electra_team
Patreon

**Kodi -64-Bit**
18.2 ◉ kodi.tv
Patreon

**The Simpsons™: Tappe..**
4.37.6 ◉ Electronic Arts Inc.
Patreon

**Family Guy The Quest..**
1.88.0 ◉ TinyCo, Inc.
Patreon

**GBA4IOS 2.1**
2.1.5 ◉ @rileytestut
Patreon

**Potter++**
0_8.1_R04 ◉ Global++
Patreon

# EXHIBIT E

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Kay H. Lingh*

United States Register of Copyrights and Director



**Registration Number**

## TX 8-729-533

**Effective Date of Registration:**
June 03, 2019

---

## Title

| | |
|---|---|
| **Title of Work:** | Pokemon GO, Version 0.133.0 |
| **Previous or Alternate Title:** | Pokemon GO |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2019 |
| **Date of 1st Publication:** | January 28, 2019 |
| **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| • **Author:** | Niantic, Inc. |
| **Author Created:** | New and revised computer program |
| **Work made for hire:** | Yes |
| **Domiciled in:** | United States |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Niantic, Inc. |
| | 1 Ferry Building, Suite 200, San Francisco, CA, 94111, United States |

## Limitation of copyright claim

| | |
|---|---|
| **Material excluded from this claim:** | Prior works by claimant and licensed-in material |
| **New material included in claim:** | New and revised computer program |

## Certification

| | |
|---|---|
| **Name:** | Devon Hanley Cook, Director, Litigation, Niantic, Inc. |
| **Date:** | June 03, 2019 |
| **Applicant's Tracking Number:** | 32533.00080 |

---

**Correspondence:**   Yes

# EXHIBIT F

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*[signature]*

United States Register of Copyrights and Director

**Registration Number**

## PA 2-180-185

**Effective Date of Registration:**
June 11, 2019

## Title

| | |
|---|---|
| **Title of Work:** | Ingress, Version 2.11.2 |
| **Previous or Alternate Title:** | Ingress Prime, Version 2.11.2 |
| | Ingress Prime |
| | Ingress |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2018 |
| **Date of 1st Publication:** | November 05, 2018 |
| **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| • **Author:** | Niantic, Inc. |
| **Author Created:** | Computer program; audiovisual material, including artwork, animation and sound |
| **Work made for hire:** | Yes |
| **Domiciled in:** | United States |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Niantic, Inc. |
| | 1 Ferry Building, Suite 200, San Francisco, CA, 94111, United States |

## Certification

| | |
|---|---|
| **Name:** | Devon Hanley Cook, Director, Litigation, Niantic, Inc. |
| **Date:** | June 11, 2019 |
| **Applicant's Tracking Number:** | 32533.00080 |

Page 1 of 2

**Correspondence:** Yes