Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

Todd M. Hinnen (admitted *pro hac vice*)
THinnen@perkinscoie.com
Ryan Spear (admitted *pro hac vice*)
RSpear@perkinscoie.com
PERKINS COIE LLP
1201 Third Ave., Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff Niantic, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| NIANTIC, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL++, an unincorporated association; RYAN HUNT, a.k.a. "ELLIOTROBOT," an individual; IT HAVEN INC., a foreign corporation; MATTHEW JOHNSON, an individual; HLP TECH, LLC, a Missouri limited liability company; MATTHEW RAGNARSON, an individual; MANDY JOHNSON, an individual; MANDY LOMBARDO, an individual; ALEN HUNDUR, a.k.a. "IOS N00B," an individual; APPHAVEN, an unincorporated association; RAJESHWAR GHODERAO, an individual; and DOES 1-20,<br><br>Defendants. | Case No. 19-cv-03425-JST<br><br>**AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1)  Direct, Contributory, and Vicarious Copyright Infringement, 17 U.S.C. § 101, *et seq.***<br><br>**(2)  Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030**<br><br>**(3)  Violation of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502**<br><br>**(4)  Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***<br><br>**(5)  Breach of Contract**<br><br>**(6)  Intentional Interference with Contractual Relations**<br><br>**DEMAND FOR JURY TRIAL** |

For its amended complaint, plaintiff Niantic, Inc. ("Niantic") hereby alleges as follows:

## I.      NATURE OF THE ACTION

1.      Niantic brings this action to stop defendants' willful and serial infringement of Niantic's valuable intellectual property, and to recover damages and other relief for defendants' infringement and other violations of Niantic's rights.

2.      Niantic publishes location-based augmented reality games that are played on users' mobile devices, including the games titled *Harry Potter: Wizards Unite* ("*Harry Potter*"), *Pokémon GO*, and *Ingress*. To play Niantic's games, players download and install Niantic's mobile applications ("apps") on their mobile devices. Those apps connect to the Internet and, through the Internet, obtain game-related information from Niantic's servers (e.g., names and locations of nearby characters or features), which is then rendered on the screens of players' mobile devices.

3.      As explained in greater detail below, defendants have created, distributed, advertised, and profited from unauthorized derivative versions of Niantic's mobile apps (the "Cheating Programs"), which incorporate substantial portions of Niantic's copyrighted computer code (the "Client Code").[1]

4.      In addition or alternatively, defendants have conspired with others to create, distribute, advertise, and profit from the Cheating Programs; knowingly, intentionally, and materially contributed to and induced that unlawful conduct; or failed to exercise their right and ability to stop that unlawful conduct.

5.      Specifically, defendants have created, distributed, advertised, and profited from a program titled *Potter++* (or, in some cases, *Unite++*), which is an unauthorized derivative version of Niantic's mobile app for *Harry Potter*; a program titled *PokeGo++*, which is an

---

[1] For purposes of this amended complaint, the term "client code" refers to code that users install on their mobile devices when they install apps. Client code is distinguished from "server code," which exists on a remote computer server. Niantic's games utilize client code and server code. When players use Niantic's mobile apps on their mobile devices, the client code in Niantic's mobile apps interacts with the server code on Niantic's servers to create the game-playing experience.

1

unauthorized derivative version of Niantic's mobile app for *Pokémon GO*; and a program titled *Ingress++*, which is an unauthorized derivative version of Niantic's mobile app for *Ingress*.

6.      All the Cheating Programs allow defendants and defendants' customers to perform unauthorized actions while playing Niantic's games. In other words, the Cheating Programs enable cheating.

7.      Niantic's games are multiplayer games, meaning that users play in a shared online environment. Thus, the Cheating Programs give defendants and defendants' customers an unfair advantage over other players and undermine the integrity of the gaming experience for other players.

8.      Defendants have profited from their illegal activity by selling "subscriptions." Defendants' customers purchase those subscriptions in order to access the unauthorized features within the Cheating Programs, which in turn enable defendants' customers to cheat within Niantic's games. On information and belief, defendants have sold subscriptions to their Cheating Programs to hundreds of thousands of users, reaping massive profits.

9.      Defendants' schemes have harmed and will continue to harm Niantic in many ways. Among other things, defendants' schemes have undermined the integrity of the gaming experience for legitimate players, diminishing enthusiasm for Niantic's games and, in some cases, driving players away from Niantic's games altogether. Defendants' schemes have therefore damaged Niantic's reputation and goodwill and interfered with Niantic's business.

10.      In addition, defendants' schemes have inflicted substantial harm by interfering with the United States launch of *Harry Potter*, Niantic's highly anticipated new game.

11.      Equally important, Niantic's investigation indicates that the Cheating Programs have accessed and collected valuable and proprietary game-related data about Niantic's games, including data about geographical points of interest within Niantic's games, while they are running on the mobile devices of defendants and defendants' customers. On information and belief, the Cheating Programs then transfer that data to defendants, allowing defendants to exploit the data for their own commercial purposes. Defendants are not authorized to obtain and exploit that game-related information. To the contrary, Niantic has expended substantial resources to

1    curate and protect that unique data, which is an extremely important component of Niantic's

2    business model.

3         12.    Defendants are not unwitting violators. They have defeated, removed, or bypassed

4    technical measures implemented by Niantic to thwart their schemes. They have also openly and

5    repeatedly declared their intent to misappropriate Niantic's intellectual property.

6         13.    Niantic frequently releases updated versions of its mobile apps, in some cases

7    every few weeks. On many occasions when Niantic has released new versions of its mobile apps,

8    defendants have created and distributed unauthorized derivative versions of Niantic's updated

9    mobile apps.

10        14.    Niantic contacted defendants Global++, Ryan Hunt, and Alen Hundur before filing

11   this lawsuit, explained that their schemes violated Niantic's rights and harmed Niantic's

12   customers, demanded that they cease their unlawful conduct, and attempted to resolve the parties'

13   dispute without judicial intervention. Defendants Global++, Hunt, and Hundur ignored Niantic.

14   Accordingly, Niantic had no choice but to file this action to protect its rights and the rights of the

15   millions of consumers who enjoy Niantic's mobile games.

16                              **II.    PARTIES**

17   **A.    Plaintiff Niantic, Inc.**

18        15.    Plaintiff Niantic is a Delaware corporation with its principal place of business in

19   San Francisco, California.

20   **B.    Defendant Global++**

21        16.    Defendant Global++ is an unincorporated association of hackers that has created,

22   distributed, advertised, and profited from the Cheating Programs. In addition or alternatively,

23   Global++ has conspired with others to create, distribute, advertise, and profit from the Cheating

24   Programs; knowingly, intentionally, and materially contributed to and induced that unlawful

25   conduct; or failed to exercise its right and ability to stop that unlawful conduct.

26        17.    On information and belief, and as further alleged below, all of the following, and

27   likely others, are principals, leaders, agents, or members of Global++ and are therefore

28   responsible and liable for the acts of Global++: Ryan Hunt, IT Haven Inc., Matthew Johnson,

                                      3

1    HLP Tech, LLC, Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo (to the extent those

2    names are not pseudonyms for Matthew Johnson), Alen Hundur, and John Does 1-20.

3    **C.     Defendant Ryan Hunt**

4         18.     Defendant Ryan Hunt is a principal and leader of Global++, and in that capacity he

5    directs, controls, and is responsible for all relevant actions of Global++.

6         19.     On information and belief, Hunt also serves as the chief executive officer and sole

7    director of defendant IT Haven Inc., and in that capacity he directs, controls, and is responsible

8    for all relevant actions of IT Haven Inc.

9         20.     Hunt is the primary software designer and engineer responsible for developing and

10   maintaining Global++ code, software, and products, including the Cheating Programs.

11        21.     Hunt often uses the moniker "ElliotRobot" in social media and online forums.

12        22.     On information and belief, Hunt resides in Ontario, Canada.

13   **D.     Defendant IT Haven Inc. ("IT Haven")**

14        23.     Defendant IT Haven is a foreign corporation with its principal place of business in

15   Ontario, Canada.

16        24.     On information and belief, there exists a complete unity of interest between

17   IT Haven and Hunt because Hunt exercises sole ownership and control over IT Haven, and

18   because IT Haven is a mere instrumentality for Hunt's business and/or other conduct. Given this

19   unity of interest, treating IT Haven as an entity distinct from Hunt would result in injustice

20   because it would allow either entity to avoid the liabilities incurred by the other.

21   **E.     Defendant Matthew Johnson**

22        25.     Defendant Matthew Johnson is a principal and leader of Global++, and in that

23   capacity he directs, controls, and is responsible for all relevant actions of Global++.

24        26.     On information and belief, Matthew Johnson also serves as the chief executive

25   officer, member, organizer, and sole director of defendant HLP Tech, LLC, and in that capacity

26   he directs, controls, and is responsible for all relevant actions of HLP Tech, LLC.

27

28

27.     On information and belief, Matthew Johnson financed the activities of Global++, including by commissioning and paying Hunt to develop and maintain the Global++ code, software, and products, including the Cheating Programs.

28.     Matthew Johnson has also been or remains the registrant of domain names for websites that have been used to advertise, distribute, and profit from the Cheating Programs, including Global++'s official website (www.globalplusplus.com) and AppHaven's official website (www.apphaven.org), and in that capacity he has had specific knowledge of that infringing conduct and has directed, controlled, and contributed to that infringing conduct.

29.     On information and belief, Matthew Johnson resides in Poplar Bluff, Missouri.

**F.     Defendant HLP Tech, LLC ("HLP Tech")**

30.     Defendant HLP Tech is a limited liability company with its principal place of business in Poplar Bluff, Missouri.

31.     On information and belief, there exists a complete unity of interest between HLP Tech and Johnson because Johnson exercises sole ownership and control over HLP Tech, and because HLP Tech is a mere instrumentality for Johnson's business and/or other conduct. Given this unity of interest, treating HLP Tech as an entity distinct from Johnson would result in injustice because it would allow either entity to avoid the liabilities incurred by the other.

**G.     Defendants Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo**

32.     On information and belief, defendants Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo are agents and/or members of Global++ who support, conspire with, and act in active concert and participation with the other defendants to further the unlawful conduct alleged in this amended complaint.

33.     Alternatively, on information and belief, Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo are pseudonyms for defendant Matthew Johnson.

34.     On information and belief, and to the extent that Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo are not pseudonyms for defendant Matthew Johnson, they reside in Missouri.

**H.     Defendant Alen Hundur**

35.     Defendant Alen Hundur is a member of Global++, and in that capacity he has, among other things, maintained a popular YouTube channel devoted to advertising and providing customer support for Global++'s code, software, and products, including the Cheating Programs.

36.     On information and belief, Hundur has also contributed to the creation and development of Global++'s code, software, and products.

37.     Hundur often uses the moniker "iOS n00b" (or, in some cases, "i0S n00b") in social media and online forums.

38.     On information and belief, Hundur resides in Brentwood, Tennessee.

**I.     Defendant AppHaven**

39.     Defendant AppHaven is an unincorporated association of hackers that has created, distributed, advertised, and profited from the Cheating Programs. In addition or alternatively, AppHaven has conspired with others to create, distribute, advertise, and profit from the Cheating Programs; knowingly, intentionally, and materially contributed to and induced that unlawful conduct; or failed to exercise its right and ability to stop that unlawful conduct.

**J.     Defendant Rajeshwar Ghoderao**

40.     On information and belief, defendant Rajeshwar Ghoderao is the principal and leader of AppHaven, and in that capacity he directs, controls, and is responsible for all relevant actions of AppHaven.

41.     On information and belief, Ghoderao resides in India.

**K.     Does 1-20**

42.     The defendants named as Does 1-20 are individuals who support, conspire with, and act in active concert and participation with the other defendants to further the unlawful conduct alleged in this amended complaint.

43.     Niantic will seek to amend this complaint to add the true names and capacities of Does 1-20 when they become known.

### III.    JURISDICTION AND VENUE

44.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 because Niantic alleges violations of the federal Copyright Act, 17 U.S.C. § 101, *et seq*., and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

45.    This Court has supplemental jurisdiction over Niantic's state law claims under 28 U.S.C. § 1367 because Niantic's state law claims are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy.

46.    This Court has personal jurisdiction over each of the defendants because defendants' unlawful activities are targeted at Niantic, which defendants know is headquartered in California; because defendants conduct substantial, continuous, and systematic business within this district, including by utilizing California-based social media platforms and other California-based services to perpetrate unlawful activities targeting Niantic; because defendants engaged in acts or omissions causing injury within this district (including, on information and belief, distributing Cheating Programs in this district); because defendants engaged in acts or omissions outside this district causing injury within this district; and because the claims alleged in this amended complaint arise out of or relate to defendants' forum-related activities.

47.    In addition or alternatively, this Court has personal jurisdiction over each of the defendants because each defendant, or agents for each defendant, agreed to the personal jurisdiction of the state and federal courts located in the Northern District of California by agreeing to the forum-selection clause in the current version of Niantic's Terms of Service or a substantially similar forum-selection clause in an earlier version of Niantic's Terms of Service.

48.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Niantic's claims occurred in this district.

49.    In addition or alternatively, venue is proper in this district because each defendant, or agents for each defendant, consented to venue in this district by agreeing to the forum-selection clause in the current version of Niantic's Terms of Service or a substantially similar forum-selection clause in an earlier version of Niantic's Terms of Service.

# IV. INTRADISTRICT ASSIGNMENT

50. This is an intellectual property action to be assigned on a district-wide basis under Civil Local Rule 3-2(c).

# V. ALLEGATIONS COMMON TO ALL CLAIMS

## A. Niantic's Mobile Games and Applications

51. Niantic currently publishes three popular location-based augmented reality games: *Harry Potter*, *Pokémon GO*, and *Ingress.*

52. *Harry Potter* is Niantic's newest game. *Harry Potter* combines content and characters from the original Harry Potter series and the Fantastic Beasts films to create a unique experience in which players use wands, spells, and magical items to protect the Wizarding World. Players recharge Spell Energy by obtaining food from Inns, which are located at places like public art spaces, unique pieces of architecture, or public gathering places. The beta version of *Harry Potter* launched in New Zealand on April 16, 2019, and in the United States on June 20, 2019.

53. *Pokémon GO* was launched in 2016. *Pokémon GO* allows players to collect imaginary creatures called Pokémon by finding them in real-world locations (presented in a map view or via augmented reality in the game's mobile app) and "capturing" them using Pokéballs. Players can obtain Pokéballs by visiting "Pokéstops," among other game actions, which are located at real-world locations that help players discover and enjoy their communities. *Pokémon GO* has been downloaded more than 850 million times and has received many accolades, including "Best Mobile Game" from The Game Developers Choice Awards and "Best App of the Year" from TechCrunch. To this day, *Pokémon GO* frequently has more than 16 million daily active users and over 33 million monthly active users.

54. *Ingress* was launched in 2012. *Ingress* transforms the real world into the landscape for a covert global struggle between two teams: The Enlightened and The Resistance. Players join a team, strategize and communicate with their fellow "Agents," and interact with locations of cultural significance (e.g., public art installations, landmarks, and monuments) known as

"Portals" to collect valuable resources, battle for control over territory, and solve mysteries. Ingress has been downloaded over 25 million times.

55.     Niantic's mobile games are based on three core principles: exploration and discovery of new places, exercise, and real-world social interaction with other people. Through these principles, and by leveraging sophisticated mapping and augmented reality technologies, Niantic encourages players to head outside, visit new places, and play together with friends and family in games that span and unite the entire planet.

56.     Niantic's apps are free to download and use, and it is possible to play Niantic's games for free indefinitely. However, to obtain in-game items that can be beneficial during game play, players can make in-game purchases. For example, in *Pokémon GO*, players can purchase in-game currency ("Pokécoins") to redeem for additional Pokéballs, which are used to capture Pokémon. Players may do this, for example, if they run out of Pokéballs when they are not near a Pokéstop at which they could otherwise obtain Pokéballs for free by interacting with the location.

57.     In-game purchases are a fundamental aspect of Niantic's business model and represent one of Niantic's primary sources of revenue.

58.     Niantic's games are the product of Niantic's skills, resources, and creative energies and have great value to Niantic. Niantic has invested significant resources, including time, effort, talent, creativity, and money, to develop and produce its games.

**B.     Niantic's Terms of Service**

59.     To obtain a limited license to access and use Niantic's services and games, users must agree to Niantic's Terms of Service. Attached as Exhibit A, and incorporated by reference, is a true and correct copy of the current version of Niantic's Terms of Service.

60.     The limited license that Niantic grants to users to access and use Niantic's services and games is conditioned on compliance with Niantic's Terms of Service.

61.     Under Niantic's Terms of Service, users may not, among other things, copy, modify, or create derivative works based on Niantic's games or use Niantic's games for any commercial purpose.

**C.      Defendants and the Cheating Programs**

62.      All of the defendants are participants in a scheme to create, distribute, advertise, and profit from the Cheating Programs, which target Niantic's games and misappropriate Niantic's intellectual property.

63.       On information and belief, the Cheating Programs created, distributed, and advertised by the defendants include two main components: (a) unauthorized copies of Niantic's copyrighted Client Code, and (b) computer code developed, maintained, and distributed by defendants that defendants refer to as the Global++ "dynamic library."

64.      The Cheating Programs could not function as intended by defendants if they did not contain copies of Niantic's Client Code.

65.      The Cheating Programs could not function as intended by defendants without the Global++ "dynamic library."

66.      To obtain copies of Niantic's Client Code, defendants obtain legitimate versions of Niantic's mobile apps from Apple's online App Store and then circumvent the technical security measures put in place by Niantic and by Apple to protect the Niantic Client Code. Defendants then access and copy Niantic's Client Code without authorization.

67.      After copying Niantic's Client Code, defendants modify the Niantic Client Code to enable it to operate with the Global++ "dynamic library."

68.      The Cheating Programs could not function as intended by defendants without defendants modifying the Niantic Client Code to enable it to operate with the Global++ "dynamic library."

69.      Finally, defendants combine the modified Niantic Client Code with the Global++ "dynamic library" to create the Cheating Programs, which they distribute to their customers.

70.      Based on Niantic's analysis, defendants copy large amounts of Niantic's Client Code and incorporate that Client Code directly into the Cheating Programs.

71.      A side-by-side comparison of the user interfaces for Niantic's legitimate apps and defendants' Cheating Programs helps illustrate the extent to which defendants have copied Niantic's Client Code in order to create the Cheating Programs.

| | |
|---|---|
| **_Harry Potter_ Interface** | **_Potter++_ Interface** |





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Pokémon GO* **Interface**

*PokeGo++* **Interface**




1

*Ingress* **Interface**                    *Ingress++* **Interface**



72.     Defendants have advertised and distributed their Cheating Programs through numerous online channels, including the official Global++ website (www.globalplusplus.com); a YouTube channel maintained by defendant Alen Hundur; the official AppHaven website (www.apphaven.org); and a stand-alone app operated and controlled by AppHaven. Attached as Exhibits B, C, and D, and incorporated by reference, are true and correct copies of excerpts of the Global++ website, the YouTube channel maintained by Hundur, and the AppHaven website.

13

73.     When defendants' customers download and install the Cheating Programs on their mobile devices, the Cheating Programs allow those customers to access Niantic's computer servers, play Niantic's games, and perform unauthorized actions while playing Niantic's games.

74.     For example, the Cheating Programs allow defendants' customers to "spoof" their locations (i.e., visit geographical locations in the games without visiting those locations in the real world by communicating to Niantic's servers GPS coordinates that do not match the GPS coordinates generated by the customers' mobile devices); obtain items and achievements that they have not legitimately earned; automate certain in-game tasks so that they are always successful; and obtain valuable information that is not available to other users.

75.     The Cheating Programs also allow defendants and defendants' customers to use their mobile devices as bots, that is, automated computer programs that interact with Niantic's servers to make it appear as if defendants and defendants' customers are playing Niantic's games 24 hours a day, 7 days a week. This gives defendants and defendants' customers an unfair advantage over honest players because Niantic's legitimate apps do not allow players to automate game play in the same way.

76.     In addition, the Cheating Programs have accessed and obtained valuable and proprietary game-related data, including data about points of interest within Niantic's games (e.g., PokéStops in *Pokémon GO*, Portals in *Ingress*, and Inns in *Harry Potter*), such as names, descriptions, photographs, game states, and precise coordinates for those points of interest. Niantic refers to this data as point-of-interest data ("POI Data").

77.     The Cheating Programs have also accessed and obtained valuable ephemeral game information, such as the type and value of particular Pokémon appearing in precise locations. Niantic refers to this data as "Spawn Data."

78.     On information and belief, after accessing and obtaining POI Data and Spawn Data, the Cheating Programs have then uploaded the POI Data and the Spawn Data to servers controlled by defendants.

79.     Niantic's servers are not configured to support the Cheating Programs. As a result, the Cheating Programs have imposed additional burdens on Niantic's servers.

80.     Defendants are serial infringers. When Niantic has released new versions of its mobile apps, defendants have circumvented the security measures protecting Niantic's Client Code and released new versions of their Cheating Programs.

81.     Defendants have realized significant profits from the Cheating Programs. On information and belief, defendants have sold hundreds of thousands of subscriptions for their Cheating Programs and, as a result, obtained millions of dollars in illicit profits.

82.     Defendants know that their conduct is unlawful. Defendants have thwarted technical measures that Niantic has implemented to prevent defendants from accessing, copying, and creating unauthorized derivative versions of Niantic's apps.

83.     Moreover, before filing this lawsuit, Niantic contacted some of the defendants in writing and explained that their schemes violate Niantic's rights and harm Niantic's customers. Niantic also demanded that defendants cease creating, selling, and distributing the Cheating Programs, and expressly revoked defendants' limited license to access Niantic's computers and servers and to access Niantic's games and services. Defendants did not respond.

## VI.     NIANTIC'S COPYRIGHTED WORKS

84.     Niantic has obtained from the U.S. Copyright Office a Certificate of Registration for a computer program titled "*Pokémon GO*, Version 0.133.0." Attached as Exhibit E, and incorporated by reference, is a true and correct copy of the Certificate of Registration issued by the Copyright Office for *Pokémon GO*, Version 0.133.0.

85.     *Pokémon GO*, Version 0.133.0 is the client code for Version 0.133.0 of Niantic's app for the *Pokémon GO* game, which was released worldwide on January 28, 2019.

86.     *Pokémon GO*, Version 0.133.0 is an original, creative work and is copyrightable subject matter under the laws of the United States.

87.     The copyright in *Pokémon GO*, Version 0.133.0 is presently valid and subsisting.

88.     Substantial portions of *Pokémon GO*, Version 0.133.0, are incorporated into Niantic's computer program titled *Harry Potter*, Version 0.7.0.

89.     *Harry Potter*, Version 0.7.0 is the client code for Version 0.7.0 of Niantic's app for the *Harry Potter* game, which was released worldwide on June 20, 2019.

90.    Niantic has obtained from the U.S. Copyright Office a Certificate of Registration for a computer program titled "*Ingress*, Version 2.11.2." Attached as Exhibit F, and incorporated by reference, is a true and correct copy of the Certificate of Registration issued by the Copyright Office for *Ingress*, Version 2.11.2.

91.    *Ingress*, Version 2.11.2 is the client code for Version 2.11.2 of Niantic's app for the *Ingress* game, which was released worldwide on November 5, 2018.

92.    *Ingress*, Version 2.11.2 is an original, creative work and is copyrightable subject matter under the laws of the United States.

93.    The copyright in *Ingress*, Version 2.11.2 is presently valid and subsisting.

## VII.    CLAIMS

### COUNT ONE

**Direct Copyright Infringement (17 U.S.C. § 101, *et seq.*)**
**(Against Defendants Global++, Ryan Hunt, and IT Haven)**

94.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

95.    Defendants Global++, Hunt, and IT Haven copied *Pokémon GO*, Version 0.133.0 to incorporate it into the Cheating Programs (e.g., *PokeGo++*, Version R104).

96.    Defendants Global++, Hunt, and IT Haven modified *Pokémon GO*, Version 0.133.0 to ensure that it functioned as defendants intended it to function in the context of the Cheating Programs.

97.    Defendants Global++, Hunt, and IT Haven copied substantial portions of *Pokémon GO*, Version 0.133.0 and incorporated it into the computer code that defendants refer to as the Global++ "dynamic library."

98.    Defendants Global++, Hunt, and IT Haven copied *Pokémon GO*, Version 0.133.0 to develop and maintain the computer code that defendants refer to as the Global++ "dynamic library."

99.    Defendants Global++, Hunt, and IT Haven distributed the Cheating Programs through the Global++ website and other platforms, including the Cheating Programs that contain a significant portion of *Pokémon GO*, Version 0.133.0.

100.     Defendants Global++, Hunt, and IT Haven copied *Harry Potter*, Version 0.7.0, which contains substantial portions of *Pokémon GO*, Version 0.133.0, to incorporate *Harry Potter*, Version 0.7.0 into the Cheating Programs (e.g., *Potter++*, Version r01).

101.     Defendants Global++, Hunt, and IT Haven modified *Harry Potter*, Version 0.7.0 to ensure that it functioned as defendants intended it to function in the context of the Cheating Programs.

102.     Defendants Global++, Hunt, and IT Haven copied substantial portions of *Harry Potter*, Version 0.7.0 and incorporated it into the computer code that defendants refer to as the Global++ "dynamic library."

103.     Defendants Global++, Hunt, and IT Haven copied *Harry Potter*, Version 0.7.0, to develop and maintain the computer code that defendants refer to as the Global++ "dynamic library."

104.     Defendants Global++, Hunt, and IT Haven distributed the Cheating Programs through the Global++ website and other platforms, including the Cheating Programs that contain a significant portion of *Harry Potter*, Version 0.7.0.

105.     Defendants Global++, Hunt, and IT Haven copied *Ingress*, Version 2.11.2 to incorporate it into the Cheating Programs (e.g., *Ingress++*, Version r1a).

106.     Defendants Global++, Hunt, and IT Haven modified *Ingress*, Version 2.11.2 to ensure that it functioned as defendants intended it to function in the context of the Cheating Programs.

107.     Defendants Global++, Hunt, and IT Haven copied substantial portions of *Ingress*, Version 2.11.2 and incorporated it into the computer code that defendants refer to as the Global++ "dynamic library."

108.     Defendants Global++, Hunt, and IT Haven copied *Ingress*, Version 2.11.2 to develop and maintain the computer code that defendants refer to as the Global++ "dynamic library."

17

109.    Defendants Global++, Hunt, and IT Haven distributed the Cheating Programs through the Global++ website and other platforms, including the Cheating Programs that contain a significant portion of *Ingress*, Version 2.11.2.

110.    Accordingly, defendants Global++, Hunt, and IT Haven have directly infringed Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

111.    Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

112.    Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

113.    In addition, Niantic is entitled to its attorney's fees and costs.

114.    Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer program.

## COUNT TWO
### Contributory Copyright Infringement (17 U.S.C. § 101, *et seq.*)
### (Against Defendants Global++, Ryan Hunt, and IT Haven)

115.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

116.    On information and belief, the computer code that defendants refer to as the Global++ "dynamic library" is an essential component of the Cheating Programs and has no practical purpose other than as a component of the Cheating Programs.

18

117.     Defendants Global++, Hunt, and IT Haven have developed, distributed, and advertised the Global++ "dynamic library," knowing and specifically intending that the Global++ "dynamic library" would be used by others (e.g., AppHaven) to infringe Niantic's copyrights.

118.     Defendants Global++, Hunt, and IT Haven have encouraged, induced, and assisted others (e.g., AppHaven) to use the Global++ "dynamic library" to create and distribute the Cheating Programs.

119.     Defendants Global++, Hunt, and IT Haven have formed and participated in commercial partnerships with others (e.g., AppHaven and Matthew Johnson) to create, distribute, advertise, and profit from the Cheating Programs.

120.     Accordingly, defendants Global++, Hunt, and IT Haven have contributorily infringed Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

121.     Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

122.     Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

123.     In addition, Niantic is entitled to its attorney's fees and costs.

124.     Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

## COUNT THREE
### Vicarious Copyright Infringement (17 U.S.C. § 101, *et seq.*)
### (Against Defendants Global++, Ryan Hunt, and IT Haven)

125.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

126.    Defendants Global++, Hunt, and IT Haven are or have been the owners and operators of websites and other online platforms that have been used to distribute the Cheating Programs and enable access to and use of the Cheating Programs by others, including AppHaven and users of the Cheating Programs.

127.    As the owners and operators of websites and other online platforms that have been used to distribute the Cheating Programs and enable access to and use of the Cheating Programs, defendants Global++, Hunt, and IT Haven retained both the legal and practical ability to block access to the Cheating Programs or to otherwise stop the direct infringement of Niantic's copyrights by others (e.g., AppHaven and users of the Cheating Programs).

128.    Defendants Global++, Hunt, and IT Haven are or have been the owners and operators of the computer code that defendants refer to as the Global++ "dynamic library."

129.    As the owners and operators of the Global++ "dynamic library," defendants Global++, Hunt, and IT Haven retained both the legal and practical ability to block access to the Cheating Programs or to otherwise stop the direct infringement of Niantic's copyrights by others (e.g., AppHaven and users of the Cheating Programs).

130.    Defendants Global++, Hunt, and IT Haven failed to block access to the Cheating Programs and stop the direct infringement of Niantic's copyrights.

131.    Defendants Global++, Hunt, and IT Haven received payments from users of the Cheating Programs in exchange for providing and enabling access to the Cheating Programs, and therefore received a direct financial benefit from the Cheating Programs.

132.    Defendants Global++, Hunt, and IT Haven received payments from defendants Matthew Johnson and/or HLP Tech in exchange for creating, distributing, and advertising the Cheating Programs, and therefore received a direct financial benefit from the Cheating Programs.

133.    Accordingly, defendants Global++, Hunt, and IT Haven are vicariously liable for infringement of Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

134.    Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

135.    Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

136.    In addition, Niantic is entitled to its attorney's fees and costs.

137.    Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

### COUNT FOUR
**Contributory Copyright Infringement (17 U.S.C. § 101, *et seq*.)**
**(Against Defendants Matthew Johnson (a.k.a. Mandy Lombardo, Mandy Johnson, and/or Matthew Ragnarson) and HLP Tech)**

138.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

139.    Defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech have commissioned and paid defendants Hunt and IT Haven to develop, distribute, and advertise the Cheating Programs.

140.    In addition or alternatively, defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech have commissioned and paid defendants Hunt and IT Haven to develop, distribute, and advertise the computer code that

1     defendants refer to as the Global++ "dynamic library," knowing and specifically intending that

2     the "dynamic library" would be used to create and distribute the Cheating Programs.

3           141.    Defendant Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and

4     Mandy Lombardo) and HLP Tech have encouraged, induced, and assisted others (e.g.,

5     AppHaven) to create, distribute, and advertise the Cheating Programs.

6           142.    In addition or alternatively, defendants Matthew Johnson (a.k.a. Matthew

7     Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech have encouraged, induced,

8     and assisted others (e.g., AppHaven) to use the Global++ "dynamic library" to create and

9     distribute the Cheating Programs.

10         143.    Defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and

11     Mandy Lombardo) and HLP Tech have formed and participated in commercial partnerships with

12     others (e.g., AppHaven) to create, distribute, advertise, and profit from the Cheating Programs

13     and/or the Global++ "dynamic library."

14         144.    Accordingly, defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy

15     Johnson, and Mandy Lombardo) and HLP Tech have contributorily infringed Niantic's

16     copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

17         145.    Defendants' infringement of Niantic's copyrights has been deliberate, willful, and

18     in utter disregard of Niantic's rights.

19         146.    Niantic is entitled to recover from defendants the damages it has sustained and will

20     sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of

21     infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for

22     defendants' willful infringement of its copyrights.

23         147.    In addition, Niantic is entitled to its attorney's fees and costs.

24         148.    Furthermore, as a direct and proximate result of defendants' wrongful conduct,

25     Niantic has been substantially harmed in an amount not readily capable of determination, i.e.,

26     irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury

27     to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons

28     acting in concert or participation with them, from engaging in any further infringement of

1    Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of

2    all copies of the Cheating Programs and all articles by means of which the Cheating Programs

3    may be reproduced, including defendants' computers and computer programs.

4                                               **COUNT FIVE**

5               **Vicarious Copyright Infringement (17 U.S.C. § 101, *et seq.*)**
     **(Against Defendants Matthew Johnson (a.k.a. Mandy Lombardo, Mandy Johnson, and/or**
6                            **Matthew Ragnarson) and HLP Tech)**

7         149.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

8         150.    Defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and

9    Mandy Lombardo) and HLP Tech are or have been the owners and operators of websites and

10   other online platforms that have been used to distribute the Cheating Programs and enable access

11   to and use of the Cheating Programs by others, including AppHaven and users of the Cheating

12   Programs.

13        151.    As the owners and operators of websites and other online platforms that have been

14   used to distribute the Cheating Programs and enable access to and use of the Cheating Programs,

15   defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy

16   Lombardo) and HLP Tech retained both the legal and practical ability to block access to the

17   Cheating Programs or to otherwise stop the direct infringement of Niantic's copyrights by others

18   (e.g., AppHaven and users of the Cheating Programs).

19        152.    Defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and

20   Mandy Lombardo) and HLP Tech are or have been the owners and operators of the computer

21   code that defendants refer to as the Global++ "dynamic library."

22        153.    As the owners and operators of the Global++ "dynamic library," defendants

23   Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP

24   Tech retained both the legal and practical ability to block access to the Cheating Programs or to

25   stop the direct infringement of Niantic's copyrights by others (e.g., AppHaven and users of the

26   Cheating Programs).

27

28

                                                    23

154.    Defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech failed to block access to the Cheating Programs and stop the direct infringement of Niantic's copyrights.

155.    Defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech received payments from users of the Cheating Programs in exchange for providing and enabling access to the Cheating Programs, and therefore received a direct financial benefit from the Cheating Programs.

156.    Accordingly, defendants Matthew Johnson (a.k.a. Matthew Ragnarson, Mandy Johnson, and Mandy Lombardo) and HLP Tech are vicariously liable for infringement of Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

157.    Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

158.    Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

159.    In addition, Niantic is entitled to its attorney's fees and costs.

160.    Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

**COUNT SIX**
**Contributory Copyright Infringement (17 U.S.C. § 101, *et seq.*)**
**(Against Defendant Alen Hundur)**

161.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

162.    Defendant Alen Hundur has maintained a popular YouTube channel devoted to advertising and providing customer support for Global++'s code, software, and products, including the Cheating Programs.

163.    Defendant Hundur has also acted as a "moderator" for Global++'s official Facebook page, used the Twitter platform to advertise Global++'s code, software, and products, including the Cheating Programs, and used the Twitter platform to encourage and induce others to access and use the Cheating Programs through multiple online platforms, including AppHaven's website. In those capacities, he has encouraged and induced third parties, including users of the Cheating Programs, to infringe Niantic's copyrights.

164.    Defendant Hundur has formed and participated in commercial partnerships with others (e.g., Global++ and, on information and belief, AppHaven) to advertise and profit from the Cheating Programs.

165.    Accordingly, defendant Hundur has contributorily infringed Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

166.    Defendant's infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

167.    Niantic is entitled to recover from defendant the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendant as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendant's willful infringement of its copyrights.

168.    In addition, Niantic is entitled to its attorney's fees and costs.

169.    Furthermore, as a direct and proximate result of defendant's wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendant will cause further irreparable injury to

25

Niantic. Niantic is therefore entitled to injunctive relief enjoining defendant, and all persons acting in concert or participation with him, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendant's computers and computer programs.

### COUNT SEVEN
**Direct Copyright Infringement (17 U.S.C. § 101, *et seq*.)**
**(Against Defendants AppHaven and Ghoderao)**

170.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

171.    Defendants AppHaven and Ghoderao copied *Pokémon GO*, Version 0.133.0 to incorporate it into the Cheating Programs (e.g., *PokeGo++*, Version R104).

172.    Defendants AppHaven and Ghoderao modified *Pokémon GO*, Version 0.133.0 to ensure that it functioned as defendants intended it to function in the context of the Cheating Programs.

173.    Defendants AppHaven and Ghoderao distributed the Cheating Programs through the AppHaven website and other platforms, including the Cheating Programs that contain a significant portion of *Pokémon GO*, Version 0.133.0.

174.    Defendants AppHaven and Ghoderao copied *Harry Potter*, Version 0.7.0, which contains substantial portions of *Pokémon GO*, Version 0.133.0, to incorporate *Harry Potter*, Version 0.7.0 into the Cheating Programs (e.g., *Potter++*, Version r01).

175.    Defendants AppHaven and Ghoderao modified *Harry Potter*, Version 0.7.0 to ensure that it functioned as defendants intended it to function in the context of the Cheating Programs.

176.    Defendants AppHaven and Ghoderao distributed the Cheating Programs through the AppHaven website and other platforms, including the Cheating Programs that contain a significant portion of *Harry Potter*, Version 0.7.0.

177.    Defendants AppHaven and Ghoderao copied *Ingress*, Version 2.11.2 to incorporate it into the Cheating Programs (e.g., *Ingress++*, Version r1a).

178.   Defendants AppHaven and Ghoderao modified *Ingress*, Version 2.11.2 to ensure that it functioned as defendants intended it to function in the context of the Cheating Programs.

179.   Defendants AppHaven and Ghoderao distributed the Cheating Programs through the AppHaven website and other platforms, including the Cheating Programs that contain a significant portion of *Ingress*, Version 2.11.2.

180.   Accordingly, defendants AppHaven and Ghoderao have directly infringed Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

181.   Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

182.   Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

183.   In addition, Niantic is entitled to its attorney's fees and costs.

184.   Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

**COUNT EIGHT**
**Contributory Copyright Infringement (17 U.S.C. § 101, *et seq.*)**
**(Against Defendants AppHaven and Ghoderao)**

185.   Niantic realleges and incorporates by reference all of the preceding paragraphs.

27

186.    Defendants AppHaven and Ghoderao have maintained multiple online platforms, including an official website (www.apphaven.org), a stand-alone AppHaven app, and a Twitter account, through which they advertised and enabled users to access Global++'s code, software, and products, including the Cheating Programs. In that capacity, they have encouraged and induced third parties, including users of the Cheating Programs, to infringe Niantic's copyrights..

187.    Defendants AppHaven and Ghoderao have formed and participated in commercial partnerships with others (e.g., Global++, Hunt, IT Haven, and, on information and belief, Hundur) to create, distribute, advertise, and profit from the Cheating Programs.

188.    Accordingly, defendants AppHaven and Ghoderao have contributorily infringed Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

189.    Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

190.    Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

191.    In addition, Niantic is entitled to its attorney's fees and costs.

192.    Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

1

2

<u>**COUNT NINE**</u>
**Vicarious Copyright Infringement (17 U.S.C. § 101, *et seq.*)**
**(Against Defendants AppHaven and Ghoderao)**

3       193.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

4       194.    Defendants AppHaven and Ghoderao are or have been the owners and operators of

5   websites and other online platforms that have been used to distribute the Cheating Programs and

6   enable access to and use of the Cheating Programs by others (e.g., Global++ and users of the

7   Cheating Programs).

8       195.    As the owners and operators of websites and other online platforms that have been

9   used to distribute the Cheating Programs and enable access to and use of the Cheating Programs

10  by others, defendants AppHaven and Ghoderao retained both the legal and practical ability to

11  block access to the Cheating Programs or otherwise stop the direct infringement of Niantic's

12  copyrights by others (e.g., Global++ and users of the Cheating Programs).

13      196.    Defendants AppHaven and Ghoderao failed to block access to the Cheating

14  Programs and stop the direct infringement of Niantic's copyrights.

15      197.    On information and belief, defendants AppHaven and Ghoderao received

16  payments from users of the Cheating Programs in exchange for providing and enabling access to

17  the Cheating Programs, and therefore received a direct financial benefit from the Cheating

18  Programs.

19      198.    On information and belief, defendants AppHaven and Ghoderao received

20  payments from defendants Matthew Johnson and/or HLP Tech in exchange for creating,

21  distributing, and advertising the Cheating Programs, and therefore received a direct financial

22  benefit from the Cheating Programs

23      199.    On information and belief, defendants AppHaven and Ghoderao received

24  payments from defendants Ryan Hunt and/or IT Haven in exchange for creating, distributing, and

25  advertising the Cheating Programs, and therefore received a direct financial benefit from the

26  Cheating Programs.

27

28

200.     Accordingly, defendants AppHaven and Ghoderao are vicariously liable for infringement of Niantic's copyrights in and relating to *Pokémon GO*, Version 0.133.0 and *Ingress*, Version 2.11.2.

201.     Defendants' infringement of Niantic's copyrights has been deliberate, willful, and in utter disregard of Niantic's rights.

202.     Niantic is entitled to recover from defendants the damages it has sustained and will sustain, and any gains, profits and advantages obtained by defendants as a result of their acts of infringement as alleged above. Alternatively, Niantic is entitled to recover statutory damages for defendants' willful infringement of its copyrights.

203.     In addition, Niantic is entitled to its attorney's fees and costs.

204.     Furthermore, as a direct and proximate result of defendants' wrongful conduct, Niantic has been substantially harmed in an amount not readily capable of determination, i.e., irreparably, and, unless restrained by this Court, defendants will cause further irreparable injury to Niantic. Niantic is therefore entitled to injunctive relief enjoining defendants, and all persons acting in concert or participation with them, from engaging in any further infringement of Niantic's copyrights. Niantic is also entitled to an order requiring the seizure and impoundment of all copies of the Cheating Programs and all articles by means of which the Cheating Programs may be reproduced, including defendants' computers and computer programs.

## COUNT TEN
### Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)
### (Against All Defendants)

205.     Niantic realleges and incorporates by reference all the preceding paragraphs.

206.     Niantic's network, computers, and servers, including the computers and servers that enable users to play Niantic's games via Niantic's mobile apps ("Niantic's Computers"), are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

207.    Niantic's legitimate mobile apps are the only authorized mechanism for accessing Niantic's Computers to play Niantic's games. Defendants and defendants' customers are not authorized to access Niantic's Computers using the Cheating Programs.

208.    By letter dated June 7, 2019, Niantic expressly revoked defendants' limited license to access Niantic's Computers.

209.    When defendants and defendants' customers download, install, and use the Cheating Programs to play Niantic's mobile games and interact with Niantic's services, the Cheating Programs access Niantic's Computers without authorization.

210.    When the Cheating Programs access Niantic's Computers, they obtain information from Niantic's Computers, including Niantic's POI Data and Spawn Data. On information and belief, the Cheating Programs also transfer copies of Niantic's POI Data and Spawn Data to defendants' computers.

211.    Defendants knowingly and intentionally designed the Cheating Programs to access Niantic's Computers, obtain Niantic's POI Data and Spawn Data, and transfer copies of that data to defendants' computers. Defendants therefore knowingly and intentionally accessed Niantic's Computers through the Cheating Programs and thereby obtained information from Niantic's Computers, without Niantic's authorization.

212.    Defendants knowingly and intentionally accessed Niantic's Computers through the Cheating Programs and thereby obtained information from Niantic's Computers even after Niantic expressly revoked defendants' limited license to access Niantic's Computers.

213.    In addition or alternatively, defendants agreed and conspired to access Niantic's Computers without authorization. In particular, defendants worked in concert to develop and implement the Cheating Programs and/or the computer code that defendants refer to as the Global++ "dynamic library" knowing that they were designed to access Niantic's Computers without authorization.

214.    Defendants' unauthorized access to Niantic's Computers has caused Niantic to suffer in excess of $5,000 in damage or loss, including, without limitation, expenses associated with investigating and remedying defendants' unauthorized access to Niantic's Computers.

215.    In addition, Niantic has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, Niantic is entitled to injunctive relief.

**COUNT ELEVEN**
**Violation of the California Comprehensive Computer Data Access and Fraud Act**
**(Cal. Penal Code § 502)**
**(Against All Defendants)**

216.    Niantic realleges and incorporates by reference all of the preceding paragraphs.

217.    Defendants have violated California Penal Code § 502(c)(1) by knowingly accessing and without permission, altering, damaging, deleting, destroying, or otherwise using Niantic's Computers to wrongfully control or obtain money, property, or data from Niantic, including Niantic's POI Data and Spawn Data.

218.    Defendants have violated California Penal Code § 502(c)(2) by knowingly and fraudulently, and without permission, accessing, taking, copying, and making use of programs, data, and files from Niantic's Computers, including Niantic's POI Data and Spawn Data.

219.    Defendants have violated California Penal Code § 502(c)(3) by knowingly, fraudulently, and without permission accessing and using Niantic's Computers, in particular Niantic's computer services.

220.    Defendants have violated California Penal Code § 502(c)(7) by knowingly and without permission accessing or causing to be accessed Niantic's Computers.

221.    In addition or alternatively, defendants agreed and conspired to access Niantic's Computers without authorization. In particular, defendants worked in concert to develop and implement the Cheating Programs and/or the computer code that defendants refer to as the Global++ "dynamic library" knowing that they were designed to alter, damage, delete, destroy, or otherwise use Niantic's Computers without authorization.

222.    As a direct and proximate result of defendants' unlawful conduct, defendants have caused and continue to cause damage to Niantic in an amount to be proven at trial. Niantic is also entitled to recover its reasonable attorneys' fees pursuant to California Penal Code § 502(e).

223.     On information and belief, defendants' misconduct was willful and malicious in that it was done with the intent to injure Niantic's business and improve defendants' business, and in disregard and derogation of Niantic's rights and the rights of legitimate players of Niantic's games. Niantic is therefore entitled to punitive damages pursuant to California Penal Code § 502(e)(4).

224.     In addition, Niantic has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, Niantic is entitled to injunctive relief.

## COUNT TWELVE
**Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)**
**(Against All Defendants)**

225.     Niantic realleges and incorporates by reference all of the preceding paragraphs.

226.     As detailed above, defendants have engaged in unlawful conduct by, among other things, accessing Niantic's Computers without authorization and obtaining information from Niantic's Computers, or conspiring to do so, even after Niantic expressly revoked defendants' limited license to access Niantic's Computers, in violation of the Computer Fraud and Abuse Act and the California Comprehensive Computer Data Access and Fraud Act.

227.     In addition or alternatively, defendants have engaged in unfair conduct by knowingly and intentionally designing and using the Cheating Programs to access, obtain, and commercially exploit proprietary game-related data from Niantic's servers, without permission or authorization from Niantic.

228.     In addition or alternatively, defendants have engaged in unfair conduct by knowingly and intentionally trading on the popularity of Niantic's games, including by using the names of Niantic's games to market the Cheating Programs, and distributing and advertising their Cheating Programs using names similar to Niantic's games.

229.     In addition or alternatively, defendants have engaged in fraudulent conduct by knowingly and intentionally using the names of Niantic's games to market the Cheating Programs, and distributing and advertising their Cheating Programs using names similar to

33

Niantic's games, thereby suggesting, falsely, that the Cheating Programs are affiliated with, sponsored by, or approved by Niantic.

230.     As a direct and proximate result of defendants' conduct, defendants have caused damage to Niantic in an amount to be proven at trial. Niantic is entitled to recover from defendants such damages and any gains, profits, and advantages obtained as a result of the violations alleged above.

231.     In addition, Niantic has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, Niantic is entitled to injunctive relief.

## COUNT THIRTEEN
### Breach of Contract
### (Against All Defendants)

232.     Niantic realleges and incorporates by reference all of the preceding paragraphs.

233.     Each of the defendants, or agents for each of the defendants, knowingly and willingly agreed to the current version of Niantic's Terms of Service or a similar version of Niantic's Terms of Service, and is therefore bound by Niantic's Terms of Service.

234.     Niantic's Terms of Service create a valid and enforceable contract.

235.     Niantic has fully performed or tendered all performance required under the Terms of Service.

236.     As alleged above, defendants have breached their duties under Niantic's Terms of Service, including but not limited to their duties to refrain from some or all of the following conduct:

      a.  Cheating, which includes "[a]ccessing Services in an unauthorized manner (including using modified or unofficial third party software)" and "[u]sing any techniques to alter or falsify a device's location (for example through GPS spoofing)";

      b.  "[C]opy[ing], modify[ing], or creat[ing] derivative works based on" Niantic's mobile apps;

      c.  "Extract[ing], scrap[ing], or index[ing] [Niantic's] Services or Content (including information about users or gameplay)";

      d.  "[U]s[ing] [Niantic's] Services or Content, or any portion thereof, for any commercial purpose or in a manner not permitted by these Terms"; and

e.  "[B]ypass[ing], remov[ing], deactivat[ing], descrambl[ing], or otherwise circumvent[ing] any technological measure implemented by Niantic or any of Niantic's providers or any other third party (including another user) to protect [Niantic's] Services or Content"; and

f.  "[S]ubmit[ting] fake, falsified, misleading, or inappropriate data submissions."

237.   Niantic is entitled to recover compensatory and consequential damages resulting from defendants' breaches of their contractual duties.

**COUNT FOURTEEN**
**Intentional Interference with Contractual Relations**
**(Against All Defendants)**

238.   Niantic realleges and incorporates by reference all of the preceding paragraphs.

239.   Through Niantic's Terms of Service, Niantic enters into valid contractual agreements with its users.

240.   The contractual agreements between Niantic and its users prohibit those users from, among other things, cheating while playing Niantic's games.

241.   Defendants knew or should have known of the valid contractual agreements between Niantic and Niantic's users.

242.   Defendants engaged in intentional acts designed to induce and encourage Niantic's users to breach and act contrary to their valid contractual agreements with Niantic, including by providing the Cheating Programs and/or the computer code that defendants refer to as the Global++ "dynamic library," and enticing and enabling users to employ the Cheating Programs to cheat within Niantic's games.

243.   Defendants' intentional acts, as described above, have caused actual breaches and disruption of the contractual relations between Niantic and its users.

244.   As a direct and proximate result of defendants' misconduct, Niantic has suffered damages and is entitled to monetary relief in an amount to be proven at trial.

245.   In addition, Niantic has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by defendants. Accordingly, Niantic is entitled to injunctive relief.

35

1

## VIII.   PRAYER FOR RELIEF

2   WHEREFORE, Niantic prays for the following relief:

3   A.      For injunctive relief, as follows: A preliminary and permanent injunction enjoining

4   and restraining defendants and all persons, firms and corporations acting in concert with them,

5   during the pendency of this action and thereafter perpetually from:

6       1.      Acquiring or copying without authorization any portion of the mobile apps

7   developed and published by Niantic and used to play Niantic's location-based augmented

8   reality games, including Niantic's Client Code;

9       2.      Reverse engineering, decompiling, or disassembling Niantic's mobile apps;

10       3.      Creating derivative works based on any portion of Niantic's games, mobile

11   apps, and Client Code, including without limitation the Cheating Programs;

12       4.      Distributing, selling, renting, leasing, or otherwise trafficking in copies of

13   Niantic's Client Code or any apps or computer programs that include any portion of

14   Niantic's Client Code, including without limitation the Cheating Programs;

15       5.      Retaining any portion of Niantic's mobile apps, including Niantic's Client

16   Code;

17       6.      Cheating or enabling cheating within Niantic's mobile games, including

18   through the Cheating Programs;

19       7.      Accessing Niantic's network, computers, and servers, including the

20   computers and servers that enable users to play Niantic's games via Niantic's mobile

21   apps, by any direct or indirect means or method;

22       8.      Extracting, scraping, or indexing Niantic's POI Data, Niantic's Spawn

23   Data, or any other game-related data;

24       9.      Retaining Niantic's POI Data, Niantic's Spawn Data, or any other game-

25   related data;

26       10.      Using Niantic's Client Code, or any other aspect of Niantic's mobile apps,

27   mobile games, or other services or content, for any commercial purpose;

28       11.      Violating Niantic's Terms of Service;

1          12.      Inducing or attempting to induce Niantic's users to breach or act contrary

2   to their valid contractual agreements with Niantic, including by providing the Cheating

3   Programs and enticing and enabling users to employ the Cheating Programs to cheat

4   within Niantic's games;

5          13.      Inducing, causing, or otherwise materially contributing to defendants'

6   customers' creation of unauthorized copies of Niantic's Client Code, including through

7   downloads of the Cheating Programs, and defendants' customers' use of Niantic's Client

8   Code in a manner that exceeds the scope of their license to use Niantic's Client Code;

9          14.      Inducing, causing, or otherwise materially contributing to any party's

10  acquiring, copying, or retaining of Niantic's POI Data; and

11         15.      Participating or assisting in any such activity;

12     B.      For an order requiring the seizure and impoundment of all copies of the Cheating

13  Programs, as well as all articles by means of which the Cheating Programs may be reproduced,

14  and all devices or products in defendants' custody or control that are involved in the

15  circumvention, bypass, or defeat of the technical security measures that prevent unauthorized

16  parties from accessing, copying, and modifying Niantic's Client Code;

17     C.      For an order requiring defendants to provide to Niantic a complete copy of any of

18  Niantic's POI Data, Niantic's Spawn Data, or any other game-related data in defendants'

19  possession, custody, or control, and requiring defendants thereafter to permanently destroy all

20  such data and provide to Niantic and to this Court a certificate of destruction;

21     D.      For an award to Niantic for all damages it has sustained and will sustain, and any

22  gains, profits and advantages obtained by defendants attributable to their wrongful conduct as

23  alleged above;

24     E.      For an award to Niantic for statutory damages based upon defendants' willful acts

25  of infringement pursuant to the Copyright Act;

26     F.      For an award to Niantic for punitive or exemplary damages based upon

27  defendants' willful and malicious violations of the California Comprehensive Computer Data

28  Access and Fraud Act;

G.      For an award to Niantic of reasonable costs, including reasonable attorney's fees;

H.      For pre- and post-judgment interest on the foregoing, as allowed by law; and

I.      For such other, further and different relief as the Court deems just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Niantic demands a trial by jury on all issues so triable in this action.

DATED:  February 7, 2020             **PERKINS COIE LLP**

By:    */s/ Ryan Spear*
Ryan Spear
RSpear@perkinscoie.com

Attorneys for Plaintiff Niantic, Inc.

38