PAGES 1 - 31

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE JON S. TIGAR, JUDGE**

| | | |
|---|---|---|
| NIANTIC, INC., | ) | |
| | ) | |
| PLAINTIFF, | ) | NO. C-19-3425 JST |
| | ) | |
| VS. | ) | WEDNESDAY, JANUARY 29, 2020 |
| | ) | |
| GLOBAL ++, ET AL., | ) | OAKLAND, CALIFORNIA |
| | ) | |
| | ) | MOTION TO DISMISS |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**  PERKINS COIE LLP
700 THIRTEENTH ST. N.W., SUITE 600
WASHINGTON, DC 20005
BY:  TODD M. HINNEN, ESQUIRE

PERKINS COIE
1201 THIRD AVENUE, SUITE 4900
SEATTLE, WASHINGTON 98101
BY:  RYAN SPEAR, ESQUIRE

**ALSO PRESENT:**  DEVON HANLEY COOK,
DIRECTOR OF LITIGATION, NIANTIC

**FOR DEFENDANT:**  POLSINELLI
1661 PAGE MILL ROAD, SUITE A
PALO ALTO, CALIFORNIA 94304
BY:  FABIO E. MARINO, ESQUIRE

POLSINELLI, LLP
THREE EMBARCADERO CENTER, STE.2400
SAN FRANCISCO, CA 94111
BY:  JOSHUA L. RAYES, ESQUIRE

**REPORTED BY:**  DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
OFFICIAL COURT REPORTER
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

<u>WEDNESDAY, JANUARY 29, 2020</u>                    <u>3:01 P.M.</u>

1

2                          P R O C E E D I N G S

3                                O0O

4          **THE CLERK:**  YOUR HONOR, NOW CALLING CIVIL MATTER

5     19-3425 NIANTIC, INC. V. GLOBAL++, ET AL.

6        IF COUNSEL COULD COME FORWARD AND STATE THEIR APPEARANCES

7     FOR THE RECORD.

8          **MR. HINNEN:**  GOOD AFTERNOON, YOUR HONOR.  I'M TODD

9     HINNEN FROM THE LAW FIRM OF PERKINS COIE.  WITH ME AT

10    COUNSELS' TABLE TODAY IS MY PARTNER RYAN SPEAR AND MY CLIENT

11    DEVON HANLEY COOK.

12          **THE COURT:**  VERY GOOD.  WELCOME.

13          **MR. HINNEN:**  THANK YOU, YOUR HONOR.

14          **MR. MARINO:**  GOOD AFTERNOON, YOUR HONOR.  FABIO

15    MARINO AND JOSHUA RAYES FROM POLSINELLI, FOR THE DEFENDANT, AT

16    LEAST THE DEFENDANTS NAMED AT THE TIME THAT THIS MOTION WAS

17    FILED.

18          **THE COURT:**  VERY GOOD.  WELCOME.

19        YOU HAVE A CASE MANAGEMENT CONFERENCE ON CALENDAR NEXT

20    WEEK.  I AM GOING TO TALK ABOUT ALL OF THE CASE MANAGEMENT

21    ISSUES I CAN THINK OF RIGHT NOW.  AND THEN IF I FORGET ANY, WE

22    WILL COME BACK AND HAVE A CONFERENCE NEXT WEEK.  I DON'T THINK

23    WE ARE GOING TO NEED ONE.

24        WHEN I'M DONE DOING THAT, I WILL TAKE ARGUMENT FROM THE

25    DEFENDANT FIRST EVEN THOUGH IT'S THE PLAINTIFF'S MOTION.

1        LET ME RAISE IN NO PARTICULAR ORDER THE CASE MANAGEMENT

2    ISSUES THAT COME TO MY MIND.

3        FIRST, I'M NOT SURE WHETHER AN ADMINISTRATIVE MOTION WAS

4    THE RIGHT VEHICLE TO VACATE TODAY'S HEARING OR NOT, OR IT

5    NEEDED TO BE A NOTICED MOTION OR REQUEST FOR AN ORDER

6    SHORTENING TIME.  THERE WAS SO LITTLE TIME, I DON'T KNOW THAT

7    IT WOULD HAVE MATTERED.

8        I ACTUALLY TEND TO THINK PROBABLY IT WAS THE LATTER, BUT

9    THAT'S NEITHER HERE NOR THERE.  THE CASES THAT THE PLAINTIFFS

10   CITED IN OPPOSITION TO THE MOTION ARE CORRECT.  SO THAT MOTION

11   IS DENIED AND WE WILL GO AHEAD AND HAVE A HEARING ON THIS

12   MOTION.

13       I THINK THE PLAINTIFF MIGHT MISUNDERSTAND THE INTERPLAY

14   BETWEEN THE COURT'S SCHEDULING ORDER AND RULE 15 AND RULE 16

15   OF THE FEDERAL RULES OF CIVIL PROCEDURE.  THE FILING OF A

16   FIRST AMENDED COMPLAINT AFTER THE FILING OF AN ANSWER IS

17   INEFFECTIVE WITHOUT THE STIPULATION OF YOUR OPPONENT OR A

18   COURT ORDER, NEITHER OF WHICH THE PLAINTIFF HAS.

19       AND SO THAT'S OKAY.  THEY DON'T REALLY CARE ON THE OTHER

20   SIDE.  AS I READ THEIR PAPERS, THEY ARE PREPARED TO GO FORWARD

21   AND THEY HAVE THINGS THEY WANT DO WITH THEIR ANSWER.  AND SO

22   ALSO, BECAUSE I WILL MAKE THE OBSERVATION, JUST SO I'M NOT

23   CHUMMING THE WATER FOR THE OPPOSITION, IF ONE WERE TO CONSTRUE

24   THE FILING OF A FIRST AMENDED COMPLAINT PRIOR TO THE DEADLINE

25   SET BY THE SCHEDULING ORDER AS A MOTION FOR LEAVE TO FILE A

1    FIRST AMENDED COMPLAINT, YOU WOULDN'T EVEN HAVE TO DEMONSTRATE

2    GOOD CAUSE.

3       THAT'S THE EFFECT OF RULES 15 AND 16.  I DON'T KNOW IF I

4    AM BEING CLEAR.  I AM HAPPY TO EXPLAIN THIS FURTHER IF I NEED

5    TO.  IT MEANS THAT HAD YOU FILED SUCH A MOTION, IT ALMOST

6    CERTAINLY WOULD HAVE BEEN GRANTED.

7       SO MY VERY STRONG SUGGESTION TO BOTH OF YOU IS THAT YOU

8    TALK TO EACH OTHER ABOUT SETTING A SCHEDULE FOR THE FILING OF

9    A STIPULATION, ASSUMING THAT IT WOULD BE STIPULATED, TO FILE A

10   FIRST AMENDED COMPLAINT AND THEN A SCHEDULE FOR A FILING OF

11   WHATEVER THE RESPONSE TO THAT WOULD BE, A MOTION, AN AMENDED

12   ANSWER, WHAT HAVE YOU.

13      I EXPECT THAT YOU WILL GET SOME GUIDANCE VERY SHORTLY BY

14   WAY OF RULING ON THE PENDING MOTION IN TERMS OF THE

15   COUNTERCLAIMS AND WHAT MORE MIGHT NEED TO BE ALLEGED, AND THAT

16   SORT OF THING.  ONE OF THE THINGS I WOULD LIKE TO DO IS FIGURE

17   OUT A DEADLINE FOR ALL OF THAT.

18      I HAVEN'T GONE BACK... I DON'T NEED TO GO BACK ON THE

19   DOCKET, I HAVE THE DOCKET IN FRONT OF ME.

20      I HAVE DEFENDANTS' ANSWER THAT THEY FILED ON OCTOBER 24TH.

21   THE ANSWER IS FILED SOLELY ON BEHALF OF DEFENDANTS RYAN HUNT

22   AND ALEN HUNDUR.  AND MR. MARINO HAS BEEN CAREFUL EVERY TIME

23   HE'S GOTTEN THE CHANCE TO SAY GLOBAL++ DOESN'T EXIST, THERE'S

24   NO FORUM.  I DON'T KNOW WHETHER IT HAS ANY FORUM OR NOT, BUT

25   AT THE MOMENT THEY HAVEN'T ANSWERED.

1    BUT WHAT WE CANNOT HAVE IN THIS LITIGATION GOING FORWARD

2    IS A DEFENDANT WHO HAS NOT RESPONDED TO THE COMPLAINT OR AS --

3    OR WHOSE DEFAULT HAS NOT BEEN TAKEN.  AND I DON'T KNOW WHAT TO

4    DO ABOUT THE ALLEGATION THAT GLOBAL++ DOESN'T ACTUALLY EXIST.

5    I'M NOT THE LAWYER.  THE LAWYER HAS TO FIGURE THAT OUT.

6    BUT ANOTHER THING THAT I WANT YOU TO PACK INTO YOUR

7    SCHEDULE THAT YOU'RE GOING TO MEET AND CONFER ABOUT IS, BY

8    WHAT DEADLINE -- WELL, A, WHAT YOU WILL DO TO ADDRESS THIS

9    ISSUE, NOT ONLY AS TO GLOBAL++... IT LOOKS LIKE ALL THE

10   OTHER -- I KNOW FROM THE DEFENDANTS' OWN PAPERS, THEY THINK

11   THAT IT HAVEN AND APP HAVEN ARE REAL THINGS.

12   BUT IF WE ARE GOING TO HAVE THIS ISSUE WITH REGARD TO ANY

13   OTHER ENTITY, GLOBAL++ AND THAT ENTITY, WHAT IS TO BE DONE AND

14   BY WHEN IS IT TO DONE.

15   THE PARTIES NEED TO MOVE THEIR ENE DEADLINE TO ACCOMMODATE

16   THE ENE PERSON'S SCHEDULE OF FEBRUARY 6.  THAT'S FINE.  SUBMIT

17   A STIPULATION AND I WILL SIGN IT.

18   THE DEFENDANTS TAKE THE POSITION THAT THEY HAVE THE

19   ABILITY TO COMPEL ARBITRATION IN THIS CASE.  THE PLAINTIFFS

20   TAKE THE POSITION THAT THERE'S ALREADY BEEN TOO MUCH WATER

21   UNDER THE BRIDGE AND THAT SUCH A MOTION WOULD BE DENIED.  I

22   DON'T HAVE ANY OPINION ABOUT THAT, BUT I KNOW THIS; THAT

23   MOTION DOESN'T GET ANY BETTER BY WAITING TO BE FILED.  BECAUSE

24   ALL IT DOES IS GIVE YOUR OPPONENT STRENGTH TO MAKE THE

25   ARGUMENT THAT I JUST REFERRED TO.  SO YOU NEED TO SET A

1    DEADLINE TO FILE A MOTION TO COMPEL ARBITRATION.  I DON'T

2    THINK I CAN STOP THE DEFENDANT FROM FILING IT LATER, BUT IT

3    WOULD SEND A CLEAR MESSAGE TO THE DEFENDANT.  IF YOU FILE IT

4    AFTER THIS DATE, I'M ALMOST CERTAIN THAT IT CAME TOO LATE AND

5    DENY IT ON THAT BASIS.  SO LET'S FIGURE OUT WHAT THAT DATE IS.

6        MR. MARINO.

7            **MR. MARINO:**  MAY I VOLUNTEER A PIECE OF INFORMATION

8    THE COURT DOESN'T HAVE.

9        SO WE DID REQUEST ARBITRATION AND AAA REJECTED IT STATING

10   THAT NIANTIC HAD NOT COMPLIED WITH ITS OBLIGATIONS WITH AAA.

11   I AM IN THE PROCESS OF GETTING A BETTER EXPLANATION BY AAA AS

12   TO WHY THEY REJECTED THE REQUEST.

13           **THE COURT:**  DID YOU HAVE TO ACKNOWLEDGE IN THAT

14   CORRESPONDENCE WITH AAA THAT YOU WERE SUBJECT TO THE TERMS OF

15   SERVICE?

16           **MR. MARINO:**  I BELIEVE SO, YES.

17           **THE COURT:**  SO THERE'S NO -- I'M JUST THINKING OUT

18   LOUD; THERE'S NO DEBATE ABOUT THAT IN THIS CASE?  YOU ALL

19   ACKNOWLEDGE THAT YOU ARE SUBJECT TO THE TERMS OF SERVICE?

20           **MR. MARINO:**  THAT'S A GREAT QUESTION.

21           **THE COURT:**  IT'S KIND OF WHERE YOU WIND UP.  YOU WANT

22   TO INVOKE THAT ARBITRATION CLAUSE, YOU ARE SORT OF CLUTCHING

23   THAT CONTRACT TO YOUR CHEST.

24           **MR. MARINO:**  RIGHT.  TO BE PRECISE, I BELIEVE

25   MR. HUNDUR REQUESTED ARBITRATION.

1          **THE COURT:**  I SEE.

2          **MR. MARINO:**  I DON'T THINK MR. HUNT DID, BUT I NEED

3    TO CHECK ON THAT.

4          **THE COURT:**  WELL, THAT ALSO WOULD RAISE SOME

5    COMPLICATED QUESTIONS.  AND THAT IS THAT WHEN ONE PARTY IS

6    SUBJECT TO A STAY OF ANY KIND, BANKRUPTCY STAY, ARBITRATION

7    STAY, WHAT HAVE YOU, THEN DIFFERENT PARTIES HAVE DIFFERENT

8    INCENTIVES FOR WHO WANTS TO MOVE FORWARD SEPARATELY AND WHO

9    WANTS THE WHOLE CASE TO STOP.

10        SO THE TWO OF YOU NEED TO SIT DOWN AND HAVE A CONVERSATION

11   ABOUT WHAT THAT PATH LOOKS LIKE AND WRITE THAT DOWN AND PUT

12   THAT IN THE SCHEDULE.

13         **MR. MARINO:**  OKAY.  UNDERSTOOD.

14         **THE COURT:**  I CAN'T TELL WHAT THE MEET AND CONFER

15   RELATIONSHIP BETWEEN YOU IS AND I'M NOT ASKING YOU TO TELL ME,

16   BECAUSE WHENEVER I ASK ANYBODY IN THIS ROOM, THEY TELL ME IT'S

17   GREAT, SO I AM NOT ASKING YOU.  I REALLY MEAN IT.  I DON'T

18   WANT YOU TO ADDRESS THAT SUBJECT.

19        I'M JUST SAYING THAT, FOR EXAMPLE, WE PREPARED VERY HARD

20   FOR TODAY.  I DID THAT AND MY LAW CLERK DID THAT.  SO IT ALL

21   WORKED OUT.  WE ARE GOING TO HAVE OUR HEARING, BUT WHEN THE

22   FIRST TWO THINGS THAT HAPPENED WERE, I GOT AN AMENDED

23   COMPLAINT ON JANUARY 24TH AND A MOTION THAT SAID WE NEED TO

24   BLOW UP TODAY'S HEARING, AND I THOUGHT, GOSH, IF SOMEONE HAD

25   FILED THAT TEN DAYS EARLIER, THAT WOULD HAVE BEEN BETTER, THAT

1   WASN'T GOOD.  IT WASN'T GOOD BECAUSE THERE WAS NO NEED FOR IT,

2   REALLY.

3        AND SO WHAT I WANT TO JUST TELL YOU IS, WE ARE GOING TO

4   WORK REALLY HARD ON YOUR CASE.  WE ARE GOING TO TRY TO MAKE IT

5   COME OUT THE RIGHT WAY.  I JUST WANT YOU TO THINK A LITTLE BIT

6   ABOUT THE OPPORTUNITY COST TO THE COURT'S TIME, AND WHAT

7   HAPPENED IN THE LAST COUPLE OF DAYS IS A FREEBIE.  AS IT

8   TURNED OUT, TODAY'S HEARING NEEDED TO GO FORWARD ANYWAY.  BUT

9   I DO WANT YOU TO SORT OF WORK OUT THESE SCHEDULING THINGS.

10       THOSE ARE MY CASE MANAGEMENT ISSUES.  DO WE HAVE OTHER

11  ONES?

12            **MR. HINNEN:**  NO, YOUR HONOR, I DON'T BELIEVE SO.

13            **MR. MARINO:**  NOT AT THIS TIME.

14            **THE COURT:**  OKAY.  WHAT'S A GOOD DEADLINE FOR YOU TO

15  SUBMIT A PROPOSED SCHEDULE THAT CONTAINS THESE ADDITIONAL

16  DECLINES?

17            **MR. HINNEN:**  A WEEK FROM TODAY, YOUR HONOR?

18            **THE COURT:**  SURE.  MADAME CLERK, IS THAT

19  FEBRUARY 5TH?

20            **THE CLERK:**  YES, SIR.

21            **THE COURT:**  FEBRUARY 5TH, 2020.

22       AND YOU MIGHT NOT BE ABLE TO REACH AGREEMENT.  THAT

23  HAPPENS SOMETIMES.  JUST SUBMIT COMPETING PROPOSALS.  I WILL

24  PICK ONE WITHOUT MODIFICATION.  SO JUST TRY TO BE THE MOST

25  REASONABLE PERSON, AND THEN YOURS WILL BE THE ONE THAT IS

```
1   SELECTED.
2        DOES ANYONE, IN LIGHT OF THAT, SEE THE NEED FOR FURTHER
3   CASE MANAGEMENT NEXT WEEK?
4             MR. MARINO:  NO, YOUR HONOR.
5             MR. HINNEN:  NO, WE DON'T EITHER, YOUR HONOR.
6             THE COURT:  THAT CONFERENCE IS VACATED.
7        WOULD IT BE USEFUL FOR ME TO HAVE YOU BACK IN FOR ANOTHER
8   CASE MANAGEMENT CONFERENCE IN 90 DAYS OR SO JUST TO TAKE
9   EVERYBODY'S TEMPERATURE OR SHOULD I WAIT FOR ANOTHER MOTION TO
10  BE FILED?
11            MR. HINNEN:  I THINK THERE WILL BE A NUMBER OF
12  SUBSTANTIAL DEVELOPMENTS IN THE CASE BETWEEN NOW AND THEN,
13  YOUR HONOR, SO PERHAPS IF THE PARTIES FEEL THAT'S NECESSARY,
14  SUGGESTING THAT.  SO MAYBE A MOTION WOULD BE APPROPRIATE UNDER
15  THOSE CIRCUMSTANCES.
16            THE COURT:  I THINK WHAT I HEAR YOU SAYING IS,
17  PROBABLY THERE'S GOING TO BE MORE MOTION PRACTICE.  IF YOU
18  NEED A CMC, I'LL ASK FOR ONE.
19            MR. HINNEN:  THERE MAY BE.  AND THERE MAY BE
20  INTERVENING TIME WITH THE ENE THAT MAY SUBSTANTIALLY AFFECT
21  WHERE THE PARTIES ARE.  SO I THINK IT MAY MAKE SENSE TO WAIT
22  UNTIL THOSE ISSUES PLAY OUT BEFORE WE DETERMINE WHEN THE BEST
23  TIME FOR ANOTHER CASE MANAGEMENT CONFERENCE IS, YOUR HONOR.
24            THE COURT:  MR. MARINO, WHAT DO YOU THINK?
25            MR. MARINO:  WE ANTICIPATE FILING ONE MOTION FOR SURE
```

```
1   BEFORE THE 90 DAYS.  SO I THINK IT MAY MAKE SENSE FOR THE CMC

2   AT THAT TIME.

3           THE COURT:  THAT'S FINE.  I DON'T NORMALLY DO WHAT I

4   DID TODAY.  IT'S JUST THAT I WANTED TO SAVE EVERYBODY A TRIP

5   IN A WEEK.

6       I'LL SAY THIS:  I'M NOT GOING TO SET ANOTHER CMC NOW.  AS

7   MR. HINNEN SAYS, YOU'RE GOING TO BE IN FRONT OF AN ENE

8   EVALUATOR SOON ANYWAY.  YOU'LL GET A LITTLE GUIDANCE FROM

9   WHATEVER ORDER ARISES FROM TODAY'S HEARING.  IF YOU NEED A

10  CMC, ALL YOU HAVE TO DO IS SEND A JOINT EMAIL TO MS. LEE AND

11  WE WILL GET YOU ON CALENDAR PRETTY QUICKLY.

12          MR. MARINO:  THANK YOU, YOUR HONOR.

13          MR. HINNEN:  THANK YOU, YOUR HONOR.

14          THE COURT:  GOOD.

15      MR. MARINO, LET ME HEAR FROM YOU WITH REGARD TO THIS

16  MOTION.

17          MR. MARINO:  OKAY.

18      SO, YOUR HONOR, THE -- OBVIOUSLY THERE ARE THREE PARTS, I

19  GUESS, TO THE MOTION, COUNTERCLAIMS, AFFIRMATIVE DEFENSES, AND

20  REALLY WITHIN THE COUNTERCLAIMS THERE'S TWO KINDS, THERE'S

21  DECLARATORY JUDGMENT COUNTERCLAIMS AND AFFIRMATIVE

22  COUNTERCLAIMS.

23      I THINK THAT THE POINT WE MADE IN THE REQUEST -- THE

24  REASON WHY WE SAID IT WAS MOOT WITH RESPECT TO AT LEAST THE

25  AFFIRMATIVE DEFENSES SINCE THEY DID FILE AN AMENDED COMPLAINT,
```

```
1    I THINK THE AFFIRMATIVE DEFENSES THAT WERE PLEAD BY TWO OF THE

2    DEFENDANTS, I BELIEVE THOSE ARE MOOT, AND THEY WILL NEED TO BE

3    REASSERTED IN THE ANSWER WHEN ALL OF THE DEFENDANTS ANSWER.

4         SO I'M GOING TO FOCUS PRIMARILY ON THE COUNTERCLAIMS FOR

5    PURPOSES OF TODAY'S MOTION BECAUSE I DO APPRECIATE THEIR POINT

6    THE COUNTERCLAIMS ARE NOT NECESSARILY RENDERED MOOT BY THE

7    FILING OF AN AMENDED COMPLAINT BECAUSE THEY ARE COUNTERCLAIMS.

8         OUR POINT WAS MORE OF A PRACTICAL NATURE, WHICH IS WE

9    ALREADY KNOW BASED ON EVENTS THAT HAVE TRANSPIRED SINCE THE

10   COUNTERCLAIMS WERE FILED AND THE MOTION TO DISMISS WAS FILED,

11   THERE ARE ADDITIONAL FACTS WE WOULD LIKE TO PLEAD IN SUPPORT

12   OF THE COUNTERCLAIMS.

13        SO WE SUGGEST THAT IT MIGHT BE MORE EXPEDITIOUS TO TAKE

14   THE MOTION TO DISMISS UP AT ONE TIME.  SINCE THE COURT HAS

15   ALREADY INVESTED THE TIME AND TO THE EXTENT HAS GUIDANCE, IT

16   WILL BENEFIT BOTH PARTIES --

17                  (SIMULTANEOUS COLLOQUY)

18        THE COURT:  WELL, MY -- DIANE, I'M SORRY FOR TALKING

19   OVER COUNSEL.

20        MY GUESS IS THAT WHAT THE -- MY GUESS BASED ON MY

21   RECOLLECTION OF THE OPPOSITION TO THE MOTION TO VACATE THE

22   HEARING THAT WAS FILED IS THAT WHAT THE -- AND THERE'S NOT A

23   FIRST AMENDED COMPLAINT IN THE CASE YET.  I MEAN, ONE HAS BEEN

24   WRITTEN, BUT THAT IS NOT THE OPERATIVE PLEADING IN THIS CASE

25   AS I SIT HERE RIGHT NOW.
```

1        **MR. MARINO:** RIGHT.

2        **THE COURT:** I THINK WHAT THE PLAINTIFFS ARE HOPING

3    FOR IS SOME CLARITY ABOUT WHAT LEVEL OF SPECIFICITY IS

4    REQUIRED TO BE PLED IN THE AFFIRMATIVE DEFENSES AND A RULING

5    ON THEIR ANTI-SLAPP ARGUMENTS. I THINK THAT'S WHY THEY SHOWED

6    UP TODAY. AND MR. HINNEN IS NODDING.

7        SO I THINK THAT'S REALLY PROBABLY WHERE YOU SHOULD FOCUS

8    YOUR ENERGY. AND YOU'RE RIGHT, THE PARTIES ARE GOING TO REACH

9    AGREEMENT ABOUT A SCHEDULE FOR A FIRST AMENDED COMPLAINT AND

10   EITHER AN AMENDED ANSWER OR A MOTION TO DISMISS, OR WHAT HAVE

11   YOU, AND YOU WILL HAVE A CHANCE TO ADD SOME DETAILS.

12       **MR. MARINO:** AND I AGREE, YOUR HONOR. SO MY

13   UNDERSTANDING IS THE SAME. SO I WILL FOCUS ON THOSE

14   ARGUMENTS.

15       SO THE FIRST POINT I WANT TO MAKE IS THAT THE AFFIRMATIVE

16   COUNTERCLAIMS ARE NOT BASED ON NIANTIC'S FILING OF THE

17   LAWSUIT. WE AGREE THAT THE FILING OF THE LAWSUIT IS

18   PRIVILEGED AS SUCH. IN FACT, WHEN I READ THEIR MOTION,

19   PARTICULARLY THEIR REPLY, I WENT BACK AND REREAD THE

20   COUNTERCLAIMS TO SAY, WAIT A SECOND, DID WE ACTUAL FILE A

21   COUNTERCLAIM THAT SAYS THEY COMMITTED A TORT BY FILING A

22   LAWSUIT? AND WE DIDN'T.

23       IN THE 60 PARAGRAPHS IN THE COUNTERCLAIMS, NOT ONE GOES TO

24   THE FILING OF THE COMPLAINT OR A PUBLICATION OF ANY KIND THAT

25   SIMPLY SAYS, HEY, WE FILED THE LAWSUIT, AND THIS IS WHAT WE

1    ARE ALLEGING IN THE LAWSUIT.

2        WHAT DRIVES THE COUNTERCLAIM IS THE FACT THAT NIANTIC,

3    THROUGH ITS ACTIONS, FORCED MY CLIENT TO SHUT DOWN THEIR

4    WEBSITE.  AND THAT IS NOT SIMPLY A COMMUNICATION THAT THEY

5    FILED THE LAWSUIT.

6        THE WEBSITE DOESN'T ONLY -- IT IS ALLEGED IN THE COMPLAINT

7    TO PROVIDE LINKS TO TWO OR THREE GAMES THAT NIANTIC CLAIMS

8    RIGHTS IN, BUT IT ALSO PROVIDES LINKS TO AT LEAST FIVE OTHER

9    GAMES, FIVE OTHER APPLICATIONS THAT HAS NOTHING TO DO WITH

10   NIANTIC.  AND SO MY UNDERSTANDING OF THIS COURT'S PRELIMINARY

11   INJUNCTION WOULDN'T COVER ANY ACTIVITY WITH RESPECT TO THOSE

12   GAMES IN WHICH NIANTIC MAKES NO CLAIM.

13       THAT'S THROUGH BOTH THE ORIGINAL COMPLAINT AND IT'S

14   THROUGH THE FIRST AMENDED COMPLAINT THAT THEY FILED WITH THE

15   COURT THAT THEY HAVEN'T SERVED YET.

16       SO AT A MINIMUM, THERE IS NOT AN ANTI-SLAPP ISSUE WHEN WE

17   FOCUS ON THE ALLEGATIONS -- I MEAN THE ALLEGATION IN THE

18   COUNTERCLAIM THAT THE TORTIOUS ACTS ARE WITH RESPECT TO

19   FORCING THE SHUTTING DOWN OF THE WEBSITE.

20       AND THEN WE GO ON TO EXPLAIN -- AND THIS IS, TO BE

21   PRECISE, PARAGRAPHS 37 TO 42 OF THE COUNTERCLAIMS.  AND ALSO

22   PARAGRAPH 52 WHICH ACTUALLY MAKES THE ULTIMATE POINT ABOUT THE

23   FACTS.

24       SO THAT IS REALLY THE CRUX OF THE COUNTERCLAIMS, THE FACT

25   THAT WE WERE FORCED, FIRST BY THE DEMAND LETTER PLAINTIFF

1    SENT, AND SECOND, BY THEIR LETTER TO THE DOMAIN NAME REGISTRAR

2    TO SHUT DOWN THE ENTIRE WEBSITE.

3        **THE COURT:** TO GO DADDY.

4        **MR. MARINO:** TO GO DADDY, YES.

5    AND BY THE WAY, ONE OF THE REASONS WE ARE GOING TO AMEND

6    THE COUNTERCLAIMS IS AT THE TIME WE FILED THE ORIGINAL ONE, WE

7    DIDN'T HAVE A COPY OF THE LETTER THAT WAS SENT TO GO DADDY.

8    PLAINTIFF HADN'T PRODUCED IT YET. BECAUSE DISCOVERY BEGAN,

9    NOW WE HAVE IT.

10    I WILL NOTE THAT IN THAT LETTER, THEY DON'T SIMPLY ATTACH

11    A COPY OF THE COMPLAINT THEY FILED, THEY GO ON TO ADD THAT MY

12    CLIENT HAS BREACHED THE AGREEMENT WITH GO DADDY. SEPARATE

13    CONTRACT, A CONTRACT NIANTIC IS NOT A PARTY TO; IT'S A

14    CONTRACT BETWEEN MY CLIENT AND GO DADDY, AND THEY SAID IN THE

15    LETTER THEY BREACHED THE CONTRACT WITH YOU.

16    THAT IS NOT PROTECTED PRIVILEGE COMMUNICATION. IT'S GOT

17    NOTHING TO DO WITH THE LAWSUIT. IT'S NOT NECESSARY FOR

18    PURPOSES OF THE LAWSUIT. IT IS A CLASSIC INTERFERENCE WITH

19    SOMEBODY ELSE'S CONTRACT. SO THAT IS ONE OF THE FACTS WE

20    WOULD POINT TO IN DEFENDING AGAINST THE ANTI-SLAPP ARGUMENTS.

21    NOW, NIANTIC HAS SIMPLY SAID AND REQUESTED FROM MY CLIENTS

22    THE SAME REMEDY IT SEEKS IN THE LAWSUIT, TAKE DOWN THE TWO

23    GAMES OR THREE GAMES WE THINK ARE INFRINGING, THAT WOULD HAVE

24    BEEN A COMPLETELY DIFFERENT STORY. WE WOULD NOT HAVE RAISED

25    THE COUNTERCLAIM. AGAIN, I JUST GAVE YOU TWO SPECIFC

1    INSTANCES --

2              **THE COURT:**  IF THEY HAD MADE THAT REQUEST OF YOUR

3    CLIENT OR IF THEY HAD MADE THAT REQUEST TO GO DADDY?

4              **MR. MARINO:**  BOTH.

5              **THE COURT:**  WHY DOES IT MATTER WHAT REQUEST THEY MAKE

6    OF YOU?  YOU EITHER DO IT OR YOU DON'T.  THAT'S A VOLITIONAL

7    ACT ON YOUR CLIENT'S PART.

8         SOMEBODY COMES TO ME AND SAYS, JON, STOP WALKING ON CLAY

9    STREET WHEN YOU COME TO WORK.  THEY DIDN'T MAKE ME DO THAT.

10   THEY SAID I WANT YOU TO DO THAT.  THEN I MAKE A DECISION ABOUT

11   WHETHER OR NOT I'M GOING TO WALK DOWN CLAY STREET.

12        SOMEBODY COMES TO YOUR CLIENT AND SAYS, YOU HAVE TO SHUT

13   DOWN THIS WEBSITE.  THERE ARE PLENTY OF TIMES WHEN PEOPLE

14   WRITE CEASE AND DESIST LETTERS OR DEMAND LETTERS, OR OTHER

15   LETTERS, INCLUDING LEGAL CLAIMS TO ENTITIES WHO THEN JUST TELL

16   THEM TO GO POUND SAND.  SAY WE DON'T THINK YOU HAVE A CLAIM.

17   WE'RE NOT GOING TO AMEND OUR BEHAVIOR IN ANY WAY.  IF YOU FEEL

18   DIFFERENTLY, FILE A LAWSUIT, WE'LL MEET YOU IN COURT.

19        COULDN'T YOUR CLIENT HAVE DONE THAT?

20             **MR. MARINO:**  OBVIOUSLY THEY COULD HAVE.  THEY WEREN'T

21   OBLIGATED TO COMPLY WITH A DEMAND LETTER, BUT THEY CHOSE TO.

22   THAT WAS THE RESULT OF THE DEMAND LETTER THAT EXCEEDED THE

23   SCOPE OF RIGHTS ASSERTED IN THE CASE.

24        NOW, THE OTHER POINT THAT I WAS GOING TO ADD IS THAT

25   OBVIOUSLY, AS THE COURT HAS DISCUSSED, THERE'S A LOT OF

```
1    UNDISPUTED -- VERY DISPUTED ISSUES IN THIS CASE THAT ARE GOING

2    TO NEED TO BE ADDRESSED.  AND WE HAVE PREVIEWED SOME OF THOSE.

3    BUT ONE OF THE ISSUES THAT IS GOING TO AFFECT THE

4    COUNTERCLAIM, THE WHOLE ISSUE OF THE RELATIONSHIP BETWEEN MY

5    CLIENT AND THE SIGNING SERVICES.  IN THE AMENDED -- PROPOSED

6    AMENDED COUNTERCLAIM THEY BRING ONE IN, THEY DON'T ALLEGE ANY

7    FORM OF CORPORATION OR ASSOCIATION BETWEEN MY CLIENTS AND THAT

8    PARTY.  SO THAT'S ANOTHER ISSUE --
```

9    **THE COURT:**  ARE YOU REFERRING TO APP HAVEN?

10    **MR. MARINO:**  APP HAVEN.  IT'S A COMPLETING SEPARATE

11    ENTITY.  MY UNDERSTANDING IS IT'S BASED IN INDIA.  IT'S GOING

12    TO BE AN ISSUE I WILL NEED TO DISCUSS WITH COUNSEL ABOUT HOW

13    THEY PLAN TO SERVE THEM.

14    **THE COURT:**  YOU MEAN IN THE AMENDED COMPLAINT.

15    **MR. MARINO:**  IN THE AMENDED COMPLAINT WHEN THEY SERVE

16    IT.  ONE OF THE ISSUES THAT WE WILL BE LITIGATING IS ARE WE

17    LIABLE FOR THE ACTIONS OF THIS THIRD PARTY JUST BECAUSE WE ARE

18    THE LINK TO THEIR WEBSITE ON OUR WEBSITE.

19    **THE COURT:**  MADAME REPORTER, COUNSEL SAID SIGNING

20    SERVICES, S-I-G-N-I-N-G.

21    **MR. MARINO:**  THANK YOU.

22    SO THAT IS AN ISSUE THAT I THINK WE WILL ALSO ADDRESS IN

23    OUR COUNTERCLAIM.  IT'S NOT A SIMPLE ISSUE.  QUITE FRANKLY, I

24    DID NOT APPRECIATE IT UNTIL RECENTLY.  BECAUSE WHEN YOU SEE A

25    PRINTOUT OF A WEB PAGE WITH A BUTTON THAT SAYS "DOWNLOAD IPA",

1  FRANKLY THERE IS NO WAY OF KNOWING WHAT THAT BUTTON IS

2  POINTING TO.

3       WHEN I SAW THAT OUT THERE, THAT ARGUMENT MADE BY THEM IN

4  THEIR REPLY AND LOOKED AT THE ACTUAL CODE, AND THAT BUTTON

5  DOES NOT POINT TO MY CLIENT'S WEBSITE, IT POINTS TO A

6  THIRD-PARTY WEBSITE.  THAT'S AN ISSUE WE WILL ADDRESS IN THE

7  COUNTERCLAIM BECAUSE THAT, AGAIN, EXCEEDS THE SCOPE OF

8  REMEDIES THAT WOULD BE AVAILABLE TO THE PLAINTIFF IN THIS

9  CASE.

10          THE COURT:  MAYBE WE CAN HAVE SOME THIRD-PARTY

11  INDEMNITY PRACTICE.

12          MR. MARINO:  YOU MIGHT.

13       SO THOSE, I THINK, ARE THE KEY POINTS I WANTED TO MAKE

14  WITH RESPECT TO THE AFFIRMATIVE COUNTERCLAIMS.

15       WITH RESPECT TO THE DECLARATORY JUDGMENT COUNTERCLAIM,

16  FIRST OF ALL, I DON'T THINK ANY OF THE CASES THAT WERE CITED

17  ARE EITHER COPYRIGHT CASES OR PATENT CASES.  I THINK IN A

18  PATENT CASE OR IN A COPYRIGHT CASE, DECLARATORY JUDGMENT

19  COUNTERCLAIMS ARE MADE IN -- CERTAINLY IN EVERY SINGLE CASE

20  I'VE EVER BEEN INVOLVED IN AND THAT'S ALL I DO.

21          THE COURT:  I WOULD AGREE WITH YOU IN PATENT CASES,

22  WHICH THIS IS NOT ONE OF, IT IS MUCH MORE FREQUENTLY THE CASE

23  THAT PEOPLE ARE ALLOWED TO BRING THESE --

24          MR. MARINO:  RIGHT.

25          THE COURT:  -- DECLARATORY JUDGMENT COUNTERCLAIMS.

1    THAT'S TRUE.

2         **MR. MARINO:**  AND I THINK THE REASON IS THIS:  IN A

3    DECLARATORY JUDGMENT ACTION, THE DEFENDANT -- THE COUNTERCLAIM

4    PLAINTIFF IS SEEKING A DECLARATION FROM THE COURT THAT THEY

5    DID NOT ACTUALLY INFRINGE THAT PRODUCT.  THAT IS A

6    DIFFERENT -- WHILE THE PRACTICAL IMPACT MIGHT BE SIMILAR TO

7    WINNING AS A DEFENDANT, IT IS A DIFFERENT THING.

8         THE AFFIRMATIVE CLAIM COULD SIMPLY FAIL BECAUSE THE

9    PLAINTIFF FAILS TO MEET ITS BURDEN.  IT IS NOT A DECLARATION

10   BY THE COURT THAT THE DEFENDANT DIDN'T COMMIT THE TORTIOUS

11   ACT.  AND THAT'S WHY I THINK PEOPLE BRING THEM BECAUSE THERE

12   IS DAMAGE TO THE BUSINESS REPUTATION OF THE DEFENDANT WHEN IT

13   IS ACCUSED OF A TORT, SUCH AS COPYRIGHT INFRINGEMENT.

14        **THE COURT:**  WELL, THAT'S -- I DON'T KNOW WHETHER --

15   I'M NOT SAYING IT'S NOT TRUE IN COPYRIGHT LITIGATION.  I DON'T

16   KNOW IF IT'S TRUE.  MY KNOWLEDGE IS LIMITED TO PATENT CASES.

17        BUT THAT STRIKES ME AS A DISTINCTION OF SUBSTANTIVE

18   PRACTICE, IF THAT'S THE RIGHT PHRASE, AS OPPOSED TO A

19   MEANINGFUL DISTINCTION ABOUT WHAT THAT COUNTERCLAIM DOES FOR

20   THE DEFENDANT WHO BRINGS IT.

21        IN EVERY CASE IN WHICH SOMEONE IS ACCUSED OF A BUSINESS

22   TORT, THEY WOULD LIKE TO CLEAR THEIR NAME, PRESUMABLY,

23   REGARDLESS OF WHETHER THEY HAVE BEEN ACCUSED OF COPYRIGHT

24   INFRINGEMENT, OR PATENT INFRINGEMENT, OR TRADE DISPARAGEMENT,

25   OR TRADE SECRET THEFT, OR WHAT HAVE YOU.  RIGHT?

1    SO THE QUESTION IS, WHAT IS THE -- SO I DON'T KNOW HOW FAR

2    THAT GET ME, I GUESS, IS WHAT I'M SAYING.

3         **MR. MARINO:**  RIGHT.

4    SO, YOUR HONOR, I THINK THE LAST POINT I WANT TO MAKE IS

5    WHAT IS THE REAL IMPACT OF THE WEBSITE BEING TAKEN DOWN.

6    SO MY CLIENTS' SOURCE OF -- FULL SOURCE OF REVENUE IS BY

7    SELLING -- ACTUALLY ACCEPTING DONATIONS, AND IN EXCHANGE FOR

8    THE DONATIONS, THEY PROVIDE AN ACCESS CODE TO THEIR

9    SUBSCRIBERS.

10    THE ACCESS CODE IS GOOD FOR THE CODE THAT MY -- THAT IT

11    DEVELOPS ACROSS ALL OF THESE GAMES.

12         **THE COURT:**  THE ONLY CLIENTS YOU ACKNOWLEDGE --

13         **MR. MARINO:**  MR. HUNT.

14         **THE COURT:**  -- ARE PEOPLE, NOT ENTITIES, RIGHT?

15         **MR. MARINO:**  YES.  THEY WILL CHANGE AS SOON AS THE

16    AMENDED COUNTERCLAIM -- YES.

17         **THE COURT:**  FAIR ENOUGH.  BUT TODAY.

18         **MR. MARINO:**  MR. HUNT.

19         **THE COURT:**  WE ARE NOT TALKING ABOUT THE PRACTICE OF

20    AN ENTITY.

21         **MR. MARINO:**  THAT'S CORRECT.

22         **THE COURT:**  WE ARE TALKING ABOUT THE BEHAVIOR OF A

23    PERSON, RYAN HUNT.

24         **MR. MARINO:**  RIGHT.

25         **THE COURT:**  AND WHAT YOU ARE SAYING IS, THAT IF

1    MR. HUNT GETS A DONATION, HE PROVIDES SOMEBODY WITH A CODE.

2              **MR. MARINO:**  CORRECT.

3              **THE COURT:**  WHAT DOES THAT MEAN?  I DON'T MEAN TO

4    BELABOR THE POINT.  IT'S PROBABLY NOT THAT IMPORTANT FOR

5    TODAY'S PURPOSES, BUT WHAT DOES IT MEAN MR. HUNT GETS A

6    DONATION?

7         WHAT DOES THAT MEAN?  HOW DOES A PERSON, AN INDIVIDUAL

8    PERSON WHO'S NOT A MEMBER OF THE CLERGY OR SOMETHING LIKE

9    THAT, GET A DONATION?  AND IF THEY ARE GIVEN SOMETHING IN

10   EXCHANGE FOR IT, IS IT REALLY A DONATION?  ISN'T IT A

11   COMMERCIAL TRANSACTION?

12        I DON'T MEAN TO BELABOR THE POINT.

13             **MR. MARINO:**  TO BE FAIR, IT IS ACTUALLY THE COMPANY

14   THAT RECEIVES THE DONATION.

15             **THE COURT:**  I AM EXPRESSING SOME SKEPTICISM ABOUT THE

16   WORD "DONATION".  I GUESS THAT'S WHAT I SHOULD SAY.

17             **MR. MARINO:**  THAT'S WHAT THE SERVICE THAT ACTUALLY

18   ACCEPTS THE MONEY ON THEIR BEHALF IS USUALLY CALLED A

19   DONATION.  THE COURT COULD LOOK BEHIND THE PRACTICAL REALITIES

20   AND SAY IT'S A PAYMENT.  I WOULDN'T DISAGREE WITH THAT.

21             **THE COURT:**  I'M NOT SURE THE ISSUE WILL ACTUALLY

22   ARISE IN LITIGATION.  IF IT DOES, THEN WE WILL BOTH BE READY.

23             **MR. MARINO:**  YOUR HONOR, THE ONLY POINT I REALLY

24   WANTED TO MAKE, THERE IS THIS DONATION OR PAYMENT REALLY IS

25   FOR THE USE OF THE CODE DEVELOPED BY MR. HUNT ACROSS ALL OF

1    THE GAMES.  AND SO IT'S NOT JUST FOR PAYMENT FOR USE OF THE

2    CODE TOGETHER WITH ANY GAME IN WHICH NIANTIC IS MAKING A

3    CLAIM.  THAT'S WHY HAVING THE WEBSITE SHUT DOWN PREVENTING

4    USERS FROM BEING ABLE TO USE THE CODE FROM MR. HUNT AND ANY OF

5    THE OTHER GAMES HAVE NOTHING TO DO WITH THE ALLEGED

6    INFRINGEMENT IS AN INTERFERENCE WITH PROSPECTIVE ECONOMIC

7    BENEFIT MR. HUNT WOULD RECEIVE IN RETURN.

8         **THE COURT:**  AGAIN, I HAVE TO CONFINE MYSELF TO THE

9    ALLEGATIONS IN THE COMPLAINT AND THEN THE ALLEGATIONS MADE IN

10   THE AFFIRMATIVE DEFENSES IN THE COUNTERCLAIMS, AND I'M AWARE

11   OF THAT.  SO PLEASE DON'T THINK I'M GOING OUTSIDE THOSE

12   DOCUMENTS OR THAT I AM GOING TO GO OUTSIDE OF THOSE DOCUMENTS

13   IN WHATEVER ORDER I ISSUE.

14      I JUST WANT TO FOLLOW UP ON AN ARGUMENT YOU'VE MADE, AND

15   THAT IS ABOUT GIVING A DONATION OR PAYMENT AND THEN GETTING A

16   CODE.  IS WHAT YOU ARE TELLING ME THAT THE CODE THAT SOMEBODY

17   RECEIVES ALLOWS THEM TO -- MR. HINNEN WOULD SAY CHEAT, BUT

18   THERE'S GOT TO BE A MORE NEUTRAL WORD, CO-PLAY OR SOMETHING, I

19   DON'T KNOW.

20        **MR. MARINO:**  CHANGING THE LOCATION OF YOUR PHONE.

21   THAT IS WHAT IT DOES.

22        **THE COURT:**  OKAY.  THAT THE CODE WOULD ALLOW SOMEBODY

23   TO CHANGE THE LOCATION OF HER PHONE WITH REGARD TO A WHOLE

24   SERIES OF GAMES.

25        **MR. MARINO:**  THAT IS EXACTLY WHAT I'M SAYING.  THAT'S

```
1    WHAT I THINK WE HAVE ALLEGED IN PARAGRAPHS 37 TO 42.

2              THE COURT:  SO THERE WOULDN'T HAVE BEEN A WAY -- ARE

3    YOU TELLING ME THERE'S NO WAY THAT YOUR CLIENT COULD HAVE JUST

4    SHUT DOWN ITS OPERATIONS WITH REGARD TO NIANTIC'S GAMES?

5              MR. MARINO:  THEY CERTAINLY COULD HAVE REMOVED THE

6    LINKS FROM THE WEBSITE THAT ONLY AFFECTED -- THEY ONLY

7    PERTAINED TO NIANTIC'S GAMES.

8              THE COURT:  WHY DIDN'T THEY?

9        I'M JUST ASKING ABOUT THE EQUITIES.  YOU ARE MAKING AN

10   EQUITABLE ARGUMENT THAT DEPENDS, I THINK, ON THE IDEA THAT THE

11   ONLY WAY OF COMPLYING WITH THEIR CEASE AND DESIST

12   COMMUNICATIONS WAS TO TAKE DOWN THE WHOLE WEBSITE, AND THAT

13   INJURED YOUR CLIENT'S BUSINESS AS IT PERTAINED TO NON-NIANTIC

14   GAMES.

15       AND MY QUESTION IS, REALLY?  IS THAT THE ONLY PATH THAT'S

16   AVAILABLE TO THEM?  AND I HEAR YOU SAYING, NO, THEY COULD HAVE

17   JUST REMOVED THE LINKS TO NIANTIC'S GAMES.

18       MAYBE I'M MISSING SOMETHING.

19             MR. MARINO:  I THINK THEORETICALLY THAT'S TRUE THAT

20   THEY COULD HAVE DONE THAT.  THAT'S NOT WHAT THEY DID.  THEY

21   THOUGHT THEY HAD TO COMPLY WITH THE CEASE AND DESIST.

22       AND CERTAINLY WHEN -- ONCE GO DADDY TOOK DOWN THE WEBSITE

23   TO BEGIN WITH, THEN THEY HAD NO ALTERNATIVE BECAUSE THE

24   WEBSITE COULDN'T BE ACCESSED BY ANYBODY ON THE INTERNET.  SO

25   AT THAT POINT THEY WOULDN'T HAVE DONE THAT ANYMORE.
```

1          I THINK THAT'S ALL I HAVE FOR NOW, YOUR HONOR.

2              **THE COURT:**  THANK YOU.

3      MR. HINNEN, I THINK YOU ARE LARGELY AHEAD ON POINTS.

4              **MR. HINNEN:**  THANK YOU, YOUR HONOR.  I HEAR YOU LOUD

5  AND CLEAR.

6      I WILL NOT SPEAK SPECIFICALLY TO THE DECLARATORY JUDGMENT

7  CLAIM THEN.  I THINK WE'VE MADE OUR POINTS VERY CLEAR IN THE

8  PAPERS WITH RESPECT TO THAT.

9      WITH RESPECT TO THE AFFIRMATIVE ACTION -- THE AFFIRMATIVE

10 DEFENSES, JUST BRIEFLY I WOULD STATE THAT THESE ARE NOT

11 AFFIRMATIVE DEFENSES THAT ARE SPECIFIC TO THE WAY THAT THE

12 COMPLAINT WAS DRAFTED.  THEY ARE BOILERPLATE RECITATIONS OF

13 THE STANDARD.  YOUR HONOR WAS EXACTLY RIGHT.

14     FOR INSTANCE, THEY ALLEGE A FAIR USE DEFENSE BUT THEY ALSO

15 DENY THAT THEY MADE ANY USE AT ALL.  SO IT WOULD BE

16 TREMENDOUSLY HELPFUL TO BOTH US AND THE COURT IN UNDERSTANDING

17 THAT AFFIRMATIVE DEFENSE TO UNDERSTAND WHAT USE THEY ARE

18 ALLEGING IS FAIR, JUST BY WAY OF EXAMPLE.

19     YOUR HONOR MADE THE POINT, I THINK FOR US, THAT THE

20 SENDING OF AS CEASE AND DESIST LETTER DID NOT REQUIRE THEM TO

21 DO ANYTHING --

22             **THE COURT:**  WHAT ABOUT THE GO DADDY POINT?

23             **MR. HINNEN:**  THE GO DADDY POINT, YOUR HONOR, IF YOU

24 READ THE LETTER AND IT IS NOW IN THE RECORD BECAUSE IT WAS

25 INCORPORATED WITHIN THEIR ANSWER AND IS NOW ATTACHED TO

1    MR. SPEAR'S DECLARATION AT DOCKET 81-1, DOES NOT REQUEST THAT

2    GO DADDY TAKE DOWN THE WEBSITE.  IT REQUESTS THAT GO DADDY

3    DISCLOSE INFORMATION REGARDING THE WEBSITE OWNER.

4        SO THAT WASN'T A REQUEST THAT WAS MADE BY US.  IT'S OUR

5    UNDERSTANDING THAT THE WEBSITE HAS NOT BEEN TAKEN DOWN BY GO

6    DADDY.  IT WAS LOCKED BY GO DADDY BECAUSE, AS YOUR HONOR MAY

7    BE AWARE, WHEN THERE ARE DISPUTES REGARDING DOMAIN NAMES,

8    REGISTRARS OFTEN LOCK THEM TO MAKE SURE THAT THEY CAN'T BE

9    TRANSFERRED TO SOMEONE ELSE.  OUR UNDERSTANDING IS IT'S BEEN

10   LOCKED FROM TRANSFER, NOT TAKEN DOWN BY THE REGISTRAR.

11       I BELIEVE THAT THE DEFENDANTS THEMSELVES TOOK DOWN THEIR

12   WEBSITE.  AND I BELIEVE THAT'S IN THE RECORD.  I CAN DIRECT

13   YOUR HONOR TO WHERE THAT IS IF THAT WOULD BE HELPFUL.

14       I THINK IT'S CLEAR THAT THE COMMUNICATIONS INVOLVED HERE

15   ARE RELATED TO THE LITIGATION, THE LETTER THAT -- CEASE AND

16   DESIST LETTER WAS SENT BY LITIGATION COUNSEL SEVEN DAYS BEFORE

17   THE COMPLAINT WAS FILED THAT, AS DEFENDANT SAID, IS

18   SUBSTANTIALLY SIMILAR, HAS ALL KINDS OF LANGUAGE THAT ANY

19   REASONABLE PERSON WOULD UNDERSTAND AS PRECEDENT TO A LAWSUIT.

20       THE LETTER TO GO DADDY WAS SENT TEN DAYS AFTER THE

21   COMPLAINT WAS FILED AND ATTACHED THE COMPLAINT, OBVIOUSLY VERY

22   RELATED TO THE LAWSUIT AS WELL.  I THINK THERE'S NO QUESTION

23   THAT THOSE COMMUNICATIONS ARE RELATED TO THE LAWSUIT.

24       I THINK THE ONLY QUESTION THEN IS WHETHER THE DEFENDANTS'

25   COUNTERCLAIMS ARE MERITORIOUS.  AND I THINK FOR THE REASONS

1    STATED IN OUR PAPERS, THEY ARE NOT.  THEY ARE BARRED BY TWO

2    SEPARATE PRIVILEGES, THE CALIFORNIA LITIGATION PRIVILEGE AND

3    THE *NOERR-PENNINGTON* DOCTRINE, AND I'M HAPPY TO EXPAND UPON

4    THAT, BUT IT'S VERY WELL SET FORTH IN OUR BRIEFS.

5        AND THEY ALSO FAIL TO ALLEGE AT LEAST ONE ESSENTIAL

6    ELEMENT OF EACH OF THOSE TWO COUNTERCLAIMS, THE TORTIOUS

7    INTERFERENCE COUNTERCLAIM AND THE UNFAIR COMPETITION

8    COUNTERCLAIM.  SO I THINK IT IS VERY CLEAR THEY ARE NOT

9    MERITORIOUS.  AND UNDER CALIFORNIA LAW AS A RESULT, THE

10   PLAINTIFFS ARE ENTITLED TO RECOVER THE ATTORNEYS' FEES THAT

11   THEY HAVE INCURRED DEFENDING AGAINST THOSE IMPROPER CLAIMS.

12       AND, YOUR HONOR, I WOULD BE HAPPY TO ANSWER ANY OTHER

13   QUESTIONS YOUR HONOR HAS OR RESPOND TO ANYTHING THAT WOULD BE

14   HELPFUL AFTER MR. MARINO RESPONDS, BUT OTHERWISE I WILL LEAVE

15   IT THERE, YOUR HONOR.

16       **THE COURT:**  NO, THANKS.  I THINK I CAN TAKE IT UNDER

17   SUBMISSION.  I WAS ACTUALLY ABLE TO DEVOTE A SUBSTANTIAL

18   AMOUNT OF TIME GETTING READY FOR TODAY'S HEARING, SO I THINK I

19   HAVE THE INFORMATION THAT I NEED.

20       I THINK, JUST TO SAVE EVERYBODY SOME TROUBLE, I WILL ORDER

21   THAT IT BE IN THE MINUTES OF THIS HEARING THAT BY STIPULATION

22   OF THE PARTIES, THE COURT EXTENDED THE PARTIES' EARLY NEUTRAL

23   EVALUATION DEADLINE TO FEBRUARY 14TH, 2020, AND THAT WILL SAVE

24   EVERYBODY THE NEED TO PUT IN A STIPULATION.

25       HAVE YOU, BEFORE I GET OFF THAT TOPIC, DO I CORRECTLY

```
 1    UNDERSTAND YOU ARE ON THE ENE EVALUATOR'S CALENDAR FOR

 2    FEBRUARY 6TH OR ARE YOU STILL TRYING TO GET A DATE?

 3         MR. MARINO:  I THINK THE -- WE HAD A CALL WITH THE

 4    EVALUATOR ON MONDAY.  MY UNDERSTANDING IS SHE IS SEEKING TO

 5    MOVE IT TO MARCH 11TH OR 12TH.

 6         THE COURT:  I SEE.

 7      SO LET ME STICK MY TOE IN THE WATER ON THIS ISSUE GENTLY.

 8    I DON'T LIKE TO GET TOO INVOLVED IN THE PARTIES' SETTLEMENT

 9    DISCUSSIONS BECAUSE YOU CAN LEAD A HORSE TO WATER, YOU CAN'T

10    MAKE THEM DRINK ESSENTIALLY.  I THINK USUALLY THE PARTIES NEED

11    TO MAKE A DECISION ABOUT WHEN THEY ARE READY TO HAVE

12    PRODUCTIVE SETTLEMENT DISCUSSIONS.

13      I DO CONTINUE TO FEEL, AS I TOLD YOU BEFORE, THAT THIS

14    CASE STRIKES ME AS ONE THAT COULD BE RESOLVED EARLY JUST

15    BECAUSE YOU COULD QUICKLY FIND YOURSELF IN A WORLD OF LARGE,

16    UNNECESSARY TRANSACTION COSTS FOLLOWED SOON THEREAFTER BY

17    REGRET.

18      BUT WHAT DO YOU BOTH THINK ABOUT THE TIMING OF THAT?  ARE

19    YOU IN A HURRY?  DO YOU LIKE THIS ENE EVALUATOR?

20      MY QUESTION IS, DO YOU WANT TO STAY ON THAT PATH, IN WHICH

21    CASE, FINE, LET'S LEAVE IT OPEN.  YOU KNOW I WILL SIGN

22    WHATEVER STIPULATION YOU SEND ME.  YOU CAN CONTINUE TO TALK TO

23    THAT PERSON AND FIND OUT WHEN YOU CAN GET ON THAT PERSON'S

24    CALENDAR.  FINE.  OR DO YOU WANT TO DO SOMETHING ELSE?

25      WHAT WORKS FOR YOU?
```

1            **MR. MARINO:**  YOUR HONOR, FOR OUR CLIENTS, I THINK WE

2     WOULD LIKE TO PROCEED WITH IT.  I THINK THE PROCESS WILL BE

3     HELPFUL.  THE SCHEDULING WAS LITERALLY AN UNFORESEEN CONFLICT

4     THAT THE EVALUATOR IS SUPPOSED TO BE IN TRIAL ON THE 6TH.

5            **THE COURT:**  I SEE.

6            **MR. MARINO:**  SHE DIDN'T KNOW THAT AT THE TIME WHEN

7     SHE SET THE 6TH.

8            **THE COURT:**  THESE THINGS HAPPEN.  WE HAVE A VERY GOOD

9     PANEL, BUT IT'S MADE UP OF SUCCESSFUL LAWYERS.  SO, OF COURSE,

10    THEY HAVE OTHER OBLIGATIONS.  THAT'S OKAY.

11         MR. HINNEN, DO YOU FEEL THE SAME WAY?

12           **MR. HINNEN:**  NIANTIC FEELS THE SAME WAY, YOUR HONOR.

13    WE DO FEEL LIKE THIS MAY BE A PRODUCTIVE WAY FOR THE PARTIES

14    TO HAVE A CONVERSATION THAT CAN AT LEAST CLARIFY SOME OF THE

15    ISSUES IN THE CASE, IF NOT RESOLVE IT ENTIRELY.  AND WE ARE

16    PLEASED WITH THE CHOICE OF NEUTRALS, SO WE WOULD LIKE TO

17    EMPLOYEE.

18           **THE COURT:**  OKAY.  GOOD.

19         SOMETIMES I ASK PEOPLE THIS QUESTION:  THE VALUE OF A CASE

20    ABOUT MONEY, WHICH THIS IS, IS A REASONABLY LIKELY PLAINTIFF'S

21    VERDICT MULTIPLIED BY THE PROBABILITY THAT VERDICT WILL OCCUR,

22    MINUS TRANSACTION COSTS FOR THE PLAINTIFF, PLUS TRANSACTION

23    COSTS FOR THE DEFENDANT.

24         HAVE WE ALREADY TALKED ABOUT THIS?

25           **MR. HINNEN:**  NO, YOUR HONOR.  I DON'T BELIEVE SO.

1           **THE COURT:**  I LOVE THIS EQUATION.  IT'S ONE OF THE

2      MOST TERRIBLE THINGS IN THE LAW.  I'LL GIVE YOU AN EXAMPLE.

3        LET'S SAY I WERE COMING TO WORK AND I GOT IN A CAR

4      ACCIDENT.  IT SOMETIMES HAPPENS.  I KNOW THIS FROM MY STATE

5      COURT PRACTICE; IT SOMETIMES HAPPENS THAT ONE DRIVER'S CAR CAN

6      BE TOTALED AND THE DRIVER CAN BE INJURED AND THE OTHER

7      DRIVER'S FINE AND THEIR CAR IS FINE.  THAT HAPPENS.

8        LET'S ASSUME IT HAPPENED IN MY HYPOTHETICAL AND MY CAR WAS

9      TOTALED AND I WAS INJURED.  AND WHEN YOU ADD IN THE CAR AND

10     THE MEDICAL BILLS AND MY PAIN AND SUFFERING, JUST FOR THE SAKE

11     OF SIMPLICITY, LET'S SAY MY DAMAGES ARE $100,000.  YOU SAY,

12     GREAT.  I HAVE A HUNDRED THOUSAND DOLLAR CASE.  BUT THERE'S A

13     PROBLEM.  I BELIEVE I ENTERED THE INTERSECTION ON A GREEN

14     LIGHT.  SO DOES THE OTHER DRIVER.

15       AND AS A RESULT OF THEIR EARLY MORNING, WE EACH THOUGHT WE

16     HAD A GREEN LIGHT, THE OTHER DRIVER IS A 5-FOOT 10 INCH

17     BRUNETTE FEDERAL JUDGE.  WE'RE EQUALLY CREDIBLE.  WE EACH HAVE

18     A WITNESS, THOUGH.  CATTY CORNER, THERE WERE TWO SISTERS

19     WAITING TO MEET EACH OTHER FOR BREAKFAST.  ONE OF EACH OF THEM

20     SEES THINGS OUR WAY.  SO WE HAVE VIRTUALLY -- WE HAVE CASES OF

21     IDENTICAL STRENGTH.

22       WHAT'S MY CASE WORTH?

23           **MR. MARINO:**  50K.

24           **THE COURT:**  50K.  THAT'S PRETTY TERRIBLE.  MY LAWYER

25     WILL NOT TELL ME THIS IN THE FIRST MEETING.  I MIGHT NOT EVER

1    LEARN THIS UNLESS AND UNTIL I HEAR IT FROM THE MOUTH OF A

2    MEDIATOR OR SETTLEMENT JUDGE.  MY CASE IS ONLY WORTH $50,000.

3        THAT AMOUNT OF MONEY WOULD LEAVE MY PAIN AND SUFFERING

4    TOTALLY UNADDRESSED AND PROBABLY WOULDN'T MAKE ME FINANCIALLY

5    WHOLE.  THERE WOULD HAVE TO BE NEGOTIATIONS WITH THE MEDICAL

6    CARE PROVIDERS AND THAT SORT OF THING.  THAT'S NOT GOOD.

7        IT IS NOT GOOD FOR THE OTHER DRIVER EITHER.  SHE DOESN'T

8    FEEL SHE HAS DONE ANYTHING WRONG.  AND SHE THINKS, WELL, I AM

9    SORRY FOR WHAT HAPPENED TO TIGAR, BUT THIS IS WHAT HAPPENS TO

10   PEOPLE WHO RUN RED LIGHTS.  SHE HAS A $50,000 PROBLEM AND

11   SHE'S NOT DONE ANYTHING, SHE DOESN'T THINK.  BUT THERE'S A

12   50 PERCENT CHANCE THAT IF SHE GOES TO TRIAL, SHE'LL BE ORDERED

13   TO PAY ME $100,000.

14       BUT IT GETS WORSE, ACTUALLY.  BECAUSE NEITHER OF US -- WE

15   ARE BOTH REPRESENTED AND NEITHER OF US HAVE PRO BONO COUNSEL.

16   LET'S REALLY ASSUME SOMETHING FANTASTICAL.  AND THAT IS THAT

17   EACH OF OUR LAWYERS WILL DO THE CASE FOR $20,000.  MOST OF THE

18   FIRMS WHO COME IN THIS COURTROOM WOULDN'T OPEN A FILE FOR

19   $20,000.  BUT LET'S JUST SAY I COULD GET THAT AND SO COULD

20   SHE.  THE CASE IS ONLY WORTH $30,000 BECAUSE THEY HAVE TO PAY

21   THE 20.  AND I PAY THE 20 FOR A 50 PERCENT CHANCE OF GETTING A

22   HUNDRED THOUSAND DOLLARS.  AND THE OTHER DRIVER HAS A $70,000

23   PROBLEM, THE DRIVER WHO THINKS SHE DID ABSOLUTELY NOTHING

24   WRONG.  AND SHE MAY NOT HAVE DONE ANYTHING WRONG.

25       OF COURSE, IF WE KNEW THAT, THAT CASE SHOULD SETTLE

1    BECAUSE I SHOULD BE WILLING TO TAKE $31,000 AND SHE SHOULD BE

2    WILLING TO TAKE $69,000, SO IT LEAVES A LOT OF WIGGLE ROOM.

3        PEOPLE GET SO STUCK ON THEIR OWN NARRATIVE, AND ANGRY, AND

4    CLIENTS GET ANGRY.  AND PEOPLE STOP FOCUSING ON WHAT IS IT

5    THAT REALLY AFFECTS THE PROBABILITY OF THAT VERDICT OCCURRING

6    AT TRIAL?

7        ENE IS A GREAT TOOL.  GREAT.  I DON'T KNOW WHO YOU ARE

8    GOING TO GO TALK TO.  I HOPE THAT PERSON IS SMART.  I HOPE YOU

9    WILL DO SOME VERY SERIOUS THINKING ABOUT THE EQUATION BEFORE

10   YOU GET THERE.

11       IN STATE COURT, I USED TO ASK PEOPLE ALL THE TIME AT

12   CMC'S, PLAINTIFFS, HOW MUCH IS YOUR CASE WORTH?  I STOPPED

13   DOING THAT.  WHAT'S YOUR CASE WORTH?  SOMETIMES THEY LOOK

14   STUNNED, AS IF NOBODY HAD EVER THOUGHT ABOUT IT.

15       SO I'M NOT GOING TO ASK THE OTHER SIDE, BECAUSE SHE'S

16   GOING TO SAY ZERO.  OKAY?  SHE REPRESENTS THE DEFENDANT.  NO

17   ONE KNOWS BETTER THAN YOU.

18       WHAT'S IT WORTH?

19            **MR. HINNEN:**  WELL, YOUR HONOR, THERE ARE SEVERAL --

20            **THE COURT:**  I'M NOT ASKING YOU TODAY.

21            **MR. HINNEN:**  I WAS GOING TO SAY THERE'S SEVERAL PARTS

22   OF YOUR HYPOTHETICAL THAT I DON'T THINK LINE UP WITH OUR CASE

23   VERY WELL.

24            **THE COURT:**  I'M SURE THAT'S TRUE.  BUT I MIGHT ASK

25   YOU LATER.  THAT'S ALL.

1        **MR. HINNEN:**  FAIR ENOUGH.

2            **THE COURT:**  BECAUSE I CAN SEE IN THE WIND, I CAN READ

3    IN THE TONE OF THIS CASE AN APPETITE FOR TRANSACTIONAL COSTS.

4    SO AT SOME POINT I MIGHT ASK YOU WHAT IT'S WORTH, INCLUDING

5    THE COUNTERCLAIMS.

6        ANYWAY, I HAVE TAKEN TOO MUCH OF YOUR TIME.  ANYTHING ELSE

7    WE CAN TALK ABOUT TODAY?

8            **MR. MARINO:**  THANK YOU, YOUR HONOR.

9            **MR. HINNEN:**  NO, YOUR HONOR.  THANK YOU.

10           **THE COURT:**  THANKS.  THE MOTION IS UNDER SUBMISSION.

11           **THE CLERK:**  COURT IS IN RECESS.

12               (PROCEEDINGS CONCLUDED AT 3:45 P.M.)

13

14

15                   **CERTIFICATE OF REPORTER**

16        I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

17    UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

18    CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

19    RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

20

21                   _Diane E. Skillman_

22            DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

23               TUESDAY, FEBRUARY 18,2020

24

25